# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.* ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | No. 6:23-cv-00007 |
| ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURTY., *et al.* ) | |
| ) | |
| Defendants. ) | |

## MOTION TO TRANSFER

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT .......................................................................................................4

I.      Venue Is Improper in this Division under 28 U.S.C. § 1406 Because There Is No Connection Between the Complaint and this Division. ...........................................5

II.     Alternatively, the Court Should Transfer this Matter to the Austin Division of the Western District of Texas, or the District of Columbia, under 28 U.S.C. § 1404(a) .......................................................................9

III.   At a Minimum, to Avoid the Appearance of Judge-Shopping, and in the Interests of Justice, the Court Should Transfer this Case Under 28 U.S.C. § 1404 to the Another Division Within this District. ...........................................5

V.     CONCLUSION .........................................................................18

CERTIFICATE OF SERVICE ..........................................................................20

CERTIFICATE OF CONFERNCE ....................................................................20

i

# TABLE OF AUTHORITIES

*Alabama v. U.S. Army Corps of Eng'rs*,
   382 F. Supp. 2d 1301 (N.D. Ala. 2005) .......................................................................... 8, 9

*Birnbaum v. Blum*,
   546 F. Supp. 1363 (S.D.N.Y. 1982) ............................................................................... 7

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ......................................................................................... 8, 9

*Chapman v. Dell, Inc.*,
   No. EP-09-CV-7-KC, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ................................... 10

*Dep't of Homeland Sec. v. New York*,
   140 S. Ct. 599 (2020) ................................................................................................... 13

*Fla. Hometown Democracy, Inc. v. Browning*,
   No. 08-CV-80636-CIV, 2008 WL 3540607 (S.D. Fla. Aug. 12, 2008) ................................... 6

*Fla. Nursing Home Ass'n v. Page*,
   616 F.2d 1355 (5th Cir. 1980), *rev'd on other grounds*, 450 U.S. 147 (1981) ........................ 5

*Florida v. United States*,
   No. 3:21CV1066-TKW-EMT, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) ......................... 8

*Garcia v. International Construction Equipment, Inc.*,
   765 F. App'x 109 (5th Cir. 2019) ................................................................................... 14

*Gray Cas. & Sur. Co. v. Lebas*,
   No. CIV.A. 12-2709, 2013 WL 74351 (E.D. La. Jan. 7, 2013) ............................................ 7

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ..................................................................................................... 11

*Hanby v. Shell Oil Co.*,
   144 F. Supp. 2d 673 (E.D. Tex. 2001) ........................................................................... 10, 12

*In re Gibson*,
   423 F. App'x 385 (5th Cir. 2011) ................................................................................... 14, 17

*In re Planned Parenthood*,
   2022 WL 16549164  (5th Cir. 2022) ............................................................................... 15

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013).................................................................11, 13, 15

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008)............................................................... *passim*

*Leonhart v. McCormick*,
    395 F. Supp. 1073 (W.D. Pa. 1975)..................................................................7

*McCuin v. Texas Power & Light Co.*,
    714 F.2d 1255 (5th Cir. 1983).................................................................14, 17

*Mizell v. Prism Computer Corp.*,
    27 F. Supp. 2d 708 (S.D. Miss. 1998)...........................................................16

*Nestor v. Hershey*,
    425 F.2d 504 (D.C. Cir. 1969)..........................................................................7

*Norwood v. Kirkpatrick*,
    349 U.S. 29 (1955)..........................................................................................10

*O'Neill v. Battisti*,
    472 F.2d 789 (6th Cir. 1972)............................................................................6

*Perkins v. Snider*,
    No. CIV. A. 94-4785, 1994 WL 530045 (E.D. Pa. Sept. 2, 1994)...........................7

*Positive Software Sols., Inc. v. New Century Mortg. Corp.*,
    476 F.3d 278 (5th Cir. 2007)..........................................................................13

*Republic of Iraq v. Beaty*,
    556 U.S. 848 (2009)..........................................................................................8

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
    626 F.3d 973 (7th Cir. 2010)....................................................................12, 16

*Reuben H. Donnelly Corp. v. FTC*,
    580 F.2d 264 (7th Cir. 1978)............................................................................6

*Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*,
    957 F. Supp. 843 (E.D. Tex. 1997)................................................................14

*Stewart Organization, Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)....................................................................................11, 12

iii

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................................... 11

*Veba-Chemie A.G. v. M/V Getafix*,
    711 F.2d 1243 (5th Cir. 1983) .................................................................................. 10

*Zhang v. Chertoff*,
    No. C 08–02589, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ............................... 5

## STATUTES

8 U.S.C. § 1182(d)(5) ........................................................................................................ 4

8 U.S.C. § 1391(c)(2) ........................................................................................................ 6

8 U.S.C. § 1391(e) ............................................................................................................. 1

28 U.S.C. § 1391(e) .................................................................................................. 1, 4, 5

28 U.S.C. § 1391(b)(1) ...................................................................................................... 9

28 U.S.C. § 1391(c)(1) ...................................................................................................... 8

