# United States District Court
# Southern District of Texas
# Victoria Division

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>    *Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>    SECURITY, *et al.*,<br>    *Defendants.* | Case 6:23-cv-00007 |

### STATES' OPPOSITION TO MOTION TO TRANSFER VENUE

The Defendants lack the courage of their convictions. The basis for their motion to transfer is that the public might doubt that the Court is administering justice fairly if the case is allowed to remain in this division—but they haven't the temerity to suggest that a reasonable person would believe the Court has already pre-judged this dispute. As well they should; there is no evidence to support such a slur, and the long history of the federal courts demonstrates that a slur is all it is.

And the Defendants establish none of their other points, either. As a sovereign entity, Texas by definition resides in every place within its borders; the federal courts are unanimous on that point. The Defendants have identified not identified a clearly more convenient place for this case to be heard and have in fact identified not a single witness or piece of evidence that will be impeded should this case remain put. The case was properly brought here, and the void where the Defendants' evidence of burden should be demonstrates that the choice to bring it here should be respected.

The Defendants' motion to transfer should be denied.

### LEGAL STANDARDS

Among the proper venues for a suit against the federal government and its officers or employees are districts where "a substantial part of the events or omissions giving rise to the claim occurred" and where a "plaintiff resides[.]" 28 U. S. C. § 1391(e)(1)(b)–(c); *see also* 14D Wright & Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022) ("In cases involving multiple plaintiffs, venue is proper where any one of them resides."). If the plaintiff has chosen an improper venue, a court can transfer the case to a proper one. 28 U.S.C. § 1406.

If a suit is filed in a proper venue, it can, "for the convenience of the parties and witnesses, in the interest of justice," be transferred to another venue where it could have been brought. *Id.* § 1404(a). The party seeking a transfer must show good cause for such a transfer, meaning that another venue is "clearly more convenient" than the one the plaintiff chose. *In re Volkswagen AG (Volkswagen II)*, 545 F.3d at 315. That showing depends on an octet of public- and private-interest factors. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). Absent that showing, "the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315.

### ARGUMENT

This case should remain before this Court in this division because it is a proper venue and the Defendants have not demonstrated that another venue is clearly more convenient.

First, this Court and this division are a proper venue. Contrary to the Defendants' argument, Texas resides here. A sovereign State, by definition, resides in every place within its borders. Every court to have considered the Defendants' argument that a State resides only in its capital city has rejected it. There is no reason for this Court to do differently.

Second, the Defendants have not established that some other venue would clearly be more convenient. Not a single one of the eight factors the Court must consider supports transfer. In particular, there is no reason to transfer the case to assuage the Defendants' imagined public interest against "judge shopping." The public's interest in impartial consideration of a case is preserved by statutes requiring recusal if a judge is actually, or could be suspected by a reasonable person of being, prejudiced against a party. The Defendants are not bold enough to level that charge at the Court; they cannot back-door such an accusation by laundering Twitter posts, whispers, and suppositions into a "public interest" against filing a case in a single-judge division.

The motion to transfer should be denied.

## I. Venue Is Proper in this Division Because Texas Resides Here.

One of the proper venues for a case against the federal government is a district where a plaintiff resides. 28 U.S.C. § 1391(e)(1)(c). Thus, the Southern District of Texas is a proper venue as long as the State of Texas resides here. Common sense and more than a century of precedent establish that it does.

That a state government "resides at every point within the boundaries of the state" has been the precedent of the Fifth Circuit for 130 years. *See Atlanta & F. Ry. Co. v. Western Ry. Co. of Alabama*, 50 F. 790, 791 (5th Cir. 1892). One is tempted to say, "Of course it does;" a State, after all, has unrestricted authority and responsibility throughout its territory, and its operations, offices, property, and employees are not limited to any single location within it. The proposition is so commonsensical and established that Wright & Miller flatly states, "Sometimes, cases to which Section 1391(e) applies are brought by states. A state is held to reside in any district within it." 14D Wright & Miller, *Federal Practice and Procedure* § 3815 (4th ed. 2022).

3

Every federal court to have considered the question has reached the same conclusion that the Fifth Circuit did in the Nineteenth Century: A State resides at every point within the State.

The Ninth Circuit rejected a contrary argument in *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), in which the federal government asserted that the State of California resided only in Sacramento. Not so, countered that court. The case had been properly brought in the Northern District of California rather than the Eastern District, which covers Sacramento, because a "state is ubiquitous throughout its sovereign borders." *Id.* at 570. A state was not "an entity" for purposes of the venue statute; that statute "explicitly refers to the incorporation status of the 'entity,' indicating that the term refers to some organization, not a state." *Id.* (quoting 28 U.S.C. § 1391(c)(2)). The statute itself reinforces that interpretation by distinguishing states from entities in the very next subsection. *Id.* (citing 28 U.S.C. § 1391(d)).

