**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

_____
                                                )
STATE OF TEXAS, *et al.*                         )
                                                )
                              Plaintiffs         )
            v.                                   )          No. 6:23-cv-00007
                                                )
DEPARTMENT OF HOMELAND                           )
SECURTY., *et al.*                               )
                                                )
                              Defendants.        )
_____)

**REPLY IN SUPPORT OF MOTION TO TRANSFER**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

I.   Venue Is Improper in this Division under 28 U.S.C. § 1406 Because There Is
     No Connection Between the Complaint and this Division.. ........................... 2

II.  The Court Should Transfer this Matter to the Austin Division of the Western
     District of Texas, or the District of Columbia, under 28 U.S.C. § 1404(a) .................. 6

     A.   There is No Connection Between Plaintiffs' Claims and This Division. ............... 6

     B.   The Remaining Public/private Factors and the interests of justice favor
          transfer to Austin or D.C ....................................................................... 9

III. To Avoid Countenancing Judge-Shopping, and in the Interests of Justice, the
     Court Should Transfer this Case Under 28 U.S.C. § 1404 to Another Division
     Within this District ................................................................................. 11

CONCLUSION ...................................................................................................... 14

CERTIFICATE OF SERVICE ................................................................................ 16

CERTIFICATE OF CONFERNCE ......................................................................... 16

CERTIFICATE OF CONFERNCE ......................................................................... 16

## TABLE OF AUTHORITIES

*Alabama v. Army Corps of Engineers*,
  382 F. Supp. 2d 1301 (N.D. Ala. 2005) ................................................................ 3

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49, (2013) ................................................................................................ 4

*Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*,
  50 F. 790 (5th Cir. 1892) ....................................................................................... 2

*Bigham v. Envirocare of Utah, Inc.*,
  123 F. Supp. 2d 1046 (S.D. Tex. Dec. 6. 2000) .................................................... 6

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ................................................................................. 3

*Cat5 Res., LLC v. CB Towers, LLC*,
  2019 WL 13149916 (E.D. Tex. May 22, 2019) ................................................. 3, 6

*Coates v. SAIA Motor Freight Line, LLC*,
  No. 3:20-CV-25-DMB-RP, 2020 WL 1812020 (N.D. Miss. Apr. 8, 2020) .......................... 10

*Florida v. United States*,
  No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022) ............................. 3

*Garcia v. International Construction Equipment, Inc.*,
  765 F. App'x 109 (5th Cir. 2019) .......................................................................... 9

*Hoffman v. Blask*,
  363 U.S. 335 (1960) ............................................................................................... 6

*In re Gibson*,
  423 F. App'x 385 (5th Cir. 2011) .......................................................................... 9

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ............................................................................... 10

*McCuin v. Texas Power & Light Co.*,
  714 F.2d 1255 (5th Cir. 1983) ............................................................................... 9

*Mizell v. Prism Computer Corp.*,
  27 F. Supp. 2d 708 (S.D. Miss. 1998) ................................................................. 10

*Pennsylvania v. Trump*,
  351 F. Supp. 3d 791 (E.D. Pa. 2019) .................................................................... 3

*Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*,
  626 F.3d 973 (7th Cir. 2010) ........................................................................... 10

*Seariver Mar. Fin. Holdings, Inc. v. Pena*,
  952 F. Supp. 455 (S.D. Tex. 1996) ..................................................................... 6

## STATUTES

28 U.S.C. § 1391 ....................................................................................................... 3

28 U.S.C. § 1391(c) .................................................................................................. 4

28 U.S.C. § 1391(c)(2) ...................................................................................... 3, 4, 5

28 U.S.C. § 1391(d) .................................................................................................. 4

28 U.S.C. § 1391(e) .................................................................................................. 2

28 U.S.C. § 1391(e)(1)(B) ........................................................................................ 6

28 U.S.C. § 1404 ....................................................................................................... 9

28 U.S.C. § 1404(a) ............................................................................................... 5, 9

28 U.S.C. § 1406 .................................................................................................... 2, 6

## FEDERAL REGISTER

88 Fed. Reg. 1,249 .................................................................................................... 7

