United States District Court
Southern District of Texas
**ENTERED**
March 10, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| The STATE OF TEXAS; the STATE OF ALABAMA; the STATE OF ALASKA; the STATE OF ARKANSAS; the STATE OF FLORIDA; the STATE OF IDAHO; the STATE OF IOWA; the STATE OF KANSAS; the COMMONWEALTH OF KENTUCKY; the STATE OF LOUISIANA; the STATE OF MISSISSIPPI; the STATE OF MISSOURI; the STATE OF MONTANA; the STATE OF NEBRASKA; the STATE OF OHIO; the STATE OF OKLAHOMA; the STATE OF SOUTH CAROLINA; the STATE OF TENNESSEE; the STATE OF UTAH; the STATE OF WEST VIRGINIA; and the STATE OF WYOMING,<br><br>     Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR JADDOU, Director of U.S. Citizenship and Immigration Services, in her official capacity; U.S. CUSTOMS & BORDER PROTECTION; TROY MILLER, Acting Commissioner of U.S. Customs & Border Protection, in his official capacity; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; and TAE JOHNSON, Acting Director of U.S. Immigration & Customs Enforcement, in his official capacity,<br><br>     Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 6:23-CV-00007 |

## MEMORANDUM OPINION AND ORDER

Twenty-one States (the "Plaintiff States") filed this case against the Department of Homeland Security ("DHS") and other executive officials challenging DHS's implementation of a parole program for nationals from Cuba, Haiti, Nicaragua, and Venezuela. The Defendants (the "Federal Defendants") thereafter moved to transfer the case out of the Victoria Division of the Southern District of Texas. The overarching theme of the Federal Defendants' Motion to Transfer is that there might be a "public perception" that the Plaintiff States selected the Victoria Division—a single-judge division at the time—so that the case will be heard by a judge who is biased in their favor.

Yet the Federal Defendants' briefing and statements before this Court undercut their own argument. For instance, in their briefing, the Federal Defendants *volunteered* that they "have no concerns with the impartiality of this Court." (Dkt. No. 46 at 19). And, during a subsequent hearing on the Motion to Transfer, the Federal Defendants confirmed they "know [they are] going to get a fair trial[.]" (Dkt. No. 69 at 34:3–5). In fact, at the same hearing, the Federal Defendants stated that their confidence that "[this Court] can be fair and impartial" is the very reason they are not "filing a motion to recuse." (*Id.* at 42:3–5); *see also* (*Id.* at 61:21–62:4). When asked about the Court presiding over previous cases involving the DHS, counsel for the Federal Defendants stated, "My colleagues elsewhere in the DOJ [who have] appeared before you several times . . . [stated that] you get a decision out, and it's a thorough and fair decision." (*Id.* at 48:9–12).

In light of the Federal Defendants' repeated and genuine expressions of confidence in the impartiality and fairness of this Court, it is difficult to accept their argument that

2

"public perception"—if such a concept could be beheld singularly—is meaningfully different than the Defendants'. The public has many voices—some 333 million in the United States.[1] The Federal Defendants never delineate the subset of the "public" that allegedly shares this concern. And the Federal Defendants fail to explain why their *speculation* as to the opinions of some hypothetical non-parties should carry more weight than the actual opinion of the Federal Defendants themselves. This failure is especially acute here, where the Court is tasked with deciding whether to take the extraordinary step of depriving the Plaintiff States of their right to select a forum for their case. If speculation over nebulous non-party opinions that contravene the concrete position of the Parties before the Court is all that is required to deprive plaintiffs of such a right, who, then, is the master of a civil complaint?

The Court does not believe it is appropriate to transfer a case that is in the proper venue due to a speculative public perception of bias that conflicts with the Federal Defendants' own statements. Accordingly, the Court **DENIES** the Federal Defendants' Motion to Transfer.

