# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, *et al.,* | |
| *Plaintiffs*, | |
| v. | Case No. 6:23-cv-00007 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants*. | |

## PROPOSED INTERVENORS' MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

   I.   IMMIGRATION FROM CUBA, HAITI, NICARAGUA, AND VENEZUELA ............ 3

     A.  Cuba ............................................................................................................. 3

     B.  Haiti ............................................................................................................. 3

     C.  Nicaragua .................................................................................................... 4

     D.  Venezuela .................................................................................................... 4

   II.  PAROLE PROGRAMS FOR CUBANS, HAITIANS, NICARAGUANS, AND VENEZUELANS ................................................................................................ 5

   III.  PROPOSED INTERVENORS ........................................................................... 7

SUMMARY OF ARGUMENT ........................................................................................... 9

ARGUMENT ...................................................................................................................... 9

   I.   Proposed Intervenors Are Entitled to Intervene as of Right; Alternatively, They Meet the Requirements for Permissive Intervention..................................... 9

     A.  Proposed Intervenors Are Entitled to Intervene as of Right. ..................... 10

     i.  Proposed Intervenors' Motion is Timely. ................................................. 10

     ii.  Proposed Intervenors Possess Legally Protectable Interests........................ 11

     iii.  Proposed Intervenors' Ability to Protect Their Interests May Be Impaired by the Court's Disposition of this Action. ..................................................... 13

     iv.  Existing Parties Inadequately Represent Intervenors' Interests.................... 13

     B.  Proposed Intervenors Also Meet the Requirements for Permissive Intervention. ....... 16

CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2015) ................................................................ 9, 13, 14

*La Union del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ...................................................................... 15

*League of United Latin Am. Citizens v. Clements,*
    884 F.2d 185 (5th Cir. 1989) ...................................................................... 17

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,*
    732 F.2d 452 (5th Cir. 1984) ...................................................................... 17

*Ross v. Marshall,*
    426 F.3d 745 (5th Cir. 2005) ...................................................................... 11

*Sierra Club v. Espy,*
    18 F.3d 1202 (5th Cir. 1994) ................................................................*Passim*

*Stallworth v. Monsanto Co.,*
    558 F.2d 257 (5th Cir. 1977) ...................................................................... 11

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin,*
    338 F.R.D. 364 (W.D. Tex. 2021) ............................................................ 17

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015) ................................................................*Passim*

*Texas v. United States,*
    2021 WL 411441 (S.D. Tex. Feb. 6, 2021) ........................................ 1, 15, 19

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
    834 F.3d 562 (5th Cir. 2016) .......................................................... 10, 12, 13

**Statutes**

8 U.S.C. § 1182(d)(5)(A) ................................................................................ 6, 7

**Rules**

Fed. R. Civ. P. 24 ................................................................................... 1, 10, 11

Fed. R. Civ. P. 24(a) ....................................................................................... 9, 12

Fed. R. Civ. P. 24(a)(2) ........................................................................................................ 10

Fed. R. Civ. P. 24(b)(1)(B), (b)(3) ....................................................................................... 17

**Regulations**

Implementation of a Parole Process for Cubans,
   88 Fed. Reg. 1266 (Jan. 9, 2023) ..................................................................................... 3

Implementation of a Parole Process for Haitians,
   88 Fed. Reg. 1243 (Jan. 9, 2023) .............................................................................. 3, 4, 6

Implementation of a Parole Process for Nicaraguans,
   88 Fed. Reg. 1255 (Jan. 9, 2023) ..................................................................................... 4

Implementation of a Parole Process for Venezuelans,
   87 Fed. Reg. 63507 (Oct. 19, 2022) ................................................................................. 5

Implementation of Changes to the Parole Process for Venezuelans,
   88 Fed. Reg. 1279 (Jan. 9, 2023) ..................................................................................... 5

Uniting for Ukraine Parole Process,
   87 Fed. Reg. 25040 (Apr. 27, 2022) ................................................................................. 5

**Other Authorities**

L.R. 7 ......................................................................................................................................... 2

## INTRODUCTION

Valerie Laveus, Paul Zito, Francis Arauz, Eric Sype, Dr. Kate Sugarman, Dr. Nan Langowitz, and Dr. Germán Cadenas ("Proposed Intervenors") seek to intervene in this litigation as beneficiaries of the Parole Programs at issue. They seek intervention under Fed. R. Civ. P. 24 as of right or, alternatively, permissively. This Court previously granted permissive intervention under materially indistinguishable circumstances in *Texas v. United States*, No. 6:21-CV-00003, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021), consistent with Fifth Circuit precedent favoring intervention.

