**EXHIBIT D:** Declaration of Eric Sype

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 6:23-cv-00007 |

**DECLARATION OF ERIC SYPE**
**(pursuant to 28 U.S.C. § 1746)**

I, Eric Sype, upon my personal knowledge, hereby declare as follows:

1. I am a United States citizen currently living in Oakland, California. I was born in Wenatchee, Washington, in 1993. I lived in Cashmere, Washington, until the age of 18, when I moved to attend Seattle University, where I earned my bachelor's degree in 2015. In 2021, I earned a graduate degree in Development Practice at the University of California, Berkeley.

2. I have been living in Oakland since January 2023. I currently work as the U.S. organizer for an international digital rights nonprofit. I have had my current job since 2021, when I finished my graduate program.

3. Together with my parents, I am in the process of submitting to United States Citizenship and Immigration Services ("USCIS") Form I-134A, Online Request to be a Supporter and

1

Declaration of Financial Support, on behalf of my close longtime friend, Oldrys, who lives in Nicaragua.

4. Oldrys is 34 years old. He is married to Marlene, and they have two children: a 7-year-old son and a 2-year-old daughter. They all live in a community called El Limón Dos in Nicaragua. Oldrys currently works in construction. I understand he attended some university but was unable to complete his degree due to certain filing fees.

5. I have known Oldrys since 2014, when I interned with a non-governmental organization in Nicaragua that focused on youth empowerment. Oldrys's family hosted me in their home for the four months that I was there, and I became incredibly close with the family. Since returning to the United States, I speak with them by phone at least once a month, and often weekly. I visit them whenever I have an opportunity to do so, especially for important family milestones like the birth of Oldrys's children and the marriage of his sister. Before the COVID pandemic, I tried to visit them at least once a year and have been fortunate to see them about seven times over the past nine years. Each time I visit, I stay in Oldrys's family's home.

6. During one year that I lived in Colombia, I was unable to return home to Washington for the holidays, so I visited Oldrys's family in Nicaragua instead. Oldrys and his family again welcomed me into their home, inviting me to join their Christmas and New Year's celebrations, which are very significant to their family and community.

7. In 2021, I visited Nicaragua to attend the wedding of Oldrys's sister. Despite their family hosting wedding celebrations during that time, they also hosted me and my partner in their home for the duration of our visit. In their community, it is customary for the family of the wedding party to serve food at the celebration. My partner and I participated in the serving of the food as part of Oldrys's family.

2

8. I also traveled to Nicaragua as soon as possible after the birth of each of Oldrys's children and was able to meet his son when he was only a month old, and his daughter when she was only 14 months old.

9. Oldrys and his family live in a community with few opportunities; he works in construction but is chronically underemployed and barely earns enough to meet his family's basic needs, which is very hard for Oldrys. The economic situation has only gotten worse with the pandemic and political instability in Nicaragua. Over the last six months, Oldrys has been seeking ways to better provide for his family. But the options in Nicaragua and surrounding areas are limited and often dangerous or exploitative. As soon as I heard about the new parole process for Nicaraguans, I told Oldrys about it and promised to get more information if he was interested. Oldrys now hopes to come to the United States to benefit from employment authorization and opportunities as part of the parole program for Nicaraguans.

10. My parents and I are prepared to attest to our ability to sponsor and financially support Oldrys for the next two years so that he may be considered for authorization to travel to the United States and seek parole under the recently established parole process for Nicaraguans.

11. Members of my family own apple, pear, and cherry orchards in Washington that rely heavily on migrant labor from Mexico through the H-2A program. The family farm constantly suffers from labor shortages and is looking for additional workers. My cousin is willing and eager to provide Oldrys employment at the orchards, and Oldrys is excited to take advantage of the opportunity if and when he is granted permission to work in the United States. Oldrys is excited for the opportunity to improve his English, spend time with me and my family, and for new experiences and opportunities in the United States.

12. I am sponsoring Oldrys as a way to reciprocate the warmth and generosity his family has shown me over the years. He and his family have been extremely welcoming, kind, and supportive of me. They welcomed me into their home, family, and community nearly a decade ago, when I was a young person in an unfamiliar country. I have tried to return that love and support in any way that I can. This is no exception; if I can support Oldrys through this process, I will do it.

13. I also believe in participating in this program as a way to mitigate the destabilization that United States foreign policy has contributed to in countries like Nicaragua. Oldrys's family have suffered from economic instability in their community and if obtaining authorization to work in the United States can offset their suffering, I think that's a good thing.

14. When I learned about the opportunity to sponsor Oldrys through this program, I began gathering the necessary documents and information to do so. This required collecting documents and information pertaining to me, my parents, and Oldrys. Because of how onerous the process is, I have not yet submitted the application, but plan to do so as soon as possible. We are waiting, for example, for an appraisal of my parents' home, so that we can include that as an asset in the I-134A application.

15. If Oldrys is approved to come to the United States under the program, he will live with my parents, whose home is located minutes away from my family's apple, pear, and cherry orchards in Cashmere, Washington. My parents have a four-bedroom home that they live alone in with their dog. They are willing and able to host Oldrys there and provide him food, shelter, and transportation for the duration of his stay. I will personally ensure that Oldrys feels welcome in the United States by introducing him to the community that I was born and raised in. Also, I

have taught English as a Second Language classes in the past and plan to conduct weekly English classes with Oldrys over video calls.

16. Oldrys plans to return to his family in Nicaragua at the conclusion of his parole period. He has spoken with me at length to weigh the benefits of participating in this program with the temporary absence from his family. Although Oldrys wants to proceed with his participation in the parole program in order to invest in his family's future, he has strong bonds to his family and community in Nicaragua which he is anxious to return to.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed at Oakland, California on March 26, 2023.

_____
Eric Sype