**EXHIBIT E:** Declaration of Dr. Kate Sugarman

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

STATE OF TEXAS, *et al.*,

        *Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,

        *Defendants*.

Case No. 6:23-cv-00007

**DECLARATION OF DR. KATE SUGARMAN**
**(pursuant to 28 U.S.C. § 1746)**

I, Dr. Kate Sugarman, upon my personal knowledge, hereby declare as follows:

1. I was born in 1961, in Baltimore, Maryland. I am a United States citizen.

2. I currently live in Montgomery County, Maryland. I have lived here since 2002.

3. I am a family physician and work in Washington, D.C. at a Federally Qualified Health Center, which is a public health clinic that provides medical care to underserved populations regardless of their ability to pay. I graduated from Sidney Kimmel Medical College at Thomas Jefferson University in 1988 and finished my residency in 1991. My residency focused on social medicine, which emphasizes treating the poor and underserved. I practiced for a few years in New York, then spent six years working at various health clinics in Israel, returning to the United States in 2002. I am also adjunct faculty at the Center for Applied Legal Studies at Georgetown

1

University Law Center, and I have taught at the Catholic University of America Columbus School of Law.  I collaborate with Capital Area Immigrants' Rights Coalition and I have led workshops at the North American Refugee Health Conference.

    4.   I treat many immigrants in my practice, and I regularly conduct forensic examinations for asylum cases, including documenting evidence of torture. I have been trained in forensic examinations by Physicians for Human Rights and I have completed about 600 such examinations in total.

    5.   I have submitted to United States Citizenship and Immigration Services Form I-134, Declaration of Financial Support, so that I can sponsor the mother of a young woman suffering from various rare and life-threatening medical conditions, including progressive neurologic disorders that can cause the compression of the spinal cord and brain stem, which in turn can cause the loss of movement, numbness, pain, and problems with breathing. I am able to sponsor and financially support the young woman's mother for the next two years so that the mother may be considered for authorization to travel to the United States and seek parole under the recently established parole process for Venezuelans.

    6. I learned about the opportunity to sponsor this woman's mother through my volunteer work with the D.C. Migrant Solidarity Mutual Aid Network. I joined the Network in about April 2022, and I am one of hundreds of volunteers who coordinate assistance for migrants. Volunteers come from all walks of life and constantly make requests to coordinate transportation, temporary housing, and legal services for migrants, as well as to supply migrants with necessities such as food and clothing. In the months since I joined the Network I have been intermittently active, responding to requests that come up depending on my ability to contribute to that particular

request and my availability at that time. Since I am a doctor, I typically try to help with any request I see that involves a medical question or requires a medical referral.

6. In November, I responded to a request for sponsorship. Over the course of the following month, I communicated and coordinated with individuals in the Network who are in touch with both the woman in need of medical treatment and her mother. The volunteers shared information about the situation and helped guide me through the sponsorship process. I also spoke with the young woman. However, because I am extremely busy, I relied on the volunteers to help me with many of the logistics.

7. The woman whose mother I am sponsoring suffers from a degenerative neurological condition, as well as numerous other chronic ailments, and her health is rapidly deteriorating. She needs immediate corrective surgery to stop the progression of her conditions so that she does not continue to lose basic bodily functions, but the doctors will not perform the surgery until she has someone present who can provide her the full-time care she will need in the months after the surgery. I want to sponsor her mother because she is the only person who can provide this young woman with this comprehensive care and help her recover following her surgery.

8. On December 22, 2022, I filed the I-134. The application took me a few hours to complete even with the support of a volunteer lawyer. I found the application to be stressful and confusing. The questions were not clear to me.

9. I am worried that the young woman's condition has deteriorated substantially in the months that it has already taken to adjudicate my sponsorship application. On February 6, 2023, I contacted Senator Chris Van Hollen about my application to ask if it could be expedited, but his office told me they were unable to do so.

10. I worry that if the program is terminated before her mother arrives, the young woman

may not be able to receive the life-saving surgery that she needs.

11. I agreed to sponsor this woman's mother because I want to help her. I have never met her, but as a physician, I understand the severity of her condition and the urgency for her to receive care. Her situation is dire, and I am well-situated to help as I am privileged to have the means to support her mother: I own my house, I am employed as a physician, and I have sufficient savings. After considering the situation and my ability to help, I decided to sponsor this woman's mother.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed at Washington, D.C. on March 29, 2023.

_Dr. Kate Sugarman_
Dr. Kate Sugarman