**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 6:23-cv-00007 |
| | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY., et al. | ) | |
| | ) | |
| Defendants. | ) | |

<u>DEFENDANTS' OPPOSITION TO</u>
<u>PLAINTIFFS' MOTION FOR EXTRA-RECORD DISCOVERY</u>

**Table of Contents**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 5

   **(A) There is a presumption against discovery in APA cases**
     **which Plaintiffs have not overcome.** ........................................................ 5

    (i) Plaintiffs have not shown that Defendants deliberately or
      negligently excluded documents from the record. ........................................ 9

    (ii) Plaintiffs have not shown that the court requires additional
      "background" documents because of the technical nature of this case.. ...................... 10

    (iii) Defendants have not failed to explain their policy
      choices to frustrate judicial review. ............................................................. 13

   **(B) Plaintiffs cannot seek discovery based on an ultra**
     **vires claim.** ............................................................................................... 13

CONCLUSION ........................................................................................................ 21

CERTIFICATE OF SERVICE ................................................................................ 23

CERTIFICATE OF WORD LIMIT ........................................................................ 23

## Table of Authorities

Cases

*Aderholt v. Bureau of Land Mgmt.*,

    No. 7:15-CV-00162-O, 2017 WL 11698630 (N.D. Tex. May 1, 2017) .................................... 8

*Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*,

    663 F.3d 476 (D.C. Cir. 2011) ........................................................................ 1, 7, 9

*Am. Wildlands v. Kepthorne*,

    530 F. 3d 991 (D.C. Cir. 2008) ................................................................................ 9

*Asarco, Inc. v. EPA*,

    616 F.2d 1153 (9th Cir. 1980) .............................................................................. 10

*Bar MK Ranches v. Yeutter*,

    994 F.2d 735 (10th Cir. 1993) ......................................................................... 6, 10

*Bellion Spirits, LLC v. United States*,

    335 F. Supp. 3d 32 (D.D.C. 2018) ....................................................................... 21

*Bimini Superfast Operations LLC v. Winkowski*,

    994 F. Supp. 2d 103 (D.D.C. 2014) ....................................................................... 6

*Cap. Area Immigrants' Rts. Coal. v. Trump*,

    471 F. Supp. 3d 25 (D.D.C. 2020) ...................................................................... 16

*CESC Plaza Ltd. P'ship v. U.S. Dep't of Com.*,

    215 F.3d 1317 (4th Cir. 2000) ............................................................................. 10

*Citizens for Appropriate Rural Roads v. Foxx*,

    815 F.3d 1068 (7th Cir. 2016) ............................................................................... 7

*City of Dallas, Tex. v. Hall*,

    No. CIV.A. 307-CV-0060-P, 2007 WL 3257188 (N.D. Tex. October 29, 2007) ................. 6, 7

*Cone v. Caldera*,

    223 F.3d 789 (D.C. Cir. 2000) ............................................................................ 10

*Dallas Safari Club v. Bernhardt*,

    518 F. Supp. 3d 535 (D.D.C. 2021) ................................................................. 19, 20

*Davis Mountains Trans-Pecos Heritage Ass'n. v. Fed. Aviation Admin.*,

    116 F. App'x 3 (5th Cir. 2004) ......................................................................... 10, 11

*Dep't of Commerce v. New York*,

    139 S. Ct. 2551 (2019) ............................................................................... passim

*Dist. Hosp. Partners, L.P. v. Sebelius*,

    971 F. Supp. 2d 15 (D.D.C. 2013) ........................................................................ 6

*E. V. v. Robinson*,

    906 F.3d 1082 (9th Cir. 2018) ........................................................................... 19

*Eco Tour Adventures, Inc. v. Zinke*,

    249 F. Supp. 3d 360 (D.D.C. 2017) ...................................................................... 2

*Envtl. Def. Fund, Inc. v. Costle*,

    657 F.2d 275 (D.C. Cir. 1981) ........................................................................... 11

*Fla. Power & Light Co. v. Lorion*,

    470 U.S. 729 (1985) ............................................................................... 1, 5, 18

*Geyen v. Marsh*,

    775 F.2d 1303 (5th Cir. 1985) ........................................................................... 19

*Green Valley Special Util. Dist. v. City of Schertz, Texas*,

    969 F.3d 460 (5th Cir. 2020) ................................................................. 18

*In re MPF Holdings US LLC*,

    701 F.3d 449 (5th Cir. 2012) ................................................................... 2

*In re United States*,

    875 F.3d 1200 (9th Cir. 2017) ............................................................... 10

*Indep. Turtle Farmers of Louisiana, Inc. v. United States*,

    703 F. Supp. 2d 604 (W.D. La. 2010)..................................................... 19

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*,

    58 F. Supp. 3d 1191 (D.N.M. 2014) ....................................................... 20

*Ketcham v. U.S. Nat'l Park Serv.*,

    No. 16-CV-00017-SWS, 2016 WL 4268346 (D. Wyo. Mar. 29, 2016)................................... 20

*Knight v. U.S. Army Corps of Engineers*,

    No. 4:18-CV-352, 2019 WL 3413423 (E.D. Tex. July 29, 2019) ....................................... 12, 13

*Kotha v. Renaud*,

    No. 3:21-CV-641-N, 2021 WL 4027697 (N.D. Tex. May 12, 2021)...................................... 19

*Locke v. Warren*,

    No. 19-61056-CIV, 2019 WL 4805716 (S.D. Fla. Oct. 1, 2019) ............................................ 19

