**United States District Court**
**Southern District of Texas**
**Victoria Division**

S<small>TATE OF</small> T<small>EXAS</small>, *et al.*,
   *Plaintiffs,*

v.

U.S. D<small>EPARTMENT OF</small> H<small>OMELAND</small>
  S<small>ECURITY</small>, *et al.*,
   *Defendants.*

Case 6:23-cv-00007

### P<small>LAINTIFFS</small>' O<small>PPOSITION TO</small> M<small>OTION TO</small> I<small>NTERVENE</small>

The proposed intervenors lack a direct and legally protectable interest at stake in this case. Even if they did, their interests are adequately represented by the Defendants, who seek the same outcome and who have every incentive to make the arguments that the proposed intervenors claim will not be made. They therefore have no right to intervene.

Nor have they shown why the court should permit intervention at its discretion. Again, they identify no arguments or legal positions they would take that are different than, much less adverse to, those advanced by Defendants. They seek the same relief as the Defendants. They have not shown special experience, insight, or expertise lacked by the Defendants.

The proposed intervenors' presence is neither mandatory nor helpful. They have no right to intervene, and the Court should deny their discretionary request to intervene.

### B<small>ACKGROUND</small>

In October and December 2022, the Defendants announced new and sweeping programs under 8 U.S.C. § 1182(d)(5) to allow nationals of Cuba, Haiti, Nicaragua, and Venezuela to be "paroled" into the United States for up to two years. As part of these programs, the Defendants require that the parole applicants (whom the

Defendants designate as the "Beneficiaries") procure a "Supporter" within the United States who will agree to provide financial support to the Beneficiary during the two-year parole period. *See* ECF 22-2, U.S. Citizenship & Immig. Servs., *Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, https://www.uscis.gov/CHNV, at 5–6. An individual Supporter must be a U.S. citizen, national, or lawful permanent resident; hold a "lawful status" in the United States; or be a parolee or recipient of deferred action or Deferred Enforced Departure. *Id.* at 2–3. However, Supporters can be "individuals filing on behalf of a group or individuals representing an entity." *Id.* at 5. The Supporter must pass security and background vetting and show sufficient financial resources to support the Beneficiary for the two-year parole period. *Id.* at 5–6.

There are no other stated requirements for Supporters. Indeed, Supporters themselves may be parolees. There is no requirement that a Supporter and Beneficiary have any prior relationship, much less that they be family or close friends. Nothing in the Parole Programs prevents the relationship between Supporter and Beneficiary from being solely pecuniary—a financial or employment relationship.

## ARGUMENT

**I.   The proposed intervenors do not qualify to intervene as of right.**

A person seeking to intervene as of right under must satisfy four requirements. *See* Fed. R. Civ. P. 23(a); *Haspel & Davis Milling & Planting v. Bd. of Levee Commrs.*, 493 F.3d 570, 578 (5th Cir. 2007). The proposed intervenor must:

- Timely apply,
- Have an interest related to the subject of the case,
- Have that interest inadequately represented by the existing parties, and

- Be situated so that the disposition of the case might, as a practical matter, impair or impede its ability to protect its interest.

*Brumfield v. Dodd*, 749 F.3d 341 (5th Cir. 2014). The proposed intervenors satisfy none of those factors.

### A. The application is not timely.

The Court has set a schedule leading to a June 13, 2023, trial. That schedule includes deadlines for requesting and serving discovery and included a deadline for asking the Court to approve extra-record discovery. *See* ECF 71, 90; *see also* ECF 126. The proposed intervenors generally—and wrongly—assert that the parties "would not have behaved differently at all, let alone in a way demonstrating prejudice," ECF 106 at 11, had they filed their motion earlier. The negotiations over the scope and deadlines for discovery were premised on the parties' discussions of what discovery they were likely to request, how quickly they believed it could be produced, and the claims to which it would be relevant. Those discussions would have been different had the proposed intervenors been involved. The parties would have needed to discuss, at a minimum, the scope of document discovery to which the proposed intervenors were prepared to respond; the extent to which those responses would cover the proposed parolees they sought to sponsor; the scope of requests for production and interrogatories to the proposed parolees; and deadlines and scheduling of oral depositions.

