IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 6:23-cv-00007 |

**PROPOSED INTERVENORS' REPLY IN SUPPORT OF MOTION TO INTERVENE**

## INTRODUCTION

Valerie Laveus, Paul Zito, Francis Arauz, Eric Sype, Kate Sugarman, Nan Langowitz, and Germán Cadenas ("Proposed Intervenors") seek to protect their interests in family reunification, free exercise of religion, and financial stability, among others made available by the Parole Programs at issue in this case. Plaintiffs' internally inconsistent arguments and meager attempts to distinguish *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) (hereinafter "*Texas DAPA*") and *Texas v. United States*, No. 6:21-CV-00003, 2021 WL 411441 (S.D. Tex. Feb. 6, 2021) (hereinafter "*Texas Moratorium*") illustrate the weakness of their position. As this Court and the Fifth Circuit have acknowledged, the law unquestionably favors intervention to protect critical interests like those Proposed Intervenors possess, both as a matter of right and discretion.

## ARGUMENT

I. **Proposed Intervenors Are Entitled to Intervene as of Right.**

   a. **Proposed Intervenors' Motion is Timely.**

Plaintiffs spill considerable ink discussing the inconvenience of intervention both as to timeliness under Rule 24(a) and prejudice under Rule 24(b), which invoke the same analysis. *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 338 F.R.D. 364, 372 (W.D. Tex. 2021) ("The [undue delay and prejudice] analysis . . . is essentially the same as the timeliness analysis."). But their complaints are misguided.

While Plaintiffs might wish that intervention be denied any time it could potentially lengthen litigation, *see* Plaintiffs' Opposition to Motion to Intervene, Dkt. No. 127 ("Opp.") at 7, that is not the relevant inquiry. Rather, prejudice "must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Intervention necessarily

1

happens during ongoing litigation and involves expansion of the parties such that case adjudication may take longer. But the court "is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards v. City of Houston*, 78 F.3d 983, 1002 (5th Cir. 1996).

No such prejudice occurred here. Proposed Intervenors filed their Motion to Intervene, Dkt. No. 106 ("Motion"), within weeks of when their interests in the case became apparent and only one week after the Court issued the scheduling order that Plaintiffs emphasize. Because of pre-existing variables, including Defendants' transfer motion, Dkt. 5, an earlier motion would have risked "wast[ing] judicial resources," which "[c]ourts should discourage," *Sierra Club*, 18 F.3d at 1206; *see* Motion at 10-11.

Plaintiffs have not shown why they are prejudiced by Proposed Intervenors' timing. For example, while Plaintiffs suggest they may have negotiated discovery differently had Proposed Intervenors sought intervention earlier, Opp. at 7, they never state they would seek discovery from Proposed Intervenors. To the contrary, Plaintiffs confirm they have no need: from their perspective, Proposed Intervenors "will not significantly contribute to the development of the underlying facts." *Id.* And had Plaintiffs asked Proposed Intervenors about discovery, Proposed Intervenors would have shared that they do not anticipate seeking it so long as the parties do not seek discovery from Proposed Intervenors. Additionally, the discovery schedule is already subject to change regardless of intervention, as Defendants have moved for a thirty-day extension of all deadlines and Plaintiffs have agreed to a two-week extension of the discovery deadline. Dkt. 128.

Moreover, although "absolute measures of timeliness should be ignored," *Sierra Club*, 18 F.3d at 1205, the Fifth Circuit has found that even when filed six months after interests became apparent, and *following* trial and final judgment, an intervention motion was timely, *Ross v.*

*Marshall*, 426 F.3d 745, 754-55 (5th Cir. 2005). Indeed, "motions . . . filed prior to entry of judgment favor[] timeliness." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 377 (5th Cir. 2001).

Finally, Plaintiffs fail to address one critical timeliness factor: the prejudice to Proposed Intervenors if intervention is *denied*. As Proposed Intervenors demonstrated, the prejudice they would suffer absent intervention is substantial, given their interests in family reunification, financial stability, access to safety, and free exercise of religion they will be unable to defend. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

Considering all relevant factors, Proposed Intervenors' Motion is timely.

### b. Proposed Intervenors' Interests are Legally Protectable.

Plaintiffs' contention that Proposed Intervenors lack legally protectable interests likewise misses the mark. Plaintiffs fundamentally misunderstand the facts surrounding the Parole Programs and the benefits they afford to Proposed Intervenors, leading them to erroneous legal conclusions.

