**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>    *Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND<br>  SECURITY, *et al.*,<br>    *Defendants;.* | Case 6:23-cv-7 |

### TEXAS'S SUPPLEMENTAL COMPLAINT

Texas, Alabama, Arkansas, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Ohio, South Carolina, Tennessee, and West Virginia supplements the Amended Complaint, ECF 20, with these allegations and claims for relief that have arisen since the filing of that pleading.

### PARTIES, JURISDICTION, AND VENUE

1.  Except that this Supplemental Complaint is brought only by certain of the Plaintiff States, the parties, jurisdiction, and venue are as identified and alleged in the Amended Complaint, ECF 20.

### FACTS

2.  The Defendants have, since even before the January 30, 2023, announcement that the Title 42 policy would be shuttered,[1] anticipated a surge in illegal immigration at the Southwestern Border of the United States as a result of

---

[1] OMB, *Statement of Administration Policy: H.R. 382 and H.J. Res. 7* (Jan. 30, 2023), https://www.whitehouse.gov/wp-content/uploads/2023/01/SAP-H.R.-382-H.J.-Res.-7.pdf (announcing White House plan to let public health emergency expire on May 11).

that shuttering.[2] Prudent parties would have acted quickly to mitigate that surge, and quick action was possible—indeed, between the announcement of the expiration of Title 42 and the actual expiration at midnight on May 12, 2023, the Defendants managed to propose, take comments on, and finalize another rule geared in part toward mitigating the expiration's effects. *See* Circumvention of Lawful Pathways, 88 Fed. Reg. 11,704 (proposed Feb. 23, 2023) (to be codified at 8 C.F.R. pts 208 and 1208); Circumvention of Lawful Pathways (May 10, 2023) (unpublished final rule) (to be published on May 16, 2023), https://public-inspection.federalregister.gov/2023-10146.pdf.

3. When presented with the choice, however, the Defendants chose dithering over acting—and dithering, not perfecting, is what it was. At nearly the literal eleventh hour—on May 10, fewer than 48 hours before Title 42 was to expire—they issued a memo adopting an unlawful policy on which the public never had the chance to comment and that did not consider all the relevant factors or possibilities for action. *See* Ex. A. That memo, issued by the Chief of the U.S. Border Patrol,[3] a component of Defendant U.S. Customs and Border Patrol, explains how CBP will exercise its alleged parole authority under Section 212(d)(5) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(d)(5), to release illegal aliens arriving at the Southwest Border into the United States. Exh. A. It calls this policy "Parole with Conditions." Though there are several alternative conditions precedent to use of the policy, they are almost certain to occur. For example, one such condition is that Border Patrol have "apprehended 7,000 noncitizens per day across the [Southwest

---

[2] *See* Press Release, DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes (Jan. 5, 2023).

[3] This position has two titles—the office of Border Patrol Chief is also an Executive Assistant Commissioner of CBP.

Border] over a 72-hour period," Exh. A at 4, a condition that the memo admits had been met over at least each of the 4 previous days. *Id.* at 7.

4. Under the policy, Defendants will "parole" otherwise illegal immigrants into the United States after an "individual assessment" that will include, among other things, a "biometric identity verification"; an evaluation of the alien's "immigration background"; and "vetting for any national security or criminal concerns". *Id.* at 5-6. The policy requires Border Patrol to collect and document a physical address but does not appear to require any verification of the legitimacy of the address provided. The alien is required to schedule an appointment with ICE for the initiation of immigration proceedings but may go online to request an NTA by mail. *Id.* at 2. However, the grant of parole under the policy does not place any restrictions on where the alien may go or require electronic monitoring or any other means to track the alien's location once released. The "initial" grant of parole "should generally be for 60 days", but apparently the parole grant may be extended or renewed without limitation. *Id.* at 5

5. No notice or comment was provided as to this policy as required by the Administrative Procedures Act (APA), ostensibly because conditions at the Southwest Border are "quickly evolving into exigent circumstances" and "urgent action" is required. The policy, however, does not claim these circumstances were unexpected or explain why the policy was announced only at the last day before the Title 42 Order was to end.

6. The Parole with Conditions policy does not require an individualized showing or determination on a case by case basis that each person paroled has urgent humanitarian reasons for his or her parole, or that such parole of that individual will result in a significant public benefit, all as required by Section 212(d)(5). Nor does it contemplate how paroled aliens will be returned to custody once the parole expires or its purposes have been served, also as required by Section 212(d)(5).

