FOR OFFICIAL USE ONLY

1300 Pennsylvania Avenue, NW
Washington, DC 20229




HQBOR 90/16.38

MAY 1 0 2023

TO: All Chief Patrol Agents
All Directorate Chiefs

MEMORANDUM FROM: Raul L. Ortiz
Chief
U.S. Border Patrol

SUBJECT: Policy on Parole with Conditions in Limited Circumstances Prior to the Issuance of a Charging Document (Parole with Conditions)

To outline how U.S. Customs and Border Protection (CBP) utilizes the longstanding authority under section 212(d)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(d)(5), to temporarily parole certain noncitizens on a case-by-case basis for urgent humanitarian reasons or for significant public benefit. This memorandum describes the policy when that authority may, in certain circumstances, be used to consider individuals for parole after United States Border Patrol (USBP) has conducted an inspection of the noncitizen and prior to the issuance of a charging document where that parole is subject to the imposition of conditions on parole, as contemplated in the INA (hereinafter, Parole with Conditions). Specifically, this policy addresses when parole is conditioned on a noncitizen, within 60 days, scheduling an appointment to appear at an U.S. Immigration and Customs Enforcement (ICE) facility for the initiation of appropriate removal proceedings or requesting service, via a designated online location, of a Notice to Appear (NTA) by mail. This document describes the general policy of when such paroles may be considered and continues to require that each parole be considered individually, based on the facts and circumstances known to the Border Patrol Agent (BPA) at the time of processing. All paroled noncitizens will go through appropriate vetting and national security checks.

USBP conducts an inspection of each noncitizen it apprehends or arrests consistent with its authorities, including INA § 287, 8 U.S.C. § 1357 and INA § 235(a), 8 U.S.C. § 1225(a), often referred to as "processing." Processing noncitizens includes steps such as, among other things, identification of the noncitizen, review of immigration and criminal history, an assessment of any national security concerns, and an individualized evaluation of what processing pathway is most appropriate for the individual noncitizen, such as removal proceedings under INA § 240, 8 U.S.C. § 1229a; expedited removal; reinstatement of removal; permitting the individual to voluntarily withdraw their application for admission; and/or parole. This policy provides general guidance on when BPAs may consider parole for an individual who the agent expects is otherwise amenable for removal proceedings under INA § 240, 8 U.S.C. § 1229a. This

**EXHIBIT A**

memorandum in no way removes agents' discretion to examine all appropriate processes for any particular noncitizen.

Pursuant to section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A), the Secretary of Homeland Security has the discretionary authority to parole applicants for admission into the United States "temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." As part of an overall inspection of a noncitizen under INA § 235(a), 8 U.S.C. § 1225(a), CBP may exercise its discretion to parole a noncitizen on a case-by-case basis into the United States, including during the initiation of or to facilitate ICE's initiation of removal proceedings under section 240 of the INA, 8 U.S.C. § 1229a. Parole with Conditions provides a processing mechanism to allow for more expeditious processing of individuals who agents determine would be appropriate for section 240 removal proceedings.

This memorandum describes a policy concerning when CBP may exercise its discretionary parole authority for urgent humanitarian reasons or a significant public benefit, including where there are conditions requiring the expeditious processing of noncitizens in exigent circumstances in order to ensure (1) appropriate and safe conditions for the health and safety of individual noncitizens in custody and (2) USBP's continued ability to carry out its critical border security and enforcement mission. During periods of sustained high encounter numbers, it is significantly more efficient for USBP to process individuals, consistent with INA § 235(a), 8 U.S.C. § 1225(a), for Parole with Conditions as opposed to issuing an NTA or other charging document at the time of encounter. Those subject to Parole with Conditions are not simply released into the community; they are required to schedule an appointment with ICE for the initiation of section 240 removal proceedings, as appropriate, or, at a designated online location, request service of an NTA by mail.

