**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

|  |  |
|---|---|
| STATE OF TEXAS, et al. | ) |
|  | ) |
| Plaintiffs | ) |
| v. | )   No. 6:23-cv-00007 |
|  | ) |
| DEPARTMENT OF HOMELAND SECURITY, et al. | ) |
|  | ) |
| Defendants. | ) |

DEFENDANTS' OPPOSITION TO
SUB-PLAINTIFFS' MOTION TO SUPPLEMENT THE COMPLAINT
TO CHALLENGE SEPARATE AGENCY ACTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................2

BACKGROUND .......................................................................................................4

    The CHNV Processes ......................................................................................4

    PWC ................................................................................................................5

ARGUMENT .............................................................................................................6

    (A).   The CHNV Processes and the PWC Policy are not related ..................6

    (B).   Supplementation does not advance judicial economy or
           convenience ...............................................................................10

CONCLUSION ........................................................................................................13

CERTIFICATE OF COMPLIANCE .......................................................................15

CERTIFICATE OF SERVICE ................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Anglers Conservation Network v. Pritzker*,
   No. CV 13-1761 (GK), 2014 WL 12776056 (D.D.C. Apr. 28, 2014) ............ 3, 10

*Burns v. Exxon Corp.*,
   158 F.3d 336 (5th Cir. 1998) ...................................................................................3

*Camp v. Pitts*,
   411 U.S. 138 (1973) .................................................................................................11

*Center for Food Safety v. Vilsack*,
   No. C–10–04038–JSW, 2011 WL 672802 (N.D. Cal. Feb. 8, 2011) ...................12

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .................................................................................................10

*Connor v. Castro*,
   719 F. App'x 376 (5th Cir. 2018) ..........................................................................3

*Dean v. Brandon*,
   No. 97–6201, 162 F.3d 1161 (6th Cir. Aug. 13, 1998) ........................................10

*EMW Women's Surgical Ctr., P.S.C. v. Sec'y of Kentucky's Cabinet for Health & Fam. Servs.*,
   No. 3:19-CV-178-DJH-RSE, 2022 WL 2824661 (W.D. Ky. Apr. 22, 2022) .....11

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) .................................................................................................9

*Forte v. Cty. of Merced*,
   No. 1:11-CV-00318-AWI, 2014 WL 1747166 (E.D. Cal. Apr. 30, 2014) ............9

*Jarvis v. Allison*,
   776 F. App'x 267 (5th Cir. 2019) ..........................................................................8

*Lowrey v. Beach*,
   708 F. App'x 194 (5th Cir. 2018) ..........................................................................8

*Miss. Ass'n of Coops. v. Farmers Home Admin.*,
   139 F.R.D. 542 (D.D.C. 1991) ................................................................................8

*Nat'l Treasury Emps. Union v. Helfer*,
  53 F.3d 1289 (D.C. Cir. 1995)......................................................................................8

*Oregon Natural Resources Council, Inc. v. Grossarth,*
  979 F.2d 1377 (9th Cir. 1992).....................................................................................10

*Seamon v. Upham*,
  563 F. Supp. 396 (E.D. Tex. 1983) .................................................................. 9, 12, 13

*Smith v. Hebert*,
  533 F. App'x 479 (5th Cir. 2013)................................................................................3,8

*State of Texas et al. v. Joseph R. Biden Jr., et al.*,
  No. 3:22-cv-00780-M (N.D. Tex.) ......................................................................... 12-13

*Striz v. Collier*,
  No. CV 3:18-0202, 2019 WL 4103067 (S.D. Tex. Aug. 29, 2019)......................11

*Whipple v. Tennessee Bd. of Paroles*,
  No. 18-5390, 2019 WL 1804845 (6th Cir. Jan. 3, 2019) ........................................9

## STATUTES

8 U.S.C. § 1182(d)(5) ........................................................................................2, 6

8 U.S.C. § 1983................................................................................................................9

## RULES

Federal Rule of Civil Procedure 15(a).......................................................................3

Federal Rule of Civil Procedure 15(d).......................................................................3

## OTHER AUTHORITIES

87 Fed. Reg. 63,507 (Oct 19, 2022)...........................................................................4

88 Fed. Reg. 1243 (Jan. 9, 2023) ...............................................................................5

88 Fed. Reg. 1246 ...................................................................................................4, 5

88 Fed. Reg. 1255 (Jan. 9, 2023)...............................................................................4

88 Fed. Reg. 1256 ...................................................................................................4, 5

