EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 6:23-cv-00007 |

**SUPPLEMENTAL DECLARATION OF ANNE VALERIE DANIEL-LAVEUS**
**(pursuant to 28 U.S.C. § 1746)**

I, Anne Valerie Daniel-Laveus, upon my personal knowledge, hereby declare as follows:

1. I am a United States citizen. I was born in Port-au-Prince, Haiti, in 1981. I came to the United States when I was eighteen years old and became a United States citizen in 2008.

2. I am a teacher and I currently live in Hollywood, Florida. I've been living here for about eighteen years, since 2005.

1

3. On or around January 17, 2023, I filed the Form I-134A to the United States Citizenship and Immigration Services ("USCIS") to sponsor my brother Reginald and his fourteen-year-old son.

4. On or around June 8, 2023, Reginald received an email from USCIS letting him know that my I-134A had been approved, and that he could set up a profile on the USCIS Online portal to confirm his biographical information. The email from USCIS said that my declaration of financial support "states that [I] agree to provide financial support to [Reginald] for the duration of the period of parole in the United States that [Reginald] may be granted. USCIS has reviewed the Form I-134A and confirmed it is sufficient."

5. As Reginald's sponsor, I did not receive any notification from USCIS that my I-134 had been found sufficient; I learned this for the first time from Reginald. I was surprised that USCIS did not inform me directly via email, but I was able to log in and confirm my sponsorship status. I am fortunate that Reginald is computer-savvy and literate and was able to share the news with me. In Haiti, illiteracy and a lack of access to technology are both major issues. Although Reginald was able to navigate this process without issues, I imagine that other Haitians might not have as easy a time understanding what the update from USCIS meant – especially because the message from USCIS came in English, rather than Haitian Kreyol or French.

6. Now that I have received this approval, I helped Reginald and his son add their biographical information on the morning of June 12. He does not have reliable internet access, so I called him and helped him answer all the questions on the USCIS

2

Online portal. I was able to combine Reginald's online profile with his son's, so they will receive any updates together.

7. From what I have heard, USCIS will likely take one to two weeks to verify the biographical information, and then Reginald and his son will be able to receive travel authorization. I plan to buy Reginald and his son plane tickets as soon as their authorization comes through. I am hopeful that Reginald and his son will be able to join me in the United States soon.

8. I am glad that I finally heard back from USCIS because I had been growing frustrated with how long it was taking for my sponsorship application to be adjudicated. I collected all the documents and information needed to show that I can financially support my brother and nephew, including a bank statement and letter showing how much money I have saved in my bank account, documentation of my assets and income, and a letter from my school verifying my job as a teacher and my annual salary. I was very careful in filling out all the forms and gathering all the information and documents, so I was confused about why I was still waiting for my sponsorship application to be reviewed and approved.

9. Waiting for my sponsorship application to be adjudicated was becoming especially frustrating for me because I knew people who applied to sponsor individuals through these parole pathways months after I applied and had their applications approved more quickly than my own. Since it was not clear to me why some people's applications were moving quicker than others, on or around May 9, I reached out to my state representative, Congresswoman Debbie Wasserman Schultz,

to inquire about my sponsorship application and ask why my application has been stalled for over four months. I was given no definitive answer about the timing for my application to be adjudicated, except that Representative Wasserman Schultz's office would look into the issue. I am not sure if my application's approval was related to an inquiry by Representative Wasserman Schultz, but I remain puzzled by why certain applications took longer than others.

10. The uncertainty concerning when my sponsorship application would be adjudicated was difficult for all of us. The conditions in Haiti continue to be the worst I have ever seen, so knowing my brother and nephew were still there was hard for me, as Reginald's older sister and as an aunt to my young nephew.

11. At the time of my previous declaration, we were in the process of trying to move my nephew back into my brother's home. In early April, I was finally able to coordinate with Reginald so that he and his son could live together while they wait for my sponsorship application to be approved. It was a huge relief to me that they were finally able to be together again because it's best for my nephew to be with his dad. Still, the many months of waiting for my sponsorship application to be approved were difficult for both of them given the danger and instability in Haiti right now.

12. Over the course of just a few months this year, the conditions in Haiti have continued to deteriorate as civic unrest and violence persist virtually unchecked. Recently, Reginald had to rush my nephew home from school because of riots that were happening in the area. Due to these riots, several people were burned alive in the open streets. In addition, access to basic necessities has either greatly diminished

or is non-existent, and prices for them have increased exponentially. As a result, in April I had to start doubling the amount of money I send to Reginald twice a month, for him and my nephew to be able to pay for food and water, medical care, schooling for my nephew, and overall living expenses.

13. I also had to send extra money in April so that Reginald could buy a used motorcycle to take his son to and from school. Although we were able to bring my nephew back to live with Reginald, we learned we couldn't transfer my nephew to a school closer to Reginald's home. Getting a motorcycle was necessary for Reginald to be able to pick up and drop off my nephew at school when there isn't a lockdown in their neighborhood and it is safe for him to go to school.

14. I continue to worry every day for the safety and well-being of my brother and nephew while they are still in Haiti—there is only so much I can do being so far away from them. I do not begrudge him a penny, but it always felt like the money I send is never enough. The limbo of waiting for my sponsorship application to be adjudicated also made it hard to plan for the future. For example, I recently found out that Reginald's house no longer gets reliable electricity. I spent a lot of time researching solar panels, batteries, and other ways to try and make sure that my brother and nephew get at least some power each day, but the available options are expensive. It was hard to decide what to do when it wasn't clear if Reginald will be in Haiti for another week, another month, or another year.

15. Now that my sponsorship application has been approved, I can see the light at the end of the tunnel. All of our family, but especially Reginald and my nephew, are

eager for them to come to the United States through the Haitian parole pathway and begin anew in a safe environment, surrounded by family. I remain happy that I am in a position to support my brother and nephew, but it will be so much easier for all of us now that my sponsorship application has been approved and they should be able to come to the United States. They will be safe here, our family would finally be together, and Reginald and his son could start building a new life for themselves.

16. I have everything ready to support my nephew and brother if they are granted parole. My stepson has left for the Army, and his room in my house is now set up for my nephew. I continue to remain in frequent contact with Reginald and my nephew, and my mother speaks to them almost on a daily basis. My nephew tells her that he cannot wait to come here and be with all of us. My children are also eager for Reginald and my nephew to arrive, but they express disappointment and confusion as to why it is taking so long for them to be able to come here.

17. When Reginald and his son arrive, my top priority is giving Reginald some time and space to acclimate to life in the United States. He has been through a lot and I want him to be able to relax. After this initial adjustment period, Reginald has been looking into training as a mechanic. My uncle has been sharing information about a specific training program that he might use.

18. I also am looking forward to taking Reginald's son and my children to do various summer activities together, such as going to the pool.

19. I still do not know exactly how long we will have to wait for my Reginald and his son to receive travel authorization. We are one step closer to being reunited, but

I worry that we still have to wait for the authorization as the situation in Haiti continues to decline.

20. My primary hope now is that the parole pathway for Haitians will continue operating long enough so Reginald and his son can receive travel authorization to come to the United States to be considered for parole, so they can be safe with me and the rest of our family.

I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct.

Executed at Hollywood, Florida on June 14, 2023.

_Anne Valerie Daniel-Laveus_  6/14/23