**EXHIBIT U**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| The STATE OF TEXAS; the STATE OF ALABAMA; the STATE OF ALASKA; the STATE OF ARKANSAS; the STATE OF FLORIDA; the STATE OF IDAHO; the STATE OF IOWA; the STATE OF KANSAS; the COMMONWEALTH OF KENTUCKY; the STATE OF LOUISIANA; the STATE OF MISSISSIPPI; the STATE OF MISSOURI; the STATE OF MONTANA; the STATE OF NEBRASKA; the STATE OF OHIO; the STATE OF OKLAHOMA; the STATE OF SOUTH CAROLINA; the STATE OF TENNESSEE; the STATE OF UTAH; the STATE OF WEST VIRGINIA; and the STATE OF WYOMING,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR JADDOU, Director of CUSTOMS & BORDER PROTECTION; TROY MILLER, Acting Commissioner of U.S. Customs & Border Protection, in his official capacity; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; and TAE JOHNSON, Acting Director of U.S. Immigration & Customs Enforcement, in his official capacity,<br><br>*Defendants*, and<br><br>VALERIE LAVEUS; FRANCIS ARAUZ; | Civil Action No. 6:23-CV-00007<br><br>Judge Drew M. Tipton<br><br>**EXPERT DECLARATION OF JENNIFER HUNT** |

| | |
|---|---|
| PAUL ZITO; ERIC SYPE; KATE SUGARMAN; NAN LANGOWITZ; and GERMAN CADENAS,<br><br>    *Intervenors.* | §<br>§<br>§<br>§<br>§<br>§ |

## EXPERT DECLARATION OF JENNIFER HUNT

JENNIFER HUNT declares pursuant to 28 U.S.C. § 1746:

      1.     I am a Professor of Economics at Rutgers University and a Fellow of the Society of Labor Economists.  From 2013-2014, I served as the U.S. Department of Labor's Chief Economist.  From 2014-2015, I served as Deputy Assistant Secretary for Microeconomic Analysis at the U.S. Department of the Treasury. Prior to joining Rutgers in 2011, I held positions at McGill University, the University of Montreal and Yale University.  I hold a Ph.D. in Economics from Harvard University and a Bachelor's degree in Electrical Engineering from the Massachusetts Institute of Technology.  My current research focuses on the geographic spread of technology, immigration and wage inequality.

**Assignment**

      2.     It is my understanding that a coalition of 21 states have sued the Department of Homeland Security in *Texas v. Department of Homeland Security*, Case No. 6:23-cv-000027, to challenge four new parole processes that enable individuals with lawful status here in the U.S. to sponsor nationals of Cuba, Haiti, Nicaragua, and Venezuela for travel to the United States, parole, and employment authorization for up to two years.  In briefing to the court, the plaintiff states have alleged that "[t]he basic economic laws of supply and demand are in effect in Texas; the necessary effect of authorizing illegal aliens to work in Texas is increase the supply of laborers

2

and therefore depress the wages paid to Texans who are legally present in the United States."[1] I have been engaged by counsel for the Intervenor Defendants in this case to evaluate these assertions made in the Plaintiff States' pleadings. As a matter of personal principle, I have declined counsel's offer of compensation for the time I have spent preparing this declaration.

**Summary of Opinion**

3. Notwithstanding the Plaintiff States' assertion that an increase in immigration automatically depresses the wages paid to state residents "who are legally present in the United States," the notion that inflows of immigrants threaten domestic jobs and wages is contrary to the results of a very large body of established and accepted economic research, including my own. Such a view is rooted in a simplified, static model of labor demand and supply that assumes, erroneously, that there is a fixed amount of work in a society, such that any job held by an immigrant or foreign-born worker could be held by a native-born worker. In reality, the number of jobs available depends on myriad economic factors and is never stable. The most accurate way to gauge the net impact of immigration on the economy is to analyze all the economic effects produced over time, including how firms and local economies respond to immigrant inflows by expanding, investing, adjusting product specialization, adopting efficient technologies, and creating new businesses. Data show that immigrants expand the U.S. economy's productive capacity, stimulate investment, increase aggregate demand, and promote specialization that in the

---

[1] Plaintiff States' Motion for Preliminary Injunction at 13-14, February 14, 2023, Case No. 06:23-cv-000027.

long run boosts productivity.[2] There is a consensus among economists that the net result for workers born in the United States is no change in employment and little or no change in wages.[3]

**Opinion**

    4.  As an initial matter, it is unclear why Texas points to the alleged impact that undocumented individuals have on wages when the parole processes at issue in this suit provide work authorization and temporary legal status in the United States. The alleged effects of undocumented workers are not relevant to the inquiry of what impact the beneficiaries of these parole processes may have on wages paid to native-born workers in Texas.

