# EXHIBIT B

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| *Plaintiffs,* | |
| | |
| v. | Case 6:23-cv-00007 |
| | |
| U.S. DEPARTMENT OF HOMELAND | |
| SECURITY, *et al.*, | |
| *Defendants.* | |

**TEXAS'S [CORRECTED] RESPONSE TO DEFENDANTS' DISCOVERY REQUESTS**

Texas serves the following Responses and Objections to Defendants' First Set of Requests for Production, Interrogatories, and Requests for Admission to Plaintiffs.

Dated May 23, 2023.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

*/s/ Leif A. Olson*
LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas No. 33695
leif.olson@oag.texas.gov

RYAN D. WALTERS
Deputy Chief, Special Litigation Division
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON

1

America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*Counsel for the State of Texas*

## CERTIFICATE OF SERVICE

I certify that on May 23, 2023, I served a copy of this document by electronic mail to all counsel listed below:

EREZ REUVENI
Assistant Director
Erez.R.Reuveni@usdoj.gov

BRIAN WARD
Senior Litigation Counsel
Brian.C.Ward@usdoj.gov

JOSEPH A. DARROW
Joseph.A.Darrow@usdoj.gov

ELISSA P. FUDIM
Elissa.P.Fudim@usdoj.gov

ERIN T. RYAN
Erin.T.Ryan@usdoj.gov
Trial Attorneys

U.S. DEPARTMENT OF JUSTICE
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 307-4293

*Counsel for Federal Defendants*

Esther H. Sung
esther.sung@justiceactioncenter.org
Karen C. Tumlin
karen.tumlin@justiceactioncenter.org
Jane Bentrott
jane.bentrott@justiceactioncenter.org
Lauren Michel Wilfong*
lauren.wilfong@justiceactioncenter.org
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272


Daniel Hatoum
daniel.hatoum@raicestexas.org
Vanessa Rivas-Bernardy
vanessa.rivas@raicestexas.org
The Refugee and Immigrant Center
for Education and Legal Services
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
(210) 960-3206

Monika Y. Langarica

langarica@law.ucla.edu
Ahilan T. Arulanantham
arulanantham@law.ucla.edu
Center for Immigration Law and
Policy
UCLA School of Law
385 Charles E. Young Dr. E., Box
951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

*Counsel for Intervenors*

*/s/ Ryan D. Walters*

3

### OBJECTION TO DEFINITION

Texas objects to Defendants' definition of the term "You" as " any Plaintiff State, including all its agencies, subdivisions, and officers acting in official capacity."

"A party to a cause of action is a person who is both named as a party and subject to the court's jurisdiction." *Nagle v. Lee*, 807 F.2d 435, 440 (5th Cir. 1987). Texas's executive department is not like the federal executive branch— a complete unit with "one man" wielding the entire executive power to whom all "lesser officers must" be accountable. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2197 (2020) (quotations omitted). "[U]nlike the federal constitution, the Texas Constitution does not vest the executive power solely in one chief executive. Instead, the executive power is spread across several distinct elected offices." *In re Abbott*, 645 S.W.3d 276, 280 (Tex. 2022). The design creates a "decentralize[d] executive authority." *State v. Brabson*, 976 S.W.2d 182, 186 (Tex. Crim. App. 2012) (Womack, J., concurring).

The Attorney General of Texas, who brought this suit on Texas's behalf, does not have a free-floating Executive power to direct State agencies to take any action. Texas's "Executive" is non-unitary to the point where "neither the Governor nor the Attorney General has statutory authority [even] to directly control" the actions of many non-elected departments. *In re Abbott*, 645 S.W.3d at 281.Under Texas law, the Attorney General represents "the state *qua* state and as *parens patriae*." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997). Texas's discovery obligations are limited to information or documents in the possession or control of the Attorney General of Texas.

Additionally, the State of Texas has more than 320,000 full-time employees and thousands more part-time employees spread across the general government, health and human services, public education, higher education, the judiciary, public safety and criminal justice, natural resources, business and economic development, regulatory and other state agencies, the legislature, and the Office of the Attorney General. This extends even more broadly to political subdivisions within the State. It is impossible to represent, even after a reasonable and diligent search, that all, each, or every bit of information falling within a description can or has been assembled.

However, Texas has made diligent efforts to obtain responsive information and documents from what it has determined would be the most likely sources.

