**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>    *Plaintiffs,*<br>v.<br>U.S. DEPARTMENT OF HOMELAND<br>    SECURITY, *et al.*,<br>    *Defendants.* | Case 6:23-cv-00007 |

### PLAINTIFF STATES' REPLY SUPPORTING THEIR MOTION FOR PRELIMINARY INJUNCTION

The Court has stated that the parties will have an opportunity to file post-trial briefs. The Plaintiff States therefore focus this reply on the major reasons why they are entitled to their requested injunctive relief.

## I. The States have standing.

### A. The CHNV program's imposition of costs is sufficient to confer standing.

The evidence establishes that the Defendants' unlawful CHNV parole program has caused many thousands of aliens with no right to enter the United States to be released into the United States to sponsors and stated destinations in Texas. Additional aliens paroled into the country under that program will end up in Texas, whose economy makes it a continuing magnet for migration within the United States. And as in other cases, the evidence shows that such migration imposes substantial costs and burdens on Texas,[1] which must furnish these persons with driver's licenses, public education, and healthcare

---

[1] The States focus on Texas's standing because the Court can proceed to the merits if even one plaintiff has standing. *Rumsfeld v. Forum for Academic & Instl. Rights, Inc.*, 547 U.S. 47, 52, n.2 (2006).

and which must also pay for the additional law enforcement, corrections, and other social costs that attend.

Standing does not require tying particular costs to particular aliens as the Defendants and Intervenors demand. *See, e.g., Texas v. United States* ("*DACA*"), 50 F.4th 498 (5th Cir. 2022). Texas need only show by a preponderance of the evidence that some quantum—not a specific amount—of those costs have been or are likely to be incurred as a result of the Defendants' CHNV program. *DACA*, 50 F.4th at 517–18 ("The record does not indicate precisely what portion of all costs for illegal aliens is spent on DACA recipients, but no one doubts that some are"); *Texas v. United States* ("*DAPA*"), 809 F.3d 134, 155 (5th Cir. 2015) (precise quantification of costs not required). Even a small amount of money is ordinarily a sufficient injury for standing purposes. *E.g., Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017). Nor does CHNV parolees' constituting only a fraction of the large number of illegal aliens that cost Texas millions of dollars per year detract from Texas's standing, including traceability. *DACA*, 50 F.4th at 519 ("DACA is not the sole cause of the State's injury, but DACA has exacerbated it. That is sufficient").

Similarly, it is irrelevant whether illegal aliens may in some way confer "benefits" upon Texas that offset the costs they impose. As the Fifth Circuit has stated multiple times, standing is not the "accounting exercise" that the Defendants and Intervenors claim. *See DAPA*, 809 F.3d at 155–56 ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant."); *DACA*, 50 F.4th at 518 (same).

### B. The States enjoy special solicitude in the standing analysis because the CHNV program imposes upon their quasi-sovereign interests.

Were the imposition of costs upon Texas and the other States not enough, they are also entitled to special solicitude in assessing standing because the CHNV program imposes upon their quasi-sovereign interests. Texas's procedural right under the APA to challenge agency action that injures it, which the CHNV program does, is sufficient to confer standing to challenge the program—and Fifth Circuit precedent establishes this. As in the *DAPA* and *DACA* cases, DHS here made "an affirmative decision to set guidelines for granting a lawful presence to a broad class of illegal aliens." *E.g., DAPA*, 809 F.3d at 152. And as in DAPA and DACA, the Defendants' action challenged here implicates Texas' quasi-sovereign interests in classifying aliens. *E.g., DACA*, 50 F.4th at 514–15; *DAPA*, 809 F.3d at 154–55. As in those cases, Texas has standing to sue.

The Supreme Court's recent decision regarding Texas's standing to challenge DHS's prioritization memo does not affect this result. *See United States v. Texas*, No. 22-58, 2023 WL 4139000 (U.S. June 23, 2023). That opinion concluded that standing was lacking because "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.* at *4 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). In the Supreme Court's view, it was being asked "to order [DHS] to alter its arrest policy so [DHS] arrests *more* noncitizens." *Id.* at *3. Unlike the prioritization case, however, this case is not about arrests or custody. Whatever discretion the Defendants might have in choosing which aliens to arrest or otherwise take into custody, they have no

3

discretion to parole into the country aliens who do not meet the statutory criteria for parole.

This also demonstrates why Texas's injuries are redressable through a judgment from the Court—especially given that the special solicitude to which Texas is entitled allows it to "establish redressability" so long as "there is some possibility that the requested relief will reduce the harm." *DACA*, 50 F.4th at 519–20. Here, the CHNV program allows the Defendants to parole into the United States—parole into Texas and other States—up to 120,000 aliens per month. An injunction preventing them from operating that program—or setting the program aside as a violation of the APA—will eliminate their justification for doing so, eliminate the accelerated pathway for the aliens to request that they do so, and therefore reduce the number of alien parolees— the number of illegal aliens—present in the Plaintiff States. At the very least, it is possible that a judgment will do so, which is all that is required.

