**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.,* | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | 6:23-CV-00007 |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY, *et al.,* | § | |
| | § | |
| *Defendants,* and | § | JUDGE DREW S. TIPTON |
| | § | |
| VALERIE LAVEUS, *et al.,* | § | |
| *Intervenor Defendants.* | § | |
| | § | |

**INTERVENOR DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) IN LIGHT OF *UNITED STATES V. TEXAS***

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

ARGUMENT SUMMARY ................................................................................. 1

STATEMENT OF FACTS ................................................................................. 4

ARGUMENT ....................................................................................................... 6

  I.   The Court Lacks Subject Matter Jurisdiction Because Texas Lacks Standing. 6

    A.  Texas's Alleged Injury is Not Redressable and Thus Not Cognizable. .......... 8

    B.  Texas's Alleged Injury is Not Fairly Traceable to the CHNV Pathways ..... 11

    C.  Texas Has Failed to Prove Actual or Concrete Injury in Fact...................... 12

  II.  The Court Should Dismiss the Remaining Plaintiff States. ........................... 14

    A.  Twenty States Have Declined to Prove Injury. ............................................ 14

    B.  Nominal Plaintiffs Should be Dismissed for Lack of Standing. ................... 15

    C.  Fundamental Fairness Supports Dismissing Nominal Plaintiffs. .............. 17

    D.  Judicial Economy Favors Dismissing the Nominal Plaintiffs. .................... 18

  III.   Intervenor Defendants' Motion is Timely and the Court Should Decide It Before Trial. ................................................................................................... 18

CONCLUSION.................................................................................................. 20

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Apprendi v. New Jersey*
530 U.S. 466 (2000) ....................................................................................... 8

*Cal. Bankers Ass'n v. Shultz*
416 U.S. 21 (1974) ......................................................................................... 15

*California v. Texas*
141 S. Ct. 2104 (2021) ............................................................................ 11, 16

*Casa De Maryland v. Dep't Homeland Sec.*
284 F.Supp.3d 758 n.21 (D. Md. 2018) ...................................................... 16

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) ................................................................ 3, 10, 12, 16

*Cole v. General Motors Corp.*
484 F.3d 717 (5th Cir. 2007) ........................................................................ 1

*E.T. v. Paxton*
41 F.4th 709 (5th Cir. 2022) .......................................................................... 9

*Env't Conservation Org. v. City of Dallas*
529 F.3d 519 (5th Cir. 2008) ............................................................... 1, 4, 19

*Henschen v. City of Houston*
959 F.2d 584 (5th Cir. 1992) ...................................................................... 20

*Humphrey v. Sw. Portland Cement Co.*
488 F.2d 691 (5th Cir. 1974) ...................................................................... 17

*Lewis v. Casey*
518 U.S. 343 (1996) ..................................................................................... 13

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ............................................................................. passim

*McClure v. Ashcroft*
335 F.3d 404 (5th Cir. 2003) ........................................................................ 6

*Morales v. Turman*
820 F.2d 728 (5th Cir. 1987) ...................................................................... 14

*Reno v. American-Arab Anti-Discrimination Comm.*
  525 U.S. 471 (1999) ................................................................. 2

*Ring v. Arizona*
  536 U.S. 584 (2002) ................................................................. 8

*Schlesinger v. Reservists Comm. to Stop the War*
  418 U.S. 208 (1974) ................................................................. 15

*Simon v. WalMart Stores*
  193 F.3d 848 (5th Cir. 1999) ................................................... 18

*Singh v. RadioShack Corp.*
  882 F.3d 137 (5th Cir. 2018) ................................................... 19

*Texas v. United States*
  328 F. Supp. 3d 662 (S.D. Tex. 2018) ...................................... 16

*Thiebaut v. Colo. Springs Utils.*
  455 F. App'x 795 (10th Cir. 2011) .......................................... 15

*United States v. Texas*
  143 S. Ct. 1964 (2023) .................................................. passim

*Walton v. Arizona*
  497 U.S. 639 (1990) ................................................................. 8

*Warth v. Seldin*
  422 U.S. 490 (1975) ................................................................. 19

*We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*
  809 F. Supp. 2d 1084 (D. Ariz. 2011) .................................... 15-16

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*
  No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *3 (E.D. Tex. Apr. 27, 2018) ....... 18

*William v. Tucker*
  645 F.2d 404 (5th Cir. 1981).................................................... 2

*Winter v. Nat'l Res. Def. Council, Inc.*
  555 U.S. 7 (2008) ................................................................... 17

