UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, et al. ) | |
| ) | |
| Plaintiffs ) | |
| v. ) | No. 6:23-cv-00007 |
| ) | |
| DEPARTMENT OF HOMELAND ) | |
| SECURITY., et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO EXCLUDE EVIDENCE**

On January 5, 2023, the Department of Homeland Security (DHS) announced new parole processes for Cubans, Haitians, and Nicaraguans and updated a similar, highly successful process for Venezuelans (the CHNV Parole Processes). Under these processes, individuals may be eligible to be considered for parole on a case-by-case basis if they have a supporter in the United States who agrees to provide financial support, if they pass national security and public safety vetting, and if they agree to fly at their own expense to an interior U.S. port of entry rather than entering at a land-border port of entry. Noncitizens from these four countries who do not take advantage of these processes and instead attempt to enter the country at the southwest border without authorization are subject to removal to Mexico. Since these parole processes have been in place, they have been tremendously successful at reducing migration to the southwest border. These parole processes, as part of a comprehensive border management plan, have substantially reduced border encounters for the covered groups, leading to an overall reduction in arrivals of noncitizens from these countries.

1

Plaintiffs challenge these processes as contrary to law and arbitrary and capricious under the Administrative Procedure Act (APA) (Count I), and as ultra vires (Count II). ECF No. 20. Defendants dispute that these policies violate the APA, are ultra vires, and further contend that Plaintiffs lack standing to bring these claims.

Pursuant to the Court's Scheduling Order, ECF No. 159(d), Defendants file this motion to seek to exclude evidence and witnesses, as follows:

(I) Plaintiffs should be precluded from relying upon any extra-record evidence in support of their claims, other than to the extent relevant to standing, and a balancing of the equities, and as a result exhibits 2-3 and 8-37 should be precluded; (II) Plaintiffs should be precluded from offering into evidence in lieu of direct testimony the declaration of Rebecca Waltz; (III) Plaintiffs should be precluded from offering into evidence in lieu of direct testimony the declaration of James Terry.

Defendants conferred with Plaintiffs' counsel with respect to the relief sought in this motion, and they do not consent.

## ARGUMENT

### POINT I.

**PLAINTIFFS SHOULD BE PRECLUDED FROM RELYING UPON EXTRA-RECORD EVIDENCE IN SUPPORT OF THEIR CLAIMS, AND THEREFORE EXHIBITS 2-3 AND 8-37 SHOULD BE PRECLUDED.**

On their exhibit list, filed at ECF No. 195, Plaintiffs include exhibits which appear unrelated to the issue of standing. For example, exhibits 2 and 3 are press releases issued after the CHNV Parole Processes were announced; exhibits 8-17 are muster reports—internal memoranda issued after the promulgation of the CHNV Parole Processes explaining the processes; exhibits 18-30 are training materials and user guides; and exhibits 31-37 are sample forms. As none of

these materials go to standing, presumably Plaintiffs intend to offer them into evidence in support of their APA claims. But the "fundamental principle[] of judicial review of agency action" is that "the focal point [] should be the administrative records already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); 5 U.S.C. § 706. Plaintiffs should be precluded from relying upon extra-record evidence in support of their claims.

"When an agency action has been challenged under the APA, the district court sits as an appellate court," and the "entire case on review is a question of law." *MRC Energy Co. v. USCIS*, No. 3:19-CV-2003-K, 2021 WL 1209188, at *3 (N.D. Tex. Mar. 31, 2021) (citing *Redeemed Christian Church of God v. USCIS*, 331 F. Supp. 3d 684, 694 (S.D. Tex. 2018)). Accordingly, the district court's review must be "based on the record the agency presents." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Dep't of Commerce*, 139 S. Ct. at 2573-74 ("[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record."); *Motor Vehicle Mfrs. Ass'n. v. State Farm*, 463 U.S. 29, 50 (1983) ("The function of the district court is to assess the lawfulness of the agency's action based on the reasons offered by the agency."); *Texas Comm. on Nat. Res. v. Van Winkle*, 197 F. Supp. 2d 586, 595 (N.D. Tex. 2002) ("In reviewing administrative agency decisions, the function of the district court is to determine whether as a matter of law, *evidence in the administrative record* permitted the agency to make the decision it did…") (emphasis added). "Nor are the courts permitted to consider evidence outside the administrative record. . . [Rather,] [a]gency action is to be upheld, if at all, on the basis of the record before the agency at the time it made its decision." *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988) (internal citations omitted).