28 U.S.C. § 1391(c)(2) ...................................................................................................... 8

28 U.S.C. § 1391(c)(3) ...................................................................................................... 8

28 U.S.C. § 1391(d) ....................................................................................................... 8, 9

28 U.S.C. § 1391(e)(1) .................................................................................................... 5, 8

28 U.S.C. § 1391(f) ........................................................................................................... 8

28 U.S.C. § 1404 ............................................................................................................. 15

28 U.S.C. § 1404(a) .................................................................................................. *passim*

28 U.S.C. § 1404(b) ........................................................................................................ 16

28 U.S.C. § 1406 .................................................................................................. 1, 4, 5, 9

28 U.S.C. § 1406(a) ........................................................................................................... 5

29 U.S.C. § 203(x) ............................................................................................................ 9

29 U.S.C. § 2617(2) ........................................................................................ 8, 9

42 U.S.C. § 9607(d)(2) ....................................................................................... 8

# FEDERAL REGISTER

88 Fed. Reg. 1,243 ............................................................................................ 3

88 Fed. Reg. 1,246 ............................................................................................. 4

88 Fed. Reg. 1,255 ............................................................................................ 3

88 Fed. Reg. 1,256 ......................................................................................... 3, 4

88 Fed. Reg. 1,266 ............................................................................................ 3

88 Fed. Reg. 1,267 ......................................................................................... 3, 4

88 Fed. Reg. 1,279 ............................................................................................ 3

88 Fed. Reg. 12,46 ............................................................................................ 3

# MISCELLANEOUS

@steve_vladeck, Twitter (Jan. 25, 2023, 5:35 PM), https://twitter.com/steve_vladeck/ status/1618376962157993984 ......................................................................... 17

Charles Alan Wright & Arthur R. Miller, *14D Fed. Prac. & Proc. Juris. § 3805* (4th ed. 2013). 6

Charles Alan Wright & Arthur R. Miller, *15 Fed. Prac. & Proc. Juris. § 3854* (4th ed. 2013) ............................................................................................................11, 13, 16

Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo, Chilton Davis Varner, *1 Moore's Federal Practice 1487-88* (2021) ................................................................... 6

Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo, Chilton Davis Varner, *17 Moore's Federal Practice - Civil § 110.03* (2021) .......................................................... 7

James M. Wicks, *13 Bus. & Com. Litig. Fed. Cts. § 140:38* (4th ed.) ........................................ 7

U.S. Dep't. of Homeland Sec., *DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes*, available at https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and (last visited Jan. 26, 2023) .................................................. 3

U.S. Dep't. of Homeland Sec., *Unlawful Southwest Border Crossings Plummet Under New Border Enforcement Measures,* available at (https://www.dhs.gov/news/2023/01/25/unlawful-southwest-border-crossings-plummet-under-new-border-enforcement-measures (last visited Jan. 26, 2023) ................................................................................................................. 3, 4

U.S. District & Bankruptcy Court, TXSD, *Division of Work Order for 2023*, available at https://www.txs.uscourts.gov/file/6685/download?token=PJ3LWY-M (last visited Jan. 26, 2023) ............................................................................................................................. 2, 15

U.S. Supreme Court, *Transcript 93:25-94:11,United States v. Texas*, No. 22-58 available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf; (last visited Jan. 26, 2023) ..................................................................................... 14

U.S. Supreme Court, *Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, United States v. Texas, No. 22-58 (Sept. 19, 2022) (noting 20 such lawsuits in Texas courts in 2021 and 2022 up to September 19, 2022),* available at https://www.supremecourt.gov/DocketPDF/22/22-58/238509/20220922104355438_22-58%20tsac%20Vladeck%20revised.pdf; (last visited Jan. 26, 2023)

## INTRODUCTION

This case challenges federal government policies promulgated in Washington, D.C., which are tied to and contingent on decisions of the Government of Mexico, and which together seek to decrease encounters of unlawful entrants at our southern border. The case does not arise from any events occurring in this Division. As explained below, this case should be transferred to either the Austin Division of the Western District of Texas, or to the U.S. District Court for the District of Columbia, under 28 U.S.C. § 1406, because venue is improper in this District or Division under 28 U.S.C. § 1391(e). Alternatively, this action should be transferred to either of those jurisdictions under 28 U.S.C. § 1404(a), because the convenience of witnesses, access to evidence, and interest of justice counsel transfer. At a minimum, the case should be transferred to a multi-judge Division of this District in the interest of justice and to ensure the perceived impartiality of the federal courts.