Similarly, Alabama was held to reside in the Northern District of Alabama, rather than just the Middle District, where Montgomery lies, in *Alabama v. Army Corps of Engineers*, 382 F. Supp. 2d 1301 (N.D. Ala. 2005). The district court noted there that the absence of support for the federal governments' venue argument "may be precisely because common sense dictates that a state resides throughout its sovereign borders and the idea has not previously been challenged." *Id.* at 1328–29.

Another district court rejected the Defendants' argument only last year, this time in a challenge—like this one—to a filing in a particular division. That court rejected the federal government's attempt to transfer a suit by the State of Florida from the Pensacola Division of the Northern District of Florida to the Tallahassee Division. *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022). Citing both the *Atlanta & F. Ry. Co.* opinion

4

from the Fifth Circuit and the *Azar* opinion from the Ninth, the court noted that the argument that Florida resided only in Tallahassee was "unpersuasive because it is grounded in § 1391(c)(2), which governs the residency of corporations and other business organizations, not sovereign states." *Id.* at *2.

And yet another example: The Eastern District of Pennsylvania rejected an argument that the Commonwealth of Pennsylvania resided only in Harrisburg, in the Middle District of that state. *Pennsylvania v. Trump*, 352 F. Supp. 3d 791, 808–09 (E.D. Pa. 2019), *revd. on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020). That court held, like *Azar*, that § 1391(c) does not "dictate the residency of sovereign States" because States do not have an incorporation status and § 1391(d) distinguishes states from entities. *Id.* at 809. It further held that to agree with the federal government would "yield an absurd result" that would "defy common sense" because, as *Azar* had held, a State is "ubiquitous throughout its sovereign borders[.]" *Id.* (quoting *Azar*, 911 F.3d at 570).

The "entity" language in § 1391(c)(2) is not, contra the Defendants, some "residuary" receptacle into which sovereign States fall. It has a specific meaning that governs specific entities—and the Defendants indeed offer no opinions holding otherwise. They cite instead cases that do not involve venue under § 1931(e) and that involve State entities and officials as defendants, rather than plaintiffs. Dkt. 6 at 7–8. And they cite as a putative inconsistency a case in which the State of Texas moved to transfer against a State official from San Antonio to Austin, where the official performed his official duties. *Id.* at 8. But the court in that case found that San Antonio was not an inconvenient forum and that the relevant consideration for the statutory basis for transfer was not the division in which the suit was filed, but the district—which San

5

Antonio and Austin share. *City of El Cenizo v. Texas*, No. 5:17-cv-404, 2017 WL 6402990, at *2–3.

Texas resides in the Southern District of Texas—and, for that matter, in the Victoria Division. This division is a proper venue for the case, and the location of the State's capital does not change that.

## II. The Defendants Have Not Demonstrated That Another Venue is Clearly More Convenient.

Because this is a proper venue, the case can be transferred only to another venue that is clearly more convenient for the parties and witnesses. Each of the factors on which convenience is judged, however, weigh in the States' favor; at the very least, the Defendants have not established the contrary. The States' choice of this Court as a venue must therefore be deferred to, and the motion to transfer should be denied.

### A. The private interest factors weigh against transfer.

#### 1. The sources of proof are relatively easy to access.

This case is about the judicial review of largely undisputed actions of Defendants, the inconsistency of those actions with applicable federal law, and the appropriate remedies if the Defendants' actions are found unlawful. It isn't likely to involve extensive witness testimony or determinations of credibility. The parties will have ready and full access to the primary source of proof: the Administrative Record. And they will have that access no matter where this case is heard. (The Defendants offer no explanation of why the "location" of the administrative record in Washington, D.C., matters. *See* Dkt. 6 at 12.) Indeed, as the Court noted in *Texas and Louisiana v. United States*, the legitimacy of "agency action must rise or fall on the reasons it gave when it acted," not consider post hoc rationalizations. 2022 WL 2109204, *36 (S. D. Tex. 2022).