## MISCELLANEOUS

Charles Alan Wright & Arthur R. Miller, *14D Fed. Prac. & Proc. Juris. § 3805*  (4th ed. 2013). 4

Charles Alan Wright & Arthur R. Miller, *15 Fed. Prac. & Proc. Juris. § 3854*  (4th ed. 2013)
  .................................................................................................................... 9, 10

S.D.T.X, *Amended Division of Work Order*, available at
  https://www.txs.uscourts.gov/file/6704/download?token=v9h80CpD (last accessed Feb. 17.
  2023) ....................................................................................................................... 1

S.D.T.X, *Division of Work Order for 2023*, available at
   https://www.txs.uscourts.gov/file/6685/download?token=PJ3LWY-M (last accessed Feb. 16,
   2023) ................................................................................................................................ 11

S.D.T.X, *Special Order 3-327,* available at
   https://www.txnd.uscourts.gov/sites/default/files/orders/3-327.pdf (last visited Feb. 16, 2023)
   ........................................................................................................................................... 11

S.D.T.X, *Special Order No. 3-344,* available at
   https://www.txnd.uscourts.gov/sites/default/files/orders/3-344.pdf (last accessed Feb. 16,
   2023). ............................................................................................................................... 11

U.S. Citizenship and Immigration Services, *Processes for Cubans, Haitians, Nicaraguans, and
   Venezuelans*, available at  https://www.uscis.gov/CHNV (last accessed Feb. 76, 2023) ............ 7

U.S. Supreme Court, *2021 Year-End Report on the Federal Judiciary,* available at
   https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf (last accessed Feb.
   17, 2023) ........................................................................................................................ 11, 12

U.S. Supreme Court, *U.S. District Courts–Median Time Intervals From Filing to Disposition of
   Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period
   Ending September 30, 2022,* available at
   https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2022.pdf (last accessed
   Feb. 17, 2023) ....................................................................................................................... 8

U.S. Supreme Court, *United States v. Texas, No. 22-58 (Nov. 29, 2022),* available at
   https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf
   (last accessed Feb. 17, 2023) ............................................................................................... 12

## INTRODUCTION

Plaintiffs do not—and cannot—dispute the facts underlying Defendants' transfer motion: that the State of Texas has routinely chosen to file lawsuits against the federal government in single-judge divisions or divisions where they are almost always guaranteed a particular judge assignment; that in many of these cases, including this one, Texas has chosen to file in a District or Division with no obvious connection to the asserted claims; that this behavior—lacking any other explanation—creates the appearance of judge shopping; and that this pattern of behavior undermines public confidence in the impartiality of the judicial system and disserves the interests of justice. Plaintiffs therefore spend little time attempting to justify the filing of this case in what was at the time the single judge Victoria Division;[1] instead they accuse *Defendants* of judge shopping because they have asked this Court to transfer this case to Austin or Washington, D.C., multi-judge courts with an actual connection to the claims raised in this lawsuit, or to another Division within this District that has multiple judges—including *this* Court. *See* Opp. 11-12.

But that contention is facially meritless and cannot obscure the clear pattern of conduct by the State of Texas. In just over two years, the State of Texas has filed no fewer than 28 lawsuits against the federal government in just seven Divisions where local rules severely limit the number of judges to whom the cases could be assigned (Victoria, Amarillo, Galveston, Lubbock, Tyler, Fort Worth, Midland), including 18 lawsuits in Divisions where the case would necessarily be assigned to a single, pre-determined judge (Victoria, Amarillo, Galveston, Midland), and no less

---

[1] On February 10, 2023, the Southern District issued an amended division of work order. *See Amended Division of Work Order*, *available at* https://www.txs.uscourts.gov/file/6704/ download?token=v9h80CpD (last accessed Feb. 17. 2023). That order, effective February 12, 2023, reassigned cases filed in the Victoria Division to Judges Morales and Ramos. *Id.* The order also reassigned cases filed in the Corpus Christi Division to those same judges. *Id.* Thus, moving forward, no new cases filed in the Victoria Division will be assigned exclusively to a single judge.