I.   BACKGROUND

The Plaintiff States, led by the State of Texas, filed this lawsuit against the DHS, its component agencies,[2] and the leadership of those agencies, challenging the implementation of a new parole program for nationals from Cuba, Haiti, Nicaragua, and

---

[1] https://www.census.gov/quickfacts/fact/table/US/PST045222 (last visited March 9, 2023).

[2] The component agencies of DHS involved in this lawsuit include U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE").

Venezuela. (Dkt. No. 20). Two days later, the Federal Defendants filed a Motion to Transfer, urging the Court to transfer this case to the Austin Division in the Western District of Texas, the District of Columbia, or at the very least, any division in the Southern District of Texas with more than one judge. (Dkt. No. 6 at 8). The Plaintiff States filed a Response, (Dkt. No. 34), and the Federal Defendants replied, (Dkt. No. 46). On February 21, 2023, the Court held a hearing on this Motion. (*See* Dkt. No. 69). It is now ripe for review.

## II. DISCUSSION

The Federal Defendants raise three grounds for transferring this case. First, they contend that it should be transferred under 28 U.S.C. § 1406 because venue is improper as no plaintiff resides in the Victoria Division. (Dkt. No. 6 at 12–17). Second, the Federal Defendants argue that this case should be transferred under 28 U.S.C. § 1404(a) because both Austin and Washington, D.C., are more convenient venues. (*Id.* at 17–23). And third, they argue that to avoid the perception of judge-shopping and in the interest of justice, the Court should transfer this case to Washington, D.C., Austin or any other division in the Southern District of Texas with multiple judges. (*Id.* at 23–26). The Court will address each argument in turn.

### A. 28 U.S.C. § 1406—IMPROPER VENUE

The Federal Defendants first argue that venue is improper in the Victoria Division under 28 U.S.C. § 1406. (Dkt. No. 6 at 12–17). Section 1406(a) provides that a district court shall dismiss or transfer a case that is filed in the "wrong district or division." 28 U.S.C.

§ 1406(a).  In civil actions where the federal government is a defendant, venue is governed by 28 U.S.C. § 1391(e).  Section 1391(e)(1) provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

In their Amended Complaint, the Plaintiff States asserted that venue was proper in the Victoria Division under 28 U.S.C. §§ 1391(b) and (e).  (Dkt. No. 20 at ¶ 35). However, in their Response to the Motion to Transfer, they argue that venue is proper only under Section 1391(e)(1)(C)—a division where Texas resides.  (Dkt. No. 34 at 3–6). The Court confirmed as much at a hearing on the Motion.  (Dkt. No. 69 at 56:3–5) ("The Court: Mr. Olson, . . . is the only basis for venue . . . 1391(e)(1)(C), in your opinion? Mr. Olson: That's the only one . . . .").  Prior to that concession, the Federal Defendants responded that the Plaintiff States had failed to demonstrate that "a substantial part of the events or omissions" occurred within the Victoria Division; however, all Parties agree that Section 1391(e)(1)(C) does not contain that requirement.  (*Id.* at 51:17–52:9) ("The Court: So [Section 1391(e)(1)(C)] doesn't have anything to do with where . . . the substantial part of the events or omission giving rise to the claim occurred, correct? Mr. Reuveni: That's - - that provision does not . . . .").

Focusing, then, on this narrowed venue assertion from the Plaintiff States, the Federal Defendants argue that venue is improper in the Victoria Division because the State of Texas does not reside there. *See* 28 U.S.C. § 1391(e)(1)(C). Instead, the Federal Defendants assert that Texas resides only in its capital, Austin. (Dkt. No. 6 at 12–14). The Federal Defendants support this position by pointing to Section 1391(c)'s text, which defines residency for venue purposes. (*Id.*at 13 (first quoting 8 [sic] U.S.C. § 1391(c)(2); and then citing Wright & Miller, 14D Federal Practice and Procedure § 3805 (4th ed.)). The Federal Defendants contend that a state's residency is not specifically noted in the venue statute and, as such, states fall within the residual category under Section 1391(c)(2). (*Id.* at 13–16). Section 1391(c)(2) states:

> For all venue purposes . . . an *entity* with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business.