Proposed Intervenors have compelling interests they seek to protect through this litigation. Valerie Laveus seeks to reunify with her brother and nephew who are living in dangerous conditions in Haiti. Paul Zito, a devout Christian and Texas businessman, seeks to sponsor a fellow Christian with whom he shares a deep religious connection. Francis Arauz seeks to reunite with her husband and the father of their U.S. citizen son. Eric Sype seeks to sponsor a longtime friend to reciprocate his friend's support and kindness over the years. Dr. Kate Sugarman seeks to sponsor the mother of a young woman who suffers from degenerative medical conditions and cannot access life-saving surgery unless her mother comes to the United States to provide intensive post-surgery care. Dr. Nan Langowitz, in connection with her synagogue, has sponsored and welcomed the family of a Venezuelan human rights advocate, who now awaits employment authorization under the programs. Dr. Germán Cadenas has sponsored and received his uncle, who lost his job due to his political beliefs and likewise awaits employment authorization.

These Proposed Intervenors are intended direct beneficiaries of the Parole Programs at issue. They have concrete, personalized interests in the outcome of this litigation, which threatens to terminate the Parole Programs, thereby obstructing their access to its benefits, including family

reunification, facilitating access to safety in the United States, employment authorization, accessing urgent medical care, and the free exercise of religion.

While Defendants and Proposed Intervenors both seek to defend the Parole Programs, Proposed Intervenors do so for distinct reasons tied to their protectable interests. Unlike Defendants, who champion the Parole Programs as part of the federal government's "enforcement measures to increase security at the border and reduce the number of individuals crossing unlawfully between ports of entry,"[1] Proposed Intervenors seek to defend them because of the significant public and humanitarian benefits the Parole Programs provide. Thus, because Defendants' interests are in preserving "expansive . . . executive authority," "efficiently enforcing the immigration laws," and "maintaining its working relationships with the [plaintiff] States," no existing party adequately represents Proposed Intervenors' interests. *Texas v. United States*, 805 F.3d 653, 663 (5th Cir. 2015) (citation omitted). Proposed Intervenors satisfy the requirements for intervention.

The Proposed Intervenors conferred with the parties to this case. The defendants take no position and the plaintiffs oppose the relief sought in the motion. L.R. 7.1.D.

---

[1] *Fact Sheet: Biden-Harris Administration Announces New Border Enforcement Actions*, The White House (Jan. 5, 2023), https://www.whitehouse.gov/briefing-room/statements-releases/2023/01/05/fact-sheet-biden-harris-administration-announces-new-border-enforcement-actions/.

## BACKGROUND

## I.  IMMIGRATION FROM CUBA, HAITI, NICARAGUA, AND VENEZUELA

As context underlying their interests and investment in the Parole Programs, Proposed Intervenors summarize key factors causing people to leave Cuba, Haiti, Nicaragua, and Venezuela.

### A.  Cuba

"Cuba remains a one-party authoritarian regime under the Communist Party of Cuba (PCC) government, which continues to restrict freedoms of expression, association, peaceful assembly, and other human rights." Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266, 1270 (Jan. 9, 2023). The Cuban government silences critics through arbitrary detention, military deployment, sham prosecutions, restrictions on free speech, and torture. *Id.*

Cuba is currently experiencing its worst economic crisis since the 1990s. *Id*. at 1269. Mass shortages of basic goods, rolling blackouts, and large-scale economic contraction have "created untenable economic conditions on the island." *Id*. at 1269-70. "Cubans are fleeing the island in record numbers, eclipsing the . . . Mariel exodus of 1980." *Id.* at 1269.

### B.  Haiti

In recent years, Haiti has experienced a cataclysm of events including natural disasters, economic crisis, pervasive hunger, political assassinations, and widespread gang violence. Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243, 1246 (Jan. 9, 2023). In 2021, Haiti experienced a 7.2 magnitude earthquake and Tropical Storm Grace within days of one another, causing thousands of casualties. *Id.* "Within a month, over 650,000 Haitians required humanitarian assistance." *Id.*

On July 7, 2021, assassins killed Haitian President Jovenel Moïse. *Id.* Gangs have filled the resulting power vacuum, carrying out thousands of documented killings and even more kidnappings. *Id.* Gang violence has destroyed essential infrastructure, exacerbated a serious cholera outbreak, and

3

left Haitians without basic necessities like food, water, and medicine. *Id.* at 1246-47.