*Louisiana ex rel. Guste v. Verity*,

    853 F.2d 322 (5th Cir. 1988) ................................................................... 6

*Mack Trucks, Inc.* v. *EPA*,

    682 F.3d 87 (D.C. Cir. 2012)................................................................... 16

*Malone Mortg. Co. Am. v. Martinez*,

  No. 3:02-CV-1870-P, 2003 WL 23272381 (N.D. Tex. Jan. 6, 2003)........................................ 8

*Medina Cty. Envtl. Action Assn. v. Surface Transp. Bd.*,

  602 F.3d 687 (5th Cir. 2010) ........................................................................................... passim

*Motor Vehicle Mfrs. Ass'n. v. State Farm*,

  463 U.S. 29 (1983)............................................................................................................... 5

*Nat'l Audubon Soc. v. Hoffman*,

  132 F.3d 7 (2d Cir. 1997) ................................................................................................... 11

*NVE, Inc. v. Dep't of Health & Hum. Servs.*,

  436 F.3d 182 (3d Cir. 2006).................................................................................................. 7

*Oceana, Inc. v. Ross*,

  920 F.3d 855 (D.C. Cir. 2019)............................................................................................... 9

*Porter v. Califano*,

  592 F.2d 770 (5th Cir. 1979) .............................................................................................. 20

*Presbyterian Church (U.S.A.) v. United States*,

  870 F.2d 518 (9th Cir. 1989) .............................................................................................. 19

*Reaves v. U.S. Small Bus. Admin.*,

  No. 3:18-CV-1230-B, 2020 WL 3976984 (N.D. Tex. July 14, 2020)..................................... 13

*Redeemed Christian Church of God v. USCIS*,

  331 F. Supp. 3d 684 (S.D. Tex. 2018) .................................................................................. 5

*Saleh v. Pompeo*,

  No. 17CV4574RPKCLP, 2020 WL 1919406 (E.D.N.Y. Apr. 20, 2020)................................. 8

*Sierra Club v. Peterson*,

    185 F.3d 349 (5th Cir. 1999) ................................................................ 11

*Sierra Club v. U.S. Dep't of Energy*,

    26 F. Supp. 2d 1268 (D. Colo. 1998)...................................................... 13

*Simmat v. U.S. Bureau of Prisons*,

    413 F.3d 1225 (10th Cir. 2005) ............................................................. 18

*Suffolk Cty. v. Sec'y of Interior*,

    562 F.2d 1368 (2d Cir. 1977)................................................................. 10

*Texas Comm. on Nat. Res. v. Van Winkle*,

    197 F. Supp. 2d 586 (N.D. Tex. 2002) .................................................... 6

*Texas v. Biden*,

    No. 2:21-CV-067-Z, 2021 WL 4552547 (N.D. Tex. July 19, 2021)................................ 18, 20

*Texas v. United States*,

    606 F. Supp. 3d 437 ............................................................................. 14

*Zhang v. Slattery*,

    55 F.3d 732 (2d Cir. 1995).................................................................... 16

Regulations

5 U.S.C. § 706............................................................................... 1, 13, 19

5 U.S.C. § 706(2)(C)........................................................................ 19, 20

8 U.S.C. § 1101(a)(42)........................................................................... 16

8 U.S.C. § 1182(d)(5) ............................................................................ 20

8 U.S.C. § 1182(d)(5)(A)...................................................................... 4, 5

## INTRODUCTION

Plaintiffs' Motion for Extra-Record Discovery (Pl. Mot.) seeks wide-ranging discovery into standing, remedy, the merits of Plaintiffs' claims, the effects of the four processes Plaintiffs challenge, agency decision making, and even foreign affairs. *See* ECF No. 102. While Defendants do not oppose Plaintiffs' requests targeted at standing and remedy—issues that are not evaluated based upon the administrative record—Defendants oppose the remainder of the requests that improperly seek discovery on merits issues in an Administrative Procedure Act (APA) case. Outside of narrow exceptions that do not apply here, the Court's review of the merits of an APA claim is limited to the administrative record.

The "fundamental principle[] of judicial review of agency action" is that "the focal point [] should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); 5 U.S.C. § 706. Yet, Plaintiffs ask this Court to take the "unusual step" of "authoriz[ing] discovery outside the administrative record" on the merits of their claims. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2564 (2019). Merits discovery is permitted in an APA case only if "a party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record," and only then can a party argue "it should be granted limited discovery." *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487–88 (D.C. Cir. 2011). Plaintiffs have failed to meet this standard.

Plaintiffs do not discuss this standard and instead rely upon the standard for supplementation of the record. But there is a critical difference between arguing that an administrative record should be supplemented to include a particular document that was

considered by the agency and is missing from the administrative record and asking the Court for permission to go on a fishing expedition into the merits of agency action. Plaintiffs seek to do the latter in many of their proposed discovery requests.[1] Plaintiffs have not met their burden to identify specific documents that should have been included in the record. In fact, despite having time to do so, Plaintiffs do not discuss the nearly 7,000-page administrative records Defendants filed—let alone explain why they believe these records are insufficient to permit review of their claims, identify any documents that are missing, or explain why they think such materials will be obtained in discovery. Nor do they argue bad faith. Accordingly, their motion for discovery, to the extent it seeks merits discovery, should be denied.

To be clear, Defendants do not challenge Plaintiffs' requests for jurisdictional discovery or discovery on remedy.[2] Indeed, Defendants filed their own motion for jurisdictional discovery. *See* ECF No. 101. Notwithstanding the fact that discovery is not typically permitted into the merits of an APA case, "jurisdictional discovery may be warranted if the issue of subject matter jurisdiction turns on a disputed fact," *In re MPF Holdings US LLC*, 701 F.3d 449, 457 (5th Cir. 2012), or if the court must evaluate irreparable harm, *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 370 (D.D.C. 2017). But many of Plaintiffs' discovery demands have nothing to do with standing or remedy.