It is true enough that the proposed "intervenor[s] 'must accept the proceedings as [they] find them,'" *Sierra Club v. Espy*, 18 F.3d 1202, 1206 fn.3 (5th Cir. 1994) (quoting *In re Geisser*, 554 F.2d 698, 705 fn.6 (5th Cir. 1977)), but here, the proposed intervenors find a short-fuse trial setting that would have been negotiated differently had they been involved from the outset. Their motion to intervene was untimely.

### B. The proposed intervenors do not have a legally protected interest in the case.

Because the proposed intervenors are not beneficiaries of the parole programs, they do not have the "direct, substantial, legally protectable interest in the proceeding," *see La Union del Pueblo Entero v. Abbott,* 29 F.4th 299, 306 (5th Cir. 2022) (quoting *Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir. 1996) (en banc)), required for intervention as of right. Contrary to their argument, *see* ECF 106 at 12–13, they are not intended beneficiaries of the parole programs. They are persons without whom a potential parolee cannot participate in the programs. *See* ECF 22-2 at 3. They are, that is, two steps removed from the intended effect of the program, which is to increase the security and safety at the Southwest Border of the United States—even the parole applicants the Defendants identify as "Beneficiaries" benefit from the program only indirectly through their being diverted to ports of entry other than the Southwest Border.

A decree in this case will not affect the proposed intervenors' employment prospects, potential government benefits, or fundamental rights. *Cf. Texas v. United States* 805 F.3d 653, 658–660 (5th Cir. 2015) *(Texas DAPA)* (discussing legal interests that have allowed intervention as of right). A sincere desire that certain persons be paroled into the United States—even if those persons are relatives, friends, or co-religionists—is not a legally protectable interest. The proposed intervenors cite no cases that recognize such an interest, and Plaintiffs are aware of none.

### C. The proposed intervenors' interests are adequately represented.

The law presumes that the proposed intervenors' interests are adequately represented when they and an existing party share the "same ultimate objective." *Texas DAPA,* 805 F.3d at 661–62. It further presumes that representation is adequate "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id.* (quoting *Edwards*, 78 F.3d at

1005). Those presumptions continue to apply here; the proposed intervenors have not demonstrated that those presumptions are false—moreover, they are actually true.

The proposed intervenors and the Defendants share the same ultimate goal: they want the Parole Programs to continue. To overcome the presumption that the Defendants adequately represent their interests, then, the proposed intervenors must prove that there is "adversity of interest, collusion, or nonfeasance" on the part of Defendants. *Id*. The adversity, moreover, must be material; a "mere disagreement over litigation strategy or the individual aspects of a remedy does not, in and of itself, overcome the presumption of adequate representation." *Guenther v. BP Retirement Accum. Plan*, No. 4:16-cv-995, 2021 WL 9552995, at *1 (S.D. Tex. Dec. 7, 2021) (Hanks, J.) (citing *Jenkins v. Missouri*, 78 F. 3d 1270, 1275 (8th Cir. 1996); *Lamar v. Lynaugh*, 12 F. 3d 1099 (5th Cir. 1993); and *Bush v. Viterna*, 740 F.2d 350, 358 (5th Cir. 1984)). The proposed intervenors do not suggest even that much, limiting their argument to their "unaware[ness] of any authority charging the federal government with representing their specific interests." ECF 106 at 14.

Further, because the Defendants are government actors, the proposed intervenors must also show an actual difference in interest from Defendants. *Texas DAPA*, 805 F.3d at 661–62 (quoting *Edwards*, 78 F.3d at 1005). Here, too, the proposed intervenors fail. When presiding over the Biden Administration's 100-day pause of deportations, the Court correctly recognized that there is a difference between the institutional responsibilities of the federal government and advocacy for individuals affected by government programs. *See, e.g., Texas v. United States*, No. 6:21-cv-3, 2021 WL 411441, at *3–4.

The proposed intervenors here, however, are not such individuals. As discussed above, *see* § I.B, whatever interests the proposed intervenors have in this case are indirect and not legally protectable; the proposed intervenors, that is, are at best seeking to serve as virtual representatives of program participants—are seeking to

5

tie their knock-on effects to the downstream effects flowing from the direct effects of the program. Offering insight as to the effects of a potential judgment, however, is at most the interest of an amicus curiae and is more likely a tactical judgment by a party in how to furnish evidence relevant to the scope of relief that should be awarded. What it is not is a separate, adverse, legally protected interest warranting intervention.