*First*, as Proposed Intervenors have explained, the Parole Programs only permit U.S.-based sponsors to apply, and those applications may be blocked altogether by the outcome of this case. Motion at 6, 12. Sponsors' loved ones and acquaintances cannot apply on their own. The application process therefore affirms what Plaintiffs fail to recognize: the Parole Programs require the participation of sponsors, and therefore confer on them benefits associated with allowing them to bring family, friends, and contacts to the United States. By any conceivable definition, Proposed Intervenors are direct program beneficiaries. Holding otherwise would contravene Circuit precedent granting intervention, for example, to parents of students who were recipients of school vouchers, despite not being recipients themselves. *See Brumfield v. Dodd*, 749 F.3d 339, 340 (5th Cir. 2014).

3

*Second*, Plaintiffs' statement that "this case will not affect the proposed intervenors' employment prospects, potential government benefits, or fundamental rights," Opp. at 4, ignores the extensive impacts of the Parole Programs on Proposed Intervenors themselves. For instance, the programs, and thus this case, will impact the fundamental rights of Francis Arauz and Valerie Laveus, who seek reunification with immediate family members through the programs. Like the Jane Does in *Texas DAPA*, Ms. Arauz has "an interest in directing the upbringing of [her] United States-citizen child[]," which is a "legally protected liberty interest under the Due Process Clause." 805 F.3d at 660. Ms. Arauz imminently needs the support of her husband, whom she has sponsored through the Parole Programs, to do so. Arauz Declaration, Dkt. No. 106-4 ¶ 13. Plaintiffs' position additionally sells short the impact of employment authorization on families like that of Ms. Arauz, who desperately needs a second income in order to raise her U.S. Citizen son, including to provide for him financially and tend to his needs given his ADHD diagnosis. Arauz Declaration ¶¶ 13-15.

This case will also determine the ability of Paul Zito, who views his sponsorship as a "calling from God," Zito Declaration, Dkt. No. 106-3 ¶ 14, to freely exercise his Christian faith, which is protected by the First Amendment. *See, e.g.*, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

Proposed Intervenors possess more than mere "sincere desire[s]" in the case outcome; as program applicants, direct beneficiaries, and people whose fundamental rights turn on the programs' existence, they have "concrete, personalized, and legally protectable" interests, which are "sufficient to support intervention." *Texas DAPA*, 805 F.3d at 658. Further, while Proposed Intervenors easily satisfy this requirement, their interests should be judged by a "more lenient

4

standard" because "the case involves a public interest question[.]" *Brumfield*, 749 F.3d at 344 (cleaned up).

Proposed Intervenors satisfy the Rule 24(a) interest requirement.

### c. This Case "May . . . Impair or Impede" Proposed Intervenors' Abilities to Protect their Interests.

Plaintiffs refer to the Parole Programs as a "particular set of procedures," Opp. at 6, but Plaintiffs have challenged the programs those procedures create, and seek to have them enjoined and vacated. Dkt. No. 20. Because this case threatens to terminate those programs, to which Proposed Intervenors have applied or intend to apply to sponsor others, it undoubtedly "may" "impair or impede" their ability to protect their interests, which is all Rule 24 requires. Fed. Civ. R. Civ. P. 24. "The impairment requirement does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule." *Brumfield*, 749 F.3d at 344.

Proposed Intervenors have not, through their Motion, claimed Rule 24 interests in Defendants' parole authority more broadly, so any suggestion that Proposed Intervenors may be able to seek parole through another mechanism is irrelevant to their Motion.

Thus, Proposed Intervenors are entitled to intervene pursuant to Rule 24(a).

### d. Defendants Inadequately Represent Proposed Intervenors' Interests.

Plaintiffs' attempt to leave Proposed Intervenors' interests solely in Defendants' hands fails to grapple with controlling precedent illustrating why Defendants do not adequately represent them. In *Brumfield*, where the proposed intervenors and plaintiff state shared the objective of preserving a school voucher program, the Fifth Circuit explained:

> The state has many interests in this case—maintaining not only the Scholarship Program but also its relationship with the federal government and with the courts that have continuing desegregation jurisdiction. The parents do not have the latter

5

>two interests; their only concern is keeping their vouchers. We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires.

749 F.3d at 346. Here, like in *Brumfield* and *Texas DAPA*, even assuming the presumptions of adequate representation apply, Proposed Intervenors overcome them because they have a "lack of unity in all objectives" with Defendants. *Texas DAPA*, 805 F.3d at 662. Plaintiffs themselves identify this lack of unity, acknowledging the federal government's objective of "increas[ing] the security and safety at the Southwest Border," which Proposed Intervenors do not share. Opp. at 4. Proposed Intervenors plan to advance "real and legitimate additional or contrary arguments" such as the humanitarian and public benefits of the Parole Programs, which increase pathways to the United States rather than restrict them, thereby satisfying the inadequate representation requirement. *Texas DAPA*, 805 F.3d at 662.