7. The Parole with Conditions policy will cause the States immediate and irreparable harm for which it has no adequate remedy at law. By unlawfully releasing illegal aliens into the States under this policy, the Defendants will damage them by inflicting on them costs for public education, law enforcement and incarceration, unreimbursed health care, and other public services for such illegal aliens, in addition to those already inflicted as described in the Amended Complaint. These harms will be substantial, both to the States' sovereignty and to the public fisc, and cannot be undone through monetary remedies. And these harms are not limited to aliens released directly into a Plaintiff State; once paroled, these illegal aliens are released into the United States without restrictions as to where they may go and without monitoring or other safeguards to track their whereabouts.

8. The Parole with Conditions policy includes little or no consideration of vital matters such as:

- How the Defendants can realistically determine whether persons considered for parole under "exigent circumstances" are risks to national security or pose risks of committing serious crimes in the United States;

- How illegal aliens paroled into the United States who break their promise to appear can be located, apprehended, and removed;

- Alternatives to this almost literal catch-and-release program;

- Whether and to what extent the policy creates incentives for even more illegal aliens to travel to the Southwest Border, not only further increasing the number—and perhaps rate—of illegal immigrants entering the country but in fact exacerbating the very "exigent circumstances" the policy is designed to combat.

9. Immediate injunctive relief by way of temporary restraining order and preliminary injunction is necessary to protect the States from threatened immediate and irreparable harm. That relief is warranted because they are substantially likely

4

to prevail on the merits at trial; their injuries are irreparable; and the public interest and balance of the equities favor them.

## CLAIMS FOR RELIEF

### I. Count Three (APA)

10. The Parole with Conditions policy violates the APA because it is not in accordance with law and is in excess of Defendants' statutory authority or applicable limitations, or short of statutory right. 5 U.S.C. § 706(2)(A).

11. The policy and its implementation and operation violate the Immigration and Naturalization Act, including 8 U.S.C. §§ 1225(b), 1226(a), and 1182(d)(5).

### II. Count Four (APA)

12. The Parole with Conditions policy violates the APA because it is arbitrary and or capricious, 5 U.S.C. § 706(2)(A).

13. The Defendants did not consider all reasonable alternatives to the policy. For instance, they did not consider expanding the Migrant Protection Protocols to increase the number of illegal aliens required to remain in Mexico while immigration proceedings are pending.

14. Nor did the Defendants consider the reliance interests implicated by the policy and the costs it would impose on third parties such as the States and the individuals who are directly and indirectly harmed by the increased amount of illegal immigration the policy facilitates creates incentives to continue of increase—for example, the depressing of wages resulting from adding tens of thousands of new persons to the workforce per month, the damage to private and government-owned property caused by additional trespassing by those responding to the incentives the policy creates, and the additional victimization of illegal aliens themselves by the "middlemen" whose "facilitation" of travel to the Southwest Border is better known

by the terms blackmail, kidnapping, sexual assault, physical violence, and hostage-taking.

### III. Count Five (APA)

15. The Parole with Conditions policy is a substantive rule subject to the APA's notice and comment requirements of the APA. 5 U.S.C. § 553.

16. Though no applicable exception allowed them to do so, the Defendants promulgated and adopted the policy without the required notice and comment.

### Prayer for Relief

For these reasons, the States respectfully request that the Court:

- Temporarily restrain or stay, and preliminarily enjoin, the Defendants' implementation and operation of the Parole with Conditions program;

- Following a trial on the merits, decree that the Parole with Conditions program was adopted in violation of the APA and vacate it, set it aside, or in the alternative, permanently enjoin the Defendants from operating it;

- Declare that the Parole with Conditions program exceeds the Defendants' statutory parole authority under 8 U.S.C. § 1182(d)(5);

- Award the States their attorneys' fees and costs of court; and

- Award the States all other relief to which they may be entitled.

Dated May 12, 2023.                                Respectfully submitted.

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas<br><br>BRENT WEBSTER<br>First Assistant Attorney General<br><br>GRANT DORFMAN<br>Deputy First Assistant Attorney General<br><br>OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>(512) 463-1700 | AARON F. REITZ<br>*Lead Counsel*<br>Deputy Attorney General for Legal Strategy<br>Texas Bar No. 24105704<br>Southern District of Texas No. 3653771<br>aaron.reitz@oag.texas.gov<br><br>/s/ Leif A. Olson<br>LEIF A. OLSON<br>Chief, Special Litigation Division<br>Texas Bar No. 24032801<br>Southern District of Texas No. 33695<br>leif.olson@oag.texas.gov<br><br>RYAN D. WALTERS<br>Special Counsel<br>Texas Bar No. 24105085<br>Southern District of Texas No. 3369185<br>ryan.walters@oag.texas.gov<br><br>DAVID BRYANT<br>Special Counsel<br>Texas Bar No. 03281500<br>Southern District of Texas No. 808332<br>david.bryant@oag.texas.gov<br><br>GENE P. HAMILTON<br>America First Legal Foundation<br>Virginia Bar No. 80434<br>Southern District of Texas No. 3792762<br>300 Independence Avenue SE<br>Washington, DC 20003<br>(202) 964-3721<br>gene.hamilton@aflegal.org<br><br>*Counsel for the State of Texas* |