Parole with Conditions is a tool that should only be used when one of the limited triggers below are met and only on a case-by-case individualized review of each noncitizen. Parole with Conditions permits CBP to prioritize the health and safety of individual noncitizens in its custody through reducing overcrowding, and to maintain adequate enforcement resources along the border to deter the efforts of criminal organizations and traffickers and intercept persons seeking to enter the United States unlawfully. It also allows for USBP to maintain safe and humane holding conditions, compliant with all applicable court orders and other legal obligations, for each noncitizen in its custody. It should be used only where USBP determines that there are urgent humanitarian reasons that warrant parole of a particular person, given the health and safety of individuals in custody, or that there is significant public benefit in paroling the particular person in order to allow for USBP to continue to process those it has in its custody or utilize its limited personnel to process and maintain border security.

Parole with Conditions will be utilized with the other steps USBP has already taken to ensure that processing is as efficient as possible. For instance, USBP has streamlined the NTA/on own recognizance (OR) process, while ensuring legal sufficiency for processing. Moreover, USBP has taken steps to automate the A-file processes and to make forms electronic where possible to further reduce processing times. With the rollout of mobile field processing, USBP has further provided agents with tools to improve processing times. Additionally, adding Border Patrol

Processing Coordinators who perform administrative work in supporting BPAs and engaging in a contract for data entry processors has allowed USBP to focus its BPA time and resources to its important border mission and immigration officer functions. USBP has taken steps to increase its short-term holding capacity. For example, USBP has opened new soft sided facilities and other facilities that allow for initial processing outside USBP stations. USBP continues to use all of its resources to achieve its mission needs, using remote agents for virtual processing, while also receiving assistance where available, from the immigration officers in Office of Field Operations for their processing of noncitizens on the Southwest border (SWB), the U.S. Department of Homeland Security (DHS) Volunteer Force, which permits federal employees to assist CBP in processing noncitizens along the SWB, and utilizing Department of Defense personnel to assist in non-immigration officer functions, such as data entry and warehouse duties.

Notwithstanding these efforts, USBP's resources, including personnel and physical space and equipment, are finite. USBP still needs additional mechanisms to ensure that individual noncitizens are processed expeditiously and released from or transferred out of USBP custody in a safe, swift, humane, and orderly fashion, in order to provide for appropriate and safe conditions for noncitizens.

It is the policy of CBP and USBP to hold noncitizens in appropriate short-term holding conditions upon apprehension, consistent with all applicable court orders and other legal obligations. It is important to ensure that conditions of short-term custody are appropriate for the nature and length of detention. USBP makes every effort to hold noncitizens for the least amount of time required for their processing, transfer, release, or repatriation as appropriate and as operationally feasible. This is because, as USBP's facilities reach capacity, it becomes more difficult to ensure the safety, health, and security of individual noncitizens, monitor medical needs, sanitation, mental health considerations, and other important factors for appropriate short-term custody conditions.

CBP understands that the DHS Office of Health Security has assessed that efforts to reduce overcrowding in DHS facilities to avoid preventable harm and mitigate health and welfare risks to both noncitizens and the DHS workforce should be prioritized.

Moreover, there are requirements such as *Flores*, regarding treatment of minors in DHS custody, and *Doe*, requiring certain detention conditions for those in custody longer than 48 hours in the Tucson sector, which mandate particular conditions for those in CBP custody. USBP recognizes that short-term custody conditions may have a disproportionate impact on different populations such as those with medical conditions or other vulnerabilities. Therefore, it is USBP's policy to apply the most appropriate processing pathway for an individual noncitizen, taking into account all appropriate factors including short-term holding conditions and the impact of conditions that could potentially impact the safety, health, and security of noncitizens in CBP custody.

*Approval Process*

Use of Parole with Conditions is not authorized unless it is specifically requested by a sector and authorized by the CBP Commissioner. In no circumstance does the authorization to apply Parole with Conditions for a particular sector mean that all noncitizens in a particular sector should be

paroled. Instead, it simply authorizes the BPA inspecting an individual noncitizen to consider one of several processes. As explained more fully below, the decision to parole a noncitizen must still be made on a case-by-case individualized basis, examining all of the facts and circumstances at the time of the noncitizen's inspection, and only if there is an urgent humanitarian reason, such as ensuring the safety, health, and security of the individual noncitizen, or significant public benefit justifying parole.