88 Fed. Reg. 1266 (Jan. 9, 2023) ............................................................................................. 4

88 Fed. Reg. 1267 ..................................................................................................................... 4, 5

88 Fed. Reg. 1279 (Jan. 9, 2023) ............................................................................................. 4

# INTRODUCTION

Plaintiffs, 21 States, filed this lawsuit in January 2023 challenging four decisions by the Secretary of Homeland Security to promulgate processes through which certain eligible nationals of Cuba, Haiti, Nicaragua, and Venezuela and their immediate family members may request advance authorization to travel to the United States to seek parole on a case-by-case basis under 8 U.S.C. § 1182(d)(5) (the "CHNV Processes"). ECF No. 1. These processes are part of the United States' larger foreign policy approach to managing irregular migration within the Western Hemisphere They are also responsive to a request from Mexico to provide additional lawful pathways for migrants to enter the United States. *See* https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and. Although discovery and preparations for the upcoming consolidated trial on Plaintiffs' motion for a preliminary injunction and the merits have been ongoing for an extended period, 13 of the 21 Plaintiffs (the "Sub-Plaintiffs") seek permission to supplement their complaint—already once amended—to challenge an unrelated parole policy known as Parole with Conditions ("PWC"). PWC provides guidance to U.S. Border Patrol ("USBP") agents with respect to their discretionary authority to parole for 60 days noncitizens who have been inspected, vetted, and checked for national security and public safety concerns. Paroled noncitizens must then schedule an appointment with U.S. Immigration and Customs Enforcement ("ICE") for processing and to receive a Notice to Appear (NTA), which initiates the immigration proceedings, or request an NTA by mail. The PWC policy was intended to address dangerous overcrowding in USBP facilities on the Southwest Border.

The PWC policy and the CHNV Processes are distinct from one another because they have different justifications, approaches, and goals. Under the CHNV Processes, noncitizens from

Cuba, Haiti, Nicaragua, and Venezuela who illegally cross the Southwest Border, may be placed in expedited removal proceedings and, if appropriate, may be returned or removed to Mexico. The CHNV Processes also require prospective beneficiaries to secure a financial supporter in the United States, to obtain advance authorization to travel to the United States to seek parole, and to then travel by air to an interior airport in the United States where parole is adjudicated on a case-by-case basis. In contrast, PWC applies only in Southwest Border facilities managed by USBP. The two policies were also issued by different offices within DHS, concern a different scope of noncitizen populations, and are supported by different administrative records. The Court should deny Plaintiffs' motion to supplement the amended complaint.

Federal Rule of Civil Procedure 15(d) permits litigants to supplement their pleadings to allege facts that occur after the filing of their operative complaint. F.R.C.P. 15(d). "Although Rule 15(a) provides that leave to *amend* should be freely granted, Rule 15(d) does not contain such a provision with respect to *supplementation*." *Connor v. Castro*, 719 F. App'x 376, 380 (5th Cir. 2018) (emphasis in original). Instead, "Rule 15(d) is clear that the court *may* permit a supplemental pleading setting forth changed circumstances." *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998). But where, as here, the newly alleged facts and claims are unrelated to the original pleading because they do not arise out of the same transaction or occurrence, and the litigation is already well advanced, supplementation is not consistent with the Federal Rules of Civil Procedure. *Smith v. Hebert*, 533 F. App'x 479, 483 (5th Cir. 2013). This is especially true in Administrative Procedure Act ("APA") cases, like this one, where the proposed supplemental pleading requires the filing of a distinct administrative record. *Anglers Conservation Network v. Pritzker*, No. CV 13-1761 (GK), 2014 WL 12776056, at *2 (D.D.C. Apr. 28, 2014). Further, only 13 of the 21 Plaintiffs have joined the motion to supplement; Alaska, Florida, Idaho, Montana, Nebraska,

3

Oklahoma, Utah, and Wyoming have not. Indeed, Florida is challenging the PWC in a separate action. In that case, the district court has already issued a nationwide preliminary injunction and denied a stay pending appeal, and the Government has filed a notice of appeal in the Eleventh Circuit and on May 19, 2023 sought a stay of the district court's injunction pending full briefing on appeal. *Florida v. Mayorkas*, 23-11644, Dkt. 3-1 (11th Cir.). Notably, Sub-Plaintiffs do not address why their challenge to the PWC ought to be considered as part of this lawsuit. It should not.