    5.  In any event, Texas's assertion that an increase in the supply of new laborers automatically depresses the wages paid to Texans who are legally present in the United States betrays a misunderstanding of how the economy functions. When the population grows, whether due to a higher birth rate or due to immigration, the new residents consume goods and services, expanding the markets for firms. In response to the expanded markets, firms increase their capital and hire new workers. The most likely outcome of immigration is that employment and the production of goods and services rise, while wages and prices stay the same. It does not follow,

---

[2] *See, e.g.*, Giovanni Peri, *The effect of immigration on productivity: Evidence from U.S. states*, 94 Rev. of Econ. And Stats. 348 (2012).

[3] See Nat'l Acad. Of Scis., Eng'g., & Med., *The Economic and Fiscal Consequences of Immigration* 266 (The National Academies Press 2017) ("[M]any studies conclude that, economy wide, the impact of immigration on average wages and employment is small"); see also Michael Clemens & Jennifer Hunt, The Labor Market Effects of Refugee Waves: Reconciling Conflicting Results, 72 ILR Rev. 818, 818-857 (2019), https://journals.sagepub.com/doi/abs/10.1177/0019793918824597; Giovanni Peri & Vasil Yasenov, *The Labor Market Effects of a Refugee Wave: Applying the Synthetic Control Method to the Mariel Boatlift* (Nat'l Bureau of Econ. Research, Working Paper No. 21801, 2015), http://nber.org/papers/w21801.

for example, that because Connecticut's population is small compared to that of New York, Connecticut's wages are higher.

6. Indeed, in 2017, the National Academies of Sciences, Engineering, and Medicine ("NAS") published an exhaustive, 642-page Consensus Study Report entitled "The Economic and Fiscal Consequences of Immigration" (the "NAS Report"). The NAS Report, the product of three years of research and deliberation, represents the consensus of a panel of fourteen established, respected economists and sociologists across the policy and political spectrum, including myself, as well as "immigration sceptics" who favor immigration restriction, such as George Borjas. The report's unanimous conclusion was that *immigration increases economic growth while having no negative impact on native employment and little or no impact on average native wages*.[4] As a member of the expert panel that produced the NAS Report, I agree with its findings.

7. Importantly, it is the consensus of the NAS panel of experts that the inflow of foreign-born workers, through visas and other legal channels, is integral to the nation's economic growth.[5] Such inflows supply workers, which increases GDP, and have helped the United States avoid the problems facing stagnant economies created by purely demographic forces—in particular, an aging (and, in the case of Japan, a shrinking) workforce.[6]

---

[4] The Nat'l Acad. Of Scis., Eng'g., and Med., *The Economic and Fiscal Consequences of Immigration* 5-6 (The National Academies Press 2017), https://doi.org/10.17226/23550.

[5] *Id.* at 317.

[6] *Id.* at 6.

8. Even less-skilled workers contribute to the American economy by diversifying the skills of the workforce and thus increasing specialization and productivity.[7] Most less-educated, less-skilled immigrants do not have the language and communication skills of native-born workers. Their arrival therefore leads native-born workers in occupations favored by such immigrants to move into more language and communication-intensive occupations, mitigating negative wage effects and increasing the degree to which workers specialize in what they do best. Native-born workers in certain other occupations are complementary to less-skilled immigrant workers, because the skills of the different worker types must be combined to produce a good or service. This means that demand for native-born workers in these occupations increases with the arrival of low-skilled immigrants, and consequently their wage does too.

9. There is simply no economic or evidentiary basis for the Plaintiff states' assertions that an increase in immigrants will "increase the supply of laborers and therefore depress the wages paid to Texans who are legally present in the United States."

I declare under penalty of perjury that the foregoing is true and correct.

_____
Jennifer Hunt

Executed on 18 June 2023 at New York, New York.

---

[7] *See* Giovanni Peri & Chad Sparber, *Task Specialization, Immigration, and Wages*, 1 Am. Econ. J.: Applied Econ. 135 (2009), http://giovanniperi.ucdavis.edu/uploads/5/6/8/2/56826033/peri_sparber_task_specialization_immigration_2010.pdf.