4

Such information or documents now in the possession of the Attorney General of Texas will be noted in each response.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

**Interrogatory No. 1:** How many Cuban, Haitian, and Nicaraguan noncitizens live in your State? Provide this data for each of these populations for the relevant period, by year and month, and since January 6, 2023.

> **Answer to Interrogatory No. 1:** Texas does not track this information in general, or by year or month. However, the Texas Demographic Center examines federal census information on this topic, and the relevant data from the American Community Survey estimates are included in the response to Request for Production No. 1.

**Interrogatory No. 2:** How many Cuba, Haitian, and Nicaraguan noncitizens paroled into the country under the Cuban, Haitian, and Nicaraguan Parole Processes live in your State?

> **Answer to Interrogatory No. 2:** Texas does not track this information.

**Interrogatory No. 3:** How many Venezuelan noncitizens live in your State? Provide this data for the relevant period, by year and month, and since October 18, 2022.

> **Answer to Interrogatory No. 3:** Texas does not track this information in general, or by year or month. However, the Texas Demographic Center examines federal census information on this topic, and the relevant data from the American Community Survey estimates are included in the response to Request for Production No. 2.

**Interrogatory No. 4:** How many Venezuelan noncitizens paroled into the country under the Venezuelan Parole Process live in your State?

> **Answer to Interrogatory No. 4:** Texas does not track this information.

**Interrogatory No. 5:** For each of Interrogatories No. 1 and 3, state how many of these individuals were paroled into the United States under the CHNV Parole Processes and how many entered the United States through a process other than the CHNV Parole Processes.

> **Answer to Interrogatory No. 5:** Texas does not track this information.

**Interrogatory No. 6:** Describe your means of tracking the data requested in Interrogatories No. 1 to 5. Identify all sources of data and their author(s).

**Answer to Interrogatory No. 6:** Texas has responded to this in its Responses to Interrogatories No. 1 to 5.

**Interrogatory No. 7:** How many Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens who live in your State have been convicted of crimes in your State during the relevant period? Provide data for the relevant period, by year, and since the Effective Dates.

**Answer to Interrogatory No. 7:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Plaintiff has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Subject to and without waiving these objections, a list of citizens of Cuba, Haiti, Nicaragua, and Venezuela who have been incarcerated or confined by the Texas Department of Criminal Justice (with dates of sentence for the former) are produced at TEXAS_000172–TEXAS_000173.

**Interrogatory No. 8:** How many Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens who live in your State have received healthcare and medical services for which some or all the cost has been paid by your State without reimbursement, and how much money did you spend on such services. Provide data for expenditures which occurred during the relevant period, by year, and since the Effective Dates.

6

**Answer to Interrogatory No. 8:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Plaintiff has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But] MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections, Texas states that neither it nor the Texas Health and Human Services Commission tracks the citizenship of beneficiaries of the Family Violence Program. Documents from the Texas Health and Human Services Commission showing expenditures for Emergency Medicaid and CHIP-Perinatal are produced at TEXAS_000162. As to uncompensated care for illegal aliens by state public hospital districts, the Texas Health and Human Services Commission has not tracked those costs for the relevant time periods.

**Interrogatory No. 9:** How many Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens who live in your State have received state-subsidized

public education and how much money was spent on providing such services? Provide data for the relevant period, by year, and since the Effective Dates.

> **Answer to Interrogatory No. 9:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Plaintiff has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.
>
> Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But] MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")
>
> Subject to and without waiving these objections, the Texas Education Agency does not track this information.

**Interrogatory No. 10:** What costs, if any, has your State incurred from issuing drivers' licenses or State-identification-documents to Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens who live in your State? Provide data for the relevant period, by year, and since the Effective Dates.

**Answer to Interrogatory No. 10:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Plaintiff has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But] MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections: While the Texas Department of Public Safety tracks the birth country of applicants, it does not track the particular citizenship of applicants (as opposed to whether they are U.S. citizens or not)—see also the documents at TEXAS_000022.

**Interrogatory No. 11:** What costs, if any, has your State incurred from providing family and child welfare social services to Cuban, Haitian, Nicaraguan and Venezuelan noncitizens who live in your State. Provide data for the relevant period, by year, and since the Effective Dates.

**Answer to Interrogatory No. 11:** Texas objects that it is not alleging injury on this basis for standing purposes. Texas also objects that it is

9

entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Plaintiff has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But] MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections: the Texas Department of Family and Protective Services tracks costs incurred for noncitizens born in Cuba, Haiti, Nicaragua, and Venezuela. *See* documents produced at TEXAS_000001.