### C.  The States are in the INA's zone of interests.

A plaintiff has standing to challenge an action under the APA whenever it is "arguably" within the zone of interests the statute protects, and the Supreme Court "has always conspicuously included the word 'arguably' … to indicate that the benefit of any doubt goes to the plaintiff[.]" *DAPA*, 809 F.3d at 162 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012)). As the Fifth Circuit stated last year, the test here is not especially demanding, *see DACA*, 50 F.4th at 520 (quoting *Lexmark Intl., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2017)); a plaintiff lacks standing only when its claims are so marginally related or inconsistent with the purposes of the statute that it cannot reasonably be assumed that Congress intended to permit the suit. *DAPA*, 809 F.3d at 162.

Here, the question is not even close: "The interests that Texas and other Plaintiff States seek to protect clearly fall within the zone of interests of the INA." *DAPA*, 809 F.3d at 163. The INA was intended to "set the terms and conditions of admission into the country and the subsequent treatment of aliens lawfully in the country." *DACA*, 50 F.4th at 521. The INA "encompasses [the States'] concerns about the financial burdens of illegal immigration. 'It's clear that the INA aimed, at least in part, to protect States from those kinds of [fiscal] harms.'" *Id.* (quoting *Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 2528 (2022)).

## II. The CHNV program is final agency action reviewable under the APA.

There is a well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action. *DAPA*, 809 F.3d at 163 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 113 S. Ct. 2485 (1993)). Only a narrow group of matters are regarded as "committed to agency discretion," such that they are exempt from review under the APA under 5 U.S.C. § 701(a)—an agency's decision not to institute enforcement proceedings, for example, or statutes drawn in such broad terms that "there is no law to apply." *DAPA*, 809 F.3d at 163. That is not the case here, where Congress set forth both specific legal criteria for eligibility for parole and a specific process for determining whether those criteria are met. *See* 8 U.S.C. § 1182(d)(5).

Similarly, the CHNV program is final agency action because it "consummate[s] the agency's decisionmaking process" of interpreting the parole criteria for applicants from those four countries. Moreover, the program creates rights (to apply through a particular process not available to other applicants) and produces legal consequences (parole into the United States through a process not available to other applicants), hallmarks of a final,

5

substantive agency action. The Defendants do not have discretion to disregard the statutory parole criteria for classes of applicants; that a CBP agent rubber-stamps an application for parole upon an applicant's arrival at a port of entry does not convert the imposition of a class-based program into a case-by-case procedure that is consummated only upon the rubber-stamping. *See Biden v. Texas*, 142 S. Ct. 2528, 2545 n.7 (2022) ("The fact that the agency could not cease implementing MPP, as directed by the October 29 Memoranda" until the occurrence of a contingent event "did not make the October 29 Memoranda any less the agency's final determination of its employees' obligation to do so once such judicial authorization had been obtained.").

### III. Adopting the CHNV program required notice and comment, and its adoption was arbitrary and capricious.

The CHNV program is no mere policy statement. As in *DAPA*, the CHNV program's "discretionary," "case-by-case" decision-making is a fiction. In reality, nearly all properly completed and submitted applications are accepted. *See DAPA*, 809 F.3d 171–72; *Texas v. United States*, 328 F. Supp. 3d 662, 731 (S.D. Tex. 2018). The class-based definitions the Defendants draw in the program as purported qualifications for application are in fact outcome-determinative.

Nor does the CHNV program qualify for a foreign-affairs exemption from the APA's notice-and-comment requirements. Establishing that exemption requires a "strong showing" that even a short notice-and-comment period "will provoke definitely undesirable international consequences." *E. Bay Sanc. Cov. v. Trump*, 932 F.3d 742, 775–76 (9th Cir. 2018) (Bybee, J.); *E.B. v. U.S. Dep't of State*, 583 F. Supp. 3d 58, 65 (D.D.C. 2022) ("the foreign affairs function exception covers heartland cases in which the rule itself directly involves the

6

conduct of foreign affairs"). There is no evidence here to support such a conclusion, much less evidence sufficient to pass the requisite strength check.

Finally, Defendants failed to refute the many reasons the adoption of the CHNV program was arbitrary and capricious. They ignored the costs the program imposes on the States. They ignored that they were paroling large numbers of aliens who had no urgent humanitarian reason for entry into the United States and no plans to appear at the Southwest Border that the CHNV program forestalled. And they ignored a problem of their own creation—the difficulty of deporting from the United States hundreds of thousands of aliens who had for two years build connections and relationships here. No retroactive declarations of success—even assuming away their dubiousness—can mask that the program's justifications were arbitrary and capricious at their inception and remain so today.

## CONCLUSION AND PRAYER

The Plaintiff States respectfully request that the Court render the decree and declaration they request and set aside the CHNV program as adopted in violation of the APA.