## Statutes

8 U.S.C. § 1182(d)(5)(A) ........................................................ 9-10

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................. 6

Fed. R. Civ. P. 12(h)(3) .................................................................... 4, 6, 18

**Other Sources**

Eric Holcomb and Spencer Cox, *To Solve Our National Immigration Crisis, Let States Sponsor Immigrants*, Wash. Post, Feb. 21, 2023, *available at* https://www.washingtonpost.com/opinions/2023/02/21/eric-holcomb-spencer-cox-states-immigration/ ................................................................................. 10

# INTRODUCTION

The Supreme Court just held that Texas lacked standing in an immigration case premised on the same theory of harm as the one Texas advances here. Texas has offered no basis to distinguish its failed standing theory in this case. Indeed, discovery has confirmed that Texas failed to satisfy the constitutional standard. Thus, this Court must dismiss for lack of subject matter jurisdiction. Irrespective of Texas's standing, because the remaining Plaintiff States have not even attempted to prove they have suffered injury, the Court should promptly dismiss them. The Court should rule on these questions now, rather than defer until trial, in light of longstanding Fifth Circuit precedent that rightfully regards standing as "an irreducible constitutional minimum," *Cole v. General Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), that courts are "obliged to resolve" as a "threshold matter of jurisdiction," *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (cleaned up). Nothing in this case warrants deviation from the Fifth Circuit's strong preference for resolving standing now.[1]

# ARGUMENT SUMMARY

The Supreme Court's recent decision in *United States v. Texas*, 143 S. Ct. 1964, 1969 (2023) crystallizes why the Court must dismiss this case for lack of subject matter jurisdiction. Texas's standing claim here is materially indistinguishable from its theory in that case, which the Supreme Court rejected.

---

[1] Plaintiffs oppose and Federal Defendants do not oppose this motion.

1

As in the case Texas just lost at the Supreme Court, the policy it challenges here, which concerns the Executive's exercise of discretion in the immigration context, does not exercise coercive power over the state; and Texas complains exclusively of "indirect effects on state revenues or state spending." *Id.* at 1972 n.3. Harm allegedly arising from indirect effects is "more attenuated," such that a plaintiff must show "much more" to establish cognizable injury than in cases where the challenged policy directly regulates a state. *Id.* at 1971, 1972 n.3. And challenges to policies governing the Executive's exercise of discretion have historically not been cognizable in the immigration context. *Id.* at 1971-72 (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490-491 (1999)).

Texas has presented nothing remotely sufficient to distinguish this case from *Texas.* It offers no evidence showing its alleged injury is redressable by a favorable ruling in this case—indeed, the record evidence, which this Court may properly consider in deciding this motion, *William v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), as well as Texas's admissions confirm its alleged injury is not redressable. Nor does Texas offer anything showing the alleged indirect costs are traceable to the challenged parole pathways for people from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV Pathways"). Texas relies primarily on alleged costs the state incurs from *undocumented* immigration, and identifies no costs incurred as a result of the CHNV Pathways.

Texas attempts to avoid these serious standing problems by asking the Court to make a series of unsubstantiated suppositions: that some unspecified number of

parolees *may* settle in Texas; that, notwithstanding work authorization and supporters' guarantees of financial support, they *may* nonetheless enroll in state programs; and that they *may* do so in sufficiently high numbers that *may* strain the state's finances. ECF 22 at 25. This chain of suppositions is far too speculative and attenuated to establish Article III standing even in the absence of record evidence. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Texas*, 143 S. Ct. at 1972. But here, the unrebutted record evidence proves the CHNV Pathways have *reduced* total migration from the affected countries, which in turn *reduces* the costs Texas claims immigrants impose. ECF 176-1 ¶ 31, n.16. Moreover, by refusing to provide information about offsetting revenues tied to the costs it complains of, Texas has not provided the information this Court needs to ascertain whether Texas suffers any financial loss at all.

For these reasons, Texas has failed to establish standing, the "irreducible constitutional minimum" that must be established at all stages of litigation. *Lujan*, 504 U.S. at 560. Therefore, this Court must dismiss this case for lack of subject matter jurisdiction.

In addition, the Court should dismiss the twenty nominal plaintiff states who have intentionally declined to produce *any* information pertaining to injury. The Court should not permit them to remain parties—and potentially pursue their own appeals or enforcement actions—when they have declined to participate in this case.