Accordingly, once federal agencies assemble and produce the administrative record, as Defendants did here, they are entitled to a "strong presumption" that they "properly designated" this record, a presumption that may be overcome only by "clear evidence to the contrary[.]" *Bimini Superfast Operations LLC v. Winkowski*, 994 F. Supp. 2d 103, 105 (D.D.C. 2014) (citation omitted); *City of Dallas, Tex. v. Hall*, No. CIV.A. 307-CV-0060-P, 2007 WL 3257188, at *4 (N.D. Tex. October 29, 2007) (citing *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 740 (10th Cir. 1993)) ("[T]he designation of the administrative record, like any established administrative procedure, is entitled to a presumption of administrative regularity."); *see also, e.g., Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015).

At an earlier stage in the case, the Court, citing *Dallas v. Hall*, Civil Action Nos. 3:07-CV-0060-P, 3:07-CV-0213-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007), permitted Plaintiffs to engage in limited discovery on the merits of Plaintiffs' APA claim "to determine whether the agency considered all of the relevant factors." ECF 126 at 7. But even in *Dallas*, the Court was clear that "[t]he new material, however, should be explanatory of the decisionmakers' action *at the time it occurred*." *Id.* (citations omitted; emphasis added). Plaintiffs' exhibits 2-3, and 8-37 (press releases, training materials, and muster reports) postdate DHS's decision to promulgate the CHNV Processes. As a result, these exhibits cannot show whether DHS failed to consider some factor in its decision-making. And indeed, despite having these documents since May, Plaintiffs have not challenged the sufficiency of the administrative records. They should not be permitted to do so now. Rather, the Court should review the Plaintiffs' APA claim based on the administrative records assembled and filed. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) (holding that courts must limit their review to the administrative record before the agency at the

4

time the decision was made); *Baker v. Bell*, 630 F.2d 1046, 1051 (5th Cir. 1980) ("[j]udicial review of agency action is . . . limited to an examination of the agency record.").[1]

The Court also allowed Plaintiffs discovery on their purported *ultra vires* claim. ECF No. 126. In doing so, however, the Court declined to reach the merits of Defendants' arguments that Plaintiffs' *ultra vires* claim is just an APA claim repackaged and that even if the claim were a stand-alone claim, it would be barred by the doctrine of sovereign immunity. *Id*. at 6. The Court also reserved judgment on whether any extra-record evidence obtained through discovery would be admissible at trial. *Id*. at 7. It should not be.

First, as Defendants previously argued in Defendants' Opposition to Plaintiffs' Motion for Extra-Record Discovery, filed at ECF No. 120, to the extent that Plaintiffs purport to bring a claim "at equity" for governmental official action outside of the authorization of federal law, such a cause of action exists only against a *State* official violating an individual right under the

---

[1] The Court did not discuss in its order Plaintiffs' argument that extra-record discovery was necessary in connection with their notice and comment claim, to address whether the CHNV Processes were being applied in a binding manner or if the two exceptions to notice and comment applied. ECF No. 126. As Defendants have explained, the mere fact that Plaintiffs have challenged the lack of notice and comment does not permit them to introduce extra-record documents in an APA case. Were the rule otherwise, the APA's general rule limiting evaluation to the administrative record would be nullified. Here, the CHNV Parole Processes state that "[a]ll of the steps in this process, including the decision to grant or deny advance travel authorization and the parole decision at the interior POE, are entirely discretionary and not subject to appeal on any grounds," and "[t]his process is being implemented as a matter of the Secretary's discretion. It is not intended to and does not create any rights, substantive or procedural, enforceable by any party in any matter, civil or criminal." *See e.g.*, Implementation of a Parole Process for Nicaraguans, 88 Fed. Reg. 1,255, at 1264 (Jan. 9, 2023). Plaintiffs have never identified "mandatory language" in the challenged processes that is "inconsistent" with the discretionary language in those procedures, such as the Court found was present in *Texas v. United States*, 606 F. Supp. 3d 437, 493 (S.D. Tex.), *denying stay pending appeal* 40 F.4th 205, *rev'd*, 143 S. Ct. 1964 (2023). Moreover, if the Court looks to extra-record evidence to determine whether the processes have been applied in a binding manner, it can look at the actual data produced, and listed by the parties as exhibits, concerning the number of applications received and denied. It need not look to training materials, which are irrelevant in light of the actual data as to how the processes were applied.

Constitution, and, therefore, is inapplicable in this case. *See Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 471, 475 (5th Cir. 2020) (stating a cause of action "*at equity*" must "name individual state officials" engaged in "an ongoing violation of federal law"); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231-32 (10th Cir. 2005) (courts, "in a proper case in equity, may enjoin a State officer from executing a State law in conflict with the Constitution").