No Plaintiff resides in the Southern District or the Victoria Division. No Defendant resides here either. No event or omission giving rise to Plaintiffs' claims occurred in the District or Division. This case should have been filed in the Austin Division of the Western District of Texas—where Plaintiff State of Texas resides[1]—or the District of Columbia—where Defendants reside. *See* 8 U.S.C. § 1391(e).[2]

If countenanced, Plaintiffs' decision to file in the Southern District—and, in particular, in the single-judge Victoria Division, which has no connection to this dispute—would undermine public confidence in the administration of justice in a case involving a national policy promulgated

---

[1] Although there at 20 Plaintiff States, the complaint asserts venue in this Division based on Texas only. Complaint ¶ 34. No other Plaintiff State claims to reside in this Division, District, or state.
[2] As explained below, all Defendants but one reside in D.C., and U.S. Citizenship and Immigration Services resides in Maryland.

by Federal officials in Washington, D.C. with no apparent impact on any Plaintiff in this specific Division. Because the parties and underlying facts have no connection to this District or Division and permitting Plaintiffs' blatant forum shopping disserves the interests of justice, the Court should transfer the complaint to either the Austin Division of the Western District of Texas or the District Court for the District of Columbia.

At a minimum, even if the Court finds that Texas resides in the Southern District or this Division and that transfer outside this District is not warranted, to avoid any appearance of judge-shopping by Plaintiffs that would undermine public confidence in the administration of justice, the Court should transfer this case within this District to Corpus Christi, where this Court sits, or to Brownsville, Houston, Laredo, or McAllen. Such a transfer would avoid the appearance that Plaintiffs can, in effect, choose their judge by selecting a Division, in which, by happenstance, only a single judge sits. Unlike civil cases filed in this Division—which are assigned to a single judge in all relevant circumstances—cases in Brownsville, Corpus Christi, Houston, Laredo, or McAllen are assigned randomly among multiple judges, avoiding any appearance of judge-shopping by Plaintiffs. *See* Division of Work Order for 2023, *available at* https://www.txs.uscourts.gov/file/6685/download?token=PJ3LWY-M (last visited Jan. 25, 2023). Plaintiffs' and other litigants' ongoing tactic of filing many of their lawsuits against the federal government in single-judge divisions or divisions where they are almost always guaranteed to procure a particular judicial officer undermines public confidence in the administration of justice and warrants transfer in the interests of justice.

In addition, Defendants respectfully request that the Court stay all outstanding deadlines, including the government's answer deadline, and any other deadlines that may arise, pending resolution of this motion.

2

**BACKGROUND**

In this case, Plaintiffs, 20 States, have sued the Department of Homeland Security (DHS), its component agencies—U.S. Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection (CBP), and U.S. Immigration and Customs Enforcement (ICE)—and the leadership of DHS and those components in their official capacities. Complaint, ¶¶ 28-32. Plaintiffs allege that parole processes promulgated by Defendants in Washington, D.C. which are tied to and contingent on the decision by the Government of Mexico to accept returns at the border of third country nationals who do not use these processes,[3] violate the Immigration and Nationality Act (INA) and the Administrative Procedure Act (APA), and are ultra vires. Complaint, ¶¶ 133-36. These processes—negotiated by government officials whose offices are in Washington, D.C.— enable DHS, for the first time, to return to Mexico tens of thousands of nationals of Cuba, Haiti, Nicaragua, and Venezuela, who the United States cannot remove to their home countries. *See* DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes, *available at https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and* (last accessed Jan. 25, 2023). Cuba, Nicaragua, and Venezuela generally will not accept, or place limits on, the return of their citizens from the United States, while the security situation in Haiti limits DHS' ability to return Haitians. 88 Fed. Reg. at 12,46; 88 Fed. Reg. at 1,256; 88 Fed. Reg. at 1,267.

The new processes have led to a significant decline in the number of Cubans, Nicaraguans, Haitians, and Venezuelans seeking to cross illegally into the United States. Of note, the numbers

---

[3] *See* Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1,243 (Jan. 9, 2023); Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1,255 (Jan. 9, 2023); Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1,266 (Jan. 9, 2023); Implementation of Changes to the Parole Process for Venezuelans, 88 Fed. Reg. 1,279 (Jan. 9, 2023).

3

of Cubans, Nicaraguans, Haitians and Venezuelans encountered between ports of entry at the southwest border declined 97% from early December to late January, from a seven-day average of 3,367 per day on December 11, to a seven-day average of just 115 on January 24. *Unlawful Southwest Border Crossings Plummet Under New Border Enforcement* (https://www.dhs.gov/news/2023/01/25/unlawful-southwest-border-crossings-plummet-under-new-border-enforcement-measures). This decline in encounters from those populations occurred even as encounters of other noncitizens are returning to customary levels after a typical seasonal decline over the holidays. *Id.* The processes Plaintiffs challenge—which explain how the government will exercise its parole authority under 8 U.S.C. § 1182(d)(5) with respect to nationals of Cuba, Haiti, Nicaragua, and Venezuela—are critical to this effort. They provide an alternative means for individuals who are vetted and have financial supporters to enter the United States in regular fashion at airports of entry for a time-limited period—thus reducing pressure at the southwest land border. 88 Fed. Reg. at 1,246; 88 Fed. Reg. at 1,256; 88 Fed. Reg. at 1,267. Importantly, they are  a crucial element of the Government of Mexico's independent decision to accept—for the first time ever—the return of nationals from these countries. *See* DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes, *supra*.