6

To the extent witnesses will testify about the injuries that the challenged parole program likely will inflict on Texas and the other States, those witnesses will (a) not be concentrated in any single District and (b) will be presented by the States, not the Defendants. For the same reason, the Defendants' claim that they will seek "pre-answer jurisdictional discovery concerning Plaintiff's Article III standing," Dkt. 6 at 10–11, is irrelevant; that evidence and those witnesses are similarly not concentrated in any single location, and those sources of proof are presumably within the States' control. Indeed, if history is any guide, the Defendants will call no witnesses—just as they did in both *Texas and Louisiana v. United States*, which the Court heard last year, and the 2021 trial of *Texas and Missouri v. Biden*, No. 2:21-cv-00067.

In any event, Defendants' speculation as to both discovery and witnesses at trial is backed by no specifics at all. They identify no expected witnesses, no expected evidence, no expected subjects of testimony, and no specifics as to any other sources of proof. Without these specifics, they cannot establish that another venue is convenient, much less clearly more convenient. This is clearly insufficient to justify a transfer under § 1404(a). *See, e.g.*, *McNew v. C.R. Bard, Inc.*, No. 1:19-cv-195-H, 2020 WL 759299, at *2 (N.D. Tex. 2020) (Hendrix, J.) ("[P]arties must specifically identify each witness and provide an overview of their testimony…."); *Bevil v. Smit Americas, Inc.*, 883 F. Supp. 168, 170 (S.D. Tex. 1995) ("The movant must specifically identify the key witnesses and outline the substance of their testimony."); *McGinnis v. Eli Lilly & Co.*, 181 F. Supp. 2d 684, 688 (S.D. Tex. 2002) ("At an absolute minimum, Defendant must identify key witnesses and provide a brief summary of their likely testimony….").

7

### 2. There is no evidence that compulsory process is needed to secure the attendance of witnesses.

The Defendants identified no potential witnesses whose attendance they may need to secure. There is thus no evidence that they will need compulsory process to secure their attendance.

### 3. There is no evidence that costs will prevent willing witnesses from attending.

Similarly, the Defendants identified no costs that would impair the attendance of willing witnesses.

### 4. There is no evidence relevant to the catchall factor.

The fourth private interest factor is the catchall "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen I*, 371 F.3d at 203. The Defendants identify none. Having tried both *Texas and Louisiana v. United States* and *Texas and Missouri v. Biden* in the last two years, they certainly would have if some existed.

## B. The public interest factors weigh against the proposed transfer.

### 1. This division is less congested than the courts and divisions the Defendants suggest.

This public interest factor strongly favors keeping this case here. Defendants raise no argument about court congestion, likely because there is no plausible claim that a transfer of this case from this District and Division to the District for the District of Columbia or to the Austin Division of the Western District of Texas would avoid administrative difficulties flowing from court congestion.

Statistics from the Administrative Office of the U.S. Courts confirm that the Southern District of Texas is a good venue for litigating this case in a timely

8

manner compared to the Austin District of the Western District of Texas and the District of Columbia. The median time from commencement to trial for civil actions in the Southern District of Texas for the twelve months ending March 31, 2022, was 24.4 months. This compared to 29.4 months for the Western District of Texas (20 % higher) and 38.5 months for the District of Columbia (57% higher). Administrative Office of U. S. Courts. More importantly, the recent history of *Texas and Louisiana v. United States* makes the efficiency and expedition of this Court and Division undeniable. Accordingly, this factor weighs strongly against any requested transfer.

### 2. This case presents a local issue to the Victoria Division that it is appropriate to decide here.

When assessing this public interest factor, courts examine whether there is "a relevant factual connection between the events and the venue" and "those actually affected—directly or indirectly—by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318; *LeBlanc v. C.R. Eng., Inc.*, 961 F. Supp. 2d 819, 832–33 (N.D. Tex. 2013) (Boyle, J.). Because this case focuses on a federal policy with nationwide effects, it is not tied closely to any one district or division.

Defendants' unlawful parole program, just like their past unlawful actions, certainly affects the Southern District generally and the Victoria Division in particular. Illegal aliens allowed into the country are "free to move among states" and within states. *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015). The Victoria Division is a little more than 200 miles from the Texas-Mexico border at Brownsville. It is slightly closer to that border than is Austin, and vastly closer than Washington, D.C. Moreover, Victoria is directly connected to the Mexican border by two major highways: U. S. Highway 59 to Laredo, Texas and U. S. Highway 77 to Brownsville.

9

As a result, this Division has been more directly affected by the illegal immigration and drug and human trafficking fostered by the Defendants' unlawful actions more than most areas of the United States. Already in 2023 alone, Defendants have issued two press releases regarding actions by Homeland Security Investigations Victoria that resulted in convictions of drug traffickers operating across the Mexican border. The local interest in having the matters at issue resolved in this District and Division counsels against the proposed transfer. It therefore certainly supports denial of any transfer.