1

than seven here in Victoria. *See* Ex. A, Suits by Plaintiff Texas vs. the Federal Government in Texas Federal Courts; Ex. B., Texas Federal District Court Divisions By District. Texas and other state plaintiffs have filed *no* cases in Divisions with broader assignment of cases, *see id.*— including the venue in which the state capital sits, which Texas has previously insisted is where it resides when it is a defendant. Motion to Transfer (Mot.) (Dkt. 6) 7-8. And they have done this despite purporting to "reside" in all 29 Divisions within Texas, all of which, save for those Divisions in which they file, are Divisions with multiple judges where there is a non-trivial chance they will not be able to pre-determine which judge the case might be assigned to.

Rather than offer any explanation of this pattern of conduct, Plaintiffs contend that this case presents a local issue to the Victoria Division because some subset of those individuals granted parole under the challenged policies may eventually make their way to this Division, thus causing Texas harm. Opp. 9-10. Plaintiffs supply no evidence to support this entirely speculative contention. Nor could they, as reasonably accessible data shows the opposite: no applicant under the parole programs whose application was actually granted resides in this Division. *See* Ex. C, Declaration of Blas Nuñez-Neto, ¶¶ 1-16. There is thus no apparent reason other than judge shopping why Plaintiffs elected to file in the Victoria Division rather than in any other Division in this District, let alone Austin or D.C. *See* Mot. 5-9. In the interests of justice and to prevent Texas's gamesmanship from undermining public confidence in the judicial system, the Court should transfer this case to the Austin Division of the Western District—where Texas resides—or Washington, D.C.—where Defendants reside and the events giving rise to this lawsuit occurred. Alternatively, should the Court nevertheless determine venue is appropriate in the Southern District, the Court should transfer the case to any other Division within the Southern District with two or more judges.

2

I.      **Venue Is Improper in this Division under 28 U.S.C. § 1406 Because There Is No
        Connection Between the Complaint and this Division.**

As explained, venue is improper in this District, much less the Victoria Division, because

neither Plaintiffs nor Defendants reside here, and no part of the events giving rise to this case

occurred in this District or Division. Mot. 5-10. Plaintiffs do not assert any events giving rise to

this case occurred here, conceding the issue. *Id.* They argue only that venue is proper because

Texas resides here. Their arguments are incorrect.

First, relying on *dicta* from *Atlanta & F.R. Co. v. W. Ry. Co. of Ala.*, 50 F. 790, 791 (5th

Cir. 1892), Plaintiffs contend that Texas resides in this Division for purposes of venue under 28

U.S.C. § 1391(e), because a state "'resides at every point within [its] boundaries.'" Opp. 3. But

*Atlanta* did not concern suit by or against a state governmental entity, and did not purport to address

where a state government resides for venue purposes. *See id.* And even were it not *dicta*, *Atlanta*

precedes the modern amendments to venue statutes including in section 1391(e) by decades, and

so has been superseded.

Plaintiffs next rely on several cases which arise after the modern codification of section

1391. Opp. 4-5 (citing *California v. Azar*, 911 F.3d 558 (9th Cir. 2018), *Alabama v. Army Corps

of Engineers*, 382 F. Supp. 2d 1301 (N.D. Ala. 2005), *Florida v. United States*, No. 3:21-cv-1066,

2022 WL 2431443 (N.D. Fla. Jan. 18, 2022), *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 808–

09 (E.D. Pa. 2019), *revd. on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*,

140 S. Ct. 2367 (2020)). But as explained, each of those cases erroneously resorted to legislative

history and "common sense" to rewrite clear statutory text. Mot. 9-10.

Plaintiffs invoke such "common sense" in arguing that "a State, after all, has unrestricted

authority and responsibility throughout its territory." Opp. 3. But that is not the question. The issue

here is controlled by text, not vague notions of "common sense" found nowhere in the statute.

3

Congress amended 28 U.S.C. § 1391 to narrow the appropriate venues for suit to "preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cat5 Res., LLC v. CB Towers, LLC*, 2019 WL 13149916, at *8 (E.D. Tex. May 22, 2019) (collecting  cases). The text of section 1391 thus defines "residency" narrowly with respect to *plaintiffs* that are "entit[ies] with the capacity to sue and be sued," but provides a more expansive definition for such entities when they are *defendants*. 28 U.S.C. § 1391(c)(2) ("an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, *if a defendant*, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question *and, if a plaintiff, only in* the judicial district in which it maintains its principal place of business") (emphasis added). The narrower interpretation of residency for an entity plaintiff, as opposed to that for an entity defendant, "is consistent with a trend to move away from plaintiff-based venue and focus on the convenience of defendants." Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.). That Texas may have "unrestricted authority and responsibility throughout its territory" is irrelevant, as section 1391(c)(2) unambiguously defines residency when a State is a Plaintiff or Defendant. That text is controlling here.