28 U.S.C. § 1391(c)(2) (emphasis added). In this case, the Federal Defendants assert both that Texas is an "entity" as that term is used in Section 1391(c)(2), and that its "principal place of business" is Austin. (Dkt. No. 6 at 12–14).

The Plaintiff States respond that in addition to Austin, Texas also resides in Victoria because a "sovereign State, by definition, resides in every place within its borders." (Dkt. No. 34 at 2–6). The Plaintiff States note that every court that has considered a state's residency, including the Fifth Circuit, has rejected the argument that a state resides only in its capital city. (Dkt. No. 34 at 3–6) (citing, *inter alia*, *Atlanta & F. R. Co. v. Western Ry. Co. of Ala.*, 50 F. 790, 791 (5th Cir. 1892)). The Plaintiff States further

6

contend that courts have expressly held that a state is not an "entity" under Section 1391(c)(2), which is not "some residuary receptacle" for purposes of the venue statute. (*Id.* at 4–5).[3]

Section 1391(c) makes no reference one way or the other as to the residency of a sovereign state. *See* 28 U.S.C. § 1391(c). And this Court is bound by Fifth Circuit precedent. Nearly 130 years ago, the Fifth Circuit stated that a state government "resides at every point within the boundaries of the state[.]" *Atlanta & F. R. Co.*, 50 F. at 791. Since that decision, every court that has considered the residency of a state has reached the same conclusion. *See, e.g.*, *California v. Azar*, 911 F.3d 558 (9th Cir. 2018); *Florida v. United States*, No. 3:21-CV-01066, 2022 WL 2431443 (N.D. Fla. Jan 18, 2022); *Pennsylvania v. Trump*, 351 F.Supp.3d 791 (E.D. Pa. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. ___, 140 S.Ct. 2367, 207 L.Ed.2d 819 (2020); *Alabama v. United States Army Corps of Eng'rs*, 382 F.Supp.2d 1301 (N.D. Ala. 2005). The Federal Defendants cite no case to the contrary. (*See generally* Dkt. No. 6 (Motion to Transfer)); (Dkt. No. 46 (Reply); (Dkt. No. 4 (Supplemental Brief); (*see also* Dkt. No 69 at 54:18–24 (Hearing Transcript)). Accordingly, the Court finds, consistent with what the Fifth Circuit and every other federal court to have addressed the issue have held, Texas resides at every point within the boundaries of this State, including the Victoria Division.

---

[3] The Plaintiff States cite four different cases to this effect: *California v. Azar*, 911 F.3d 558 (9th Cir. 2018); *Alabama v. Army Corps of Engineers*, 382 F. Supp. 2d 1301 (N.D. Ala. 2005); *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443 (N.D. Fla. Jan. 18, 2022); and *Pennsylvania v. Trump*, 352 F. Supp. 3d 791, 808–09 (E.D. Pa. 2019), *rev'd on other grounds sub nom. Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020).

The Federal Defendants maintain that the Court need not decide the residency question to rule in their favor under Section 1406(a). (Dkt. No. 69 at 27:14–17). Instead, the Federal Defendants argue that "the Court can and has discretion, under the interest of justice prong of the transfer analysis, to transfer" this case. (*Id.* at 27:17–22). The Court disagrees. Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Analyzing this provision, the Fifth Circuit has held: "Where venue is improper, the district court should generally dismiss the case. But the court retains discretion to transfer it to a proper venue if such a transfer would serve 'the interest of justice.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (quoting 28 U.S.C. § 1406(a)). Accordingly, before reaching the "interest of justice" prong, the court must first have determined that venue is improper. Only then does the court analyze whether it should dismiss the case for improper venue or transfer it in the interest of justice.[4] In

---

[4] On this point, the Fifth Circuit has stated:
> Among the relevant considerations for determining whether transfer is in the interest of justice, courts examine the plaintiff's reasons for filing suit in the improper district in the first place and ask whether the plaintiff's belief that venue was proper was in good faith and reasonable. And where a plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper, courts often dismiss rather than transfer under Section 1406(a) on the idea that similar conduct should be discouraged. That's because it is obviously not in the interest of justice to allow § 1406(a) to be used to aid a non-diligent plaintiff who knowingly files a case in the wrong district.