Because of these overlapping crises, the number of Haitians seeking to enter the United States has sharply increased.

### C. Nicaragua

Since 2007, Nicaraguan President Daniel Ortega's administration has consolidated control over the country's institutions and dismantled the rule of law. Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255, 1258 (Jan. 9, 2023). Recently, Nicaragua's government cracked down on the Catholic Church, shutting down radio stations, terminating church-affiliated organizations, detaining and exiling church officials, and branding church leadership as coup-mongers. Maria Montes & Savarni Sanka, *In Nicaragua, Crackdown on Religious Actors Further Imperils Return to Democracy*, U.S. Inst. Peace (Oct. 7, 2022), https://www.usip.org/publications/2022/10/nicaragua-crackdown-religious-actors-further-imperils-return-democracy. The shuttering of non-governmental organizations in Nicaragua "is part of a much broader effort to silence civil society groups and independent media." *Nicaragua: Government Dismantles Civil Society*, Hum. Rts. Watch (July 19, 2022), https://www.hrw.org/news/2022/07/19/nicaragua-government-dismantles-civil-society. For these and related reasons, increasing numbers of Nicaraguans seek safety and security in the United States.

### D. Venezuela

"A complex political, humanitarian, and economic crisis; the widespread presence of non-state armed groups; crumbling infrastructure; and the repressive tactics of [President] Nicolás Maduro have caused nearly 7 million Venezuelans to flee their country." Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63507, 63509 (Oct. 19, 2022). These tactics include extrajudicial executions, forced disappearances, jailing political opponents, prosecuting civilians in military courts, torturing detainees, and cracking down on protestors and journalists. *World Report*

*2022: Venezuela*, Hum. Rts. Watch, https://www.hrw.org/world-report/2022/country-chapters/venezuela (last visited Mar. 28, 2023). In 2021, a United Nations Fact-Finding Mission found patterns of violations serious enough to constitute crimes against humanity. *Id.*

Millions in Venezuela cannot access basic healthcare and nutrition. One in three Venezuelans is food insecure, *WFP Venezuela Food Security Assessment Main Findings*, World Food Programme (Feb. 23, 2020), https://reliefweb.int/report/venezuela-bolivarian-republic/wfp-venezuela-food-security-assessment-main-findings-data, and the health system has collapsed. *World Report 2022: Venezuela*, *supra*. More than one-quarter of Venezuela's population has left the country. 87 Fed. Reg. at 63509.

## II.   PAROLE PROGRAMS FOR CUBANS, HAITIANS, NICARAGUANS, AND VENEZUELANS

For the foregoing reasons—and in an attempt to deter irregular migration and improve international relations—Defendants recently announced new parole programs. Modeled on the popular and successful Uniting for Ukraine Parole Process[2] and the October 2022 Parole Process for Venezuelans, 87 Fed. Reg. at 63507, the new programs allow qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela,[3] and their immediate family members, to obtain advance authorization to travel to the United States and be considered for temporary parole and employment authorization for up to two years. *See, e.g.*, Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243, 1246 (Jan. 9, 2023). The Department of Homeland Security ("DHS") established these Parole Programs in combination "with significant consequences for those who fail to use those pathways." Press Release,

---

[2] Uniting for Ukraine Parole Process, 87 Fed. Reg. 25040 (Apr. 27, 2022). Like the programs at issue here, the one for Ukrainians—which Plaintiffs have not challenged—was established through a Federal Register notice and utilizes the same supporter-beneficiary system. It does not, however, limit the number of Ukrainians who can be admitted. *Id.*

[3] DHS updated its October 2022 Parole Process for Venezuelans on the same day it announced the parole processes for Cuba, Haiti, and Nicaragua. *See* Implementation of Changes to the Parole Process for Venezuelans, 88 Fed. Reg. 1279 (Jan. 9, 2023).

Dep't Homeland Sec., DHS Continues to Prepare for End of Title 42; Announces New Border
Enforcement Measures and Additional Safe and Orderly Processes (Jan. 5, 2023),
https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-
enforcement-measures-and.