---

[1] Following a meet-and-confer, Defendants oppose Plaintiffs' proposed requests for production numbers 1-4, 10-13, interrogatories numbers 2, 6-9, 13-15, and requests for admission numbers 5-10, 12, which address neither standing or remedy, but instead the merits.

[2] Following a meet-and-confer, Defendants do not oppose Plaintiffs serving requests for production numbers 5-9, 14, interrogatories numbers 1-3, 5, 10-12 and requests for admission numbers 1-4, 11, which relate to standing and remedy. Defendants reserve their right to preserve any privilege objections and to object that some of these demands are vague and overly broad. Notwithstanding that reservation of rights, Defendants anticipate responding to these demands and producing documents and data where such are available, with the caveat that in some circumstances data may not be tracked in the manner requested.

Plaintiffs acknowledge that their discovery requests are not aimed solely at jurisdiction and remedy, but rather include inquiry into the merits of their statutory claims, Pl. Mot. 5-6, "agency decision making," *id*. at 6, "notice-and comment," *id*. at 9, and even foreign affairs, *id.* at 10. For example, in request for production number 10, Plaintiffs seek "all internal comparisons or evaluations of advance travel authorization forms to the forms required for visas or the Electronic System Travel Authorization." Pl. Ex. A. During a meet-and-confer, Plaintiffs' counsel explained that they are seeking documents that address why certain questions that appear on various visa applications do not appear on the travel authorization questionnaires used for the four challenged parole processes, and vise-versa. Plaintiffs do not explain in their motion, nor were they able to explain on the phone, how this request goes to standing or remedy. It does not. To the extent it is relevant, it is a merits request, seeking documents that are likely subject to the deliberative process privilege, and which are not discoverable. *Dep't of Commerce*, 139 S. Ct. at 2573-74 ("judicial inquiry into executive motivation represents . . .  should normally be avoided.").

In request for production number 12, Plaintiffs seek "all documents relating to agreements or commitments by the Government of Mexico relating to the Parole Program," Pl. Ex. A, which would include not just any "agreements or commitments" reached with Mexico, but seemingly any document "relating to" such commitments—that is, likely privileged documents related to highly sensitive commitments between the United States and a foreign sovereign that do not relate to Plaintiffs' standing or remedy.

In interrogatory number 8, Plaintiffs ask Defendants to "[i]dentify, by month, the number (both total and residing in each Plaintiff State) of adults in the United States from each of Cuba, Haiti, Nicaragua, and Venezuela with" varying immigration statuses including, among others, U.S. Citizens, lawful permanent residents, lawful temporary residents, and conditional permanent

residents. Pl. Ex. A. These individuals, some of whom may have been in the United States for decades, is not relevant to standing or remedy—or the four challenged processes. Plaintiffs' counsel declined to narrow this request during the meet-and-confer, and therefore Defendants oppose it in full.

In interrogatory number 9, Plaintiffs ask Defendants to "[i]dentify, by month, the number (both total and residing in each Plaintiff State) of (1) grants of parole of aliens under 8 U.S.C. § 1182(d)(5)(A) since January 20, 2021, and (2) how many of such grantees of parole remain in the United States (and within each Plaintiff State). Note that this inquiry is not limited to grants of parole under the Parole Program." *Id*. During the meet-and-confer, Plaintiffs' counsel confirmed that they are not limiting this inquiry to Cubans, Haitians, Nicaraguans and Venezuelans released into the country under the four challenged processes, and they are even not limiting it to those nationalities. They want this data for every noncitizen *from every country in the world*. To the extent this demand seeks data about individuals from countries other than Cuba, Haiti, Nicaragua and Venezuela it does not go to standing or remedy in this case. In fact, it is not relevant to this case at all. Because Plaintiffs refused to narrow the scope of this interrogatory, Defendants oppose it entirely.

In interrogatory number 2, Plaintiffs ask Defendants to "[i]dentify (for the Parole Program) the average processing time for (a) the adjudication of Form I-134A[3] by an intending supporter of an alien, (b) from approval of the Form I-134A to the approval of advanced travel authorization, and (c) at the port of entry for parole beneficiaries," which not only has nothing to do with standing or remedy, but is irrelevant to this case.

---

[3] Form I-134A is the Online Request to be a Supporter and Declaration of Financial Support.

4

Request to admit number 7 asks Defendants to "[a]dmit that the vetting and screening of Parole Program beneficiaries is not as thorough as aliens applying for a visa to come to the United States." *Id.* This request seeks information about how the parole processes operate and the merits of Plaintiffs' challenges to the processes. Under the APA, these questions should be answered by review of the challenged processes themselves and the administrative records that support them.

In short, none of these discovery requests (and the others Defendants note in FN 1) have anything to do with standing or remedy. To the extent they are relevant, they are discovery requests into the merits of Defendants' actions. This type of discovery is impermissible in an APA case under the decades-old principle, recently reaffirmed by the Supreme Court, that a "court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record" in evaluating the merits of APA claims, and that exceptions are to be construed narrowly. *Dep't of Commerce*, 139 S. Ct. at 2564. Accordingly, Plaintiffs' motion, to the extent it seeks discovery beyond the subject of standing or remedy, should be denied.