### D. This litigation will not dispose of the proposed intervenors' interests.

Finally, this litigation will not impair or impede the proposed intervenors' ability to vindicate their interests. Each of the proposed intervenors asserts a wish to sponsor an applicant for parole into the United States under the Defendants' new program. ECF 106 at 12–13. According to the Defendants' however, their new programs do not change the standards for parole into the United States; if the applicants qualify for parole under the Defendants' new program, they qualified for parole before the new program. Curtailing the program does not dispose of the proposed intervenors' interest in bringing people to the United States; they may still support co-religionists, family members, and those in need of medical treatment for a trip to a port of entry and after they are paroled into the United States. It simply curtails their ability to do so through a particular set of procedures.

## II. The proposed intervenors do not qualify for the Court to exercise its discretion to allow intervention.

Permissive intervention, which the Court may deny wholly at its discretion, is inappropriate here. *See League of United Latin Am. Citizens v. Clements*, 884 F.2d 185, 189 & fn.2 (5th Cir. 1989) (listing factors for permissive intervention). The States have already explained why the proposed intervenors' application is untimely and their interests are adequately represented, *see* §§ I.A, I.C, and as the proposed intervenors and the Defendants seek the same outcome, there is little question that

their defenses present common questions of law. There are, however, serious questions about whether intervention would delay or prejudice the existing parties or significantly contribute to the development of the underlying facts.

First, the intervention is likely to delay or prejudice the existing parties, particularly the plaintiff States. As described above, negotiations regarding discovery, timing, and scheduling would have been different had the proposed intervenors been involved. *See* § I.A. Those same concerns affect the case going forward. Having never discussed it with the proposed intervenors, the plaintiff States have no idea what discovery the proposed intervenors will request from them or from the Defendants, or how the need to fully respond to that discovery (particularly by the Defendants) might hamper preparation for the case and lead to requests to postpone the trial. Further, the presence of the proposed intervenors themselves at trial will delay resolution. The proposed intervenors have identified no separate legal interest that requires their presence to defend; adding them and their lawyers to trial of the case only adds time—in opening statements, in closing argument, in handling objections, in witness testimony—that distracts from the question at the heart of the case: Was the federal government entitled to impose its new parole programs, much less to do so without notice and comment? No testimony from the individual proposed intervenors will shed light on that question; adding them to the proceedings is cost with no countervailing benefit.

Second, and building on that, the proposed intervenors will not significantly contribute to the development of the underlying facts. Again, their testimony cannot illuminate the central question in the case, but neither will their testimony illuminate the issue where it might even arguably be relevant—the scope of the States' relief. The proposed intervenors are, at their closest, second-derivative beneficiaries of the new parole programs. Any testimony they offer about the downstream effects of those programs will be either twice attenuated from the direct

7

effect of the program itself or hearsay garnered from the applicants whom the proposed intervenors seek to sponsor. Again, as discussed above, whether to offer such evidence at all, and if so whether to offer it through witnesses such as these, is a tactical decision for the trial lawyers defending the program itself. Granting intervention would make accepting that evidence mandatory by making the proposed intervenors named parties with the right to testify at trial—no matter how little that testimony benefits the case or the Court.

## CONCLUSION AND PRAYER

The Motion to Intervene should be denied.

Dated April 10, 2023.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

Respectfully submitted.

AARON F. REITZ
*Lead Counsel*
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105704
Southern District of Texas No. 3653771
aaron.reitz@oag.texas.gov

/s/ Leif A. Olson
LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas No. 33695
leif.olson@oag.texas.gov

RYAN D. WALTERS
Special Counsel
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500

Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON*
America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
611 Pennsylvania Ave. SE #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*Counsel for the State of Texas*

STEVE MARSHALL
Alabama Attorney General
EDMUND G. LACOUR JR.
Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*

TREG R. TAYLOR
Attorney General of Alaska
CORI M. MILLS
Deputy Attorney General of Alaska
CHRISTOPHER A. ROBISON
Alaska Bar No. 2111126
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Counsel for the State of Alaska*

9

TIM GRIFFIN
Arkansas Attorney General
NICHOLAS J. BRONNI
Arkansas Solicitor General
HANNAH L. TEMPLIN
Assistant Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201

*Counsel for the State of Arkansas*

RAÚL R. LABRADOR
Attorney General of Idaho
David M.S. Dewhirst, ISB No. 12141
Chief Deputy Attorney General
Office of the Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
david.dewhirst@ag.idaho.gov