This Court recently applied that principle in another case brought by Texas challenging immigration policy, which Plaintiffs fail to meaningfully reconcile with their arguments here. In *Texas Moratorium*, this Court held the proposed intervenors "met their minimal burden to show their interests are sufficiently adverse to the Defendants' in a way that is germane to the case—despite . . . the[ir] common goal of opposing Texas's lawsuit." WL 411441, at *4. The Court should do the same here.

## II. Proposed Intervenors Warrant Permissive Intervention.

The court should grant permissive intervention. *See* Motion at 16-17. Plaintiffs' counterarguments are unavailing.

Plaintiffs' contention that permissive intervention should be denied on account of "delay or prejudice" to the existing parties fails for the same reason that Proposed Intervenors' Motion was timely. *See supra* Section I.a; *Students for Fair Admissions*, 338 F.R.D. at 372.

Plaintiffs' claim that Proposed Intervenors will not significantly contribute to the development of the record likewise rings hollow. Opp. at 7-8. As beneficiaries of the programs at issue, Proposed Intervenors offer a unique perspective that the parties lack. Thus, Proposed Intervenors will unequivocally contribute meaningful evidence; whether Plaintiffs *want* it in the record is a separate (and irrelevant) question. For example, in considering Plaintiffs' Preliminary Injunction Motion, this Court must balance Plaintiffs' likelihood of success on the merits, irreparable harm, balance of the equities, and the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[1] Proposed Intervenors are poised to help develop the legal and factual record that will form the basis of the Court's balance of the equities and public interest analyses. Additionally, they may aid in the Court's irreparable harm analysis, offering countervailing evidence of *benefits* to Plaintiff States and their residents of the challenged Parole Programs. Indeed, Proposed Intervenors have already introduced evidence of Paul Zito, a Texas resident, and Valerie Laveus of Florida, who highlight the Parole Programs' direct benefits *within Plaintiff states*.

Thus, Proposed Intervenors warrant permissive intervention, as did proposed intervenors in *Texas Moratorium*. 2021 WL 411441 at *2-4; *see* Motion at 17.

## **CONCLUSION**

For the foregoing reasons, and those discussed in Proposed Intervenors' Motion, this Court should grant intervention.

---

[1] In light of the preliminary injunction standard, Plaintiffs' suggestion that this Court is confined to considering the legal "question at the heart of the case" is misleading at best. Dkt. No. 127 at 7.

7

Respectfully submitted,

*/s/ Esther H. Sung*
**Esther H. Sung (Attorney-In-Charge)****
California Bar No. 255962
esther.sung@justiceactioncenter.org
*Application for Admission pending*

**Karen C. Tumlin****
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Jane Bentrott****
California Bar No. 323562
D.C. Bar No. 1029681
Virginia Bar No. 87903
jane.bentrott@justiceactioncenter.org

**Lauren Michel Wilfong****
New York Bar No. 5975529
New Jersey Bar No. 378382021
*Not admitted to practice law in California*
lauren.wilfong@justiceactioncenter.org

JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

**Tamara F. Goodlette**
Texas Bar No. 24117561
Colorado Bar No. 35775
Arizona Bar No. 034365
tami.goodlette@raicestexas.org

**Daniel Hatoum**
Texas Bar No. 24099136
New York Bar No. 5598339
daniel.hatoum@raicestexas.org

**Vanessa Rivas-Bernardy****
California Bar No. 341464
vanessa.rivas@raicestexas.org

8

**The Refugee and Immigrant Center for Education and Legal Services (RAICES)**
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
Telephone: (210) 960-3206
Facsimile: (210) 634-1279

**Monika Y. Langarica\*\***
California Bar No. 308518
langarica@law.ucla.edu

**Ahilan T. Arulanantham\***
California Bar No. 237841
arulanantham@law.ucla.edu

**Center for Immigration Law and Policy**
UCLA School of Law
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

*\*pro hac vice forthcoming*
*\*\*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing motion via the Court's ECF filing system.

/s/ Esther H. Sung
Esther H. Sung

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the total number of words in this motion, exclusive of the matters designated for omission, is 1999 words as counted by Microsoft Word Software.

/s/ Esther H. Sung
Esther H. Sung

9