7

| | |
|---|---|
| STEVE MARSHALL<br>Alabama Attorney General<br>EDMUND G. LACOUR JR.<br>Solicitor General<br>Office of the Attorney General<br>State of Alabama<br>501 Washington Avenue<br>P.O. Box 300152<br>Montgomery, Alabama 36130-0152<br>Tel: (334) 242-7300<br>Edmund.LaCour@AlabamaAG.gov<br><br>*Counsel for the State of Alabama* | TIM GRIFFIN<br>Arkansas Attorney General<br>NICHOLAS J. BRONNI<br>Arkansas Solicitor General<br>HANNAH L. TEMPLIN<br>Assistant Solicitor General<br>Office of the Arkansas Attorney General<br>323 Center Street, Suite 200<br>Little Rock, Arkansas 72201<br><br>*Counsel for the State of Arkansas* |
| BRENNA BIRD<br>Attorney General of Iowa<br>ERIC H. WESSAN<br>Solicitor General<br>1305 E. Walnut Street<br>Des Moines, Iowa 50319<br>Tel: (515) 281-5164<br>Fax: (515) 281-4209<br>eric.wessan@ag.iowa.gov<br><br>*Counsel for the State of Iowa* | KRIS KOBACH<br>Attorney General of Kansas<br>JESSE A. BURRIS, Kan. Sup. Ct. #26856<br>Assistant Attorney General<br>Office of Kansas Attorney General<br>120 SW 10th Avenue, 2nd Floor<br>Topeka, Kansas 66612-1597<br>Tel: (785) 368-8197<br>Jesse.Burris@ag.ks.gov<br><br>*Counsel for the State of Kansas* |
| DANIEL CAMERON<br>Attorney General of Kentucky<br>MARC MANLEY<br>Associate Attorney General<br>Kentucky Office of the Attorney General<br>700 Capital Avenue, Suite 118<br>Frankfort, Kentucky<br>Tel: (502) 696-5478<br><br>*Counsel for the Commonwealth of Kentucky* | JEFF LANDRY<br>Attorney General of Louisiana<br>ELIZABETH B. MURRILL (La #20685)<br>Solicitor General<br>JOSEPH SCOTT ST. JOHN (La #36682)<br>Deputy Solicitor General<br>Louisiana Department of Justice<br>1885 N. Third Street<br>Baton Rouge, Louisiana 70804<br>Tel: (225) 326-6766<br>murrille@ag.louisiana.gov<br>stjohnj@ag.louisiana.gov<br><br>*Counsel for the State of Louisiana* |

8

LYNN FITCH
Attorney General of Mississippi
JUSTIN L. MATHENY
Deputy Solicitor General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for the State of Mississippi*


DAVE YOST
Ohio Attorney General
SYLVIA MAY MAILMAN
Ohio Deputy Solicitor General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
May.Mailman@OhioAGO.gov

*Counsel for the State of Ohio*


JONATHAN SKRMETTI
Tennessee Attorney General
and Reporter
CLARK L. HILDABRAND
Assistant Solicitor General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-5642
Clark.Hildabrand@ag.tn.gov

*Counsel for the State of Tennessee*

ANDREW BAILEY
Attorney General of Missouri
JOSHUA M. DIVINE, Mo. Bar #69875
Solicitor General
CHARLES F. CAPPS, Mo. Bar #72734
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*


ALAN WILSON
Attorney General of South Carolina
THOMAS T. HYDRICK
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

 *Counsel for the State of South Carolina*


PATRICK MORRISEY
Attorney General of West Virginia
LINDSAY SEE
Solicitor General
MICHAEL R. WILLIAMS
Senior Deputy Solicitor General
Office of the West Virginia
 Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
Tel: (681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for the State of West Virginia*

9

## CERTIFICATE OF CONFERENCE

On May 12, 2023, Defendants' counsel Erez Reuveni informed Texas's counsel that the Defendants oppose this motion. Texas's counsel did not receive a response from the Intervenor Defendants' counsel before filing.

/s/ Leif A. Olson<br>
LEIF A. OLSON

## CERTIFICATE OF SERVICE

I certify that on, this May 12, 2023, this supplemental complaint was filed through the Court's CM/ECF system, which served it upon all counsel of record.

/s/ Leif A. Olson<br>
LEIF A. OLSON