A sector may request authorization for the use of Parole with Conditions on a case-by-case individualized basis from the Commissioner due to exigent circumstances if one of the following exists:

- A sector or centralized processing center's (CPC) capacity in custody total exceeds 125%; OR
- USBP has apprehended 7,000 noncitizens per day across the SWB over a 72-hour period; OR
- The average time-in-custody (TIC) for noncitizens is over 60 hours.

Use of Parole with Conditions is only authorized during exigent circumstances, and as such may only be utilized to the extent necessary. If a sector or CPC reaches 95% capacity, then Parole with Conditions should not be utilized in that sector and other Title 8 processing pathways should be utilized. Once a sector or CPC is at 95% capacity, the concerns regarding health and safety of noncitizens in short-term custody are more likely mitigated for the reasons discussed below.

Based on USBP's long experience and expertise, USBP expects that the circumstances listed above reflect situations where it will become increasingly difficult for USBP to process noncitizens as quickly as they are apprehended while ensuring that custody conditions are consistently safe, humane, and orderly and consistent with applicable court orders and other legal obligations.

As short-term holding conditions become more crowded, USBP faces increasing challenges regarding maintenance of sanitation, medical needs, and mental health of noncitizens, among other short-term custody standard considerations. These circumstances do not require the parole of any particular noncitizen but instead are factors considered that USBP determines it is appropriate to request the use of Parole with Conditions from the Commissioner for urgent humanitarian reasons in addition to considering other processing pathways. Moreover, short-term custody conditions remain only one factor in the determination to parole. As discussed above, USBP continues to fully assess each individual on a case-by-case basis to determine the best processing pathway for that particular individual.

Approval of Parole with Conditions may be granted only on a sector-by-sector basis, and Parole with Conditions may not be used for noncitizens transferred laterally from a sector that has not met the threshold criteria above. Additionally, approval for use of Parole with Conditions is time limited, must be reassessed every week by the Commissioner or Deputy Commissioner, and is expected to be used sparingly even when approved. Lastly, CBP must obtain a valid mailing address using an address validation tool for every noncitizen paroled under this authority.

Nongovernmental organization and shelter addresses are not sufficient for a noncitizen address. USBP is not authorized to process noncitizens via Parole with Conditions when these criteria are not met, and when a sector or CPC is below 95% capacity, absent extraordinary circumstances as determined by the Commissioner.

The initial grant of Parole with Conditions should generally be for 60 days, for the purpose of allowing the noncitizen to schedule an appointment to appear at an ICE facility for the initiation of appropriate removal proceedings or to request service of an NTA by mail, via a designated online location. Parole is automatically terminated upon expiration of the period for which parole was authorized.

*Individual Assessment*

Each noncitizen is individually processed consistent with INA § 235(a), 8 U.S.C. § 1225(a), after encounter. This inspection process includes, but is not limited to, an assessment of the individual's identification and immigration background, review and vetting of any national security or criminal concerns, and consideration of which immigration processing pathway is best applicable to the noncitizen. This memorandum describes when Parole with Conditions may be appropriate in advance of the issuance of an NTA where the BPA expects that section 240 removal proceedings is likely the appropriate pathway.

Once the Parole with Conditions initial criteria are met, the decision to parole any individual noncitizen must be assessed on a case-by-case, individualized basis.

Prior to a noncitizen's processing via Parole with Conditions, CBP must conduct biometric identity verification. The BPA making determinations regarding Parole with Conditions must evaluate any potential national security and public safety concerns. Any assessment must consider all of the facts and circumstances known to the BPA at the time, including but not limited to, the noncitizen's immigration history, criminal history, community or family ties, medical concerns, role as a caregiver or provider, and other factors known to the BPA. The assessment may begin as early as the initial encounter in the field, and there is no limitation on the time period in which this individual evaluation must occur. BPAs must make determinations about national security and public safety based on the facts and circumstances known at the time of processing.