## BACKGROUND

**The CHNV Processes:**

The CHNV Processes provide a means for certain eligible nationals from Cuba, Haiti, Nicaragua, and Venezuela, who are vetted and have financial supporters in the United States, to obtain advance travel authorization to fly to an interior airport in the United States, to then be considered for parole on a case-by-case basis for a temporary period of up to two years.[1] 88 Fed. Reg. at 1246 (Haiti); 88 Fed. Reg. at 1256 (Nicaragua); 88 Fed. Reg. at 1267 (Cuba), 87 Fed Reg. at 63,507 (Venezuela). Early numbers from January 2023 show that the CHNV Processes have led to a significant decline of the number of Cubans, Haitians, Nicaraguans and Venezuelans seeking to cross illegally into the United States—a reduction of upwards of 97% between December 2022 and January 2023. *Unlawful Southwest Border Crossings Plummet Under New Border Enforcement* (https://www.dhs.gov/news/2023/01/25/unlawful-southwest-border-crossings-plummet-under-new-border-enforcement-measures). CHNV nationals who cross illegally

---

[1] *See* Implementation of a Parole Process for Haitians, 88 Fed. Reg. 1243 (Jan. 9, 2023); Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1255 (Jan. 9, 2023); Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266 (Jan. 9, 2023); Implementation of Changes to the Parole Process for Venezuelans, 88 Fed. Reg. 1279 (Jan. 9, 2023); Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63,507 (Oct. 19, 2022).

between ports of entry along the Southwest Border now may be returned or removed to Mexico because the Government of Mexico, —for the first time—made the independent decision to accept monthly returns at the Southwest Border of up to 30,000 nationals from these four countries. *See* DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes, *available at* https://www.dhs.gov/news/2023/01/05/dhscontinues-prepare-end-title-42-announces-new-border-enforcement-measures-and (last accessed Jan. 25, 2023).[2]

**PWC:**

In order to reduce dangerous overcrowding in USBP facilities, on May 10, 2023, USBP issued its PWC policy via a memorandum of the same date. This memorandum provided guidance to USBP sectors to receive approval for USBP agents to use their discretionary authority to temporarily parole—for the limited period of 60 days—noncitizens who have been inspected, vetted, and checked for national security and public safety concerns. Qualifying noncitizens must schedule an appointment with ICE to complete their NTA processing or request service of an NTA by mail. The policy is limited to extreme periods of overcrowding. PWC is permitted only after an individualized case-by-case assessment consistent with the "urgent humanitarian reasons" or "significant public benefit" requirement.[3] Use of this exigent measure during periods of increased

---

[2] Absent Mexico's independent decision to accept returns of such individuals, the United States is often left with no means of returning nationals of these four countries, because Cuba, Nicaragua, and Venezuela generally will not accept, or generally place strict limits on, the return of their citizens from the United States, while the security situation in Haiti limits DHS's ability to return Haitians. 88 Fed. Reg. at 1246; 88 Fed. Reg. at 1256; 88 Fed. Reg. at 1267.

[3] A sector may request authorization for the use of PWC on a case-by-case individualized basis from the Commissioner due to exigent circumstances if one of the following exists: A sector or centralized processing center's (CPC) capacity in custody total exceeds 125%; or, USBP has apprehended 7,000 noncitizens per day across the SWB over a 72-hour period; or the average time-in-custody (TIC) for noncitizens is over 60 hours.

encounters at the border allows USBP officials to safeguard their health and safety as well as that of individual noncitizens in their custody by expediting processing and reducing overcrowding. Moreover, absent the use of this policy, USBP agents twill likely be required to devote a disproportionate amount of their limited resources on NTA processing at the expense of other critical national security and public safety functions at the border, including deterring the efforts of criminal organizations and traffickers and intercepting persons seeking to enter the United States unlawfully.

On May 10, 2023, the State of Florida filed a complaint and sought a motion for a temporary restraining order challenging the PWC policy. *Florida v. Mayorkas*, No. 23-cv-09962 (N.D. Fla.). The district court issued a temporary restraining order and then a preliminary injunction, which enjoined DHS "from implementing or enforcing" the PWC memorandum. ECF Nos. 10, 30. The district court denied a stay of the injunction. ECF No. 29. The Government filed an appeal with the Eleventh Circuit Court of Appeals and sought a stay of the injunction pending appeal. *Florida v. Mayorkas*, No. 23-11644, Dkt. 3-1 (11th Cir.). That application remains pending, and PWC is not currently in use.