**Interrogatory No. 12:** For each of Interrogatories No. 7 to 11, state how many of the individuals were paroled into the United States under the CHNV Parole Processes, how many entered the United States other than through the CHNV Parole Processes, and your means of tracking such data. Identify all sources of data and their author(s).

**Answer to Interrogatory No. 12:** Texas does not track this information.

**Interrogatory No. 13:** For each of Interrogatories No. 7 to 11, state your means of tracking the data. Identify all sources of data and their author(s).

> **Answer to Interrogatory No. 13:** Texas has responded to this Interrogatory in its Responses to Interrogatories No. 7 to 11.

**Interrogatory No. 14:** Describe your injury with respect to each of your claims for relief in the Amended Complaint, broken down by claim. Identify which documents you have provided in response to these Requests support each claim.

> **Answer to Interrogatory No. 14:** Texas's asserted injuries are the same for all its claims for relief and arise from costs imposed by the increased presence of aliens in Texas. In addition to the declarations Texas has submitted in its motion for preliminary injunction briefing (and supplemental ones it is entitled to submit before trial), Texas has produced documents relating to costs relating to driver licenses (produced at TEXAS_000002–TEXAS_000099), education (produced at TEXAS_003239–TEXAS_003255), healthcare (produced at TEXAS_000100–TEXAS_000162), law enforcement (produced at TEXAS_000163–TEXAS_003238), and family protective services (produced at TEXAS_000001).

**Interrogatory No. 15:** To what extent do noncitizens present in your State contribute economic value to your State in any way, tangible and intangible, including but not limited to: paying state income, sales, property and other taxes, providing labor and employment opportunities, owning homes, and contributing to civic and social causes and initiatives. Specify the categories of economic value and the amount of money earned from each category. To the extent possible, specify the economic contribution by Cubans, Haitians, Nicaraguans and Venezuelans nationals specifically.

> **Answer to Interrogatory No. 15:** Texas objects to this request. Any purported benefits Plaintiff receives as a result of the challenged policies are irrelevant to Plaintiff's standing based on its injuries from the same. *See Texas v. United States*, 809 F.3d 134, 155-56 (5th Cir. 2015) ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury. Our standing analysis is not an accounting exercise....") (internal quotation marks and

11

citations omitted). Subject to and without waiving this objection, neither the Texas Comptroller of Public Accounts nor the Texas Demographic Center tracks this information.

**Interrogatory No. 16:** For any Request for Admission that you deny, please explain the basis for your denial and identify any evidence supporting your denial.

**Answer to Interrogatory No. 16:** Texas denies Request No. 22 because an injury sufficient for standing is not undermined by an offset in benefits. *See Texas v. United States*, 555 F. Supp. 3d 351, 382 (S.D. Tex. 2021) ("even if the Government *could* demonstrate that increased enforcement in the prioritized categories might displace a drop in the total number of detained aliens resulting from the deprioritized categories, this "offset" would be irrelevant as a matter of law.") (Tipton, J.), *appeal dismissed,* No. 21-40618, 2022 WL 517281 (5th Cir. Feb. 11, 2022). Texas also denies Request No. 22 because a hypothetical situation where fewer aliens from those countries came to live in Texas after institution of the CHNV Parole Processes would not necessarily mean that the latter caused the former.

Texas partially denies Request Nos. 8 & 9 on the bases identified in those responses.

**OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION**

**Request for Production No. 1:** Provide all documents and data that show the number of Cubans, Haitians, and Nicaraguans who live in your State, by year, during the relevant period and since January 6, 2023, broken down by nationality.

**Response to Request No. 1:** Texas does not track this information in general, or by year. However, the Texas Demographic Center examines federal census information on this topic, and the relevant data from the American Community Survey estimates are produced at TEXAS_003256–TEXAS_003265.

**Request for Production No. 2:** Provide all documents and data that show the number of Venezuelans who live in your State, by year, during the relevant period and since October 18, 2022.

**Response to Request No. 2:** Texas does not track this information in general, or by year. However, the Texas Demographic Center examines

12

federal census information on this topic, and the relevant data from the American Community Survey estimates are produced at TEXAS_003256–TEXAS_003265.

**Request for Production No. 3:** Provide all documents and data that show the number of Cubans, Haitians, Nicaraguans, and Venezuelans paroled into the United States under the CHNV Parole Processes specifically, who live in your State.