Dated June 27, 2023.

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

Respectfully submitted.

/s/ *Leif A. Olson*
LEIF A. OLSON
*Lead Counsel*
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas No. 33695
leif.olson@oag.texas.gov

RYAN D. WALTERS
Deputy Chief, Special Litigation Division
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON
America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

*Counsel for the State of Texas*

STEVE MARSHALL
Alabama Attorney General
EDMUND G. LACOUR JR.
Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*


TIM GRIFFIN
Arkansas Attorney General
NICHOLAS J. BRONNI
Arkansas Solicitor General
HANNAH L. TEMPLIN
Assistant Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Nicholas.Bronni@arkansasag.gov

*Counsel for the State of Arkansas*

RAÚL R. LABRADOR
Attorney General of Idaho
LINCOLN DAVIS WILSON
Chief, Civil and Constitutional Defense
Office of the Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
Lincoln.Wilson@ag.idaho.gov

*Counsel for the State of Idaho*

TREG R. TAYLOR
Attorney General of Alaska
CORI M. MILLS
Deputy Attorney General of Alaska
CHRISTOPHER A. ROBISON
Alaska Bar No. 2111126
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Counsel for the State of Alaska*


ASHLEY MOODY
Attorney General of Florida
JAMES H. PERCIVAL (FBN 1016188)
Deputy Attorney General of Legal Policy
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for the State of Florida*


BRENNA BIRD
Attorney General of Iowa
ERIC H. WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel: (515) 281-5164
Fax: (515) 281-4209
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

9

KRIS KOBACH
Attorney General of Kansas
JESSE A. BURRIS, Kan. Sup. Ct. #26856
Assistant Attorney General
Office of Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for the State of Kansas*

JEFF LANDRY
Attorney General of Louisiana
ELIZABETH B. MURRILL (La #20685)
Solicitor General
JOSEPH SCOTT ST. JOHN (La #36682)
Deputy Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for the State of Louisiana*

ANDREW BAILEY
Attorney General of Missouri
JOSHUA M. DIVINE, Mo. Bar #69875
Solicitor General
MARIA LANAHAN, Mo. Bar #65956
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*

DANIEL CAMERON
Attorney General of Kentucky
MARC MANLEY
Associate Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for the Commonwealth of Kentucky*

LYNN FITCH
Attorney General of Mississippi
JUSTIN L. MATHENY
Deputy Solicitor General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for the State of Mississippi*

AUSTIN KNUDSEN
Attorney General of Montana
CHRISTIAN B. CORRIGAN
Solicitor General
PETER M. TORSTENSEN, JR.
Assistant Solicitor General
Office of the Attorney General
215 N Sanders
Helena, Montana 59601
Tel: (406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for the State of Montana*

10

MICHAEL T. HILGERS
Attorney General of Nebraska
ERIC J. HAMILTON
Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for the State of Nebraska*

GENTNER F. DRUMMOND
Attorney General of Oklahoma
GARRY M. GASKINS, II
Solicitor General
ZACH WEST
Director of Special Litigation
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov

*Counsel for the State of Oklahoma*

JONATHAN SKRMETTI
Tennessee Attorney General
and Reporter
CLARK L. HILDABRAND
Assistant Solicitor General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-5642
Clark.Hildabrand@ag.tn.gov

*Counsel for the State of Tennessee*

DAVE YOST
Ohio Attorney General
BENJAMIN M. FLOWERS
Solicitor General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
benjamin.flowers@OhioAGO.gov

*Counsel for the State of Ohio*

ALAN WILSON
Attorney General of South Carolina
THOMAS T. HYDRICK
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

SEAN D. REYES
Utah Attorney General
MELISSA HOLYOAK
Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
Tel: (801) 538-9600
melissaholyoak@agutah.gov

*Counsel for the State of Utah*

| | |
|---|---|
| PATRICK MORRISEY<br>Attorney General of West Virginia<br>LINDSAY SEE<br>Solicitor General<br>MICHAEL R. WILLIAMS<br>Senior Deputy Solicitor General<br>Office of the West Virginia<br>Attorney General<br>State Capitol, Bldg 1, Room E-26<br>Charleston, WV 25305<br>Tel: (681) 313-4550<br>Lindsay.S.See@wvago.gov<br>Michael.R.Williams@wvago.gov<br><br>*Counsel for the State of West Virginia* | BRIDGET HILL<br>Wyoming Attorney General<br>RYAN SCHELHAAS<br>Chief Deputy Attorney General<br>Wyoming Attorney General's Office<br>109 State Capitol<br>Cheyenne, WY 82002<br>Tel: (307) 777-5786<br>ryan.schelhaas@wyo.gov<br><br>*Counsel for the State of Wyoming* |

### CERTIFICATE OF SERVICE

On June 27, 2023, this document was filed through the Court's CM/ECF system, which automatically serves a copy on all counsel of record.

                                                  */s/ Leif A. Olson*