Finally, this motion is timely and the Court must dismiss this case now, rather than postponing resolution of this motion until trial. Because standing is a threshold

jurisdictional issue, the Court must resolve the standing question before reaching the merits, and it must dismiss an action as soon as it determines plaintiffs lack standing. Fed. R. Civ. P. 12(h)(3); *Env't Conservation Org.*, 529 F.3d at 525.

## STATEMENT OF FACTS

On January 5, 2023, the Department of Homeland Security ("DHS") announced the CHNV Pathways, modeled on parole processes previously established for Ukrainians and Venezuelans. Through the CHNV Pathways, a supporter within the United States first applies to DHS to sponsor an individual who is abroad. The supporter must submit Form I-134A, a 13-page "Declaration of Financial Support." ECF 175-3. The supporter discloses their personal information and that of the intended parolee, including evidence of the sponsor's and intended parolee's income and assets that would support the parolee in the United States. The supporter, who must "demonstrate sufficient financial resources to receive, maintain, and support" the parolee, including by assisting with securing employment opportunities once authorized for work, must also include a written statement of how they intend to comply with these duties. *Id.* The supporter must certify, under penalty of perjury, "to assure the U.S. Government that the [parolee] will be financially supported while in the United States." ECF 175 at 4. Financial support extends to health care costs. ECF 175-54 ¶ 11.

After receiving the completed Form I-134A, U.S. Citizenship and Immigration Services ("USCIS") performs a background check and vets the supporter to ensure they can financially support the intended parolee. ECF 175-3. If USCIS confirms an

applicant's fitness to sponsor, it contacts the intended parolee, who must then provide detailed biographical information and submit to a background check. *Id*. If USCIS approves advance travel authorization, the intended parolee must secure their own travel to an airport within the United States. *Id*. Once at the port of entry, U.S. Customs and Border Protection undertakes additional screening and vetting before ultimately deciding whether to grant parole. *Id*. Approved individuals are granted a two-year period of parole, during which time some may choose to apply for asylum, visas, or other authorization. ECF 175-4. Parolees are eligible to apply for employment authorization during the period of parole. *Id*.

Having produced 3,265 pages in discovery, Texas has not offered evidence that any individual paroled into Texas through the CHNV Pathways has created costs for Texas, let alone unreimbursed costs, let alone in ways that "strain[] Texas's finances and hamper[] its ability to provide essential services." ECF 22 at 25. In fact, Texas admits that it doesn't even attempt to collect data relating to parolees through the CHNV Pathways. ECF 175-37; 175-38.

To the contrary, the evidence in the record shows that the CHNV Pathways resulted in a dramatic ***decrease*** in irregular migration from Cuba, Haiti, Nicaragua, and Venezuela. ECF 176-1 ¶ 31. Moreover, the CHNV Pathways have ***reduced*** arrivals at the southwest border. *Id*. ¶¶ 20, 28. Significant evidence demonstrates that even *if* the CHNV Pathways increased migration, which—indisputably—they do not, such an increase would overwhelmingly benefit, not harm, Texas. ECF 175-21 to

175-35; 175-71 ¶¶ 13-14, 17-19; 175-72 ¶¶ 3, 6-7; 175-73 ¶¶ 12-15; 175-74 ¶¶ 19, 24; 175-75 ¶¶ 22-24.

## ARGUMENT

### I.  The Court Lacks Subject Matter Jurisdiction Because Texas Lacks Standing.

Because Plaintiffs must establish standing for this Court to have subject matter jurisdiction, they "bear[] the burden of establishing" standing. *Lujan*, 504 U.S. at 561. The degree of evidence required to prove standing grows with the "successive stages of the litigation." *Id.* at 561. With or without a motion from Defendants, the Court must dismiss a case if it "determines at any time that it lacks subject-matter jurisdiction . . . ." Fed. R. Civ. P. 12(b)(1); 12(h)(3).

Texas asks the Court to set the standard for showing standing so low as to render it meaningless. Texas claims standing to seek nationwide relief against a discretionary federal policy—that implicates foreign relations—based on injury claims stemming from indirect costs. It does not even try to tie those costs to the relevant population. It asserts injury no matter how low the "quantum" of costs it *may* incur might be, and even if the program actually results in net gains to the state. ECF 179 at 2.