Second, even if Plaintiffs could assert an ultra vires claim at equity against federal officers and agencies, the claim would still not be cognizable against Defendants because Plaintiffs' case falls within the APA's waiver of sovereign immunity. The APA offers its own vehicle to challenge agency action that is alleged to be outside the agency's authority. 5 U.S.C. § 706(2)(C) (permitting court to review and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"); *see, e.g.*, *Indep. Turtle Farmers of Louisiana, Inc. v. United States*, 703 F. Supp. 2d 604, 618 (W.D. La. 2010). The 1976 amendment to the APA was intended "to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer[,]" *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989). "The principal purpose of this amendment was to do away with the ultra vires doctrine." *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). "[S]ince 1976 federal courts have looked to [5 U.S.C.] § 702 ... to serve the purposes of the [ultra vires doctrine] in suits against federal officers." *E. V. v. Robinson*, 906 F.3d 1082, 1092 (9th Cir. 2018) (internal quotation omitted); *see, e.g., Locke v. Warren*, No. 19-61056-CIV, 2019 WL 4805716, at *4 (S.D. Fla. Oct. 1, 2019) (collecting cases). These cases make clear that, to the extent Plaintiffs have a claim for equitable relief arising from alleged ultra vires action by Defendants, this claim now must be brought under the APA and its procedures.

Moreover, the fact that Plaintiffs style their ultra vires challenge to Defendants' action as "equitable" rather than acknowledging it falls under section 706(2) does not mean they should be able to evade the record rule and supplement the record with material exclusively created after the challenged agency action. Regardless of the theory of unlawful action by the agency advanced by the Plaintiffs, "[j]udicial review is ordinarily limited to the administrative record." *See Kotha v. Renaud*, No. 3:21-CV-641-N, 2021 WL 4027697, at *2 (N.D. Tex. May 12, 2021) (holding that plaintiff's styling of challenge as to unlawful agency *inaction* as opposed to action, as specified in section 706(2), did not mean it could go outside the record) (citing *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539 (D.D.C. 2021)). "Section 706 provides that a reviewing court may … 'hold unlawful and set aside agency action' for various enumerated reasons," including because it is ultra vires statutorily, 5 U.S.C. § 706(2)(C), but regardless of the particular enumerated reasons, the APA makes clear that "in making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party." *Dallas Safari Club*, 518 F. Supp. 3d at 539 (quoting 5 U.S.C. § 706). Thus, the Fifth Circuit has recognized that, even in constitutional challenges to agency action, where the constitutional gravamen means the court should not defer to the agency's view of the law or the facts, but rather perform its own analysis, its "independent examination" is still "of the record." *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979). Permitting "standalone" claims to agency action not based on the administrative record would run afoul of Congress's design in creating the APA framework for challenging agency action. *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017-SWS, 2016 WL 4268346, at *2 (D. Wyo. Mar. 29, 2016). Countenancing non-APA ultra vires and other stand-alone claims would merely incentivize every party aggrieved by agency action to allege such claims to throw the doors open to extra-

7

record evidence. *See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Service*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014).

Here, Plaintiffs' ultra vires claim is that "Defendants' parole program exceeds their statutory parole authority under 8 U.S.C. § 1182(d)(5)," ECF No. 20 ¶ 143, which duplicates their APA claim nearly *word for word*. *See id.* ¶ 141(a) (arguing that "Defendants' parole program should be held unlawful" under the APA because "[t]he program exceeds the Defendants' statutory parole authority under 8 U.S.C. § 1182(d)(5)"). This claim, that Defendants' parole actions are "in excess of [their] statutory … authority," is the exact type that the APA contemplates. 5 U.S.C. § 706(2)(C). To be clear, Plaintiffs have not raised constitutional claims here, which was a significant factor in *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *4-6 (N.D. Tex. July 19, 2021), a case Plaintiffs previously cited in support of their motion for extra-record discovery, where the court denied a motion to strike extra record evidence in a case concerning termination of the Migrant Protection Protocols. And even *Texas* recognized as "well-reasoned," *id.* at *4, a case denying the admission of extra-record evidence for a claim that would "require[] the Court to analyze the substance of an agency's decision that is, in turn, based on an evaluation of that [administrative] record." *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 44 (D.D.C. 2018), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021). Here, whether Defendants are in violation of section 1182(d)(5)(A), either under the APA or otherwise, will necessarily involve the Court's evaluation of the administrative records supporting the parole processes at issue and the substance of whether these actions comport with the parole statute. Exhibits 2-3 (press releases), 8-17 (muster reports), 18-30 (training material and user guides) and 31-37 (sample forms) will not aid in that analysis. The Court should not permit Plaintiffs, by advancing an exact duplicate of their APA

claim simply relabeled as a standalone equitable claim, to engage in an end-run around the requirements for reviewing agency action based on an administrative record set forth by Congress.