The States filed this suit in the Victoria Division of the Southern District of Texas on January 24, 2023, alleging that venue is proper here "because the State of Texas resides in this district." Complaint, ¶ 34. They do not allege that any of the events giving rise to their claims occurred in this Division.

## ARGUMENT

This Court should transfer this case to either the Austin Division of the Western District of

4

Texas, or the District Court for the District of Columbia, under 28 U.S.C. § 1406, because venue is improper in this District or Division under 28 U.S.C. § 1391(e). Alternatively, the Court should transfer this case to either of those jurisdictions under 28 U.S.C. § 1404(a), because the convenience of parties and witnesses, access to evidence, and interests of justice counsel transfer. At a minimum, even if the Court finds that Texas resides in this District and that transfer to another District is not warranted, to avoid any appearance of judge-shopping by Plaintiffs that would undermine public confidence in the administration of justice, the Court should transfer this case within this District to Corpus Christi, where this Court sits, or to Brownsville, Houston, Laredo, or McAllen, all divisions where civil cases are assigned randomly between multiple judges.

## I.   Venue Is Improper in this Division under 28 U.S.C. § 1406 Because There Is No Connection Between the Complaint and this Division.

The federal venue statute directs a district court to dismiss or transfer a case filed in the wrong district or division. Section 1406 provides that a district court shall dismiss a case laying venue in the wrong division or district, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Venue in a suit against the federal government is governed by 28 U.S.C. § 1391(e). Section 1391(e) provides that generally in any civil action against the United States, its agencies, or its officers, like this one, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Venue is not proper in this District, much less in the Victoria Division, because neither Defendants nor Plaintiffs reside here, and no part of the events giving rise to this case occurred in this District or Division.

First, DHS, its component agencies, and the agency heads reside in Washington, D.C. or the nearby area.[4] *Zhang v. Chertoff*, No. C 08–02589, 2008 WL 5271995, at *3 (N.D. Cal. Dec. 15, 2008) (collecting cases); *accord Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980), *rev'd on other grounds*, *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147 (1981) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."); *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) ("to hold that a federal agency can be sued ... wherever it maintains an office would, as a practical matter, render [§ 1391(e)'s other subsections] superfluous" as most federal agencies likely maintain offices in "most, if not all, judicial districts").

Second, the policies challenged in this suit were promulgated by Defendants in Washington D.C., and no real property is at issue in this case.

Third, no Plaintiff State resides in this District or Division. In particular, where a State sovereign brings suit, the sovereign resides in the district where it "maintains its principal place of business." 8 U.S.C. § 1391(c)(2). ("For all venue purposes … an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, … if a plaintiff, only in the judicial district in which it maintains its principal place of business."); Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.) ("[R]eference to 'the' and the singular 'its principal place of business' compels the conclusion that an entity plaintiff (unlike an entity defendant) can reside in only one district at a time.").

Texas is the only Plaintiff asserting residence in this District or Division, but the State of Texas "resides" for venue purposes in its principal place of business, its capital Austin, located in the

---

[4] USCIS's main office is presently nearby in Camp Springs, Maryland.

6

Austin Division of Western District of Texas. *See, e.g.*, *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) ("The official residence of the Supreme Court of Ohio is in the place where it performs its official duties, that is, Columbus, the State Capital and the seat of State Government.") (citing 1 Moore's Federal Practice 1487-88 ("Where a public official is a party to an action in his official capacity, he resides in the judicial district where he maintains his official residence, that is, where he performs his official duties.")); *Fla. Hometown Democracy, Inc. v. Browning*, No. 08-CV-80636-CIV, 2008 WL 3540607, at *3 (S.D. Fla. Aug. 12, 2008) ("The uncontroverted evidence demonstrates that the Secretary of State resides and performs his official duties in the Northern District of Florida" because the "general rule" is that "a defendant's residence for venue purposes is the district where he performs his official duties."); *Leonhart v. McCormick*, 395 F. Supp. 1073, 1078 (W.D. Pa. 1975) (explaining "all defendants are state officers of statewide jurisdiction whose official residence is the state capitol at Harrisburg in the Middle District of Pennsylvania"); *cf.* 13 Bus. & Com. Litig. Fed. Cts. § 140:38 (4th ed.) ("As a general rule, state officials sued in their official capacities will be deemed to reside where they conduct their official duties. State officials with "statewide jurisdiction" may be deemed to reside in the state capitol."); *Perkins v. Snider*, No. CIV. A. 94-4785, 1994 WL 530045, at *1 (E.D. Pa. Sept. 2, 1994) (similar); *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) ("Where a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties."); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (same); 17 Moore's Federal Practice - Civil § 110.03 (2021) (same).