### 3. The Court is familiar with the governing law.

Defendants do not assert that judges in Austin or the District of Columbia have greater familiarity with the governing law than is the Court. The law applicable in this case overwhelmingly will be the law of the United States, and particularly the INA and APA. All United States District Judges are presumed familiar with and equally capable of interpreting United States law. *See, e.g.*, *Mateos v. Montemayor*, 919 F. Supp. 2d 817, 825 (W.D. Tex. 2013) (citing *J&J Sports Prods., Inc. v. Riviera*, No. 4:10-cv-1138, 2010 WL 3447719, at *3 (S.D. Tex. Aug. 30, 2010)); *Hidden Values, Inc. v. Sandoval*, No. 3:09-cv-34-B, 2009 WL 10677477, at *6 (N.D. Tex. June 26, 2009). However, *Texas and Louisiana v. United States* makes it impossible to deny that this Court and Division have very recent and intensive familiarity with many of the legal issues under the INA and APA that will be presented in this case. This factor realistically weighs against the requested transfer.

### 4. There are no conflict-of-laws problems.

Federal law governs this case. Nobody suggests otherwise.

* * *

The private interest factors and public interest factors *all* either are neutral or weigh against any transfer of this case. The motion should be denied.

## III. Defendants' Attempt to Shop For A Different Judge Must be Rejected

If Defendants believe this Court is biased or prejudiced against them or cannot be impartial in this case, they should forthrightly move to recuse. They should not insult the Court by covertly shopping for a different judge through the device of a § 1404(a) motion. If the Defendants' "judge shopping" argument were a cognizable public interest factor under § 1404(a), it could have no possible benefit to Defendants given the apparent judge-shopping that Defendants themselves seem to attempt here.

Defendants claim that is in in "the interest of justice," 28 U.S.C. § 1404(a), to transfer this case because "the public's interest in the fair administration of justice would be harmed if a filing with a strong indicia of judge shopping were" allowed to stand, ECF 5 at 14—and filing in a division with a single judge apparently fits that description. *Id*. at 14–19.

With this outlandish assertion, Defendants intrude on the other two branches of government. Congress has delegated to the "chief judge of the district court" the authority to "divide the business and assign the cases" in a "court having more than one judge." 28 U.S.C. § 137(a). Congress did not assign the proper assignment of judges to the Department of Justice.

At the time of the filing of this lawsuit, an order by the chief judge of the Southern District assigned 100% of the civil cases in the Victoria Division to Judge Tipton. Such single judge divisions are not unusual.

Indeed, throughout much of the Nation's history, single-judge *districts* were the norm. *See* Erwin C. Surrency, *Federal District Court Judges and the*

11

*History of Their Courts*, 40 F.R.D. 139 (1967). It was this way from the beginning: "The Judiciary Act of 1789 provided for a single district court judge in each state-a total of thirteen district judges," and this continued with the admission of new states. *Id*. at 150. And "when the business of the court made the services of a second judge necessary, states were divided into two or more districts," but this "did not invariably indicate the appointment of an additional judge, for some states were subdivided simply to provide additional locations for holding the federal courts." *Id*. at 150–51. Indeed, "[o]nly once was a state admitted and at the time of its admission organized into two districts," Oklahoma in 1906. *Id*. at 150.

Structuring the federal courts in Texas was no different. When it was admitted as a State, "it was organized as one judicial district with a single judge" in Galveston. *Id*. at 286. In 1857, Texas was divided in two districts, each with a single judge. *Id*. In 1879, it gained a third district, with a single judge. *Id*. at 287. Finally, the fourth district was created in 1902, with—again—a single judge. *Id*. at 287–88.

If single judge divisions (or districts) are permitted to exist, then plaintiffs are permitted to file lawsuits in them, even though, by definition, the identity of the judge will be ascertainable before filing. Such actions cannot constitute a concern for the "public's interest in the fair administration of justice."

## Conclusion

The States respectfully request that the Defendants' motion to transfer be denied.

Dated February 14, 2023.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700

Respectfully submitted,

AARON F. REITZ
*Lead Counsel*
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105704
Southern District of Texas No. 3653771
aaron.reitz@oag.texas.gov

/s/ Leif A. Olson
LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas No. 33695
leif.olson@oag.texas.gov

RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON*
America First Legal Foundation
Virginia Bar No. 80434
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*Counsel for the State of Texas*

*Application for admission forthcoming

13

## CERTIFICATE OF SERVICE

I certify that on February 15, 2023, I filed this motion through the Court's CM/ECF system, which served it on all counsel of record.

/s/ Leif A. Olson