Plaintiffs respond that the "'entity' language" in section 1391(c)(2) is not "some 'residuary' receptacle into which sovereign States fall." Opp. 5. That is precisely what it is. Mot. 6-9. Section 1391(a)(1) provides that "[e]xcept as otherwise provided by law—(1) this section shall govern the venue of *all civil actions* brought in district courts of the United States." (Emphasis added); *see, e.g.*, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55, (2013) ("this section *shall* govern the venue of *all civil actions* brought in district courts of the United States") (emphasis in original). A State Plaintiff, like any Plaintiff, thus must fall into one

4

of the three residency categories listed in section 1391. Sections 1391(d) and (e) govern unique circumstances involving corporations in states with multiple districts or suits against the federal government. That leaves only section 1391(c). That residency provision divides parties into three categories: (1) natural persons; (2) entities with the capacity to sue and be sued; and (3) foreign defendants. *See* 28 U.S.C. § 1391(c). Of those three, Texas plainly is "an entity with the capacity to sue and be sued," *id.* § 1391(c)(2). The only support Plaintiffs offer for their novel contention that Congress simply left States out of § 1391(c) entirely, is to contrast that section with § 1391(d), which expressly uses the term "State." Opp. 4-5. But section 1391(d) merely refers to a "State" in the geographic sense, not in the party sense, and in no way implies that when a State is a party, it is not an "entity." Moreover, section 1391(d) focuses on the residency of one particular class of entity *defendants* under section 1391(c)(2): corporate defendants located in States with more than one judicial district. But corporate plaintiffs, just like State plaintiffs, reside only in "the" judicial district containing their "principal place of business." 28 U.S.C. § 1391(c)(2).

Finally, Plaintiffs fail to address any of the case law cited by Defendants in their motion, asserting only that they "involve state entities and officials as defendants." Opp. 5. For reasons just discussed, that cuts against Plaintiffs. The statutory text and caselaw are clear: Congress intentionally broadened the definition of residency for all defined *defendant* entities in section 1391, but at the same time *narrowed* that definition for plaintiffs. Plaintiffs ask the Court to establish a State-only rule that allows States, but no one else, to circumvent the limitations on plaintiff residency erected by section 1391. The Court should reject that atextual request, which would produce the absurd result that State Plaintiffs—and only State plaintiffs—could sue the federal government anywhere in the country given their reading of "residency" for Sovereign entities. Instead, the Court should conclude that Plaintiffs reside in Austin, their seat of

government, for purposes of venue in this case.

**II.    The Court Should Transfer this Matter to the Austin Division of the Western District of Texas, or the District of Columbia, under 28 U.S.C. § 1404(a).**

Even if venue is proper in this Division, the Court should nevertheless, pursuant to 28 U.S.C. § 1404(a), transfer the case to the Austin Division of the Western District of Texas, or the District of Columbia, either for the convenience of the parties or in the interests of justice. Mot. 10-16.

A.  There is No Connection Between Plaintiffs' Claims and This Division

Plaintiffs do not and cannot contend that a substantial part of the events and omissions giving rise to the claim occurred here. Opp. 3-6, 9-10. They concede the point by only contesting Defendants' transfer motion under 28 U.S.C. § 1406 based on residency. *Supra* 2. Indeed, as explained, *none* of the events or omissions giving rise to Plaintiffs' claim—the decision to promulgate the challenged policies, the manner in which the policies are being implemented, or any individual decision to parole someone under those policies—occurred in this Division. Mot. 3-10; *see* Ex. C, ¶¶ 3-16.