*Seville*, 53 F.4th at 894 (cleaned up).

this case, the Court has found that venue is proper because Texas resides at every point within the boundaries of this State, including the Victoria Division. Accordingly, the Federal Defendants' Motion to Transfer under Section 1406(a) is denied.

### B. 28 U.S.C. § 1404 — CONVENIENCE OF PARTIES AND WITNESSES

The Federal Defendants next argue that this case should be transferred under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, in the interest of justice. (Dkt. No. 6 at 17–23). Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). "A party seeking a transfer under Section 1404(a) must show good cause by clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (cleaned up). "When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." *Id*.

The Fifth Circuit has adopted certain private and public interest factors to weigh in determining whether a Section 1404(a) venue transfer is appropriate. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 315 (cleaned up). "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having

9

localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (cleaned up).

With respect to the private interest factors, the Federal Defendants argue that relevant documents, witnesses, and the administrative record are in Austin or Washington, D.C. (Dkt. No. 6 at 19). With respect to the public interest factors, the Federal Defendant argues that there is no relevant factual connection to Victoria, and, consequently, there is no local interest in having this case decided in the Victoria Division. (*Id.* at 20–21).

The Plaintiff States respond that the primary source of proof in this case—the administrative record—will be accessible "no matter where the case is heard." (Dkt. No. 34 at 6). Further, the Plaintiff States argue that this case will not involve extensive witness testimony, but to the extent that witnesses may need to testify about Article III standing, those witnesses will be presented by the Plaintiff States and are not concentrated in any one division. (*Id.* at 6–7). With respect to the public interest factors, the Plaintiff States argue that there is no local issue in this case "[b]ecause this case focuses on a federal policy with nationwide effects, it is not tied closely to any one district or division," but generally, Victoria, Texas is disproportionately impacted by "illegal immigration and drug and human trafficking[.]" (*Id.* at 9–10).

The Court holds that the Federal Defendants have failed to demonstrate that any of the private interest factors weigh in favor of transfer. With respect to the first private interest factor—the relative ease of access to sources of proof—the Court finds that the

vast majority of the evidence will be electronic, so it will be equally accessible in any forum. For example, the administrative record will be filed electronically. (Dkt. No. 69 at 58:18–21).[5] The location of evidence bears much more strongly on the transfer analysis when the evidence is physical in nature. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Federal Defendants have pointed to no evidence that will be unavailable in an electronic format.

With respect to the second private interest factor—the availability of compulsory process to secure the attendance of witnesses—the Court finds that the Federal Defendants have failed to identify any witnesses who would be unwilling to testify. *See id.* "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* at 630–31 (citation omitted).

With respect to the third private interest factor—the cost of attendance for willing witnesses—the Federal Defendants have once again failed to identify any witnesses who would fit that description. *Id.* at 631. In fact, Victoria is considerably less expensive to visit than Austin and Washington, D.C. for many reasons.

And with respect to the final private interest factor—all other practical problems that make trial of a case easy, expeditious and inexpensive—the Federal Defendants have not identified any basis for transferring the case. Accordingly, the Federal Defendants

---

[5] "The Court: All right. So the administrative record is going to be filed on ECF. So even though it's in D.C., it's going to be publicly available around the world, correct? Mr. Reuveni: Yes . . . ." (Dkt. No. 69 at 58:18–21).

have failed to establish that any of the private interest factors demonstrate that a proposed forum is clearly more convenient.