The Parole Programs allow up to 30,000 qualifying individuals from these four countries
(combined) to obtain parole per month. *Id.* Parolees must pass rigorous security and public safety
screening, have a supporter in the United States who commits to providing financial and other
support, and complete all public health requirements. *Processes for Cubans, Haitians, Nicaraguans,
and Venezuelans*, USCIS, https://www.uscis.gov/CHNV (last updated Mar. 22, 2023) [hereinafter
"CHNV Processes"]. Additionally, individuals must "warrant a favorable exercise of discretion" for
"urgent humanitarian reasons or significant public benefit." *Id.*; *see also* 8 U.S.C. § 1182(d)(5)(A)
(statutory parole authority). During the parole period, individuals may reside lawfully within the
country and obtain work authorization. Parole does not confer permanent status or a pathway to
citizenship.

Noncitizens cannot directly apply to these programs. Instead, a supporter with legal status in
the United States must file the application. Each supporter must also pass background vetting. *See*
CHNV Processes, *supra*. Supporters can file individually, with others, or on behalf of organizations,
businesses, or other entities. *Id.* To demonstrate "sufficient financial resources to receive, maintain,
and support" prospective parolees for the two-year period, supporters must be ready to receive the
parolee in the United States; ensure safe housing; help complete applications for employment
authorization and a Social Security card; ensure the parolee's health needs are met; and assist them
in accessing education, learning English, and securing employment. *Id.*

On January 24, 2023, twenty states, led by Texas, filed a complaint with this Court, seeking to
have the new Parole Programs enjoined and declared unlawful. Compl., Dkt. No. 1; *see also* Am.

Compl., Dkt. No. 20 (adding Oklahoma as a plaintiff).

### III. PROPOSED INTERVENORS

Proposed Intervenors each seek to vindicate their compelling interests in the continuation of the Parole Programs.

Valerie Laveus, a U.S. citizen and Florida school teacher, applied to sponsor her brother and nephew, who live in precarious conditions in Haiti that have subjected them to attempted murder and kidnapping, and an inability to sustain their basic needs. Ex. A, Laveus Decl. ¶¶ 8, 13-16. She wants to reunite with her family and ensure they are in "as safe and stable conditions as possible." *Id.* ¶ 6.

Paul Zito, a U.S. citizen, devout Christian, and Texas businessman, met Abel[4] in Cuba while working to support orphans there. Ex. B, Zito Decl. ¶¶ 7-8. Mr. Zito has applied to sponsor Abel and his family, seeing this opportunity as "a calling from God": "I believe that we are called to love one another and that God has put Abel and his family before me for a purpose. He is a brother in need and I am committed to doing what is necessary to support him." *Id.* ¶ 14.

Francis Arauz, a U.S. citizen and truck driver in Oakland, California, has applied to sponsor her Nicaraguan husband. Ex. C, Arauz Decl. ¶ 13. Ms. Arauz needs her husband's help to raise their teenage son, who has been diagnosed with attention-deficit/hyperactivity disorder and requires caretaking that she cannot consistently provide alone. *Id.* Ms. Arauz also hopes employment authorization through the Parole Programs will enable her husband to contribute financially to their household. *Id.* ¶ 14.

Eric Sype, a U.S. citizen in Oakland, California, plans to sponsor his close friend from Nicaragua, Oldrys. Ex. D, Sype Decl. ¶ 3. Mr. Sype sees the opportunity to sponsor Oldrys "as a way to reciprocate" Oldrys's family's kindness over the years: Oldrys's family "welcomed me into their

---

[4] Parolees and prospective parolees are referred to herein by first name or relationship to protect their identities.

home, family, and community nearly a decade ago . . . I have tried to return that love and support in any way that I can." *Id.* ¶ 12. Mr. Sype seeks to sponsor Oldrys to facilitate his access to employment authorization and ability to work on Washington apple orchards owned and operated by Mr. Sype's extended family. *Id.* ¶ 11.

Dr. Kate Sugarman, a U.S. citizen and Washington, D.C.-based physician, has applied to sponsor the mother of a young woman who suffers from severe degenerative medical conditions requiring immediate corrective surgery. Ex. E, Sugarman Decl. ¶ 8. The young woman cannot receive surgery until she secures a fulltime caretaker for the months following her surgery. *Id.* The only person capable of providing such care is her mother, who remains in Venezuela. *Id.* Dr. Sugarman seeks to sponsor the young woman's mother to ensure the daughter can receive life-saving surgery. *Id.*

Dr. Nan Langowitz, a U.S. citizen and business professor, has sponsored the family of Janeth, a Venezuelan human rights advocate, and has applied to sponsor three members of Janeth's extended family. Ex. F, Langowitz Decl. ¶¶ 5-6, 12. "I feel compelled to help people in need, and I see it as a way of paying things forward, especially because I know that I am descended from people who, like Janeth, came to the United States as immigrants." *Id.* ¶ 5. Dr. Langowitz has worked with her Jewish synagogue and other Massachusetts organizations to ease their transition to life in the United States. *Id.* ¶¶ 17-18.