## ARGUMENT

**(A)  There is a presumption against discovery in APA cases which Plaintiffs have not overcome.**

"When an agency action has been challenged under the APA, the district court sits as an appellate court," and the "entire case on review is a question of law." *MRC Energy Co. v. USCIS*, No. 3:19-CV-2003-K, 2021 WL 1209188, at *3 (N.D. Tex. Mar. 31, 2021) (citing *Redeemed Christian Church of God v. USCIS*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018)). Accordingly, the district court's review must be "based on the record the agency presents." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Dep't of Commerce*, 139 S. Ct. at 2573-74 ("in reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *Motor Vehicle Mfrs. Ass'n. v. State*

*Farm*, 463 U.S. 29, 50 (1983) (The function of the district court is to assess the lawfulness of the agency's action based on the reasons offered by the agency.); *Texas Comm. on Nat. Res. v. Van Winkle*, 197 F. Supp. 2d 586, 595 (N.D. Tex. 2002) ("In reviewing administrative agency decisions, the function of the district court is to determine whether as a matter of law, *evidence in the administrative record* permitted the agency to make the decision it did…") (emphasis added). "Nor are the courts permitted to consider evidence outside the administrative record. . . [Rather,] [a]gency action is to be upheld, if at all, on the basis of the record before the agency at the time it made its decision." *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988) (internal citations omitted).

Accordingly, once federal agencies assemble and produce the administrative record, they are entitled to a "strong presumption" that they "properly designated" this record, a presumption that may be overcome only by "clear evidence to the contrary[.]" *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014) (citation omitted); *City of Dallas, Tex. v. Hall*, No. CIV.A. 307-CV-0060-P, 2007 WL 3257188, at *4 (N.D. Tex. October 29, 2007) (citing *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 740 (10th Cir. 1993)) ("the designation of the administrative record, like any established administrative procedure, is entitled to a presumption of administrative regularity."); *see also, e.g., Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015).

Because the district court generally must restrict its inquiry to the administrative record, merits discovery in APA cases is exceptionally rare and permitted only in certain narrow circumstances that do not apply here. *Dep't of Commerce*, 139 S. Ct. at 2573-74 ("judicial inquiry into executive motivation represents a substantial intrusion into the workings of another branch of

6

Government and should normally be avoided."); *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1081-82 (7th Cir. 2016) ("Generally, discovery is not appropriate for claims brought under the APA since review of an agency's decision is confined to the administrative record."); *NVE, Inc. v. Dep't of Health & Hum. Servs.*, 436 F.3d 182, 195 (3d Cir. 2006) ("There is a strong presumption against discovery into administrative proceedings born out of the objective of preserving the integrity and independence of the administrative process."); *City of Dallas, Tex.*, 2007 WL 3257188, at *14 ("parties seeking to reverse an agency decision are not commonly allowed to supplement the administrative record through discovery.").

Plaintiffs do not dispute the general record rule that discovery in APA cases is not permitted but argue that there are exceptions to it. Pl. Mot. at 6-10. In support of this proposition, Plaintiffs cite *Medina Cty. Envtl. Action Assn. v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). *Id.* But *Medina* does not address extra-record *discovery*; it concerns *supplementation* of the record. There are important distinctions between seeking extra-record discovery and seeking to supplement the record. In the latter circumstance, the party seeking supplementation has specific documents in its possession that it has identified as missing from the record and an argument for why they ought to have been included; in the other circumstance, the party is asking for permission to seek discovery to determine if any documents are missing. "To obtain discovery from an agency in an APA case, a party must overcome the presumption that the agency properly designated the administrative record. . . . The party must provide the court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record or the party must make a significant showing that it will find material in the agency's possession indicative of bad faith or an incomplete record." *City of Dallas, Tex.*, 2007 WL 3257188, at *14; *Air Transp. Ass'n of Am.*, 663 F.3d at 487–88 ("Discovery typically is not

available in APA cases. But if a party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record, it should be granted limited discovery."). Even when this standard is met "[d]iscovery to complete the record is not to be broad ranging. Its primary function is to offer assurance that the administrative record is complete in areas where completeness is suspect." *Malone Mortg. Co. Am. v. Martinez*, No. 3:02-CV-1870-P, 2003 WL 23272381, at *4 (N.D. Tex. Jan. 6, 2003).

Plaintiffs have not satisfied this burden. They have not offered any reason to believe the administrative records are incomplete, have not specified what documents they expect to obtain in discovery, and have not offered any evidence that Defendants engaged in bad faith. Their request for discovery should be denied to the extent any of their requests seek information that is not directly linked to their standing to bring their claims and the scope of any remedy. *See Saleh v. Pompeo*, No. 17CV4574RPKCLP, 2020 WL 1919406, at *8 (E.D.N.Y. Apr. 20, 2020) (denying discovery because "plaintiff has not provided any real evidence of [] bad faith or any support for his claim that there were documents that were before the agency that have not been included in the Administrative Record."); *Aderholt v. Bureau of Land Mgmt.*, No. 7:15-CV-00162-O, 2017 WL 11698630, at *2 (N.D. Tex. May 1, 2017) (denying motion for discovery because plaintiff did not show that administrative record was incomplete); *Malone Mortg.*, 2003 WL 23272381, at *5 (denying discovery because "Plaintiff has presented no 'clear evidence' indicating that the decision makers actually relied on any documents not submitted to this Court"); *Alabama-Tombigbee Rivers Coal. v. Norton*, No. CIV.A.CV-01-S-0194-S, 2002 WL 227032, at *5 (N.D. Ala. Jan. 29, 2002) (denying discovery because plaintiff did not offer strong evidence of bad faith by defendant).