*Counsel for the State of Idaho*

KRIS KOBACH
Attorney General of Kansas
JESSE A. BURRIS, Kan. Sup. Ct. #26856
Assistant Attorney General
Office of Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for the State of Kansas*

ASHLEY MOODY
Attorney General of Florida
James H. Percival (FBN 1016188)
Deputy Attorney General of Legal Policy
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

BRENNA BIRD
Attorney General of Iowa
ERIC H. WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel: (515) 281-5164
Fax: (515) 281-4209
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

DANIEL CAMERON
Attorney General of Kentucky
MARC MANLEY
Associate Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for the Commonwealth of Kentucky*

| | |
|---|---|
| JEFF LANDRY<br>Attorney General of Louisiana<br>ELIZABETH B. MURRILL (La #20685)<br>Solicitor General<br>JOSEPH SCOTT ST. JOHN (La #36682)<br>Deputy Solicitor General<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>stjohnj@ag.louisiana.gov<br><br>*Counsel for the State of Louisiana* | LYNN FITCH<br>Attorney General of Mississippi<br>JUSTIN L. MATHENY<br>Deputy Solicitor General<br>Office of the Mississippi Attorney General<br>P.O. Box 220<br>Jackson, MS 39205-0220<br>Tel: (601) 359-3680<br>justin.matheny@ago.ms.gov<br><br>*Counsel for the State of Mississippi* |
| ANDREW BAILEY<br>Attorney General of Missouri<br>JOSHUA M. DIVINE, Mo. Bar #69875<br>Solicitor General<br>CHARLES F. CAPPS, Mo. Bar #72734<br>Deputy Solicitor General<br>Missouri Attorney General's Office<br>Post Office Box 899<br>Jefferson City, Missouri 65102<br>Tel: (573) 751-8870<br>Josh.Divine@ago.mo.gov<br><br>*Counsel for the State of Missouri* | AUSTIN KNUDSEN<br>Attorney General of Montana<br>CHRISTIAN B. CORRIGAN<br>Solicitor General<br>PETER M. TORSTENSEN, JR.<br>Assistant Solicitor General<br>Office of the Attorney General<br>215 N Sanders<br>Helena, Montana 59601<br>Tel: (406) 444-2026<br>Christian.Corrigan@mt.gov<br><br>*Counsel for the State of Montana* |

MICHAEL T. HILGERS
Attorney General of Nebraska
ERIC J. HAMILTON
Deputy Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for the State of Nebraska*

GENTNER F. DRUMMOND
Attorney General of Oklahoma
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov

*Counsel for the State of Oklahoma*

JONATHAN SKRMETTI
Tennessee Attorney General
and Reporter
CLARK L. HILDABRAND
Assistant Solicitor General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-5642
Clark.Hildabrand@ag.tn.gov

*Counsel for the State of Tennessee*

DAVE YOST
Ohio Attorney General
SYLVIA MAY MAILMAN
Ohio Deputy Solicitor General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
May.Mailman@OhioAGO.gov

*Counsel for the State of Ohio*

ALAN WILSON
Attorney General of South Carolina
THOMAS T. HYDRICK
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

SEAN D. REYES
Utah Attorney General
MELISSA HOLYOAK
Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
Tel: (801) 538-9600
melissaholyoak@agutah.gov

*Counsel for the State of Utah*

| | |
|---|---|
| PATRICK MORRISEY<br>Attorney General of West Virginia<br>LINDSAY SEE<br>Solicitor General<br>MICHAEL R. WILLIAMS<br>Senior Deputy Solicitor General<br>Office of the West Virginia<br>Attorney General<br>State Capitol, Bldg 1, Room E-26<br>Charleston, WV 25305<br>Tel: (681) 313-4550<br>Lindsay.S.See@wvago.gov<br>Michael.R.Williams@wvago.gov<br><br>*Counsel for the State of West Virginia* | BRIDGET HILL<br>Wyoming Attorney General<br>RYAN SCHELHAAS<br>Chief Deputy Attorney General<br>Wyoming Attorney General's Office<br>109 State Capitol<br>Cheyenne, WY 82002<br>Tel: (307) 777-5786<br>ryan.schelhaas@wyo.gov<br><br>*Counsel for the State of Wyoming* |

### CERTIFICATE OF SERVICE

On April 10, 2023, this opposition was filed through the Court's CM/ECF system, which automatically serves it on all counsel of record.

/s/ Leif A. Olson