In addition, the BPA must consider whether, given the time the individual has been in custody, and the availability of ICE detention space, there is an urgent humanitarian reason or significant public benefit to parole the individual from custody, such as where a noncitizen has medical, mental health, or other care needs that cannot reasonably be provided in USBP custody given the prolonged time in custody due to encounter numbers. Additionally, because BP personnel and resources are finite, BP must consider whether processing personnel and resources are necessary to process other noncitizens in BP custody or accomplish enforcement actions that are immediately critical to border security for the greater public benefit. If so, the individual may be considered for Parole with Conditions.

USBP must collect and document a physical address for each noncitizen processed via parole with Conditions. In doing so, USBP is making a determination to temporarily pause the completion of the paperwork necessary for the initiation of removal proceedings under INA § 240, 8 U.S.C. § 1229a, which will instead be completed at a later date. It is expected that the individual noncitizen would receive the same initiation of removal proceedings pursuant to INA § 240, 8 U.S.C. § 1229a, regardless of whether the completion of that paperwork was to occur.

*Cases in Which Parole with Conditions May Not Be Utilized*

Parole with Conditions may not be used for noncitizens who, based on an individualized assessment, pose a national security risk, unmitigable flight risk, public safety threat, or who claim to be, are suspected to be, or are determined to be unaccompanied children as defined by 6 U.S.C. § 279(g)(2) or appear likely subject to the mandatory detention requirements of INA § 236(c), 8 U.S.C. § 1226(c), if processed for removal proceedings pursuant to INA § 240, 8 U.S.C. § 1229a.

*Subsequent Processing*

CBP and ICE will equally share responsibility and work jointly to streamline and complete charging document issuance for individuals processed via Parole with Conditions. The final processing and placement into removal proceedings pursuant to INA § 240, 8 U.S.C. § 1229a is expected to utilize the standard processing, regardless of whether that paperwork occurs as a part of the Parole with Conditions processing or another pathway.

CBP is closely coordinating with ICE on this policy to ensure appropriate communication regarding those CBP is processing via Parole with Conditions and will be jointly responsible for the same. CBP understands that noncitizens will either check in with ICE for an NTA or receive an NTA by mail, upon request. CBP also understands that in circumstances in which DHS processes noncitizens for Parole with Conditions, DHS will make a separate, independent determination, after processing the individual for appropriate removal proceedings, whether to release the individual on parole during the pendency of such proceedings.

CBP must notify ICE in writing each time Parole with Conditions is authorized in a sector, with information regarding data and statistics. Such notification must occur before processing for Parole with Conditions begins in the authorized border sector(s).

CBP will continuously coordinate with ICE and understands that ICE will be issuing guidance to its operators based on this policy in the near term.

This policy, which may be modified, superseded, or rescinded at any time without notice, is for CBP internal use only and is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, by any party. Moreover, as a general statement of policy and agency organization, procedure, or practice, this policy is not subject to the Administrative Procedure Act's requirement of notice and comment.[1] But, even if it were, the

[1] 5 U.S.C. § 553(b)(A).

situations in certain sectors are quickly evolving into exigent circumstances, constituting good cause for bypassing notice and comment rulemaking, as contrary to the public interest.[2] Encounters reached an all-time high of 2.2 million for noncitizens attempting to cross the SWB between ports of entry and without authorization in Fiscal Year 2022 and remain extremely high. The health, safety, and security of noncitizens in USBP custody is paramount to USBP's ability to effectively carry out its mission to secure the border, which in turn is important to protecting public safety. Moreover, on Thursday, May 11, 2023, at 23:59 ET, the Centers for Disease Control and Prevention's (CDC) Title 42 public health Order will end. For the past 7 days, USBP has averaged over 8,750 encounters per day. This is over double the average daily encounters of 4,285 in May of 2019, the highest month of the 2019 surge. Even with significant personnel along the SWB, a significant detention capacity, and interagency resources supporting the effort, this situation requires urgent action.

cc: Corey Price, Executive Associate Director, ICE Enforcement and Removal Operations

[2] 5 U.S.C. § 553(b)(B); *see also Jifry v. F.A.A.*, 370 F.3d 1174, 1179-80 (D.C. Cir. 2004); *Haw. Helicopters Operators Ass'n v. F.A.A.*, 51 F.3d 212, 214 (9th Cir. 1995).

**EXHIBIT A**