## ARGUMENT

The Court should deny the Sub-Plaintiffs' motion to supplement the complaint at this late state of the litigation because the CHNV Processes and PWC are unrelated, and considerations of judicial economy and convenience militate against supplementation.

**(A) The CHNV Processes and the PWC policy are not related.**

The Sub-Plaintiffs argue their proposed supplemental pleading is related to Plaintiffs' amended complaint because both the CHNV Processes and PWC concern Defendants' authority to parole noncitizens into the United States under 8 U.S.C. § 1182(d)(5). ECF No. 140. Although

6

the CHNV Processes and PWC implement the statute in different contexts, they are not related. The CHNV Processes are limited to certain eligible nationals from Cuba, Haiti, Nicaragua, and Venezuela. PWC, by contrast, is not limited based on nationality. There are many other differences between the policies. Under the CHNV Processes, nationals from Cuba, Haiti, Nicaragua and Venezuela must first secure a financial supporter in the United States, from there, they must obtain advance travel authorization for the purpose of seeking parole and, then they must arrive at an airport in the interior of the United States rather than at the Southwest Border, where parole is adjudicated on a case-by-case basis consistent with the urgent humanitarian reasons or significant public benefit standard. Unlike the CHNV Processes, noncitizens cannot seek PWC. PWC may be used exclusively at the discretion of USBP agents when capacity in sectors along the Southwest Border exceeds certain thresholds and the CBP Commissioner approves its use. The CHNV Processes and PWC were also issued by different decision makers—the CHNV Processes notices were issued by Secretary Mayorkas, whereas PWC was issued by Raul Ortiz, Chief of the USBP. They also concern different DHS components. U.S.-based individuals who seek to provide financial support under the CHNV Processes apply to U.S. Citizenship and Immigration Services ("USCIS"), and USCIS vets the prospective supporters.  U.S. Customs and Border Protection ("CBP") then vets the prospective CHNV beneficiaries.  Once a prospective CHNV beneficiary has passed national security and public safety vetting and is authorized to travel to the United States to seek parole, officers from CBP's Office of Field Operations ("OFO") make the ultimate determination at the time the prospective CHNV beneficiary arrives at an interior port of entry as to whether parole will be granted. By contrast, PWC applies only to and is implemented by USBP. In addition, the CHNV Processes were implemented as part of the United States' larger foreign policy approach to managing irregular migration within the Western Hemisphere and to deter the

arrival of noncitizens between ports of entry. *See* https://www.whitehouse.gov/briefing-room/statements-releases/2023/05/02/mexico-and-united-states-strengthen-joint-humanitarian-plan-on-migration/ and https://www.whitehouse.gov/briefing-room/statements-releases/2023/01/05/fact-sheet-biden-harris-administration-announces-new-border-enforcement-actions/. PWC, on the other hand, deals with the processing of noncitizens after they have illegally entered the country between ports of entry. In short, the CHNV Processes and PWC policy are not factually related other than they both generally concern immigration, and both utilize DHS' parole authority.

"Leave to supplement should not be granted where the transaction, occurrence, or event is unrelated to the original cause of action." *Jarvis v. Allison*, 776 F. App'x 267, 268 (5th Cir. 2019). Indeed, where, as here, proposed claims are factually unrelated to those in the original complaint, courts routinely deny supplementation. *See, e.g.*, *Smith*, 533 F. App'x at 483 (affirming district court's decision denying supplementation "because the proposed supplemental claims [] were not related to the original cause of action, and the inclusion of those claims would have unduly complicated and prolonged an already complicated case."); *Lowrey v. Beach*, 708 F. App'x 194, 195 (5th Cir. 2018) (affirming denial of motion to supplement where the proposed claims were unrelated to those in the original complaint and the plaintiff could simply file a new action); *Nat'l Treasury Emps. Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (affirming denial where the amendment "bore only [a] tangential relationship to the original claim" and did not prejudice the plaintiff because the plaintiff "can file [the amendment as] an independent challenge"); *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991) (denying leave because the amendment "would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action," but rather "permit plaintiff to transform their case into something entirely