**Response to Request No. 3:** Texas does not track this information.

**Request for Production No. 4:** Provide all documents and data that show the cost to your State from providing unreimbursed medical care to Cubans, Haitians, Nicaraguans, and Venezuelans, by year, during the relevant time period, and since the Effective Dates, broken down by the nationality of the noncitizen group.

**Response to Request No. 4:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Texas has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But] MPP is precisely the sort of large-scale policy that's amenable to challenge

13

using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections, the Texas Health and Human Services Commission does not track the citizenship of beneficiaries of the Family Violence Program. Documents from the Texas Health and Human Services Commission showing expenditures for Emergency Medicaid and CHIP-Perinatal are produced at TEXAS_000100–TEXAS_000162.

**Request for Production No. 5:** Provide all documents and data that show the cost to your State from providing public education to Cubans, Haitians, Nicaraguans, and Venezuelans, by year, during the relevant time period, and since the Effective Dates, broken down by the nationality of the noncitizen group.

**Response to Request No. 5:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Texas has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But]

14

MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections, the Texas Education Agency does not track this information but see documents produced at TEXAS_003239–TEXAS_003255.

**Request for Production No. 6:** Provide all documents and data that show the cost to your State from providing social services to Cubans, Haitians, Nicaraguans, and Venezuelans, by year, during the relevant time period, and since the Effective Dates, broken down by the nationality of the noncitizen group, and the type of social service.

**Response to Request No. 6:** Texas objects to this request. It is unduly burdensome and not proportional to the needs of the case. It is impossible for Texas to describe each and every "social service" as requested in the interrogatory. It also objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Texas has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But]

15

MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving its objections, Texas has submitted the evidence of the social services provided to illegal aliens that it intends to rely on and is entitled to supplement that evidence before trial. Texas provides driver licenses, education, health care, and law-enforcement services to illegal aliens in the State.

**Request for Production No. 7:** Provide all documents and data that show the cost to your State from providing driver's licenses or other identification documents to Cubans, Haitians, Nicaraguans and Venezuelans, by year, during the relevant time period, and since the Effective Dates, broken down by the nationality of the noncitizen group.

**Response to Request No. 7:** Texas also objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Plaintiff has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling Texas.

Plaintiff also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But]

16

MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections, while the Texas Department of Public Safety tracks the birth country of applicants, it does not track the particular citizenship of applicants (as opposed to whether they are US citizens or not). Documents are being produced at TEXAS_000002–TEXAS_000099.

**Request for Production No. 8:** Provide all documents and data that show the cost to your State associated with law enforcement related to Cubans, Haitians, Nicaraguans and Venezuelans, by year, during the relevant time period, and since the Effective Dates, broken down by the nationality of the noncitizen group.

**Response to Request No. 8:** Texas objects that it is entitled to rely only on certain harms to demonstrate its standing, and the amount of injury is irrelevant. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("But the injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an 'identifiable trifle.'") (internal citation and quotation marks omitted). The scope of any injury is also irrelevant relating to the irreparable injury prong of the requirements for a preliminary (or permanent) injunction, because "when 'the threatened harm is *more than de minimis*, it is not so much the *magnitude* but the irreparability that counts for purposes of a preliminary injunction.'" *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)) (emphases added). Texas has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order.

Texas also objects to this request because expenditures on individual aliens are not relevant to the standing inquiry when challenging a large-scale immigration program such as at issue in this case. *See Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021) ("The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible because of MPP's termination. … [But]

MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing 'conjectural' or 'hypothetical' about that.")

Subject to and without waiving these objections, documents are being produced at TEXAS_000163–TEXAS_003238, particularly TEXAS_000172–TEXAS_000173.

**Request for Production No. 9:** Provide all documents relating to any and all additional injuries that you allege have been caused, or will be caused, to you by noncitizens who enter the United States pursuant to the CHNV Parole Processes.

**Response to Request No. 9:** Texas objects to this request as the scheduling order allows supplementation of submitted declarations before trial. Texas has submitted the evidence of injury it intends to rely on and will supplement on those same bases as permitted by the scheduling order—Texas provides driver licenses, education, healthcare, and law-enforcement services to illegal aliens in the State.