In reality, standing requires plaintiffs to establish injury that is (1) concrete, particularized, and actual and imminent; (2) fairly traceable to the challenged conduct; and (3) redressable. *Texas*, 143 S. Ct. at 1970; *McClure v. Ashcroft*, 335 F.3d 404, 409 (5th Cir. 2003). The Supreme Court's recent decision in *Texas* illustrates why Texas has again failed that test: in both cases, Texas complains exclusively of

6

indirect costs, and both cases implicate immigration policies that implement the Executive's discretionary authority and do not exercise coercive power over the state, rendering Texas's claimed injury not cognizable. Thus, this Court must dismiss for lack of standing.

Like this case, *Texas* concerned a challenge to a federal immigration policy that "in the States' view . . . impose[d] costs on the states" including as a result of having to "incarcerate or supply social services such as healthcare and education to noncitizens . . . ." *Texas*, 143 S. Ct. at 1969. That policy implemented the federal government's prosecutorial discretion to prioritize certain individuals for arrest and deportation proceedings. *Id.* at 1968. The Supreme Court held the plaintiff states lacked standing. *Id.*

In *Texas,* the Court concluded that the plaintiff states' claimed monetary costs did not constitute a cognizable injury because the suit challenged the Executive's exercise of discretion and, therefore, the asserted injury was not "redressable by a federal court." *Id.* at 1971. In reaching that conclusion, the Court emphasized that courts have historically declined to entertain suits challenging the Executive's exercise of prosecutorial discretion, *id.* at 1970, and that the policy "d[id] not exercise coercive power over an individual's liberty or property," *id.* at 1971. These features proved crucial to the standing question, because "[w]hen 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, *much more* is needed' to establish standing." *Id.* (citing *Lujan*, 504 U.S. at 562) (emphasis added). When states complain only of "indirect effects on state

revenues or state spending . . . standing can become more attenuated." *Id.* at 1972 n.3.

Here too, Texas complains exclusively of "indirect effects on state revenues or state spending" arising from a policy that implements the Executive's statutory authority to exercise discretion over whom to parole. Like the policy at issue in *Texas*, the CHNV Pathways policy does not exercise coercive authority over Texas. *Id.* Thus, the alleged indirect injuries are again too "attenuated" and therefore not cognizable.

To be sure, the Court acknowledged that its holding in *Texas* was limited to the prosecutorial discretion policy challenged in that case, and that a policy that also provided benefits *could* present a different question. *Id.* at 11-12. However, the primary reasons that led the Court to find Texas lacked standing there apply equally to this case. Moreover, there is nothing unusual about the Supreme Court reserving a question in one case only to find in a subsequent matter that the case reserving the question nonetheless controls the result. *See, e.g.*, *Ring v. Arizona*, 536 U.S. 584 (2002) (overruling *Walton v. Arizona*, 497 U.S. 639 (1990) despite earlier holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) that *Walton* remained good law).

### A. Texas's Alleged Injury is Not Redressable and Thus Not Cognizable.

Texas's alleged injury is not redressable by a favorable ruling in this case. First, Texas has not claimed *any* injury traceable to the CHNV Pathways; it complains of alleged costs incurred from immigration generally, and mostly from undocumented immigration. This presents a redressability problem: *even if* immigrants—undocumented or otherwise—impose actual injury on Texas, and *even*

*if* this Court finds the CHNV Pathways unlawful, an order blocking the CHNV Pathways still would not redress those purported harms.

First, such an order would not curtail undocumented immigration; Texas has not shown otherwise. Indeed, the record evidence shows the CHNV Pathways *reduce* Texas's alleged harms. ECF 176 at 8-10 (identifying evidence that parole processes are succeeding at "reducing irregular migration" and reducing the ***total arrivals*** of people from Cuba, Haiti, Nicaragua, and Venezuela). Thus, stopping the Pathways would *increase* any harms allegedly caused by undocumented immigration. This alone defeats standing.

Second, assuming *arguendo* Texas has shown actual injury directly traceable to the CHNV Pathways (which it has not), Texas has confirmed that any order in this case would not cure its injury. Texas acknowledges an injunction or vacatur would only curtail "a particular set of procedures" available to parolees, but would not prevent the same individuals from seeking parole through different avenues. ECF 127 at 6. This, too, confirms Texas's purported injury is not redressable. *See E.T. v. Paxton*, 41 F.4th 709, 721 (5th Cir. 2022).