In sum, the Court should preclude Plaintiffs from relying upon extra-record evidence in support of their APA or ultra vires claims. And, as exhibits 2-3, and 8-37 seem unrelated to standing, they should be excluded as irrelevant under Fed. R. 402.

## POINT II.

### PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE IN LIEU OF DIRECT TESTIMONY THE DECLARATION OF REBECCA WALTZ

Plaintiffs have indicated their intent to offer into evidence the declaration of Rebecca Waltz in lieu of her direct testimony. *See* ECF Nos. 195, 206. The Court should preclude them from doing so as Ms. Waltz's testimony is irrelevant.

Ms. Waltz is the Budget Director for the Texas Department of Criminal Justice (TDCJ), the Texas agency responsible for the custody of those who are incarcerated. *See* Exhibit A, Waltz Declaration, dated May 25, 2023 attached hereto. Under the State Criminal Alien Assistance Program (SCAAP), the federal government reimburses states for certain costs associated with the detention of undocumented criminal noncitizens. *Id*. ¶¶ 3-4. In connection with Texas's application for reimbursement under SCAAP, the State has maintained data on the number of eligible criminal noncitizens incarcerated in the State, the number of days they were incarcerated, the cost per inmate per day for such incarceration, the total cost to the State for incarcerating those eligible noncitizens, and the amount of money reimbursed to the State by the Federal Government. *Id*. ¶¶ 6, 7. In her declaration, Ms. Waltz provides this data for the period spanning July 1, 2020 through June 30, 2021. *Id*. at ¶ 6. This data is irrelevant to Plaintiffs' claims.

The parole processes that Plaintiffs challenge were implemented on October 19, 2022 for Venezuelan nationals and January 6, 2023 for Cuban, Haitian and Nicaraguan nationals.[2] The data provided by Ms. Waltz predates the implementation of all four programs, and notably, Plaintiffs have not supplemented the data to include data from after the implementation of the four challenged parole processes.[3]

Ms. Waltz also notes that TDCJ incurs a cost from supervising those undocumented criminal noncitizens who are released from jail on parole. She estimates that for Fiscal Year 2022—which she does not define, but according to Texas's public filings, ended on August 31, 2022[4]—the cost of supervising undocumented criminal noncitizens released on parole was $9,307,760. Ex. A, ¶ 10.[5] But that figure is irrelevant because it predates the implementation of the CHNV Parole Processes. The figure is also meaningless in isolation. Ms. Waltz does not offer data to demonstrate that the cost to the State of supervising undocumented criminal noncitizens increased after the implementation of the CHNV Parole Processes (let alone that the illusory increase is attributable to the processes as opposed to some other factor).

---

[2] *Implementation of a Parole Process for Cubans*, 88 Fed. Reg. 1266 (Jan. 9, 2023); *Implementation of a Parole Process for Haitians*, 88 Fed. Reg. 1243 (Jan. 9, 2023); *Implementation of a Parole Process for Nicaraguans*, 88 Fed. Reg. 1255 (Jan. 9, 2023); *Implementation of Changes to the Parole Process for Venezuelans*, 88 Fed. Reg. 1279 (Jan. 9, 2023).

[3] Even if they had, the data set discussed by Ms. Waltz is irrelevant to the four challenged processes because the data which is tracked pertains to *undocumented* criminal noncitizens. The individuals paroled into the country under the four challenged processes are *documented*.

[4] *See* https://www.tdcj.texas.gov/documents/Statistical_Report_FY2022.pdf

[5] Ms. Waltz arrives at that figure by multiplying the average cost per inmate for parole supervision by the "number of days." Ex. A, ¶ 10. But for "number of days," Ms. Waltz used the total number of days that undocumented criminal noncitizens were *incarcerated*, not the number of days that they were supervised on parole. *Id.* As a result, the total figure she provides appears fundamentally flawed.