Indeed, the State of Texas has previously maintained in another suit that "any argument that venue can lie in a 'place of injury,' which Plaintiffs could allege is in any part of the [State of] Texas, 'is contrary to the venue statute and the weight of jurisprudence.'" Texas's Mem. of Law

in Supp. of Defs.' Mot. to Dismiss or Transfer the Consolidated Case ("Texas's Mem."), *City of El Cenizo v. Texas*, Case No. 5:17-cv-404-OG, ECF 32-1, at 4 (W.D. Tex. filed June 8, 2017) (quoting *Gray Cas. & Sur. Co. v. Lebas*, No. CIV.A. 12-2709, 2013 WL 74351, at *2 (E.D. La. Jan. 7, 2013)), Ex. B, App. 015; *see id.* at 10 (arguing that venue is improper when Plaintiffs "assert no particular facts about the operation of [the challenged law] in their municipalities or counties"). Rather, Texas argued in that case that the sole venue for its suit was in Austin because that is where Defendant State government officials "perform their official duties." Texas's Mem., *City of El Cenizo v. Texas*, ECF 32-1, at 5. Texas now takes the opposite view.

Plaintiffs may rely on out-of-circuit cases for the proposition that a *State* resides for venue purposes in every district or division within its sovereign territory. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018); *Florida v. United States*, No. 3:21CV1066-TKW-EMT, 2022 WL 2431443, *2 (N.D. Fla. Jan. 18, 2022); *Alabama v. U.S. Army Corps of Eng'rs*, 382 F. Supp. 2d 1301, 1329 (N.D. Ala. 2005). But this Court should decline to follow those cases, which erroneously conclude that a State sovereign resides in all judicial districts within its borders without addressing the explicit statutory text of section 1391.

The only specific entities Congress recognized in the venue statute as "residing" in a certain district are:

- Corporations, 28 U.S.C. § 1391(d);
- "[A]n officer or employee of the United States or any agency thereof acting in his official capacity," 28 U.S.C. § 1391(e)(1);
- Foreign states, 28 U.S.C. § 1391(f);
- Natural persons, 28 U.S.C. § 1391(c)(1);
- "[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," 28 U.S.C. § 1391(c)(2); and
- Defendants "not resident in the United States," 28 U.S.C. § 1391(c)(3).

State sovereigns are not specifically enumerated and—being neither the federal government, a corporation, a foreign state or resident in a foreign country, nor a natural person—fall into the residual category for "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated," meaning States or their officers reside where they maintain their principal place of business. 28 U.S.C. § 1391(c)(2). "[T]he whole value of a generally phrased residual clause … is that it serves as a catchall for matters not specifically contemplated—known unknowns[.]" *Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009). If Congress intended to limit the entity category described in section 1391(c)(2) "to particular [entities] that it had in mind, it could have enumerated them individually," as it did with the federal government, foreign governments, and other persons and entities. *Id*. Congress knows how to make explicit provisions for States, and particularly State governments, when it chooses. *See, e.g.*, 42 U.S.C. § 9607(d)(2); 29 U.S.C. § 2617(2); 29 U.S.C. § 203(x). Because it did not, States are subject to the limitations of the residual clause, which provides that such a covered entity is resident "*only* in the judicial district in which it maintains its principal place of business." 28 U.S.C. 1391(c)(2) (emphasis added).

Further, Congress was clearly cognizant of States when drafting section 1391, *see* 28 U.S.C. §§ 1391(b)(1), (d), and knew how to provide a separate venue provision for States as plaintiffs had it so intended. Cases like *California v. Azar*, *Florida v. United States*, and *Alabama v. U.S. Army Corps of Eng'rs*, disregard this principle. Instead, those cases effectively create a new venue provision exclusively for States, which is found nowhere in section 1391. And that State-only venue provision is based only on a "common sense" view of the nature of States and provides a broader choice of venue than the broadest entity venue provisions that, even for the federal government, limit residence to certain districts and not "ubiquitous" presence. *California*, 911 F.3d

at 570; *Alabama*, 382 F. Supp. 2d at 1329. Indeed, if those decisions are correct, then for venue purposes, the United States could sue any party, whether a sovereign state or otherwise, in any district and division in the country, on the same theory that a sovereign "resides" everywhere at once within its boundaries. Such a reading of section 1391 renders its limitations on residency a nullity.

Because the only two proper venues for this case under section 1391(e) are the Austin Division of the Western District of Texas or the District of Columbia, this Court should dismiss this case or transfer it in the interest of justice under 28 U.S.C. § 1406.

## II.    Alternatively, the Court Should Transfer this Matter to the Austin Division of the Western District of Texas, or the District of Columbia, under 28 U.S.C. § 1404(a).

Should the Court find venue is proper in this Division, it should nevertheless, pursuant to 28 U.S.C. § 1404(a), transfer the case to the Austin Division of the Western District of Texas, or the District of Columbia.

Under section 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *Id.* at 313. "Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see, e.g.*, *Chapman v. Dell, Inc.*, No. EP-09-CV-7-KC, 2009 WL 1024635, at *4 (W.D. Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "'the operative facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum.'"). "The underlying premise of § 1404(a) is that

courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues that lack any substantial connection to the litigation. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (en banc). By filing in a District and a Division that have no connection to the claims, parties, or potential witnesses in this case, Plaintiffs have "abus[ed] their privilege under § 1391." *Id.* Transfer is warranted here "[f]or the convenience of parties and witnesses," and because transfer is "in the interest of justice[.]" 28 U.S.C. § 1404(a).

Transfers under section 1404(a) are to be more freely granted than dismissals ordered on *forum non conveniens* grounds. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) ("Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience" than had been required to dismiss on *forum non conveniens* grounds); *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983) (the "heavy burden traditionally imposed upon defendants by the *forum non conveniens* doctrine—dismissal permitted only in favor of a substantially more convenient alternative—was dropped in the § 1404(a) context"). And while district courts are empowered with substantial discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness,'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988), the Fifth Circuit, sitting en banc, has held that a district court "clearly abuse[s] its discretion in denying [a defendant's] transfer motion" when "the only connection between [the] case and the [chosen division] is plaintiffs' choice to file there," *Volkswagon*, 545 F.3d at 318 (brackets omitted). Moreover, it is well-settled "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright &

11

Miller,15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.), § 3854 Standard in Considering Transfer—Interest of Justice (collecting cases); *see also Van Dusen v. Barrack*, 376 U.S. 612, 626-27 (1964).

The public and private factors that guide the section 1404 analysis all favor transfer here.[5] *See id.* at 315 (listing four private and four public factors, referred to as the *Gilbert* factors); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). Further, the public factors collectively—which include "systemic integrity and fairness," *Stewart Org.*, 487 U.S. at 30—"may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

The private factors, which focus on the convenience of the parties and witnesses in litigating in the chosen District or Division, militate in favor of transfer. To the extent any documentary or testamentary proof will be necessary to adjudicate Plaintiffs' claims, the relevant documents and any potential witnesses likely reside primarily in the Austin Division of the Western District of Texas—where any witnesses of documents for Texas will be found—or in the District of Columbia—where the challenged policies were conceived and promulgated and where any witnesses or the administrative record are located. *See Volkswagen*, 545 F.3d at 316. It is likely

---

[5] "The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Id.* at 312. Then, the Court must determine whether the party that "seeks the transfer" has shown "good cause," meaning that it has "demonstrate[d] that the transferee venue is clearly more convenient." *Volkswagen*, 545 F.3d at 315. The Court may consider any number of factors, including "private interest factors" such as "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315. The Court may also consider "public interest factors," such as "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* These factors "are not necessarily exhaustive or exclusive." *Id.*

12

that Defendants will seek pre-answer jurisdictional discovery concerning Plaintiffs' Article III standing to raise their claims, as has been ordered by other courts hearing similar immigration challenges brought by States. *See* Dkt. 20, *Indiana v. Biden*, 22-cv-192 (N.D. Ind.) (ordering jurisdictional discovery into Plaintiff Indiana's alleged injuries in a challenge to the government's parole and release policies); Dkt. 72, *Texas v. Mayorkas*, 22-cv-94 (N.D. Tex.) (ordering jurisdictional discovery into Plaintiff Texas's alleged injuries in a challenge to a federal regulation impacting asylum and parole); Dkt. 72 *Arizona v. Garland*, 22-cv-1130 (W.D. La.) (same, with respect to 20 State Plaintiffs). At a minimum, since venue in any District in Texas must be premised on the presence of Plaintiff Texas in this case, then Texas must demonstrate Article III standing, and the evidence concerning that injury will exist within the Texas agencies whose place of business is in Austin, Texas. *See* Complaint, ¶¶ 58-67 (asserting the state agencies involved in education, healthcare, social services, law enforcement). And any federal government documents or witnesses concerning standing again would be in Washington D.C. No relevant documentation, witnesses, or other proof resides in this District or Division.

The public interest factors strongly favor transfer. This District and Division have no "local interest" in having the case adjudicated here. *Id.* This public interest factor—which recognizes that there can be a "local interest in having localized interests decided at home"—weighs heavily in favor of transfer out of this District or Division. *See id.* None of the Plaintiffs other than Texas resides in Texas. And given the claims in this suit, no party, not even Texas, "resides" in the Southern District, much less the Victoria Division for purposes of section 1391(e), as explained above. And even if this Court adopts a capacious view of where Texas resides, the State is clearly less at home here than in the State capital, Austin. Moreover, none of the Defendants resides in

this District or Division. Plaintiffs' "choice of forum is of minimal value," where, as here, "none of the parties reside in this division of this District." *See Hanby*, 144 F. Supp. 2d at 677.

Plaintiffs' claims—which seek declaratory and injunctive relief seeking to invalidate or set aside policies promulgated in Washington, D.C. to implement an agreement with the Government of Mexico—also have no connection to this District or Division. Further, Plaintiffs have not identified anyone in this District or Division who has "an interest—that is, a stake—in the resolution of this controversy." *Volkswagen*, 545 F.3d at 318. "In short, there is no relevant factual connection to" this District or Division. *Id.* In such circumstances, it is an abuse of discretion to "deny[] transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

Finally, even if the convenience factors do not clearly favor transfer to the Austin Division of the Western District or to Washington, D.C., "the interest[s] of justice," 28 U.S.C. § 1404(a) alone favor transfer. *See* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.), § 3854 Standard in Considering Transfer—Interest of Justice (collecting cases). Not only is there no public interest in having this matter litigated in this Division, the public's interest in the fair administration of justice would be harmed if a filing with strong indicia of judge shopping were left unchecked. As Justice Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges, sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (Gorsuch, J. concurring) (criticizing "gamesmanship" by plaintiffs seeking nationwide injunctions). This concern is heightened in single-judge divisions,

14

where a party can effectively select its preferred judge. *See Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 292 (5th Cir. 2007) (Wiener, J. dissenting) ("The trial judge who is to hear a case is almost never 'selected' by or agreed on by the parties; rather, such judge is . . . designated by objectively random or blind assignment through long established court procedures (except in the rare case of a party's successful forum shopping in a single-judge district . . .)."). Absent a clear connection to a particular District, filing in a single-judge division in that District contributes to the "perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed," regardless of the impartiality of the judge sitting in the single-judge division. *In re Gibson*, 423 F. App'x 385, 388 (5th Cir. 2011); *see also* Transcript 93:25-94:11, *United States v. Texas*, No. 22-58 (Nov. 29, 2022) (Kagan, J.) (suggesting single judge divisions facilitate the perception that litigants can "pick [their] trial court judge"),                            *available*                            *at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf   (last accessed Jan. 25, 2023). This practice conflicts with the principle that, "[i]n federal court, the parties clearly have no right to a 'judge of their choice,'" *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983), and thus the Fifth Circuit "permit[s] intra-district case transfers to prevent judge-shopping," *Garcia v. International Construction Equipment, Inc.*, 765 F. App'x 109, 110 (5th Cir. 2019).

There is no good cause to indulge Plaintiffs' apparent gamesmanship. Defendants have moved expeditiously to transfer this matter. Any delay caused by Plaintiffs' selection of venue is entirely of Plaintiffs' making. The fact that Plaintiffs may seek emergency relief is no basis for ratifying their selection of an inappropriate venue for their claims, particularly when the time sensitivity was created by Plaintiffs' own actions. *See Rock Bit Int'l, Inc. v. Smith Int'l, Inc.*, 957

F. Supp. 843, 844 (E.D. Tex. 1997) ("Speed of disposition of lawsuits without any Beaumont connection is not a valid reason for forum shopping. If it were otherwise, why would the plaintiff not choose Kansas, South or North Dakota, or the famed 'rocket docket' of the Eastern District of Virginia?"); *see also In re Radmax*, 720 F.3d at 289 (standard "delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer"). And here, more than most cases, there is a public interest in declining to reward Plaintiffs' selection of this single-judge Division in which to hear claims that have no connection to the Division.

In short, there is no local interest in having this case adjudicated in this Division where none of the parties resides, none of the underlying events occurred, and none of the potential evidence exists. This is exactly the sort of case where other venues—including the Austin Division of Western District of Texas and the District Court for the District of Columbia—"have a greater 'stake' in the litigation" that this District. *In re Planned Parenthood*, 2022 WL 16549164, at *3 (citing *Volkswagen*, 545 F.3d at 317–18). Accordingly, the Court should transfer this case, either to Austin or Washington, D.C.

### III. At a Minimum, to Avoid the Appearance of Judge-Shopping, and in the Interests of Justice, the Court Should Transfer this Case Under 28 U.S.C. § 1404 to Another Division Within this District.

At a minimum, the Court should grant an intra-district transfer under 28 U.S.C. § 1404. If the Court concludes that venue is proper in the Southern District, because Texas resides in this District or Division and because transfer from this District to another is not warranted under section 1404(a), the Court should transfer this case to any other Division within this District that is not a single-judge Division, including Corpus Christi, where this Court sits with several other judges, or to Brownsville, Houston, Laredo, or McAllen, for random assignment in the normal course under the Southern District's procedures. *See* Division of Work Order for 2023, *available at*

16

https://www.txs.uscourts.gov/file/6685/download?token=PJ3LWY-M (last visited Jan. 25, 2023).

An intra-district transfer is supported by both Section 1404(a) and 1404(b). Section 1404(a) allows for transfer of a case to "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). And it calls on the Court to consider not just the convenience of the parties but also the "interest of justice." Section 1404(b) permits intra-district transfer purely in the Court's discretion. It provides that "[u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." 28 U.S.C. § 1404(b). As discussed, it is well-established "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright & Miller,15 Fed. Prac. & Proc. Juris. § 3854, *supra*; *see, e.g.*, *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."); *Mizell v. Prism Computer Corp.*, 27 F. Supp. 2d 708, 714 (S.D. Miss. 1998) ("The interests of justice component of § 1404(a) may, in itself, be determinative of the decision to allow a transfer, even when the convenience of the parties and witnesses would call for a different result."); *cf. In re Radmax*, 720 F.3d at 290 (granting mandamus directing transfer from Marshall Division to Tyler Division within E.D. Tex.).

The Court should exercise its authority under Section 1404 (a) or (b) in the circumstances presented here. There is no apparent reason other than judge shopping why Plaintiffs elected to file in the Victoria Division rather than in any other Division in this District, let alone Austin or D.C. Unlike civil cases like this filed in the Victoria Division—which are assigned to a single

judge in all circumstances—cases in Brownsville, Corpus Christi, Houston, Laredo, or McAllen are assigned randomly among several judges.[6] For example, in Corpus Christi, where this Court sits, cases are assigned among three different judges, including this Court, avoiding the appearance of judge-shopping by Plaintiffs. *See id.* Given the absence of any clear connection to the Victoria Division, Plaintiffs' choice to file here, contributes to the "perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed[.]" *In re Gibson*, 423 F. App'x at 388. It also undermines public confidence in the impartiality of the judicial system by suggesting that some "parties clearly have [a] right to a 'judge of their choice.'" *McCuin*, 714 F.2d at 1262. In such circumstances the Fifth Circuit "permit[s] intra-district case transfers to prevent judge-shopping," *Garcia*, 765 F. App'x at 110.

This case is merely the latest example of an ongoing practice of Plaintiffs and other litigants of filing most of their lawsuits against the federal government in single-judge divisions or divisions where they are almost always guaranteed to procure a particular judge assignment. *See* Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58 (Sept. 19, 2022) (noting 20 such lawsuits in Texas courts in 2021 and 2022 up to September 19, 2022),        *available        at*        https://www.supremecourt.gov/DocketPDF/22/22-58/238509/20220922104355438_22-58%20tsac%20Vladeck%20revised.pdf        (last        accessed January 25, 2023);[7] *see also* Ryan J. Owens and Ryan C. Black, *The Supreme Court Must Stop the*

---

[6] Galveston is also a single judge Division for civil cases. *See* Division of Work Order for 2023, *supra*.

[7] Since September 19, 2022, six additional suits, including this one, have been filed in Texas courts in single judge venues or venues where Plaintiffs are almost always guaranteed to procure a particular judge assignment, bringing the number to 25. *See Texas v. Becerra*, 22-cv-419 (S.D. Tex.); *Texas v. Mayorkas*, 23-cv-1 (S.D. Tex.); *Texas v. EPA*, 23-v-17 (S.D. Tex.); *Texas v. HHS*, 23-cv-66 (N.D. Tex.); *Texas v. DHS*, 23-cv-7 (S.D. Tex.); *Texas v. Walsh*, 23-cv-16 (N.D. Tex.); *see        also*        @steve_vladeck,        Twitter        (Jan.        26,        2023,        5:45        PM),

*Trend of Judge-Shopping*, The Hill (describing judge-shopping during the Trump administration), *available at* https://thehill.com/opinion/judiciary/484703-the-supreme-court-must-stop-the-trend-of-judge-shopping/ (last accessed Jan. 25, 2023). That practice undermines the public's confidence in the judicial system, rewards gamesmanship, and overworks certain members of the judiciary at the expense of the random-assignment system functioning as it is intended. To avoid that perception, and to discourage Plaintiffs' gamesmanship in the future, this Court should at a minimum transfer this case to another Division within this District that is not a single-judge Division for random assignment consistent with the District and that Division's assignment rules.

**CONCLUSION**

This Division is not the appropriate forum for Plaintiffs' claims. For the reasons articulated herein, this Court should transfer this action, either to the Austin Division of the Western District of Texas or the District of Columbia. At a minimum, should the Court determine venue is in fact proper in the Southern District, it should nevertheless transfer this case to another Division within this District.

//

//

---

https://twitter.com/steve_vladeck/status/1618742043987316736 (providing updated list to that in Appendix A, Brief of Professor Stephen I. Vladeck As Amicus Curiae, *United States v. Texas*, No. 22-58 (Sept. 19, 2022)).

Dated: January 26, 2023           Respectfully submitted,

ALAMDAR S. HAMDANI         BRIAN M. BOYNTON
*United States Attorney*           *Principal Deputy Assistant Attorney General*

                                WILLIAM C. PEACHEY
                                *Director*
                                Office of Immigration Litigation
                                District Court Section

                                /s/ *Erez Reuv*eni
                                EREZ REUVENI
                                *Assistant Director*
                                U.S. Department of Justice
                                Civil Division
                                Office of Immigration Litigation
                                District Court Section
                                P.O. Box 868, Ben Franklin Station
                                Washington, DC 20044
                                Tel.: (202) 307-4293
                                erez.r.reuveni@usdoj.gov

                                BRIAN WARD
                                *Senior Litigation Counsel*

20

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2023, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Southern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Erez Reuveni*
EREZ REUVENI
U.S. Department of Justice

## CERTIFICATE OF CONFERENCE

I certify that on January 26, 2023, undersigned counsel conferred with counsel for Plaintiffs. Plaintiffs oppose Defendants' motion to transfer.

/s/ *Erez Reuveni*
EREZ REUVENI

## CERTIFICATE OF COMPLIANCE

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 6,334 as counted by Microsoft Word.

/s/ *Erez Reuveni*
EREZ REUVENI