Perhaps recognizing this flaw in their argument, Plaintiffs instead argue the case "presents a local issue to the Victoria Division," because they speculate some subset of beneficiaries of the parole programs will travel to Victoria. Opp. 9-10. That argument suffers from no fewer than five flaws. First, Plaintiffs elsewhere in their brief argue that "this case focuses on a federal policy with nationwide effects," so by Plaintiffs own argument,  "it is not tied closely to any one district or division." Opp. 9. Second, venue is determined as of the date the complaint was filed, and events following the filing of the complaint cannot affect venue. *Hoffman v. Blask*, 363 U.S. 335, 342-44 (1960). What might happen to parole beneficiaries in the future, therefore, is legally irrelevant to venue. Third, under the venue statute, it is irrelevant where a Plaintiff alleges that it suffers harm

6

as a result of Defendants' actions. The statute "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff." *Cat5 Res., LLC v. CB Towers, LLC*, No. 1:19-CV-87, 2019 WL 13149916, at *8 (E.D. Tex. May 22, 2019) (collecting cases). The question under sections 1391(b)(2) or 1391(e)(1)(B) is where defendant's actions "*giving rise*" to the claim occurred—the "location of the ultimate *effect*" of Defendant's actions is not an appropriate consideration. *Seariver Mar. Fin. Holdings, Inc. v. Pena*, 952 F. Supp. 455, 460–61 (S.D. Tex. 1996) (emphasis added); *see Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. Dec. 6. 2000) ("In determining whether or not venue is proper, the Court looks to the defendant's conduct, and where that conduct took place.").

Fourth, Plaintiffs' claims of injury badly mischaracterize the programs they challenge. They allege that the programs allow migrants to enter the United States at the southern land border, and that such migrants may make their way to Victoria rather than other Divisions or District because Victoria is "a little more than 200 miles from the Mexico border at Brownsville," and "connected to the Mexican border by two major highways." Opp. 9. Taking Plaintiffs at their word one might wonder then why they did not file in Brownsville, or any other Division that is actually adjacent to the Mexican border, like Laredo or McAllen in this District or Alpine, Del Rio, or El Paso in the Western District. By Plaintiffs' own telling, these Divisions would have a far more substantial connection to this lawsuit, albeit without the benefit of knowing in advance what judge will be assigned to their case. In any event, their telling is wrong. Under the challenged policies a noncitizen must travel by air to an interior port of entry at an international airport, such as Dallas, Houston, or San Antonio, among others in Texas. *See* Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, *available at* https://www.uscis.gov/CHNV (last accessed Feb. 16, 2023). Indeed, a central purpose of the challenged policies is to "minimize the burden on

communities, state and local governments, and NGOs who support the reception and onward travel of arriving migrants at the [southern border] . . . by require[ing beneficiaries] to fly at their own expense to an interior [airport], rather than arriving at the" southern border. *See, e.g.*, 88 Fed. Reg. at 1,249. DHS has confirmed that the program has dramatically *reduced* irregular migration at the border. *See* DHS Press Release, Unlawful Southwest Border Crossings Plummet Under New Border Enforcement Measures (Jan. 25, 2023), https://www.dhs.gov/news/2023/01/25/unlawful-southwest-border-crossings-plummet-under-new-border-enforcement-measures ("Encounters of Cuban, Haitian, Nicaraguan, and Venezuelan non-citizens attempting to cross the southwest border unlawfully has decreased drastically since President Biden announced an expanded parole program for these individuals, putting the month of January on track to see the lowest levels of monthly border encounters since February 2021."). Yet, Plaintiffs did not file suit in any Division containing an international airport to which beneficiaries are likely to fly—all of which have multiple judges who are randomly assigned cases.

Finally, Plaintiffs' speculation that the challenged policies will affect the Victoria Division is just that—speculation. The process for seeking parole under the challenged program—that is, confirmation of supporters and advance authorization to travel—occurs for the most part in Washington, D.C. and Maryland. Ex. C, ¶¶ 3-16. More specifically, USCIS Headquarters in Camp Springs, Maryland manages the financial supporter process with the assistance of numerous detailed employees reporting to USCIS Headquarters throughout the country, including some in San Antonio, in the San Antonio Division of the Western District, and Harlingen, in the Brownsville Division of the Southern District. *Id.*, ¶¶ 3-8, 16. None of these employees are in the Victoria Division of the Southern District of Texas. *Id.*, ¶¶ 3-16. As for the advance travel authorization process, CBP Headquarters exclusively manages and adjudicates this process as it

relates to the CHNV parole processes in Washington, D.C. Ex. C, ¶ 8.

Moreover, reasonably accessible data show that no applicant to sponsor a beneficiary under the parole programs whose application has been granted resides in this Division. *See* Ex. C, ¶¶ 9-15. As no sponsor resides in this Division, it is highly unlikely that any beneficiaries will relocate here at some future date. *Id.*, ¶ 6. More importantly, zero evidence exists that any beneficiary is present in the Victoria Division *now*. Conversely, of the parole applications granted as of January 31, 2023,[2] *every* other Division in the Southern District has at least some applicants, with Houston by far the most relevant: Houston (1,466), Galveston (48), Corpus Christi (18), McAllen (12), Laredo (6), and Brownsville (3). *Id.*, ¶ 9-11. Simply put, of all the Divisions in the Southern District, the Victoria Division has the least connection to this case. Indeed, it has no connection whatsoever, again demonstrating the absence of any plausible reason for filing suit here other than judge-shopping.

Comparing Victoria to Divisions in other Texas Districts, including Austin, further clarifies the absence of any plausible reason for Plaintiffs filing in Victoria other than judge shopping. The Western District numbers are: Austin (231), San Antonio (106), Midland/Odessa (103), Waco (21), El Paso (18), Alpine (1), Del Rio (0), Fort Hood (0), and Pecos (0). Ex. C, ¶¶ 12-13.  The Northern District numbers are: Dallas (219), Fort Worth (122), Abilene (7), Wichita Falls (5), Lubbock (4), Amarillo (3), and San Angelo (0). *Id.*, ¶¶ 14. The Eastern District numbers are: Sherman (341), Beaumont (14), Tyler (12), Texarkana (1), Lufkin (0), and Marshall (0). *Id.*, ¶ 15. Plaintiffs did not file in any of these Divisions. They filed in the Division with zero applicants.

    B.  The Remaining Public/Private Factors and the Interests of Justice Favor Transfer to Austin or Washington, D.C.

---

[2] The data ends January 31 because the data for February is not yet available. Ex. C, ¶ 9, n.3.

Plaintiffs' remaining arguments against transfer focus on the likely location of sources of proof, witnesses, and documents. Opp. 6-10. As explained, the likely location of documents and witnesses is in Austin or Washington, D.C., including witnesses who can speak to the Plaintiffs' alleged injuries and lack of harm (Austin) and how the challenged programs have impacted migration flows into Texas and the country generally for nationals covered by the programs (D.C.). Mot. 12-13. Indeed, in another recent case filed in Victoria, when Texas and Louisiana were offered the opportunity to have trial in Victoria—which Texas now asserts is the most convenient forum for this case—or in Houston or Corpus Christi, Texas and Louisiana asked the Court to hold trial in Houston, presumably because it has a large airport that would allow Plaintiffs' witnesses and the parties' attorneys to arrive and leave promptly. *See* Dkts. 135 at 1, 141 at 18, 22-23, *Texas v. United States*, No. 21-cv-16 (S.D. Tex.).[3]

More importantly, however, Plaintiffs ignore the key point of Defendants' transfer motion. Regardless of the convenience of the parties, "the interest[s] of justice," 28 U.S.C. § 1404(a), can warrant transfer on their own. *See* Wright & Miller, § 3854, *supra* (collecting cases); Mot. 14-19 (collecting cases). As the transfer motion explained, given the absence of any clear connection to this particular District—a point Plaintiffs acknowledge, Opp. 9 (stating case "is not tied closely to any one district or division")—filing in a single-judge Division in this District contributes to the

---

[3] Plaintiffs contend "congestion" warrants denying transfer to Austin or D.C. Opp. 8-9. But the differences in time to decision are generally negligible as between the three venues. *See* U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2022, *available at* https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2022.pdf (last accessed Feb. 16, 2023). Plaintiffs also offer no evidence that any of the three venues is more or less likely to decide a preliminary injunction motion or an APA case generally more or less slowly. However, Plaintiffs actions unfairly burden the resources of this Court because the case load concerning specific subject matters like immigration is not being distributed evenly, contrary to the "random allotment system." *United States v. Osum*, 943 F.2d 1394, 1400–01 (5th Cir. 1991).

"perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed," *regardless* of the impartiality of the judge sitting in the single-judge division. Mot. 15; *In re Gibson*, 423 F. App'x 385, 388 (5th Cir. 2011). Having had every opportunity to explain themselves, Plaintiffs apparently agree that they in fact did single out a judge; Plaintiffs resist transfer by advancing their view that this Court will resolve the dispute expeditiously because it resolved prior matters expeditiously and because this Court has addressed immigration matters previously. Opp. 9-10. This practice conflicts with the principle that, "[i]n federal court, the parties clearly have no right to a 'judge of their choice,'" *McCuin v. Texas Power & Light Co*., 714 F.2d 1255, 1262 (5th Cir. 1983), and thus the Fifth Circuit permits "case transfers to prevent judge-shopping." *Garcia v. International Construction Equipment, Inc*., 765 F. App'x 109, 110 (5th Cir. 2019).

The Court should therefore transfer this case to Austin or Washington, D.C.

### III.     To Avoid Countenancing the Appearance of Judge-Shopping, and in the Interests of Justice, the Court Should Transfer this Case Under 28 U.S.C. § 1404 to Another Division Within this District.

At a minimum, the Court should grant an intra-district transfer under 28 U.S.C. § 1404 to any other Division within this District that is not a single-judge Division, including Brownsville, Corpus Christi, Houston, Laredo, or McAllen, for random assignment in the normal course under the Southern District's procedures. Mot. 16-19.

As discussed, it is well-established "that the interest of justice is a factor . . . to be considered on its own" and where appropriate, may be "decisive . . . even when the other statutory factors of convenience of the parties and witnesses point in a different direction." Wright & Miller, § 3854, *supra*. That Plaintiffs choose to ignore these cases by not addressing them in their brief does not make them any less persuasive. *See, e.g., Research Automation, Inc. v. Schrader-*

11

*Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."); *Mizell v. Prism Computer Corp.*, 27 F. Supp. 2d 708, 714 (S.D. Miss. 1998) ("The interests of justice component of § 1404(a) may, in itself, be determinative of the decision to allow a transfer, even when the convenience of the parties and witnesses would call for a different result."). Thus, "a court faced with judge-shopping has the authority to act to preserve the integrity and control of its docket," and "it is particularly important for a district utilizing a random selection process to jealously guard the integrity of the system from potential abuse which attempts to circumvent the process . . . contravene[ing] the very purpose of random assignment, which is to prevent judge-shopping by any party, thereby enhancing public confidence in the assignment process." *Coates v. SAIA Motor Freight Line, LLC*, No. 3:20-CV-25-DMB-RP, 2020 WL 1812020, at *2 (N.D. Miss. Apr. 8, 2020); *cf. In re Radmax, Ltd.,* 720 F.3d 285, 290 (5th Cir. 2013) (granting mandamus directing transfer from Marshall Division to Tyler Division within E.D. Tex.).

Plaintiffs' opposition offers no defense or explanation of Texas's repeated practice of filing suit in single-judge divisions. Instead, they advance the astonishing claim that it is *Defendants* who are judge-shopping because Defendants have asked this Court to transfer this case to another District or Division with an actual connection to the claims raised in this lawsuit and in which *multiple* judges are randomly assigned cases. Opp. 11-12. They contend that single-judge divisions have a long history in the judiciary, and so Plaintiffs are permitted to file lawsuits in such divisions. *Id.* This again entirely misses the point. Defendants do not contend that single judge divisions are per se against the public interest. There are many circumstances where a local controversy should be locally heard, even if that means that a particular judge will inevitably hear that case. But that

12

is not what Texas has been doing. Instead, Texas has been filing cases challenging national policies promulgated in Washington, D.C. only in single-judge Divisions having no connection whatsoever to the underlying dispute. *See* Ex. A. Texas has done this no less than 28 times in the last two years, including by filing 18 cases in front of single-judge Divisions—seven here in Victoria— and another 10 cases in Divisions where drawing a particular judge was overwhelmingly likely. *Id.* And they have not filed a single lawsuit in any Division with multiple judges randomly assigned cases where they had a significant chance of not being assigned a particular judge. *Id.*; *see* Ex. B.[4] Absent any other explanation, Texas thus appears to be exploiting single-judge Divisions in ways that create the appearance of judge shopping that threatens to undermine the integrity of the judicial process. *See* 2021 Year-End Report on the Federal Judiciary, *available at* https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf (last accessed Feb. 16, 2023) (describing the historical practice of judge-shopping in the patent context and its impact on "public confidence" in the courts); *United States v. Texas*, No. 22-58 (Nov. 29, 2022) (Kagan, J.) (suggesting single judge divisions facilitate the perception that litigants can "pick [their] trial court judge"), *available at* https://www.supremecourt.gov/ oral_arguments/argument_transcripts/2022/22-58_4fc4.pdf (last accessed Jan. 25, 2023).

Plaintiffs allege that Defendants are attempting to "covertly" move to recuse and "judge

---

[4] In one case, Texas filed suit in Amarillo, where at the time they had a 95% chance of procuring a particular judge. *See Texas v. Biden*, 22-cv-14 (N.D. Tex.). For the first and only time since Texas began its judge shopping tactics, their judge shopping hit a snag, with the case falling into the 5% of cases assigned to then Chief Judge Lynn in Amarillo. *See* special Order 3-327, *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/3-327.pdf (last visited Feb. 16, 2023). Upon realizing their bad luck, they filed an amended filing purporting to relate the case to another case assigned to their preferred judge. *See* Dkts. 3, 9 28, *Texas v. Biden*, 22-cv-14 (N.D. Tex.). The Chief Judge rejected that attempt. *Id.*, Dkt. 28. Since then a new work order has issued, assigning 100% of cases in the Amarillo Division to a single judge. *See* Special Order No. 3-344, *available at* https://www.txnd.uscourts.gov/sites/default/files/orders/3-344.pdf (last accessed Feb. 16, 2023).

shop" for a different judge. Opp. 11. But Defendants are not moving to recuse and have no concerns with the impartiality of this Court or any of the judges in this District. Indeed, Defendants' motion suggested transfer to Corpus Christi, where, at the time of the filing, this Court was randomly assigned cases along with two other judges. *See* Division of Work Order for 2023, *available at* https://www.txs.uscourts.gov/file/6685/download?token=PJ3LWY-M (last accessed Feb. 16, 2023). It is Plaintiffs, not Defendants, who deliberately chose to file in Victoria rather than Corpus Christi, avoiding any chance the case might be randomly assigned. It is Plaintiffs who have repeatedly filed suit against the federal government in Divisions with a single judge or a very limited number of judges with no apparent connection, let alone a "substantial" one, 28 U.S.C. § 1391(b)(2), (e)(1)(b), to the underlying claims. And it is Plaintiffs who have not once filed suit in any Division with multiple judges where they face any meaningful risk of not knowing who their case would be assigned to. Exs. A, B. The Court should put an end to this practice and the public perception problem it creates by at a minimum transferring this case to another Division within this District with more than one judge, including Brownsville, Corpus Christi, Houston, Laredo, or McAllen, for random assignment.

## CONCLUSION

This Division is not the appropriate forum for Plaintiffs' claims. For the reasons articulated herein and in the Defendants' initial motion, this Court should transfer this action, either to the Austin Division of the Western District of Texas or the District of Columbia. At a minimum, should the Court determine venue is in fact proper in the Southern District, it should nevertheless transfer this case to another Division within this District for random assignment.

//

//

14

Dated: February 19, 2023

Respectfully submitted,

ALAMDAR S. HAMDANI
*United States Attorney*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

/s/ *Erez Reuv*eni
EREZ REUVENI
*Assistant Director*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 307-4293
erez.r.reuveni@usdoj.gov

BRIAN WARD
*Senior Litigation Counsel*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 19, 2023, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Southern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Erez Reuveni*
EREZ REUVENI
U.S. Department of Justice

**<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 4,812 as counted by Microsoft Word.

*/s/ Erez Reuveni*
EREZ REUVENI