Likewise, the Court holds that the Federal Defendants have failed to demonstrate that any of the public interest factors weigh in favor of transfer. With respect to the first public interest factor—the administrative difficulties flowing from court congestion—all Parties have agreed that this Court moves quickly and efficiently. (Dkt. No. 69 at 46:5–7, 48:9–12). The Court also notes that the caseload and court congestion is less in the Victoria Division than in the proposed venues.

With respect to the second public interest factor—the local interest in having localized interests decided at home—the Court notes that the claims in this case are tried to the Court, not a jury. Accordingly, there will be no burden on any potential jury. *See In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (per curiam). Further, the Court finds that the citizens of the proposed transferee venues have no more interest in having this case decided there than in Victoria. *See In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 631–32. There is no dispute that the policy at issue in this case has national implications.

With respect to the third public interest factor—the familiarity of the forum with the law that will govern the case—the Court is familiar with the Administrative Procedure Act and federal immigration law.[6]

---

[6] No Party has argued that the final public interest factor—the avoidance of unnecessary problems of conflict of laws or in the application of foreign law—applies.

This Court is unpersuaded that it would be more convenient to try this case in Austin, Washington, D.C., or any of the other suggested venues. The Court finds that the private and public interest factors guiding the Section 1404(a) venue transfer analysis all weigh against transferring this case. The Federal Defendants have failed to demonstrate that any proposed transferee venue is clearly more convenient than the venue chosen by the Plaintiff States.

### C. 28 U.S.C. § 1404 — THE INTEREST OF JUSTICE

The Federal Defendants' third and final argument is that the Court should transfer this case to avoid the appearance of judge-shopping. (Dkt. No. 6 at 23–26). Truth be told, this is the primary focus of the Motion in general. Section 1404(a) permits a district court to transfer any civil case in the "interest of justice" to any other division where it could have been brought. Similarly, Section 1404(b) permits a district court, "in [its] discretion," to transfer a civil case to any other division in the same district.

Directing the Court to Sections 1404(a) and (b), the Federal Defendants argue that this case should be transferred to Austin or Washington, D.C., or, at the very least, "to any other Division within this District that is not a single-judge Division, including Corpus Christi, where this Court sits with several other judges[.]" (Dkt. No. 6 at 21–26). The Federal Defendants contend that "[t]his case is merely the latest example of an ongoing practice of Plaintiffs and other litigants of filing most of their lawsuits against the federal government in single-judge divisions or [districts] where they are almost always guaranteed to procure a particular judge assignment." (*Id.* at 25). The Federal Defendants argue that this practice "undermines the public's confidence in the judicial

13

system, rewards gamesmanship, and overworks certain members of the judiciary" and "contributes to the perception that different forms of justice would be available to litigants, depending upon the division in which a suit was filed." (*Id.* at 22, 26) (internal quotation marks omitted). The Federal Defendants insist that, if this "strong indicia of judge shopping were left unchecked," the fair administration of justice would suffer. (*Id.* at 21).

The Plaintiff States respond that, if "Defendants believe this Court is biased or prejudiced against them or cannot be impartial in this case, they should forthrightly move to recuse." (Dkt. No. 34 at 11). They further assert that, "[i]f single judge divisions (or districts) are permitted to exist, then plaintiffs are permitted to file lawsuits in them[.]" (*Id.* at 12).

The Court recognizes that there is very limited caselaw in the Fifth Circuit advising a district court of when to transfer a case due to concerns of judge-shopping. *See Garcia v. Int'l Constr. Equip., Inc.*, 765 Fed. App'x 109, 110 (5th Cir. 2019) (per curiam); *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261–64 (5th Cir. 1983). In *McCuin*, the Fifth Circuit stated:

> Many claims that may be asserted in the courts of one state may also be asserted in the courts of another. Not only may a litigant frequently select among several jurisdictions, he may, within a jurisdiction, lay venue in more than one court.
>
> The existence of these choices not only permits but indeed invites counsel in an adversary system, seeking to serve his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment: a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are

14

> more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor. . . .
>
> In a perfect judicial system forum-shopping would be paradoxical. The same results would obtain in every forum and after every type of trial. But the actual litigation process is not a laboratory in which the same result is obtained after every test. In some situations, such as when a statute of limitations is involved, the choice of forum may determine the rule of law that will be applied. Even when legal rules are identical, justice can be obtained only through human beings, and neither judges nor jurors are fungible. In recognition both of this and of the nature of the adversary, client-serving process, we tolerate a certain amount of manipulation without inquiry into motive.

*McCuin*, 714 F.2d at 1261–62 (footnotes omitted). It is no well-kept secret that litigation involves strategy. And as seen, forty years ago courts were discussing the fact that a plaintiff's choice of venue involves strategic thinking.

Since the Court has found that venue is proper in the Victoria Division, the Federal Defendants bear the burden of proving that the interest of justice would be served by transferring this case. The primary basis proffered by the Federal Defendants is that the public's perception of the integrity of the federal judiciary might be compromised if plaintiffs in politically divisive cases with broad societal implications are permitted to file suit in single-judge divisions that they believe will be sympathetic to their legal position. But in the present case, the Federal Defendants never define the scope of this amorphous "public" or the segment of the public that holds this concern. To say that this is speculative is to say the least. And it is woefully insufficient to justify transferring this case. To be sure, transferring the case because of a public concern that a judge in a single-judge division is biased may well legitimize that concern.

15

If the Federal Defendants had raised concerns about the ability of this Court to be impartial, the need to transfer this case (or for this Court to recuse) would be obvious. However, the Federal Defendants assured the Court repeatedly both in its briefing and during argument that it had no such reservations.[7]  So, we are left with positions by the Federal Defendants that are difficult to reconcile.  On the one hand, all Parties in this case have categorically stated that this Court will be fair and impartial as it presides over this matter.  On the other hand, the Federal Defendants assert that filing lawsuits in single-judge divisions creates a possible public perception that the judge might not be.

Ironically, the Federal Defendants recognized that filing this Motion exacerbates the very public perception about single-judge divisions that it does not share.  (Dkt. No. 69 at 70:24–71:16).  In fact, if the perception of the integrity of the federal courts is at the heart of this Motion, as the Federal Defendants claims, the Federal Defendants agreed that saying in public what they have said in their briefing and in open court—that all Parties agree that this Court will be fair and impartial—could go a long way toward addressing any concern that the public might have.  (*Id.* at 65:20–66:16).  The Federal Defendants also agreed that this public concern could be addressed if the public knew that, upon request, this Court has stayed its prior decisions involving the Federal Defendants until the Fifth Circuit has had a chance to review them.  (Tr. at 67:4–69:14).  At that point, the Fifth Circuit decides on an expedited basis whether the Court's

---

[7]  (*See* Dkt. No. 46 at 19); (Dkt. No. 69 at 34:3–5, 34:7–8, 38:21–24, 40:23–25, 41:7–15, 42:3–17, 48:9–12, 61:11–62:15).

decisions should be stayed. Therefore, the Court's rulings do not go into effect until at least three Fifth Circuit judges have had a chance to review them.

In any event, the Court has found that venue is proper in this Division. All Parties agree that this Court will preside fairly and impartially. The Federal Defendants have not articulated *how* the administration of justice will be compromised if this case continues before this Court. The Court finds that it is not appropriate to transfer a case that is in the proper venue due to an alleged public perception of bias that conflicts with the perception of the Parties in the case. After careful consideration, the Court finds that the interest of justice does not warrant transferring this case.

### III.   CONCLUSION

Considering the foregoing reasons, the Court **DENIES** the Federal Defendants' Motion to Transfer Venue, (Dkt. No. 6).

It is SO ORDERED.

Signed on March 10, 2023.

                                                                **DREW B. TIPTON**
                                         **UNITED STATES DISTRICT JUDGE**