Dr. Germán Cadenas, a U.S. citizen and university professor, has sponsored his Venezuelan uncle. Ex. G, Cadenas Decl. ¶ 5. Dr. Cadenas's uncle is an agricultural engineer who faced severe economic hardship exacerbated by his anti-Chavez and anti-Maduro views. *Id.* ¶¶ 6-10. Dr. Cadenas's family has benefited from reunification with their uncle, whom he views as "a second father." *Id.* ¶ 11. Dr. Cadenas's family also seeks to benefit from the employment authorization his uncle may receive under the Parole Programs; his uncle is eager to work. *Id.* ¶ 17.

## SUMMARY OF ARGUMENT

Proposed Intervenors are entitled to intervene as of right under Rule 24(a). Their motion is timely and seeks to protect numerous "concrete, personalized, and legally protectable" interests. *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). Because this case will decide the fate of the Parole Programs from which they benefit or intend to benefit, it will necessarily impede their ability to protect their interests. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2015). Finally, Defendants do not adequately represent Proposed Intervenors' interests. Defendants seek to defend their interests in "expansive . . . executive authority," "efficiently enforcing the immigration laws," and "maintaining its relationships with the states," *Texas*, 805 F.3d at 663, while Proposed Intervenors seek to obtain and defend their interests in the humanitarian and public benefits of the programs.

In the alternative, permissive intervention is warranted, as this Court recently found in a materially identical case.

## ARGUMENT

### I. PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT; ALTERNATIVELY, THEY MEET THE REQUIREMENTS FOR PERMISSIVE INTERVENTION.

Proposed Intervenors meet the criteria for intervention under controlling precedent. *See Texas*, 805 F.3d at 655 (reversing denial of intervention to intended beneficiaries of immigration program). Rule 24 allows nonparties to intervene either as of right or permissively. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citation omitted). Intervention is permitted "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (citation omitted). Proposed Intervenors satisfy Rule 24's requirements to intervene as of right and permissively.

9

**A.  Proposed Intervenors Are Entitled to Intervene as of Right.**

A nonparty may intervene as of right where (1) the application is timely; (2) the proposed intervenors "have an interest relating to the property or transaction which is the subject of the action"; (3) they are "so situated that the disposition of the action may, as a practical matter, impair or impede [their] ability to protect that interest"; and (4) their interests are "inadequately represented by the existing parties to the suit." *Wal-Mart Stores*, 834 F.3d at 565 (citations omitted); Fed. R. Civ. P. 24(a)(2). Proposed Intervenors satisfy each requirement.

### i.  Proposed Intervenors' Motion is Timely.

In determining whether an intervention motion is timely, courts consider four factors: (1) the length of time the would-be intervenor knew or should have known of their interest in the case; (2) the extent of prejudice to existing parties due to the proposed intervenor's failure to apply sooner; (3) the extent of prejudice to proposed intervenors if the motion is denied; and (4) any unusual circumstances. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977). Under these factors, Proposed Intervenors' motion is timely.

First, Proposed Intervenors filed this motion within weeks of when their interest in the case became apparent: approximately two months after Plaintiffs filed their Complaint, six weeks after Plaintiffs filed a preliminary injunction motion, nearly two months *before* briefing on the motion will be complete, and only one week after the scheduling order set trial for the week of June 12. *See* Order, Dkt. 90. An earlier motion would have risked "wast[ing] judicial resources," which "[c]ourts should discourage." *Sierra Club,* 18 F.3d at 1206. Therefore, especially at this early stage of litigation, the first factor favors intervention. *See, e.g.*, *Ross v. Marshall*, 426 F.3d 745, 754-55 (5th Cir. 2005) (intervention motion filed six months after learning of interest was not tardy).

Second, the existing parties are not prejudiced by this motion's timing. "[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of

10

allowing the intervenor to participate in the litigation." *Sierra Club*, 18 F.3d at 1206. Here, the parties would not have behaved differently at all, let alone in a way demonstrating prejudice, had Proposed Intervenors filed sooner. Proposed Intervenors do not seek to relitigate any motions that have already been decided, have not disrupted merits briefing deadlines, and will continue to act diligently so as not to prejudice the existing parties.

Third, Proposed Intervenors have a direct stake in this case's outcome: it could terminate programs of which they are actual and intended beneficiaries. If not permitted to intervene, they could lose *any* opportunity to defend their interests, significantly prejudicing them.

Thus, the motion is timely.

### ii. Proposed Intervenors Possess Legally Protectable Interests.

Proposed Intervenors' interests meet Rule 24's requirements.

To satisfy Rule 24(a), intervenors must show a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657-58 (citation omitted). "[A]n interest that is concrete, personalized, and legally protectable is sufficient to support intervention." *Id*. at 658. The intervenor must demonstrate "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Id.* at 657. Intervenors' interests need not give rise to standing: "[A]n interest is sufficient if it is of the type that the law deems worthy of protection." *Wal-Mart Stores*, 834 F.3d at 566 (citation omitted).

The Fifth Circuit has held that individuals who are "intended beneficiaries" of a program necessarily have an interest sufficient to support intervention. *Texas*, 805 F.3d at 660. *Texas* held that immigrants eligible for a program that would have protected them from deportation and granted other benefits were "intended beneficiaries" of that program and therefore entitled to intervene. *See id.* "This is not a mere generalized interest in the implementation of [the program]; rather, the [intervenors] are the intended beneficiaries of the challenged federal policy." *Id.* The court found

11

sufficient the intervenors' interest in applying to receive the program's benefits, even though their applications could be denied. *Id.* at 660-61.

Here, Proposed Intervenors are applicants for, and beneficiaries of, the programs Plaintiffs challenge. Through the Parole Programs, Proposed Intervenors seek to sponsor and facilitate preapproved travel to the United States for close relatives, longtime friends, and individuals with whom they share deep religious and humanitarian connections. Under the Parole Programs, only supporters such as Prospective Intervenors may apply; prospective parolees cannot submit initial applications. CHNV Processes, *supra*. As intended beneficiaries of the Parole Programs, Proposed Intervenors possess legally protectable interests in this case. *See Texas*, 805 F.3d at 660.

Proposed Intervenors have additional interests in the outcome of this litigation. Ms. Laveus has an interest in ensuring her family's safety: she seeks to provide security for her brother and nephew who have experienced violence and instability in Haiti. Laveus Decl. ¶¶ 6, 8-13, 15-16. Mr. Zito has a religious interest: as an expression of his Christian faith, he applied to sponsor Abel and his family to help them escape Cuba, where they cannot freely practice their religion. Zito Decl. ¶¶ 12, 14.

For Ms. Arauz and Dr. Cadenas, the Parole Programs provide an opportunity to reunify and strengthen their families, including through employment authorization. Arauz Decl. ¶ 13; Cadenas Decl. ¶¶ 5-8, 18. To reciprocate years of deep friendship, Mr. Sype will apply to sponsor and facilitate employment authorization for his friend, Oldrys. Sype Decl. ¶¶ 10-11. Dr. Sugarman's humanitarian values and medical expertise led her to apply to sponsor the mother of a woman requiring life-saving surgery and postoperative care. Sugarman Decl. ¶ 8. Similarly, Dr. Langowitz's sense of obligation to work with her synagogue to help those in need drives her sponsorship of Janeth's family. Langowitz Decl. ¶¶ 5, 23.

Together, Proposed Intervenors have an array of interests that are "concrete, personalized,

and legally protectable." *Texas*, 805 F.3d at 658. Such interests are unequivocally ones the "law deems worthy of protection," satisfying this intervention requirement. *Wal-Mart Stores*, 834 F.3d at 566 (citation omitted).

### iii.   Proposed Intervenors' Ability to Protect Their Interests May Be Impaired by the Court's Disposition of this Action.

Proposed intervenors must also "demonstrate that disposition of that action may, as a practical matter, impair or impede [their] ability to protect [their] interest." *Brumfield*, 749 F.3d at 344. The impairment must be "practical," not merely "theoretical." *Id.*

The outcome of this case could dramatically impede Proposed Intervenors' interests. If Plaintiffs prevail, Valerie Laveus, Paul Zito, Francis Arauz, Eric Sype, Dr. Kate Sugarman, and Dr. Nan Langowitz could lose their opportunities to participate in the Parole Programs before their individual applications are even considered, and thus could be altogether denied the programs' benefits. *See supra* § I.A.ii. Dr. Nan Langowitz and Dr. Germán Cadenas, who have applications that have been granted, face uncertainty regarding program benefits for the individuals they sponsored, including employment authorization and the opportunity to apply for "re-parole" once the initial period elapses. *Id.* Thus, the outcome of this case will impair Proposed Intervenors' ability to protect their interests.

### iv.   Existing Parties Inadequately Represent Intervenors' Interests.

Proposed Intervenors have the burden of demonstrating inadequate representation, but that burden is "minimal." *Sierra Club*, 18 F.3d at 1207. "[T]he Rule is satisfied if the applicant shows that the representation of [their] interest *may be* inadequate." *Texas*, 805 F.3d at 661 (cleaned up) (emphasis added). A presumption of adequate representation applies in two situations. First, where proposed intervenors have the same ultimate objective as a party, the proposed intervenors must show "adversity of interest, collusion, or nonfeasance on the part of the existing party" to overcome a

13

presumption that their interests are adequately represented. *Id.* at 661-62 (cleaned up). Second, when the existing party is a governmental body charged by law with representing the interest of the intervenor, the intervenor must show that their respective interests in fact differ and that the government will not adequately represent the intervenors' interests. *Id.* Where there is a "lack of unity in all objectives," it is sufficient for proposed intervenors to show that they plan to advance "real and legitimate additional or contrary arguments." *Id.* at 662 (cleaned up).

Here, Proposed Intervenors are unaware of any authority charging the federal government with representing their specific interests. Instead, Defendants represent the interests of the agencies—which have the authority to grant *or deny* Proposed Intervenors' applications—whereas Proposed Intervenors' interests are in the benefits of the programs.

Even assuming a presumption of adequate representation applies, controlling precedent demonstrates that Proposed Intervenors overcome it. *See, e.g.*, *Texas*, 805 F.3d at 663 (finding that although both government and intervenors sought to uphold challenged immigration program, the government had an interest in preserving expansive executive authority, enforcing immigration laws, and maintaining relationships with the plaintiff states, while intervening program beneficiaries sought to avoid removal and obtain work authorization); *Sierra Club*, 18 F.3d at 1208 (holding that the government's representation of the "broad public interest" did not adequately represent intervenors' specific economic concerns); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308-09 (5th Cir. 2022).

Recently, this Court held the federal government did not adequately represent the interests of intervenor immigrants' rights groups in a case brought by Texas challenging federal immigration policy:

> [A]s [an] entit[y] charged by law with protecting Texas citizens, [the federal government] will by necessity balance [its] advocacy for individuals . . . with its lawful duty to protect American citizens. By contrast, the Proposed Intervenors . . .

are concerned exclusively with the welfare of individuals directly affected by the [policy].

*Texas*, 2021 WL 411441, at \*4. This Court thus held the proposed intervenors "met their minimal burden to show their interests are sufficiently adverse to the Defendants' in a way that is germane to the case—despite . . . the[ir] common goal of opposing Texas's lawsuit." *Id.*

These cases dictate the result here. Even if Defendants' and Proposed Intervenors' objectives overlap, there is sufficient "adversity of interest[s]" and "lack of unity in all objectives" to overcome the presumption that Defendants adequately represent Proposed Intervenors' interests. *Texas*, 805 F.3d at 661-62. Defendants support the Parole Programs as part of their "enforcement measures to increase security at the border and reduce the number of individuals crossing unlawfully between ports of entry." *Fact Sheet*, *supra*, at 2 n.1. Proposed Intervenors seek to defend the Parole Programs for distinct reasons: the benefits to them and their communities that flow from, *inter alia*, family reunification, the exercise of their religious and humanitarian beliefs, ensuring access to safety and life-saving medical procedures, and employment authorization. Proposed Intervenors also seek to defend the Parole Programs in a manner that is distinct from Defendants, by elucidating the humanitarian concerns addressed and public benefits accruing from these Parole Programs, rather than focusing on the scope of executive authority.

Moreover, under the terms of the Parole Programs, Defendants maintain their authority to summarily expel (under Title 42) or otherwise impose "significant consequences" on Cubans, Haitians, Nicaraguans, and Venezuelans who do *not* meet Defendants' requirements. Defendants also presumably assert the right to revoke any parole benefit provided under the programs. That authority underscores the adversity between Defendants and Proposed Intervenors. Proposed Intervenors hope to maintain the Parole Programs so that they and prospective parolees may realize the direct benefits of the programs, and *not* for purposes of "increas[ing] security at the border and reduc[ing] [migration

15

flows].” *Fact Sheet*, *supra*, at 2 n.1.

Here, as in the two *Texas* cases discussed *supra*, Defendants' interests in preventing Plaintiffs from impinging on the federal government's authority to regulate immigration differs from Proposed Intervenors' interests in securing and defending the humanitarian and public benefits of the programs for individuals they are sponsoring. Proposed Intervenors' and Defendants' adverse interests and "lack of unity in all objectives, combined with real and legitimate additional or contrary arguments" suffice to rebut any presumptions of adequate representation. *Texas*, 805 F.3d at 662.

**B.  Proposed Intervenors Also Meet the Requirements for Permissive Intervention.**

On a timely motion, courts may permit a nonparty to intervene where the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact" and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3); *accord League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989) [hereinafter "LULAC"]. In determining whether to permit intervention, courts should consider other factors, including adequate representation by other parties and whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (citation omitted); *accord LULAC*, 884 F.2d at 189.

Proposed Intervenors satisfy these standards. As stated above, Proposed Intervenors' motion is timely. Proposed Intervenors also have a defense that shares a common question of law or fact with this litigation: they seek to defend against Plaintiffs' challenge to the lawfulness of the Parole Programs. And Proposed Intervenors' arguments arise from the same set of facts as the claims of the existing parties: Defendants' implementation of the Parole Programs. Thus, Proposed Intervenors meet the first two requirements of permissive intervention. Moreover, intervention will not unduly delay or prejudice the existing parties' rights for the same reasons Proposed Intervenors' motion is

16

timely. *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021) ("The [undue delay and prejudice] analysis . . . is essentially the same as the timeliness analysis."). Finally, Proposed Intervenors will significantly contribute to the full development of relevant facts at issue, including the need for, impact of, and resulting public benefits of the Parole Programs—including how they actually benefit the states challenging them.

In *Texas,* this Court granted a request for permissive intervention, holding that: (1) the motion was timely where it was filed before a decision on a preliminary injunction motion; (2) proposed intervenors' defense of the challenged immigration policy shared questions of law and fact with the main action; (3) there was no undue prejudice or delay where intervention would not disrupt the extant briefing schedule; and (4) proposed intervenors' interests in the welfare of directly impacted individuals were not adequately represented by the federal government's "chiefly institutional and political" interests. *Texas*, 2021 WL 411441 at *2-4. The relevant factors in this case are materially indistinguishable.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court grant them intervention.

Respectfully submitted,

*/s/ Esther H. Sung*
**Esther H. Sung (Attorney-In-Charge)**
California Bar No. 255962
esther.sung@justiceactioncenter.org
*Pro hac vice filed March 29, 2023*
*Application for Admission forthcoming*

**Karen C. Tumlin***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

17

**Jane Bentrott\***
California Bar No. 323562
D.C. Bar No. 1029681
Virginia Bar No. 87903
jane.bentrott@justiceactioncenter.org

**Lauren Michel Wilfong\***
New York Bar No. 5975529
New Jersey Bar No. 378382021
*Not admitted to practice law in California*
lauren.wilfong@justiceactioncenter.org

JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

**Tamara F. Goodlette**
Texas Bar No. 24117561
Colorado Bar No. 35775
Arizona Bar No. 034365
tami.goodlette@raicestexas.org

**Daniel Hatoum**
Texas Bar No. 24099136
New York Bar No. 5598339
daniel.hatoum@raicestexas.org

**Vanessa Rivas-Bernardy\***
California Bar No. 341464
vanessa.rivas@raicestexas.org

THE REFUGEE AND IMMIGRANT CENTER FOR
EDUCATION AND LEGAL SERVICES (RAICES)
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
Telephone: (210) 960-3206
Facsimile: (210) 634-1279

**Monika Y. Langarica\***
California Bar No. 308518
langarica@law.ucla.edu

**Ahilan T. Arulanantham\***
California Bar No. 237841
arulanantham@law.ucla.edu

18

**CENTER FOR IMMIGRATION LAW AND POLICY**
UCLA SCHOOL OF LAW
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

*pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing motion via the Court's ECF

filing system.

*/s/ Esther H. Sung*
Esther H. Sung

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the total number of words in this motion, exclusive

of the matters designated for omission, is 4997 words as counted by Microsoft Word Software.

*/s/ Esther H. Sung*
Esther H. Sung