Instead of focusing upon cases that concern the rare circumstances when *discovery* is permitted in APA cases or addressing the many cases denying such discovery, Plaintiffs focus solely upon cases concerning the slightly different and less onerous standard for *supplementation* of the record. But even under that standard, they fail to meet the test. "Supplementation of the administrative record is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency." *Medina*, 602 F.3d at 706 (quoting *Am. Wildlands v. Kepthorne*, 530 F. 3d 991, 1002 (D.C. Cir. 2008)). Those "unusual circumstances" include when "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . . (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Medina,* 602 F.3d at 706.  Plaintiffs have not satisfied any of these exceptions.

### (i)  Plaintiffs have not shown that Defendants deliberately or negligently excluded documents from the record.

Plaintiffs have not shown that Defendants deliberately or negligently excluded documents that are adverse to its decision from the record. Indeed, Plaintiffs hardly reference the administrative record at all. And tellingly, Plaintiffs have not identified documents (or general categories of documents) they believe Defendants omitted from the record and that they will find in discovery. *See Air Transp. Ass'n of Am.*, 663 F. 3d at 487-88 (party seeking discovery must make a substantial or prima facie showing that it will find material in the agency's possession indicative of bad faith or an incomplete record). Plaintiffs also have not overcome the presumption of regularity that attaches to the administrative record. "The court assumes the agency properly designated the administrative record absent clear evidence to the contrary." *Oceana, Inc. v. Ross*,

920 F.3d 855, 865 (D.C. Cir. 2019) (citing *Bar MK Ranches*, 994 F.2d at 740); *accord, e.g., In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017) ("The administrative record submitted by the government is entitled to a presumption of completeness which may be rebutted by clear evidence to the contrary."), *vacated on other grounds*, 138 S. Ct. 443 (2017); *In re United States Dep't of Def.*, No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. October 4, 2016) (same); *CESC Plaza Ltd. P'ship v. U.S. Dep't of Com.*, 215 F3d 1317 (4th Cir. 2000) (same); *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (same). Plaintiffs have not come forward with any evidence, let alone "clear evidence," to suggest that Defendants engaged in bad faith when assembling the administrative records or identified any existing document missing from the records to justify supplementation—let alone expansive merits discovery. Where such clear evidence is lacking, "a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Dep't of Commerce*, 139 S. Ct. at 2573.

### (ii)   Plaintiffs have not shown that the court requires additional "background" documents because of the technical nature of this case.

Plaintiffs claim that the second *Medina* exception applies here because a key issue in this case "is whether Defendants ignored critical factors in the challenged memoranda," Pl. Mot. at 8, and "it will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." Pl. Motion at 7 (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980)). But *Asarco* was a National Environmental Policy Act ("NEPA") case, and there is a specific exception to the record rule for NEPA cases. *Davis Mountains Trans-Pecos Heritage Ass'n. v. Fed. Aviation Admin.*, 116 F. App'x 3, 12 (5th Cir. 2004) (discussing "exception" to the "record rule" specifically for consideration of "environmental impacts under NEPA"); *Suffolk Cty. v. Sec'y of Interior*, 562 F.2d

10

1368, 1384 (2d Cir. 1977) (same). Plaintiffs ignore that the second *Medina* exception—which permits, in limited circumstances, supplementation of the administrative record with "background information" in "highly technical" cases—applies mostly to NEPA cases. *Sierra Club v. Peterson*, 185 F.3d 349, 370 (5th Cir. 1999), *on reh'g,* 228 F.3d 559 (5th Cir. 2000) ("Deviation from this 'record rule' occurs with more frequency in the review of agency NEPA decisions than in the review of other agency decisions.") (quoting *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997)). "The reason for this deviation is significant." *Sierra Club*, 185 F.3d at 370.

> This occurs because NEPA imposes a duty on federal agencies to compile a comprehensive analysis of the potential environmental impacts of its proposed action, and review of whether the agency's analysis has satisfied this duty often requires a court to look at evidence outside the administrative record. To limit the judicial inquiry regarding the completeness of the agency record to that record would, in some circumstances, make judicial review meaningless and eviscerate the very purposes of NEPA. The omission of technical scientific information is often not obvious from the record itself, and a court may therefore need a plaintiff's aid in calling such omissions to its attention.

*Id.* (quoting *Nat'l Audubon Soc.*, 132 F.3d at 14).

This case, unlike all the cases Plaintiffs cite in support of this argument, is not a NEPA case and does not involve complicated technical or scientific data. *C.f. Asarco,* (NEPA case concerning the measurement of particulate matter in gas); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981) (NEPA case concerning water salinity testing); *Davis Mountains Trans-Pecos Heritage Ass'n. v. Fed. Aviation Admin.*, 116 F. App'x 3, 11 (5th Cir. 2004) (NEPA case concerning the effect of military jet "wake vortices" (trails of disturbed air) on ground windmills used to provide water to livestock); *Medina*, 602 F.3d at 706 (NEPA case concerning effect of development on the population of endangered warblers).

Plaintiffs have not proffered any cases where a party was permitted supplementation—let alone discovery—under the second *Medina* factor outside the NEPA context. Neither have

Plaintiffs explained why, in this case, it may be "impossible" for the court to determine whether Defendants failed to consider certain factors without additional "background" documents. "Although supplementation may be warranted to aide in the Court's comprehension in some cases, the plaintiff must establish why supplementation is specifically needed in the case at issue." *Knight v. U.S. Army Corps of Engineers*, No. 4:18-CV-352, 2019 WL 3413423, at *3 (E.D. Tex. July 29, 2019). Here, Plaintiffs have not explained why "background" documents are "needed," *Medina*, 602 F3d at 706; the Court has not indicated that it requires "background" documents; and Plaintiffs have not suggested what those "background" documents might be. Plaintiffs also do not argue that discovery is necessary to identify the factors Defendants should have considered. To the contrary, Plaintiffs assert that the relevant factors are clear—*e.g.*, the impact of the parole processes on States, Am. Comp. ECF No. 20, ¶ 141, Motion for P.I., ECF No. 22, at 22—and that, based on the current administrative record, Defendants simply failed to consider this factor. *See* Pls.' Mot. for P.I. at 22, et seq. Plaintiffs do not explain why they need discovery with respect to their reliance interests or why such information would not already be in their possession. And they do not explain why the Court cannot assess what the agency considered from the terms of the processes themselves (which discuss the factors the agency considered) and the administrative records (which contain all the information the agency considered).

If Plaintiffs are arguing that extra-record discovery is justified because it may reveal that there are *other*, currently unknown relevant factors that Defendants failed to consider unrelated to the allegations in the operative complaint, Plaintiffs' argument would effectively nullify the record rule and limits on discovery in APA cases. *Any* plaintiff in *any* APA case could argue that extra-record discovery "may" reveal that certain unknown "relevant factors" were not considered if there is no burden on plaintiffs to articulate the factors that discovery may reveal or overcome the

12

presumption that the record is complete. This alone cannot be sufficient to justify extra-record discovery in light of the Supreme Court's admonition that extra-record discovery is "unusual" and should be rare. *Dep't of Commerce*, 139 S. Ct. at 2564. In other words, if simply claiming that an agency failed to consider some aspect of the problem were enough to entitle a plaintiff to extra-record discovery, then the general rule precluding extra-record evidence in APA cases would be meaningless, as would Congress's directive that, in ruling on claims under the APA,  "a court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706 ("Scope of review").

For all these reasons, Plaintiffs' request for discovery should be denied. *See Reaves v. U.S. Small Bus. Admin.*, No. 3:18-CV-1230-B, 2020 WL 3976984, at *4 (N.D. Tex. July 14, 2020) (denying extra-record review where the movant "fail[ed] to articulate how the specific evidence falls within an exception permitting supplementation"); *Knight*, 2019 WL 3413423, at *3 (denying extra-record evidence because plaintiff failed to show why supplementation was specifically necessary in the case); *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1272 (D. Colo. 1998), *aff'd*, No. CIV.A. 97-B-529, 1998 WL 895927 (D. Colo. Oct. 22, 1998) (denying discovery because plaintiff failed to show that the court could not determine based on the administrative record that the agency's action violated the APA).

### (iii)  Defendants have not failed to explain their policy choices to frustrate judicial review.

Plaintiffs argue that the third *Medina* factor—that "the agency failed to explain administrative action so as to frustrate judicial review," *Medina,* 602 F.3d at 706—applies here because Plaintiffs have a notice-and-comment claim. Pl. Mot. at 9-10. That is, they argue that they need discovery to determine whether the four challenged processes have been applied in a way that makes them binding or imposes any rights or obligations. Pl. Mot. at 10. As Plaintiffs note, in *Texas v. United States*, this Court, following trial and in issuing its final decision, considered extra-

13

record evidence in connection with the plaintiff's notice-and-comment claim because "the tests for determining whether an agency rule is covered by the APA's exceptions to the notice-and-comment requirements make evaluation of the rule's *effects* necessary." *See Texas v. United States*, 606 F. Supp. 3d 437, 493 (S.D. Tex.) (emphasis in original), *cert. granted before judgment*, 143 S. Ct. 51 (2022). But this Court did not grant wide-ranging merits *discovery* into the effects of the policies, or plaintiff's notice-and-comment claim more generally, based on this rationale. *See Texas*, 21-CV-00016, ECF No. 136 (advisory of stipulation by the parties that no discovery would be taken and agreeing that each may submit extra-record evidence). Indeed, Plaintiffs' argument is so broad that it would essentially open the doors to discovery any time a plaintiff asserts a notice-and-comment claim. There is no precedent for that expansive holding.

Moreover, here the challenged processes clearly state on their face that "[a]ll of the steps in this process, including the decision to grant or deny advance travel authorization and the parole decision at the interior POE, are entirely discretionary and not subject to appeal on any grounds," and "[t]his process is being implemented as a matter of the Secretary's discretion. It is not intended to and does not create any rights, substantive or procedural, enforceable by any party in any matter, civil or criminal." *See e.g.*, Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1,255, at 1264 (Jan. 9, 2023). Plaintiffs have not raised any argument or provided any reason for believing that these processes are being applied in a manner different than what they say on their face. They simply ask the Court to authorize a fishing expedition to see what the net drags up. This Court's decision in *Texas* is not precedent for such discovery. Plaintiffs have not identified "mandatory language" in the challenged processes that is "inconsistent" with the discretionary language in those procedures, as the Court found in *Texas*. 606 F. Supp. at 494. Nor have they met the high burden to show that discretion provided by these processes is "pretextual," as was the case

in the DAPA decision. 809 F.3d at 171-76 (also noting "some mandatory language in the DAPA Memo itself").

Even assuming this Court meant to suggest in *Texas* that any time a plaintiff has a notice-and-comment claim, it may seek discovery into all the effects of the challenged policies—a notion that would turn the exception for discovery in APA cases into the norm—that holding would still not entitle Plaintiffs to the wide-ranging discovery they seek. For example, request for production number 1 seeks "all checklists, lesson plans, or training materials used to implement or administer the Parole Program," number 2 seeks "all documents related to the implementation or administration of the Parole Program," and number 11 seeks "all documents estimating or analyzing how the Parole Program will divert some aliens from the pre-existing channels of the Electronic System for Travel Authorization, nonimmigrant visas, or immigrant visas." These requests are a fishing expedition and are not reasonably tailored to seek only data necessary for the Court to evaluate whether the four challenged processes have been applied in a way that makes them binding or imposes rights or obligations. If all Plaintiffs seek is information sufficient to determine if the processes were applied in a manner that makes them binding, they will already get such information in response to their demands that go to standing. For example, Defendants are not opposing Plaintiffs serving interrogatory number 1, which asks Defendants to "[i]dentify, by month, the number of Parole Program applications (a) received, (b) adjudicated, (c) approved, (d) denied, (e) pending, (f) granted employment authorization, and (g) denied employment authorization." In short, because Defendants have already agreed to engage in discovery as to standing, and many of the documents and data responsive to Plaintiffs' demands going to standing will answer the questions Plaintiffs raise as a basis to seek discovery on their notice-and-comment

claim, the Court should deny Plaintiffs' motion seeking far broader merits discovery related to their notice-and-comment claim.

Plaintiffs also argue that they need discovery to determine whether the foreign-affairs and good-cause exceptions[4] to notice-and-comment apply. Pl. Mot. at 10. To that end, they ask for wide-ranging discovery including, for example, "all documents relating to agreements or commitments by the Government of Mexico relating to the Parole Program," Pl. Ex. A, at RFP at 12. But whether the foreign affairs exception to notice-and-comment applies should be evaluated based on the administrative record[5]—not upon likely privileged documents related to bi-lateral negotiations with a foreign sovereign. *See e.g.*, *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 32 (D.D.C. 2020) (assessing the good cause and foreign affairs exceptions in light of the administrative record); *Zhang v. Slattery*, 55 F.3d 732, 745 (2d Cir. 1995), abrogated on other grounds by statute, 8 U.S.C. § 1101(a)(42) (assessing the foreign affairs exception based upon the record).

Plaintiffs also seek "all documents supporting [the agency's] determination that undergoing the notice-and-comment process for the Parole Program 'would seriously undermine a key goal of the policy: it would incentivize even more irregular migration.'" *Id*. at RFP 13. The notices announcing the processes already contain the agency's explanation, at length, as well as

---

[4] The "good cause" exception "is appropriately invoked when the timing and disclosure requirements of the usual procedures would defeat the purpose of the proposal." *Mack Trucks, Inc.* v. *EPA*, 682 F.3d 87, 94-95 (D.C. Cir. 2012).

[5] The notices announcing the processes directly discuss the basis for invoking the foreign-affairs exception to notice and comment—at length, spanning multiple pages, and with footnote citations to extensive reports and other materials. *See e.g.*, Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. at 1264-66. The materials supporting these conclusions are contained in the administrative record.

citations to data, *see* Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. at 1265, and the administrative record contains the supporting material.

Ultimately if the Court determines the record does not support the agency's conclusions—which are explained in detail in the notices announcing the processes and supported by evidence in the record—then Defendants will lose on the notice-and-comment claim. In other words, the processes either sufficiently justify foregoing notice-and-comment, or they do not. Plaintiffs have not provided any reason for needing discovery to look beyond the record, and such discovery is typically prohibited in APA cases. *Dep't of Commerce*, 139 S. Ct. at 2573-74.

Furthermore, although Plaintiffs seemingly contend that their notice-and-comment arguments are subsumed under the third *Medina* factor, they do not make any showing that Defendants "failed to explain administrative action so as to frustrate judicial review." In fact, the administrative record for the four processes totals 6,926 pages. Plaintiffs do not discuss any of those pages. Simply put, Plaintiffs have not attempted to show that Defendants failed to explain their administrative action, that judicial review is thereby frustrated, that Defendants excluded any relevant material, or that discovery is likely to lead to the production of specific documents that the Court will need to adjudicate this APA case. Plaintiffs' request for merits discovery should be denied.

In sum, Plaintiffs have not overcome the presumption of regularity that attaches to an administrative record. And they have not shown the record omits any information considered by the agency. Ultimately, "[i]f the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," rather than

17

permit discovery in service of permitting Plaintiffs to alter the record. *Fla. Power & Light Co.*, 470 U.S. at 744.

**(B)   Plaintiffs cannot seek discovery based on an ultra vires claim.**

Plaintiffs also argue they are entitled to discovery on the merits of their "ultra vires" claim because the claim sounds "at equity" and is not limited by the APA's record rule. Pl. Mot. at 5-6. This argument is incorrect. Plaintiffs have no ultra vires claim, and even if they did, this would not permit them to evade the APA's procedural requirements, including its general limitation of court review to the administrative record. To the extent any contrary conclusion can be gleaned from the court's decision in *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at \*4-6 (N.D. Tex. July 19, 2021), where the court denied a motion to strike extra record evidence in a case concerning termination of the Migrant Protection Protocols, Pl. Mot. at 5, that conclusion is erroneous and unpersuasive.

First, to the extent that Plaintiffs purport to bring a claim "at equity" for governmental official action outside of the authorization of federal law, such a cause of action exists only against a *State* official violating an individual right under the Constitution, and, therefore, is inapplicable in this case. *See Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471, 475 (5th Cir. 2020) (stating a cause of action "*at equity*" must "name individual state officials" engaged in "an ongoing violation of federal law"); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-32 (10th Cir. 2005) (courts, "in a proper case in equity, may enjoin a State officer from executing a State law in conflict with the Constitution").

Second, even if Plaintiffs could assert an ultra vires claim at equity against federal officers and agencies, the claim would still not be cognizable against Defendants because Plaintiffs' case falls within the APA's waiver of sovereign immunity. The APA offers its own vehicle to challenge

unconstitutional and otherwise ultra vires executive action. 5 U.S.C. § 706(2)(C) (permitting court to review and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"); *see, e.g.*, *Indep. Turtle Farmers of Louisiana, Inc. v. United States*, 703 F. Supp. 2d 604, 618 (W.D. La. 2010). The 1976 amendment to the APA was intended "to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer[,]" *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989). "The principal purpose of this amendment was to do away with the ultra vires doctrine." *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). "[S]ince 1976 federal courts have looked to [5 U.S.C.] § 702 ... to serve the purposes of the [ultra vires doctrine] in suits against federal officers." *E. V. v. Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018) (internal quotation omitted); *see, e.g., Locke v. Warren*, No. 19-61056-CIV, 2019 WL 4805716, at *4 (S.D. Fla. Oct. 1, 2019) (collecting cases). These cases make clear that, to the extent Plaintiffs have a claim for equitable relief arising from alleged ultra vires action by Defendants, this claim now must be brought under the APA and its procedures.

Moreover, the fact that Plaintiffs style their ultra vires challenge to Defendants' action as "equitable" rather than acknowledging it falls under section 706(2) does not mean they can thereby evade the record rule and obtain extra-record discovery on it. Regardless of the theory of unlawful action by the agency advanced by the Plaintiffs, "[j]udicial review is ordinarily limited to the administrative record." *See Kotha v. Renaud*, No. 3:21-CV-641-N, 2021 WL 4027697, at *2 (N.D. Tex. May 12, 2021) (holding that plaintiff's styling of challenge as to unlawful agency *inaction* as opposed to action, as specified in section 706(2), did not mean it could go outside the record) (citing *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539 (D.D.C. 2021)). "Section 706 provides that a reviewing court may … 'hold unlawful and set aside agency action' for various

19

enumerated reasons," including because it is ultra vires statutorily, 5 U.S.C. § 706(2)(C), but regardless of the particular enumerated reasons, the APA makes clear that "in making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party." *Dallas Safari Club*, 518 F. Supp. 3d at 539 (quoting 5 U.S.C. § 706). Thus, the Fifth Circuit has recognized that, even in constitutional challenges to agency action, where the constitutional gravamen means the court should not defer to the agency's view of the law or the facts, but rather perform its own analysis, its "independent examination" is still "of the record." *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979). Permitting "standalone" claims to agency action not based on the administrative record would run afoul of Congress's intent" in creating the APA framework for challenging agency action. *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017-SWS, 2016 WL 4268346, at *2 (D. Wyo. Mar. 29, 2016). Countenancing non-APA ultra vires and other stand-alone claims would merely incentivize every party aggrieved by agency action to allege such claims to throw the doors open to extra-record evidence. *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014).

Here, Plaintiffs' ultra vires claim is that "Defendants' parole program exceeds their statutory parole authority under 8 U.S.C. § 1182(d)(5)," ECF No. 20 ¶ 143, which duplicates their APA claim nearly *word for word*. *See id.* ¶ 141(a) (arguing that "Defendants' parole program should be held unlawful" under the APA because "[t]he program exceeds the Defendants' statutory parole authority under 8 U.S.C. § 1182(d)(5)"). This claim, that Defendants' parole actions are "in excess of [their] statutory … authority," is the exact type that the APA contemplates. 5 U.S.C. § 706(2)(C). Further, unlike in *Texas*, Plaintiffs' ultra vires claim is only statutory; they raise no constitutional challenge, which *Texas* found significant in granting extra-record discovery. 2021 WL 4552547, at *3-4. And even *Texas* recognized as "well-reasoned," *id.* at *4, a case denying

the admission of extra-record evidence for a claim that would "require[] the Court to analyze the substance of an agency's decision that is, in turn, based on an evaluation of that [administrative] record." *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 44 (D.D.C. 2018), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021). Here, whether Defendants are in violation of section 1182(d)(5)(A), either under the APA or otherwise, will necessarily involve the Court's evaluation of the administrative record supporting the parole processes at issue and the substance of whether these actions comport with the parole statute.

The Court should not permit Plaintiffs, by advancing an exact duplicate of their APA claim simply relabeled as a standalone equitable claim, to engage in an end-run around the requirements for reviewing agency action based on an administrative record set forth by Congress.

## CONCLUSION

For all these reasons, the Court should deny that portion of Plaintiffs' motion for discovery which seeks discovery into the merits of this APA case. The Court should permit Plaintiffs to serve requests for production numbers 5-9, 14, interrogatory numbers 1-3, 5, 10-12 and requests for admission numbers 1-4, 11, which go to standing (and arguably remedy), and deny Plaintiffs permission to serve requests for production numbers 1-4, 10-13, interrogatories numbers 2, 6-9, 13-15, and requests for admission numbers 5-10, 12, which, to the extent they are relevant at all, go to merits of the agency's actions in this APA case.

Date:  March 31, 2023    Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN WARD
*Senior Litigation Counsel*

/s/ *Elissa Fudim*
Elissa Fudim
Joseph Darrow
Erin Ryan
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on March 31, 2023, I filed this motion through the Court's CM/ECF system, which automatically served it upon all counsel of record.

/s/ Elissa Fudim

**CERTIFICATE OF WORD LIMIT**

I certify that this motion, excepting the caption, signature and certificates of service, and including footnotes contains 6,926 words. The Court previously granted Defendants permission to include up to 7,000 words. (ECF No. 115).

23