new"); *Whipple v. Tennessee Bd. of Paroles*, No. 18-5390, 2019 WL 1804845, at *4 (6th Cir. Jan. 3, 2019) (affirming district court's decision denying supplementation because the proposed supplemental claims were unrelated to those in the amended complaint); *Dean v. Brandon*, No. 97–6201, 162 F.3d 1161, at *1 (6th Cir. Aug. 13, 1998) (same). The fact that the CHNV Processes and PWC generally concern the same statutory provision should not lead to a different result. *Seamon v. Upham*, 563 F. Supp. 396, 399 (E.D. Tex. 1983) (declining to permit supplementation because although "the controversy addressed in the proposed supplemental complaint involves the same parties and the same laws as the original dispute, it arises out of a completely discrete set of circumstances."); *Forte v. Cty. of Merced*, No. 1:11-CV-00318-AWI, 2014 WL 1747166, at *4 (E.D. Cal. Apr. 30, 2014) (denying motion to supplement because although the proposed claims and the original claims both concern 8 U.S.C. § 1983, they arise from entirely different facts).

Given that the CHNV Processes and PWC policy are entirely different from one another, they also have separate and distinct administrative records.[4] Under the APA, the court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Where supplementation requires the creation and review of a separate administrative record, "few, if any, efficiencies" are served by supplementation rather than the filing of a separate lawsuit. For example, the U.S. District Court for the District of Columbia observed in *Anglers Conservation Network*:

> Although the original and supplemental claims relate to the same
> general subject matter—namely, the failure to include the river

---

[4] In this case, Defendants filed the four separate Certified Administrative Records relevant to the CHNV Processes on March 17, 2023. ECF No. 89. Defendants have not yet filed the administrative record supporting PWC in the Florida case where the policy has been challenged.

9

> herring and shad in the [Fishery Management Plan for Mackerel, Squid, and Butterfish]—they challenge two discrete decisions taken by two different decision-makers and involve two separate administrative records, each of which must be compiled and evaluated separately. Thus, permitting supplementation will create few, if any, efficiencies and is very likely to cause confusion by blurring the lines between two discrete decision-making processes undertaken by separate entities.

2014 WL 12776056, at *2. Other courts have adopted similar reasoning in denying motions to supplement. *See, e.g.*, *Oregon Natural Resources Council, Inc. v. Grossarth,* 979 F.2d 1377, 1379–80 (9th Cir. 1992) (affirming dismissal and denying motion to supplement record with evidence of subsequent agency action involving matters which "should be considered in the first instance by a district court in separate litigation which can develop an independent record"); *City of Bedford v. Locke*, No. 10–10789–RWZ, 2011 WL 2636863, at *10 n.7 (D. Mass. June 30, 2011) (denying motion to supplement with new allegations related to different deficiencies in the same program because, among other reasons, "[a] new administrative record would have to be prepared, followed by new rounds of briefing, all subject to risk of further delay"); *Center for Food Safety v. Vilsack*, No. C–10–04038–JSW, 2011 WL 672802, at *3–5 (N.D. Cal. Feb. 8, 2011) (denying leave to supplement because, *inter alia*, the new allegations related to a new and distinct agency action). Here, like in *Anglers*, the Sub-Plaintiffs are metaphorically trying to insert a river herring into a case about Mackerel, Squid, and Butterfish.

**(B) Supplementation does not advance judicial economy or convenience.**

Because the CHNV Processes and PWC are not related, judicial economy would not be advanced by litigating the policies together. The absence of efficiency is particularly acute here where discovery has been ongoing for months, where motions in limine are currently due on June 6, 2023, proposed findings of fact and conclusions of law are currently due on June 7, 2023, and trial is currently scheduled in less than a month on June 14 and 15, 2023. Although the Parties

10

have proposed alternate trial dates in August, adding the Sub-Plaintiffs' PWC challenges may raise new issues about their alleged injury, the balance of equities, and scope of relief that necessitate additional rounds of discovery, which would still pose problems for a joint trial of Sub-Plaintiffs' claims challenging the CHNV Processes and the PWC policy. Although Sub-Plaintiffs suggest the existing claims can be addressed at trial and the court and parties can devise a separate schedule for "whatever additional proceedings may be necessary" with respect to the proposed PWC claims, ECF No. 140 at 2, Sub-Plaintiffs' proposal is inefficient. On the contrary, Sub-Plaintiffs suggest a lawsuit within a lawsuit. The original claims would proceed to trial in three weeks, and only thereafter would the parties begin litigating the supplemental claims. In fact, depending on the timing of the court's adjudication of the Sub-Plaintiffs' motion, Defendants' answer to the supplemental complaint may not be due until after the trial of the original claims. This split track bears none of the hallmarks of judicial economy. *See EMW Women's Surgical Ctr., P.S.C. v. Sec'y of Kentucky's Cabinet for Health & Fam. Servs.*, No. 3:19-CV-178-DJH-RSE, 2022 WL 2824661, at *2 (W.D. Ky. Apr. 22, 2022) (denying motion to supplement where supplementation would "split this case into three tracks."); *cf. Striz v. Collier*, No. CV 3:18-0202, 2019 WL 4103067, at *5 (S.D. Tex. Aug. 29, 2019) ("Because this case is at its early stages, and because the new facts alleged in the proposed supplement are relevant to Plaintiff's original claims in this lawsuit, the Court in its discretion will allow the supplemental pleading under Rule 15(d).").

  Judicial economy is not served by supplementation, and neither is convenience. The original claims in this lawsuit were brought by 21 States. But only 13 of those States have joined the motion to supplement. Florida, as previously noted, already has a separate lawsuit pending on the same issues raised in the proposed supplemental complaint. Moreover, it is unclear whether

the intervenor parties[5] would have an interest in the proposed supplemental complaint or if this court would be inclined to permit their joinder. Having different parties litigate different claims in the same lawsuit raises practical concerns such as who will be bound by which rulings. Simply put, supplementation does nothing to advance judicial economy or convenience. On the contrary, it unnecessarily confuses and complicates the issues in this case and delays its ultimate resolution until after a determination on the CHNV Processes claims and before the PWC claims are ripe for adjudication. Further, the Sub-Plaintiffs will not be prejudiced if their motion to supplement is denied—they can file a separate lawsuit under the local rules. *See Seamon*, 563 F. Supp. at 399:

> [T]o hear this cause would permit the [proposed] plaintiffs in this case to circumvent established local rules and statutory procedures that have been adopted in order to discourage and hamper forum shopping. If this complaint had been filed as an original, separate lawsuit, a lot would have been drawn to determine which of the two judges sitting in the division where that suit was filed would have been assigned the case.

*Id.*

Finally, Sub-Plaintiffs offer no explanation why their new claims challenging the PWC policy should be heard as part of this case other than that the claims relate to parole. The mere fact that two cases involve (entirely distinct) exercises of the parole authority does not justify artificially combining them into one lawsuit. In fact, if Sub-Plaintiffs' argument is that all parole-related cases should be considered together, as part of one parole super-case, then they have not explained why they did not file this case challenging the CHNV Processes and their new claims challenging PWC as supplements to their claims in the earlier-filed Central American Minors case, which also deals with the use of parole, and is still pending in a Texas district court. *See State of*

---

[5] The intervenors are the Justice Action Center, The Refugee And Immigrant Center For Education And Legal Services, and The Center for Immigration Law and Policy.

*Texas et al. v. Joseph R. Biden Jr., et al.*, No. 3:22-cv-00780-M (N.D. Tex.). Sub-Plaintiffs' logic for supplementation has no limiting principle, as one court has explained in a different context, *see Seamon*, 563 F. Supp. at 399:

> [O]ur adjudication of this case on the merits would signal a willingness on the part of this court to hear any and every Voting Rights Act case involving congressional districts that arises anywhere in Texas, at least until the original apportionment dispute is either resolved or mooted.

*Id.*

Just as the *Seamon* Court was not willing to hear "any and every Voting Rights Act case" simply because the original case concerned voting rights, neither should this Court hear "any and every" parole case simply because this case concerns parole. *Id*.

## CONCLUSION

Supplementation is a tool of judicial economy and convenience. Neither is achieved where the proposed supplemental claims are brought by different parties, concern different facts, necessitate a different administrative record, and would result in the case proceeding on two different tracks. Accordingly, the Court should deny the Sub-Plaintiffs' motion to supplement the complaint.

Date:  May 26, 2023                          Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN WARD
*Senior Litigation Counsel*

/s/ *Elissa Fudim*
Elissa Fudim
Joseph Darrow
Erin Ryan
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

### CERTIFICATE OF SERVICE

I certify that on May 26, 2023, I filed this motion through the Court's CM/ECF system, which automatically served it upon all counsel of record.

/s/ Elissa Fudim

### CERTIFICATE OF WORD LIMIT

I certify that this motion, excepting the caption, signature, and certificates of service, and including footnotes contains 4,344 words.