**Request for Production No. 10:** Provide all documents and data that indicate to what extent Cubans, Haitians, Nicaraguans, and Venezuelans who live in your State contribute economic value to your State in any way, tangible and intangible, including but not limited to: paying state income, sales, property and other taxes, providing labor and employment opportunities, owning homes, and contributing to civic and social causes and initiatives, by year, during the relevant time and since the Effective Dates.

**Response to Request No. 10:** Texas objects to this request. Any purported benefits Texas receives from the challenged policies are irrelevant to its standing based on its injuries caused by those policies. *See Texas v. United States*, 809 F.3d 134, 155-56 (5th Cir. 2015) ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury. Our standing analysis is not an accounting exercise....") (internal quotation marks and citations omitted).

18

Subject to and without waiving this objection, neither the Texas Comptroller of Public Accounts nor the Texas Demographic Center tracks this information.

**Request for Production No. 11:** Provide all documents and data consulted or relied upon in responding to Defendants' accompanying Interrogatories and Requests for Admission.

>**Response to Request No. 11:** Copies of all such documents and data are included in the responses to the other Requests for Production of Documents. Communications that constitute attorney-client privilege and work product are not being produced for any responses.

## RESPONSES TO REQUESTS FOR ADMISSION

**Request for Admission No. 1:** Cubans, Haitians, Nicaraguans and Venezuelans paroled into the United States pursuant to the CHNV Parole Processes have been inspected by immigration authorities and permitted to enter the United States.

>**Response to Request No. 1:** Texas can neither admit nor deny this request as it does not have knowledge of Defendants' actions regarding any inspections of Cubans, Haitians, Nicaraguans, and Venezuelans made during implementation of the CHNV Parole Processes.

**Request for Admission No. 2:** You lack any basis to assess the cost to your State caused by any Cubans, Haitians, Nicaraguans, and Venezuelans paroled into the United States pursuant to the CHNV Parole Processes since the Effective Dates.

>**Response to Request No. 2:** Texas can neither admit nor deny this request as it does not have knowledge of how many aliens from those countries have been paroled into Texas pursuant to the CHNV Parole Processes.

**Request for Admission No. 3:** You have no evidence that you incurred more costs from Cubans, Haitians, and Nicaraguans entering your State each month since January 6, 2023 than you incurred each month in 2022 from the same populations.

>**Response to Request No. 3:** Texas can neither admit nor deny this request as it does not have knowledge of how many Cubans, Haitians, and Nicaraguans have entered Texas during these time periods.

19

**Request for Admission No. 4:** You have no evidence that you incurred more costs from Venezuelans entering your State each month since October 18, 2022 than you incurred each earlier month in 2022 from the same population.

**Response to Request No. 4:** Texas can neither admit nor deny this request as it does not have knowledge of how many Venezuelans have entered Texas during these time periods.

**Request for Admission No. 5:** You cannot quantify how much money your State would save if no Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens granted parole through the CHNV Parole Processes were present in your State.

**Response to Request No. 5:** Texas can neither admit nor deny this request as it concerns a future event contingent on many factors; the request does not concern facts that have ever been in existence. There is no information Texas knows or can readily obtain that is sufficient to enable it to admit or deny. The request therefore does not fall within either of the two categories of information for which requests for admission may be made. *See* Fed. R. Civ. P. 36(a)(1) ("A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to "(A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.").

**Request for Admission No. 6:** You do not track unreimbursed medical expenditures made specifically on behalf of Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens released into the country generally, or under the CHNV Parole Processes specifically.

**Response to Request No. 6:** Texas admits that it does not track this information and denies that the Texas Health and Human Services Commission does not have information regarding unreimbursed Emergency Medicaid of CHIP-Perinatal payments for citizens of Cuba, Haiti, Nicaragua, and Venezuela (see documents produced at TEXAS_000162).

**Request for Admission No. 7:** You do not track unreimbursed educational expenditures made specifically on behalf of Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens released into the country generally, or under the CHNV Parole Processes specifically.

**Response to Request No. 7:** Texas admits that neither it nor the Texas Education Agency tracks either category of information.

**Request for Admission No. 8:** You do not track unreimbursed family and child welfare service expenditures made specifically on behalf of Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens released into the country generally, or under the CHNV Parole Processes specifically.

**Response to Request No. 8:** Texas admits that it does not track such information. Texas denies that the Texas Department of Family and Protective Services does not track unreimbursed family and child welfare service expenditures made specifically on behalf of citizens of Cuba, Haiti, Nicaragua, and Venezuela (see documents produced at TEXAS_000001) but admits that it does not track such expenses for those released under the CHNV Parole processes specifically.

**Request for Admission No. 9:** You do not track unreimbursed law enforcement expenditures made specifically on behalf of Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens released into the country generally, or under the CHNV Parole Processes specifically.

**Response to Request No. 9:** Texas admits that it does not track unreimbursed law enforcement expenditures made specifically on behalf of citizens of Cuba, Haiti, Nicaragua, and Venezuela released into the country generally, or under the CHNV Parole Processes specifically. Texas denies that the Texas Department of Criminal Justice does not track unreimbursed law enforcement expenditures made specifically on behalf of citizens of Cuba, Haiti, Nicaragua, and Venezuela released into the country generally (see documents produced at TEXAS_000172– TEXAS_000173) but admits that the Texas Department of Criminal Justice does not track such information under the CHNV Parole Processes specifically.

**Request for Admission No. 10:** You do not track unreimbursed drivers' licensing and state-identification-document expenditures made specifically on behalf of Cuban, Haitian, Nicaraguan, and Venezuelan noncitizens released into the country generally, or under the CHNV Parole Processes specifically.

**Response to Request No. 10:** Texas admits that it does not track unreimbursed driver licensing and state-identification-document expenditures made specifically on behalf of citizens of Cuba, Haiti,

Nicaragua, and Venezuela, either released into the country generally or under the CHNV Parole Processes. Texas admits that the Texas Department of Public Safety does not track the citizenship of driver license or state-identification-document holders, including for citizens of Cuba, Haiti, Nicaragua, and Venezuela (but does track country of birth and whether they are citizens of the United States, see documents produced at TEXAS_000022), whether released into the country generally or under the CHNV Parole Processes.

**Request for Admission No. 11:** You have not made any changes to State budgeting, programs, or services in response to Defendants' implementation of the CHNV Parole Processes.

> **Response to Request No. 11:** Texas can neither admit nor deny this request as it is contingent on many factors, including the motivations of each member of the State Legislature and whether such a motivation can be attributed to the Legislature as a whole, or motivations within other State agencies outside its control. There is no information Texas knows or can readily obtain that is sufficient to enable it to admit or deny.

**Request for Admission No. 12:** Cubans, Haitians, Nicaraguans, and Venezuelans released into the country generally, or under the CHNV Parole Processes specifically, who live in your State, contribute to the State's revenue by paying taxes.

> **Response to Request No. 12:** Texas can neither admit nor deny this request as it does not track such numbers based on citizenship, and neither does the Texas Comptroller of Public Accounts.

**Request for Admission No. 13:** Cubans, Haitians, Nicaraguans, and Venezuelans released into the country generally, or under the CHNV Parole Processes specifically, who live in your State, contribute to the State's economy through their labor and purchase of goods or services.

> **Response to Request No. 13:** Texas can neither admit nor deny this request as it does not track such numbers based on citizenship, and neither does the Texas Comptroller of Public Accounts.

**Request for Admission No. 14:** Fewer Cubans, Haitians, Nicaraguans, and Venezuelans have entered the United States generally since the promulgation of the CHNV Parole Processes than were entering prior to the promulgation of these processes.

**Response to Request No. 14:** Texas can neither admit nor deny this request as it does not have knowledge of how many Cubans, Haitians, and Nicaraguans have entered the United States during these time periods.

**Request for Admission No. 15:** From September 2022 to February 2023, the number of unique encounters of Venezuelans at the Southwest border (in other words, persons not previously encountered in the prior 12 months), between ports of entry, were, respectively by month: September 33,494, October 20,804, November 6,253, December 6,067, January 2,552, February 1,172, *see* https://www.cbp.gov/newsroom/national-media-release/cbp-releases-february-2023-monthly-operational-update, and the total number of Venezuelans encountered at the Southwest border, both at ports of entry and between ports of entry, were, respectively: September 33,804, October, 22,037, November 7,955, December 8,166, January 9,100, February 5,559, *see* https://www.cbp.gov/newsroom/stats/nationwide-encounters.

**Response to Request No. 15:** Texas admits that the referred-to web pages say that, but it can neither admit nor deny the accuracy of these numbers.

**Request for Admission No. 16:** From December 2022 to February 2023, the number of unique encounters of Cubans at the Southwest border (in other words, persons not previously encountered in the prior 12 months), between ports of entry, were, respectively by month: December 42,183, January 6,053, February 140, https://www.cbp.gov/newsroom/national-media-release/cbp-releases-february-2023-monthly-operational-update, and the total number of Cubans encountered at the Southwest border, both at ports of entry and between ports of entry, were, respectively: December 34,710, January 6,433, February 753, *see* https://www.cbp.gov/newsroom/stats/nationwide-encounters.

**Response to Request No. 16:** Texas admits that the press release says that, but Texas can neither admit nor deny the accuracy of these numbers.

**Request for Admission No. 17:** From December 2022 to February 2023, the number unique encounters of Haitians at the Southwest border (in other words, persons not previously encountered in the prior 12 months), between ports of entry, were, respectively by month: December 3,928, January 2,238, February 168, *see* https://www.cbp.gov/newsroom/national- media-release/cbp-releases-february-2023-monthly-operational-update, and the total number of Haitians encountered at the Southwest border, both at ports of entry and between ports of entry, were, respectively: December 5,138, January 3,174,

February 7,430, *see* https://www.cbp.gov/newsroom/stats/nationwide-encounters.

    **Response to Request No. 17:** Texas admits that the referred-to web pages say that, but Texas can neither admit nor deny the accuracy of these numbers.

**Request for Admission No. 18:** From December 2022 to February 2023, the number of unique encounters of Nicaraguans encountered at the Southwest border, (in other words, persons not previously encountered in the prior 12 months), between ports of entry, were, respectively by month: December 34,868, January 3,223, February 279, *see* https://www.cbp.gov/newsroom/national-media-release/cbp-releases-february-2023-monthly-operational-update, and the total number of Nicaraguans encountered at the Southwest border, both at ports of entry and between ports of entry, were, respectively: December 35,387, January 3,377, February 639, https://www.cbp.gov/newsroom/stats/nationwide-encounters.

    **Response to Request No. 18:** Texas admits that the referred-to web pages say that, but Texas can neither admit nor deny the accuracy of these numbers.

**Request for Admission No. 19:** Following the implementation of the CHNV Parole Processes for Cuban, Haitian, and Nicaraguan noncitizens, and changes to the implementation of the process for Venezuelans, Border Patrol encounters with Cubans, Haitians, Nicaraguans, and Venezuelans between ports of entry at the southwest border declined from a 7-day average of 1,231 on January 5, to 59 on January 31 (a 95% drop in just three weeks), *see* https://www.cbp.gov/newsroom/national-media-release/cbp-releases-january-2023-monthly-operational-update, to just 46 on February 28—a drop of 98% in just two months. *See* https://www.cbp.gov/newsroom/national-media-release/cbp-releases-february-2023-monthly-operational-update.

    **Response to Request No. 19:** Texas admits that the referred-to web pages say that, but Texas can neither admit nor deny the accuracy of these numbers.

**Request for Admission No. 20:** You have no basis for disputing the accuracy of the data set forth on the following government websites: https://www.cbp.gov/newsroom/national-media- release/cbp-releases-february-

2023-monthly-operational-update, https://www.cbp.gov/newsroom/national-media-release/cbp-releases-january-2023-monthly-operational-update, https://www.cbp.gov/newsroom/stats/nationwide-encounters.

**Response to Request No. 20:** Texas admits that it has no basis to dispute the accuracy of the data on the listed web pages but can neither admit nor deny that they are accurate.

**Request for Admission No. 21:** Fewer Cubans, Haitians, Nicaraguans, and Venezuelans have come to live in your State in the three months since the promulgation of the CHNV Parole Processes than did in the three months prior to the promulgation of these processes.

**Response to Request No. 21:** Texas can neither admit nor deny this because the information that would allow it to do so is in Defendants' possession.

**Request for Admission No. 22:** If fewer Cubans, Haitians, Nicaraguans, and Venezuelans were paroled or otherwise allowed to enter the country after the CHNV Parole Processes were instituted than before the CHNV Parole Processes were instituted, and as a result fewer Cubans, Haitians, Nicaraguans, and Venezuelans came to live in your States, you have no injury, and thus no standing in this case.

**Response to Request No. 22:** Denied.

**Request for Admission No. 23:** Fewer Cuban, Haitian, Nicaraguan and Venezuelan nationals are released into the United States as a result of Mexico agreeing to accept the returns of Cuban, Haitian, Nicaraguan and Venezuelan nationals.

**Response to Request No. 23:** Texas does not have sufficient information to admit or deny.

25