This problem reflects a core similarity between this case and the one Texas lost at the Supreme Court: both involve challenges to entirely discretionary exercises of Executive authority. Just as both the immigration laws and traditions have long afforded the Executive discretion as to whether and when to arrest someone, *Texas*, 143 S. Ct. at 1971-72, so too do the statute and longstanding practices at issue here provide the Executive with discretion as to whom it may parole. 8 U.S.C. §

1182(d)(5)(A) ("[T]he Attorney General may . . . in his discretion parole . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States . . . ."). Texas does not (and obviously could not) challenge that general Executive authority, which would remain intact regardless of the outcome in this case. Thus, its alleged injury is not redressable by a favorable ruling in this case.

Finding otherwise could impermissibly "run up against the Executive's Article II authority to enforce federal law," *Texas*, 143 S. Ct. at 1971, including in the immigration context, which implicates "foreign policy objectives," *id.* at 1972. That is particularly true here, where the Executive is endowed with exclusive authority to implement the parole statute on which the Pathways are premised, ECF 175 at 20-21, and where interference with such authority obstructs federal foreign policy, ECF 176 at 52-53. Ensuring Texas has standing is critical to "prevent the judicial process from being used to usurp the powers of the political branches." *Texas*, 143 S. Ct. at 1969 (citing *Clapper,* 568 U.S. at 408).[2]

To the extent Texas's standing theory rests on the premise that the presence of newcomers—regardless of immigration status—injures Texas because the state

---

[2] Texas has sought, but has not proven, entitlement to nationwide relief where, as in *Texas*, it would create problems for "nonparties who may not wish to receive the benefit of the court's decision" including the "[d]ozens of states, counties, and cities" that do not wish to be bound by the district court's order. 143 S. Ct. at 1985 (Gorsuch, J., concurring); Eric Holcomb and Spencer Cox, *To Solve Our National Immigration Crisis, Let States Sponsor Immigrants*, Wash. Post, Feb. 21, 2023, *available at* https://www.washingtonpost.com/opinions/2023/02/21/eric-holcomb-spencer-cox-states-immigration/.

may have to spend additional resources, its argument proves too much and is foreclosed by the Supreme Court's decision.

### B. Texas's Alleged Injury is Not Fairly Traceable to the CHNV Pathways.

Texas's standing theory suffers from another fatal error, independently requiring dismissal of this case. Texas's asserted injuries—indirect costs incurred from immigration—have nothing to do with the CHNV Pathways. Texas complains that it "spends significant amounts of money providing services to [undocumented immigrants]." ECF 20 at 12. But this lawsuit does not concern undocumented immigrants; CHNV parolees enter lawfully after thorough vetting and approved financial sponsorship, and are eligible for work authorization. ECF 175 at 11-13. Texas has not produced a single document in its 3,265-page discovery production showing that a CHNV parolee residing in Texas has utilized *any* uncompensated services as Texas alleges. Nor has Texas offered any basis to determine that undocumented immigrants and unaccompanied minors are reasonable proxies to assess the costs associated with CHNV parolees, who enter *with* authorization, financial sponsorship, and the eligibility for work authorization.

That traceability issue independently defeats Texas's standing. *California v. Texas*, 141 S. Ct. 2104, 2116-17 (2021) (finding no standing where Texas didn't establish that its "pocketbook injury in the form of the increased use of (and therefore cost to) state-operated medical insurance programs" and other "expenses" was "fairly traceable" "to any actual or possible unlawful Government conduct").

11

It is no surprise that Texas cannot trace its claimed injury to the CHNV Pathways, because Texas has admitted that it ***does not collect data*** about CHNV parolees. ECF 175-37; 175-38. Instead, Texas offers only supposition: that some unspecified number of parolees ***may*** settle in Texas; that, notwithstanding work authorization and supporters' guarantees of financial support, they ***may*** nonetheless enroll in state programs; and do so in sufficiently high numbers that they ***may*** "strain[] Texas's finances and hamper[] its ability to provide essential services." ECF 22 at 25. But, the unrefuted record evidence demonstrates the *exact opposite*— because of the CHNV Pathways, far fewer nationals of the covered countries are entering the United States, and thus far fewer are travelling to Texas. *Infra* I.C.

But even without that undisputed evidence in the record, Texas's suppositions are far too speculative and attenuated to establish Article III standing. *Clapper*, 568 U.S. at 410 ("[A] theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement" of actual or impending injury); *Texas*, 143 S. Ct. at 1972 n.3.

### C. Texas Has Failed to Prove Actual or Concrete Injury in Fact.

Moreover, Texas has not met its burden to prove its alleged pocketbook injuries are concrete or actual. As a threshold matter, Texas's alleged injury from increased costs associated with people from the CHNV countries is belied by the record in this case, which shows the CHNV Pathways have resulted in a total decrease of such individuals, even accounting for those who enter through the Pathways. ECF 176-1 ¶ 31, n.16.

Further, the evidence in the record concerning Texas's costs associated with education, drivers' licenses, healthcare, public safety, and other economic impact prove the opposite; Texas receives offsetting reimbursements, revenues, fees, and other countervailing benefits as a direct result of each category:

- Texas's estimated education costs ignore federal compensation for students likely to receive bilingual education and overlooks the value of education as an investment from which the state benefits, ECF 175-71 (Gándara Expert Decl.) ¶¶ 17-19;

- Texas ignores fees and taxes that offset driver's license costs, as well as documented fiscal benefits to states and their populace of increasing driver's license access, ECF 175-75 (Roldan Expert Decl.) ¶¶ 22-24;

- Texas's claims about uncompensated healthcare ignore federal compensation that benefits, not hurts, Texas, ECF 175-73 (Ku Expert Decl.) ¶¶ 12-14;

- Increased immigration often suppresses crime, ECF 175-74 (Kubrin Expert Decl.) ¶ 19, which would result in lower law enforcement costs;

- Economists across the political spectrum agree that immigration increases economic growth, ECF 175-72 (Hunt Expert Decl.) ¶ 7.

Despite carrying the burden to prove standing, which grows as the stages of litigation progress, *Lewis v. Casey*, 518 U.S. 343, 357-58 (1996), Texas has failed to account for offsetting fees, federal funding, or reimbursements that undoubtedly countervail the alleged monetary harms, ECF 177; 177-2. When Texas refused to disclose the information required to discern actual costs to the state from CHNV parolees—i.e., whether Texas experiences any ultimate financial loss at all—Intervenor Defendants attempted to compel disclosure and production, but the Court denied Intervenor Defendants' motion. ECF 177; Minute Entry July 7, 2023. Where the record otherwise proves that Texas receives offsetting revenues relating to its

13

claimed costs, Texas has failed to establish actual injury. *E.g.*, ECF 175-71 ¶ 18-25; 175-73 ¶ 13-14; 175-75 ¶ 25-44.

* * *

As in *United States v. Texas*, the lack of coercive power over Texas, coupled with the attenuated nature of its alleged injuries, which are neither redressable nor actual or traceable, cannot "overcome[] the fundamental Article III problem with this lawsuit." *Texas*, 143 S. Ct. at 1972 n.3.

## II.   The Court Should Dismiss the Remaining Plaintiff States.

Even if the Court finds Texas has standing (or defers ruling on that issue), the Court should dismiss the other Plaintiff States now, before the trial on the merits.

### A.   Twenty States Have Declined to Prove Injury.

Although twenty-one Plaintiff States filed their First Amended Complaint, ECF 20, twenty of them have since decided they would "***not submit any evidence as to injury***," and Plaintiffs will instead only "seek to establish Article III injury based on alleged injuries to Texas." ECF 139 (emphasis added).

Only Texas has produced evidence, engaged in negotiations, and participated in Court hearings and conferences. *See, e.g.*, Minute Entries April 25, 2023; May 12, 2023; May 30, 2023. By their own decisions, actions, and admissions, the other twenty states have become plaintiffs in name alone (hereinafter "Nominal Plaintiffs"). *Cf. Morales v. Turman*, 820 F.2d 728, 732 (5th Cir. 1987) (finding *amici* who sought attorneys' fees did not serve the role as parties where they "stepped in and out of the

litigation, and did not even participate in" negotiations and conceded they lacked standing to intervene).

### B. Nominal Plaintiffs Should be Dismissed for Lack of Standing.

As discussed below, standing is an "irreducible constitutional minimum" that should be determined as a threshold matter before a court adjudicates the merits of a case. *Infra* at 19-21; *Lujan*, 504 U.S. at 560. Where a plaintiff makes no attempt to prove injury giving rise to Article III standing, it is not a close call—they cannot satisfy the constitutional threshold. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) ("[T]he absence of standing . . . suffices to prevent the power of the federal judiciary from being invoked by the complaining party.").

Of course, courts have sometimes bypassed the question of additional plaintiffs' standing when one plaintiff has established it. *E.g.*, *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 44-45 (1974) (stating "***we assume without deciding*** that [one plaintiff] does have standing" where another plaintiff was found to have standing) (emphasis added). However, that approach is certainly not required; courts unquestionably are entitled to assess the standing of each plaintiff individually. *See Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011) ("[N]othing in the cases addressing this [one-plaintiff] principle suggests that a court *must* permit a plaintiff that *lacks* standing to remain in a case whenever it determines that a co-plaintiff has standing. Instead, courts retain discretion to analyze the standing of all plaintiffs in a case and to dismiss those plaintiffs that lack standing."); *We Are*

*Am./Somos Am., Coal. of Ariz. v. Maricopa Cty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1091 (D. Ariz. 2011).

The Court should not merely ***assume*** Nominal Plaintiffs have standing. First, Nominal Plaintiffs have confirmed they will not even *try* to prove injury. ECF 139. Second, Nominal Plaintiffs' claims to standing, like Texas's, are tenuous on their face. Since injury based on indirect effects from a federal policy are even "***more attenuated***," *Texas*, 143 S. Ct. at 1972 n.3 (emphasis added), and "require far stronger evidence," *California*, 141 S. Ct. at 2991, Nominal Plaintiffs' entitlement to avail themselves of this Court's judicial power should be examined ***more*** closely, and certainly not ignored entirely.

Finally, in a case such as this, which involves matters of national debate over immigration and Executive policy, ensuring standing "prevent[s] the judicial process from being used to usurp the powers of the political branches." *Texas*, 143 S. Ct. at 1969 (citing *Clapper*, 568 U.S. at 408). Thus, assuming a bedrock constitutional requirement would permit states that have not attempted to prove injury nonetheless to avail themselves of judicial power to assert diverging policy views over national and foreign policy. *Cf. Texas v. United States*, 328 F. Supp. 3d 662, 743 (S.D. Tex. 2018) (Hanen, J.) ("[P]ublic respect for Article III courts calls for heightened discipline and sharpened focus on only the applicable legal principles to avoid substituting judicial judgment for that of elected representatives.") (citing *Casa De Maryland v. Dep't Homeland Sec.*, 284 F.Supp.3d 758, 767 n.21 (D. Md. 2018)).

16

### C. Fundamental Fairness Supports Dismissing Nominal Plaintiffs.

Fundamental fairness also warrants dismissing Nominal Plaintiffs. If Texas prevails, any of the twenty-one states—***even those without standing***—would be entitled to sue to enforce a judgment. And should Defendants prevail, any Nominal Plaintiff would be entitled to appeal, despite having affirmatively disclaimed any attempt to prove injury.

Moreover, Nominal Plaintiffs should be dismissed because the Court cannot fairly assess the equitable relief factors while they remain. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("In each case, courts ***must*** balance the competing claims of injury and must consider the effect ***on each party*** of the granting or withholding of the requested relief.") (emphases added) (citation and internal quotations omitted). Nominal Plaintiffs *claim* injury, ECF 20 ¶¶ 74-139, but offer no evidence in support, thus there is no way for the Court to balance them against Defendants' interests. Indeed, even after confirming they will not disclose evidence of injury, Plaintiffs ***still assert*** an "imposition of costs upon Texas ***and the other States***," ECF 179 at 3 (emphasis added). But "[t]here must be some support in the record for the ultimate facts found and, absent support, they are . . . clearly erroneous." *Humphrey v. Sw. Portland Cement Co.*, 488 F.2d 691, 694 (5th Cir. 1974). The shifting nature of Nominal Plaintiffs' asserted claims underscores that the Court should dismiss them.

Extending party status to plaintiffs who present no evidence of injury is both unfair and unnecessary.

### D. Judicial Economy Favors Dismissing Nominal Plaintiffs.

To the extent this Court finds Texas has established standing, or defers ruling on this question, dismissing Nominal Plaintiffs would serve judicial economy and the cost-efficient management of litigation.[3]

Expeditious dismissal of those not participating in discovery would streamline the case. A "major purpose of discovery" is to determine disputed facts, "as *the 'narrowing and sharpening the issues' in a case is of the utmost importance in promoting the efficiency of our justice system.*" *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620634, at *3 (E.D. Tex. Apr. 27, 2018) (emphasis added).

## III.   Intervenor Defendants' Motion is Timely and the Court Should Decide It Before Trial.

Standing defects can be raised at any time; they cannot be waived, *Simon v. WalMart Stores*, 193 F.3d 848, 850 (5th Cir. 1999), and a court must dismiss whenever it determines plaintiffs lack standing, Fed. R. Civ. P. 12(h)(3). Moreover, this Court previously stayed the deadline for Defendants' answer to Plaintiffs' amended complaint, ECF 90 ¶ 2, and recently invited the parties to provide briefing on *United States v. Texas*, ECF 188 at 29-30. Accordingly, this motion is timely.

Fifth Circuit precedent favors deciding this motion now, as the Court must assess standing *before* the merits. "Article III standing is not merely a troublesome

---

[3] If Texas does not establish standing, Nominal Plaintiffs must be dismissed anyway. *Lujan*, 504 U.S. at 560 ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III.").

18

hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit which a party desires to have adjudicated; it is a part of the basic charter promulgated by the Framers of the Constitution at Philadelphia in 1787." *Texas*, 143 S. Ct. at 1969 (citation and internal quotations omitted). As an "irreducible constitutional minimum," *Lujan*, 504 U.S. at 560, a plaintiff must demonstrate standing "from the outset of its suit," *Texas*, 143 S. Ct. at 1979 (Gorsuch, J., concurring). As the Fifth Circuit has explained, "before considering any other matters raised by the parties, [courts are] obliged to resolve the standing question as a threshold matter of jurisdiction," *Env't Conservation Org.*, 529 F.3d at 525 (citation and internal quotations omitted), because "[s]tanding must be decided *at the threshold* of every federal case," "*before* a determination on the merits." *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018) (emphases added). This ensures plaintiffs are "entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Furthermore, judicial economy favors deciding standing before trial, not after. Contrary to Texas's claim, it would be highly *inefficient* to do otherwise. ECF 188 at 13. If the Court were to ultimately grant this motion, all the resources expended at trial would have been for nought. Indeed, *any* ruling on standing would clarify the ballooning universe of issues at the upcoming two-day trial.

Finally, Texas advances the unusual position that *even if the Court were to find Plaintiffs lack standing*, the Court still should describe how it *would* have decided the merits. ECF 188 at 13-14. This is impermissible. Where plaintiffs lack standing,

19

courts lack subject matter jurisdiction, and it is "not this court's proper role to issue advisory opinions." *Henschen v. City of Houston*, 959 F.2d 584, 589 (5th Cir. 1992).

Thus, both binding caselaw and considerations of judicial efficiency and justice require this Court to decide the standing issue before trial.

## CONCLUSION

For these reasons, the Court should grant this motion and dismiss for lack of jurisdiction.

Dated:  July 28, 2023                     Respectfully submitted,

*/s/ Monika Y. Langarica*
**Monika Y. Langarica***
California Bar No. 308518
langarica@law.ucla.edu

**Ahilan T. Arulanantham***
California Bar No. 237841
arulanantham@law.ucla.edu

**Talia Inlender***
California Bar No. 253796
inlender@law.ucla.edu

**CENTER FOR IMMIGRATION LAW AND POLICY**
UCLA SCHOOL OF LAW
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

**Esther H. Sung (Attorney-In-Charge)***
California Bar No. 255962
*Application for Admission pending*
esther.sung@justiceactioncenter.org

**Karen C. Tumlin***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Jane Bentrott***
California Bar No. 323562
D.C. Bar No. 1029681
Virginia Bar No. 87903
jane.bentrott@justiceactioncenter.org

**Lauren Michel Wilfong***
New York Bar No. 5975529
New Jersey Bar No. 378382021
*Not admitted to practice law in California*
lauren.wilfong@justiceactioncenter.org

**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

**Vanessa Rivas-Bernardy***
California Bar No. 341464
vanessa.rivas@raicestexas.org

**THE REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES (RAICES)**
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
Telephone: (210) 960-3206
Facsimile: (210) 634-1279

*\*admitted pro hac vice*

**Kate Kaufmann Shih**
Texas Bar No. 24066065
Federal Bar No. 1214426
kateshih@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: (713) 221-7000
Facsimile: (713)221-7100

**CERTIFICATE OF WORD COUNT**

I certify that the word count for this brief, not including the case caption, table of contents, table of authorities, signature block, and certificates, is 4998 words.

/s/ Vanessa Rivas-Bernardy

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing instrument was served via ECF pursuant to the Federal Rules of Civil Procedure on the 28th day of July 2023, upon all counsel of record in this matter.

/s/ Vanessa Rivas-Bernardy

**CERTIFICATE OF CONFERENCE**

I certify that on July 25, 2023, I emailed counsel for Plaintiff States and Federal Defendants to obtain their position on this Motion. Plaintiff States indicated they oppose this Motion. Federal Defendants indicated they do not oppose this motion.

/s/ Monika Y. Langarica