In short, Ms. Waltz's testimony is entirely irrelevant because it does not contain any data that covers the period during which the CHNV Parole Processes have been in effect. Testimony which is not relevant is inadmissible. Fed. R. Evid. 402. While bench trials generally afford the Court "greater latitude" with respect to evidentiary rulings, *Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278, 287 (5th Cir.1987), "[t]he Federal Rules of Evidence obviously [still] apply." *Perez v. Bruister*, No. 3:13CV1001-DPJ-FKB, 2014 WL 3729176, at *1 (S.D. Miss. July 25, 2014). While Defendants do not doubt the Court's ability to weigh the Waltz declaration during trial, because the declaration is palpably irrelevant, the Court should preclude it at this time. *See e.g. Barber v. Milbank Ins. Co.*, No. CV 5:21-213-KKC-EBA, 2023 WL 3721197, at *1 (E.D. Ky. May 30, 2023) ("Though…the gatekeeping function of the Court is most important in jury trials, that does not mean that the Court must allow a party to present irrelevant [] testimony in a bench trial.").[6]

## POINT III.

### PLAINTIFFS SHOULD BE PRECLUDED FROM OFFERING INTO EVIDENCE IN LIEU OF DIRECT TESTIMONY THE DECLARATION OF JAMES TERRY

Plaintiffs have indicated their intent to offer into evidence the declaration of James Terry in lieu of his direct testimony. *See* ECF Nos. 195, 206. The Court should preclude them from doing so as Mr. Terry's testimony is irrelevant.

---

[6] Plaintiff filed an earlier version of Ms. Waltz's declaration as part of their motion for a preliminary injunction. ECF No. 22-6. That declaration is substantially similar to Ms. Waltz's current declaration but refers to a data set covering an even earlier period predating the CHNV Processes—2018 through 2019. Although Plaintiffs did not list the earlier declaration on their Exhibit List, the Court noted in its Scheduling order that declarations attached to the preliminary injunction filings are "presumptively admitted" for trial. ECF No. 159(1). The Court should preclude the prior Waltz declaration because it is irrelevant for the same reasons the current declaration is—it concerns a data set that predates the implementation of the CHNV Parole Processes without any comparator for the period since the processes were implemented.

Mr. Terry is the Associate Commissioner for School Finance/Chief School Finance Officer at the Texas Education Agency (TEA) and is tasked with overseeing the financial operations of the TEA. *See* Exhibit Ba (Terry Decl.), attached hereto. Mr. Terry states in his declaration that the average cost for educating a student who qualifies for additional Bilingual and Compensatory Education in Texas in 2023 is forecasted to be $11,781 per qualifying student in attendance the full year, and that most unaccompanied alien children (UAC) qualify for this education. *Id.* at ¶ 3. Mr. Terry then provides data on the number of UACs released into the State by year from 2014 through 2022, where the year spans October to the following September. *Id.* at ¶ 4. Assuming each of these UAC qualified for Bilingual and Compensatory Education, he estimates the cost to Texas for educating these UAC in each of the years from 2014 to 2022. *Id.* at ¶ 5. He then speculates that "additional UAC enrolled in Texas public schools would increase the State's cost." *Id.* at ¶ 6. Mr. Terry's testimony is irrelevant.

The CHNV Parole Processes do not apply to unaccompanied children. *See e.g.* 88 Fed. Reg. at 1,276, 88 Fed. Reg. at 1252, 88 Fed. Reg. at 1263, and 87 Fed. Reg. 63,515 & fn 52 (Any individual "determine[d] to be an unaccompanied child" "is ineligible for advance authorization to travel to the United States as well as parole under this process."). As a result, the data Mr. Terry offers is irrelevant. It is also irrelevant because it predates the implementation of the CHNV Processes. Because nothing in Mr. Terry's testimony is relevant to this case, his testimony should be precluded under Fed. R. Evid. 402.[7]

---

[7] Plaintiff filed an earlier version of Mr. Terry's declaration, signed by his predecessor, Leonardo Lopez, as part of their motion for a preliminary injunction. ECF No. 22-4. That declaration is substantially similar to Mr. Terry's current declaration but excludes the above referenced predictions for UAC educational expenditures for 2023. Although Plaintiffs did not list the earlier declaration on their Exhibit List, the Court noted in its Scheduling order that declarations attached to the preliminary injunction filings are "presumptively admitted" for trial. ECF No. 159(1). The

## CONCLUSION

The Court should grant the foregoing motions *in limine* and order that (I) Plaintiffs are precluded from relying upon any extra-record evidence in support of their claims, other than to the extent relevant to harm and standing, and as a result exhibits 2-3 and 8-37 are precluded; (II) Plaintiffs are precluded from offering into evidence in lieu of direct testimony the declaration of Rebecca Waltz; (III) Plaintiffs are precluded from offering into evidence in lieu of direct testimony the declaration of James Terry.

---

Court should preclude the Lopez declaration for the same reasons it should preclude the Terry declaration.

Date:  August 9, 2023	Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN WARD
*Senior Litigation Counsel*

/s/ *Elissa Fudim*
Elissa Fudim
Joseph Darrow
Erin Ryan
*Trial Attorney*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov