# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | CIVIL ACTION NO. |
| *Plaintiffs,* | § | 6:23-CV-00007 |
| | § | |
| vs. | § | |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY, *et al.*, | § | JUDGE DREW S. TIPTON |
| | § | |
| *Federal Defendants,* and | § | |
| | § | |
| VALERIE LAVEUS, *et al.*, | § | |
| | § | |
| *Individual Defendants.* | § | |

# INDIVIDUAL DEFENDANTS' MOTION TO EXCLUDE EVIDENCE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 1

I.   Motion in Limine to Exclude Plaintiffs' Declarations................................2

    a.  Declarations of Rebecca Waltz, Texas Department of Criminal Justice.....4

        i.  The Waltz Declarations Are Irrelevant.....................................4

        ii. The Waltz Declarations Lack Personal Knowledge and Offer
        Improper Lay Witness Opinion.................................................6

    b.  Declarations of James Terry and Leonardo Lopez, Texas Education
        Agency.................................................................................8

        i.  The Terry and Lopez Declarations are Irrelevant.........................8

        ii. The Terry and Lopez Declarations Lack Personal Knowledge and
        Offer Improper Lay Witness Opinion.......................................9

    c.  Declarations of Susan Bricker, Texas Health and Human Services
        Commission..........................................................................11

        i.  The Bricker Declarations are Irrelevant.................................11

        ii. The Bricker Declarations Lack Personal Knowledge and Offer
        Improper Lay Witness Opinion.............................................13

    d.  Declarations of Sheri Gipson, Texas Department of Public Safety..........14

        i.  The Gipson Declarations Lack Personal Knowledge and Offer
        Improper Lay Witness Opinion.............................................14

II.  Motion in Limine to Exclude Irrelevant Immigration Forms (Exhibits 31-
     37)......................................................................................16

CONCLUSION..............................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*
  No. CV 18-5888, 2020 WL 6949001, at *5 (E.D. La. Mar. 2, 2020) ........................ 2

*Bourjaily v. United States*
  483 U.S. 171 (1987) ....................................................................... 1, 6, 19

*Dauzat v. Weeks Marine, Inc.*
  No. CV 14-3008, 2016 WL 3186900, at *2 (E.D. La. June 8, 2016) ........................ 2

*DIJO, Inc. v. Hilton Hotels Corp.*
  351 F.3d 679 (5th Cir. 2003) ...................................................... 7, 11, 14

*Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*
  84 F. Supp. 3d 553, 565 (S.D. Tex. 2015)........................................ 3, 7, 11

*OMI Envt'l Sol'ns*
  *No. 12-2298, 2014 WL 12539338, at *1 (E.D. La. May 23, 2014)* ........................ 2

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London & Arch Specialty Ins.*
  *Co.* No. CIV.A. H-09-3712, 2010 WL 3359528, at *1 (S.D. Tex. Aug. 23, 2010) ...... 1

*Sprint/United Mgmt. Co. v. Mendelsohn*
  552 U.S. 379 (2008) .................................................................... 6

*Taxotere (Docetaxel) Prod. Liab. Litig.*
  26 F.4th 256, 266 (5th Cir. 2022) ....................................................... 15

*United States v. Hall*
  653 F.2d 1002 (5th Cir. 1981) .................................................. 5, 6, 9, 12

*Washington v. Dep't of Transp.*
  8 F.3d 296, 300 (5th Cir. 1993) ..................................................... 7, 15

## Statutes

8 U.S.C. § 1182(d)(5)(A) .............................................................. 18-19

**Rules**

Fed. R. Evid. 401 .................................................................................... 5, 6

Fed. R. Evid. 402 ............................................................................... *passim*

Fed. R. Evid. 602 ............................................................................... *passim*

Fed. R. Evid. 701 ............................................................................... *passim*

Fed. R. Evid. 702 ............................................................................... *passim*

**Other Sources**

David F. Herr, Roger S. Haydock and Jeffrey W. Stempel, "Authority," MOTION
    PRAC. § 18.04 .......................................................................................... 2

## INTRODUCTION

Plaintiffs seek to introduce certain testimony and evidence that are irrelevant to the issues before the court and therefore inadmissible under Federal Rule of Evidence ("Rule") 402.  As such, they should be excluded from consideration at trial.  And insofar as Plaintiffs submit Exhibits 4-7 and the corresponding original declarations, ECF 22-3 through 22-6, as non-expert testimony, Individual Defendants further object to their admission for lack of personal knowledge and as improper opinion testimony under Rules 602 and 701.  For the reasons explained below, the Court should preclude Plaintiffs from relying on such evidence at trial.

## ARGUMENT

This Court should rule in advance of trial to exclude Plaintiffs' inadmissible evidence.  Evidence is admissible if it is relevant and not otherwise barred under Federal Rule of Evidence 402, but the party offering the evidence bears the burden of proving that it is admissible. *See Bourjaily v. United States,* 483 U.S. 171, 175-76 (1987).  Plaintiffs fail to meet this burden as to the declarations they offer in lieu of trial testimony, and as to several federal government forms unrelated to the parole programs for Cuban, Haitian, Nicaraguan, and Venezuelan nationals (hereafter "CHNV Pathways") that are the subject of this action.

 "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Pendergest-Holt v. Certain Underwriters at Lloyd's of London & Arch Specialty Ins. Co.,* No. CIV.A. H-09-3712, 2010 WL 3359528, at *1 (S.D. Tex. Aug. 23, 2010). "While 'the need

1

for pre-trial rulings on admissibility of evidence is significantly reduced,' in the context of a bench trial, the Court may still consider motions in limine in advance of trial in order to streamline issues for trial." *Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, No. CV 18-5888, 2020 WL 6949001, at *5 (E.D. La. Mar. 2, 2020) (quoting *In re: OMI Envt'l Sol'ns,* No. 12-2298, 2014 WL 12539338, at *1 (E.D. La. May 23, 2014)); *see also Dauzat v. Weeks Marine, Inc.*, No. CV 14-3008, 2016 WL 3186900, at *2 (E.D. La. June 8, 2016) ("Motions in limine, however, are not limited to jury trials. Indeed, '[m]otions in limine may be as useful in bench trials as they are in jury trials.'") (quoting David F. Herr, Roger S. Haydock and Jeffrey W. Stempel, "Authority," MOTION PRAC. § 18.04.).  Here, an advance ruling on the admissibility of irrelevant and otherwise inadmissible evidence would narrow and streamline the issues for trial, avoiding the need for prolonged colloquy to establish that certain of Plaintiffs' exhibits offer nothing more than misdirection.

Alternatively, if the Court does not rule on these motions to exclude evidence before trial, Individual Defendants offer the following objections to the consideration of the evidence.

## I.  MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' DECLARATIONS

Plaintiffs seek to rely on four declarations filed in support of their Motion for Preliminary Injunction, ECF 22-3 through 22-6,[1] and another four filed as part of

---

[1] While Plaintiffs did not list on their Exhibit and Witness List, ECF 195, the declarations submitted with their Motion for Preliminary Injunction, ECF 22, the Court's Amended Scheduling Order, ECF 159, states that they are "presumptively admitted as 'part of the trial record,'" and thus Individual Defendants object to these declarations on the grounds discussed herein.

2

their exhibit list, ECF 195, all of which were prepared by individuals employed by several Texas agencies.  The Court should exclude several of these documents under Rule 402 because they are irrelevant to this action.[2]  Plaintiffs assert the declarations are relevant to demonstrate standing for education, healthcare, and corrections costs. ECF 209 at 2.  But nearly all of the declarations concern costs related to distinct populations not at issue in this case and which bear no relevance to actual or likely costs from individuals paroled into the United States through the CHNV Pathways.

In addition, each of Plaintiffs' declarants fails to meet Rule 702's requirements to qualify as an expert witness; and as lay witnesses, their declarations present impermissible opinion testimony that exceeds the bounds of Rule 701.[3]  Their testimony also fails to present evidence of sufficient personal knowledge to satisfy Rule 602.

For the reasons stated below, the declarations are independently inadmissible under Rules 402, 701, and 602, and should therefore be excluded.

---

[2] Consistent with a joint stipulation filed by the Parties, ECF 206, Individual Defendants' objections to these declarations do not include an objection on the grounds that they are being used in lieu of direct testimony.

[3] Plaintiffs' declarants were not designated as Rule 702 experts, nor are they qualified to give their proffered testimony that, to be reliable, would require statistical analysis or other specialized expertise. To the extent their opinion testimony is admissible, it could only be under Rule 701. *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 565 (S.D. Tex. 2015). As discussed *infra*, it is not.

3

### a. Declarations of Rebecca Waltz, Texas Department of Criminal Justice

#### i. *The Waltz Declarations Are Irrelevant*

The declarations of Rebecca Waltz of the Texas Department of Criminal Justice, ECF 22-6; ECF 195 Ex. 5, are irrelevant to this action because they provide data and estimates pertaining *only* to the fiscal impacts of incarcerating undocumented immigrants—and thus are entirely unrelated to the CHNV Pathways at issue in this case. *See, e.g.*, ECF 195 Ex. 5 ¶ 3 ("SCAAP provides federal payments to states and localities that incurred correctional officer salary costs for incarcerating undocumented criminal [noncitizens] . . . ."). The CHNV Pathways undisputedly provide a *well-documented* path for noncitizens to enter and reside in the United States under a grant of parole for a temporary period. They do not concern undocumented immigrants.

For individuals seeking parole through the CHNV Pathways, a supporter in the United States must initiate the process by submitting a 13-page form, Form I-134A, "Online Request to be a Supporter and Declaration of Financial Support." ECF 175-3. This form requires the supporter to disclose their personal information and that of the intended parolee, and to disclose and attach evidence of the total dollar value of the income and assets that both the sponsor and the prospective parolee possess to support the parolee in the United States. *Id.* The supporter must also include a written statement of how they intend to "receive, maintain, and support the beneficiary," including by assisting the beneficiary in securing employment once authorized to work. *Id.*

4

Only once the U.S.-based supporter has completed and submitted Form-134A, and the United States Citizenship and Immigration Service ("USCIS") performs a background check and vets the supporter and concludes the supporter can financially support the intended parolee, will USCIS contact the intended parolee to solicit additional biographical information, including through a background check. *Id.* If USCIS authorizes travel to the United States, the intended parolee must secure their own air travel to an airport within the United States, where, upon arrival, they will seek discretionary parole at the port of entry and will undergo additional screening and vetting. *Id.* If granted parole through the CHNV Pathways, individuals may stay in the United States for up to two years. *Id.* During that time, in addition to having guaranteed financial support from their supporter, they are eligible for employment authorization. *Id.*

Because the sponsored, vetted, and paroled individuals who enter Texas through the CHNV Pathways are a class of individuals wholly separate from the undocumented immigrants that are the subject of the Waltz declarations, the Waltz declarations are irrelevant. Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Implicit in that definition are two distinct requirements: (1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall,* 653 F.2d 1002, 1005 (5th Cir. 1981). Moreover, relevance is context-specific and "is not

an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Advisory Committee's Notes on Fed. Rule Evid. 401, 28 U.S.C.App., p. 864, *cited with approval in Sprint / United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 387-88 (2008); *see also Hall,* 653 F.2d at 1005 (to be relevant, evidence "must be part of the hypothesis governing the case").

Plaintiffs have failed to meet their burden to establish the relevance of data pertaining solely to undocumented immigration.  *Bourjaily,* 483 U.S. at 175-76.  Plaintiffs have offered no reason to determine that the testimony in the Waltz declarations is probative to determine whether Texas will incur corrections costs because of the CHNV Pathways.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.   As the Waltz declarations offer evidence of costs related *only* to undocumented individuals, they should be excluded in their entirety as irrelevant to this action.

> ii.  *The Waltz Declarations Lack Personal Knowledge and Offer Improper Lay Witness Opinion*

The Waltz declarations also offer improper lay witness opinion testimony and testimony that lacks personal knowledge and should be excluded on these independent bases.

Opinion testimony by a lay witness must be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  That means

6

a lay witness's testimony is proper "only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 564 (S.D. Tex. 2015). The testimony must be "based on the witness's first-hand knowledge or observations" in order to "help[] eliminate the risk that a party will circumvent the reliability requirements [of Rule 702] by adducing expert testimony in lay witnesses' clothing." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-86 (5th Cir. 2003). Additionally, Rule 602 prohibits non-expert witness testimony unless "evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Despite that Ms. Waltz's underlying *factual* testimony relates entirely to expenses and reimbursements related to undocumented immigrants, she offers unsupported *opinions* about costs related to noncitizens writ large. *See*, *e.g.*, ECF 195 Ex. 5 ¶ 9 ("*It is my belief* that to the extent the number of [noncitizens] in TDCJ custody increases, TDCJ's unreimbursed expenses will increase as well.") (emphasis added). This is speculation with no basis in fact. "Under the Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible." *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (citing Fed. R. Evid. 701). As there is no evidence to show Ms. Waltz has any personal knowledge to support her unfounded assertion, it should also be excluded under Rule 602.

### b. Declarations of James Terry and Leonardo Lopez, Texas Education Agency

#### i. *The Terry and Lopez Declarations are Irrelevant*

The declarations of James Terry, ECF 195 Ex. 6, and Leonardo R. Lopez, ECF 22-4, of the Texas Education Agency similarly base Texas's estimated costs on another unrepresentative and differently situated population: unaccompanied immigrant children, who are children who arrive in the United States without a parent or legal guardian and are categorically ineligible for the CHNV Pathways. *See* ECF 22-4 at ¶ 4 ("TEA has not received any information . . . regarding the precise number of unaccompanied children ("UAC") in Texas."); ECF 195 Ex. 6 at ¶ 7 ("I anticipate that the total costs to the State of providing public education to UAC will rise in the future to the extent that the number of UAC enrolled in the State's public school system increases."); ECF 175-3.   The exhibits attached to Mr. Terry's declaration and Mr. Lopez's declaration, printed from the website of the U.S. Department of Health and Human Services, contain state-by-state data pertaining *solely* to unaccompanied immigrant children.   ECF 22-4 Ex. 1; ECF 195 Ex. 6 at 5. This data does not even indicate whether the unaccompanied child relocated outside of Texas or how many of these children enrolled in Texas public schools.

Even if the data did account for the number of unaccompanied children who remained in Texas after initial release and enrolled in public schools (which it does not), it would still be irrelevant for the simple reason that unaccompanied immigrant children are *categorically ineligible* for the CHNV Pathways.   *See* ECF 175-3 ("Children under the age of 18 traveling without their parent or legal guardian are

not eligible for advance authorization to travel or parole under these processes."). Stated differently, every child who enters the United States through the CHNV Pathways is accompanied by at least one parent or legal guardian who benefits from the same guarantees of financial support by a sponsor and eligibility for work authorization that the CHNV Pathways provide. *Supra* I(a)(i).

Because Mr. Terry and Mr. Lopez's underlying data and resulting estimated costs relate solely to an unrepresentative population, the declarations are plainly not "probative of the proposition [they are] offered to prove," which is Texas's presumed education costs related to the CHNV Pathways. *Hall,* 653 F.2d at 1005. Indeed, even if the Terry declaration's predictions about "total costs to the State of providing public education to UAC" were to bear out as estimated, this would still tell the Court nothing about likely education costs related to children residing in Texas as a result of the CHNV Pathways. Accordingly, the evidence provided in Mr. Lopez's and Mr. Terry's declarations is irrelevant, and thus not admissible. Fed. R. Evid. 402.

> ii.  *The Terry and Lopez Declarations Lack Personal Knowledge and Offer Improper Lay Witness Opinion*

Mr. Terry's and Mr. Lopez's declarations offer improper lay witness testimony. Although both declarants have worked overseeing the Texas Education Agency's finance department, ECF 22-4 at ¶ 1; ECF 195 Ex. 6 at ¶ 1, they each concede that they "have not received any information directly from the federal government regarding the precise number of unaccompanied children in Texas." ECF 22-4 at ¶ 4; ECF 195 Ex. 6 at ¶ 4. Thus, by their own admission, they do not have lay witness expertise about the number of unaccompanied immigrant children currently residing

in Texas who may enroll in Texas public schools.[4]  Instead, and without explaining any methodology or assumptions made, both declarants refer to a dataset released by ORR that does not contain this information.  *Id.*; ECF 22-4 at ¶ 4.

Both Mr. Terry and Mr. Lopez then attempt to conduct a calculation based on that dataset, but do not explain their process: for instance, both appear to assume without basis that "most, if not all" unaccompanied immigrant children would need Bilingual and Compensatory Education.  *Id.* at ¶¶ 3-4; ECF 195 Ex. 6 at ¶¶ 3-4.  But the data from which these declarants are extrapolating does not contain information on language proficiency or even country of origin.  As previously noted, these declarants have stated that they do not even know the number of unaccompanied immigrant children in Texas schools—yet they now speculate on the language proficiency of this very same group.  *See id.* at ¶ 3.  Their declarations additionally speculate, without firsthand knowledge or explanation, that every unaccompanied child would attend for the entire school year.  *See id.* (only estimating costs to attend for "the entire school year.").  Finally, both declarants state that they "anticipate that the total costs to the State of providing public education to UAC will rise in the future to the extent that the number of UAC enrolled in the State's public school system arises."  Throughout their declarations, both Mr. Terry and Mr. Lopez offer unsupported *opinions* about school costs related to unaccompanied immigrant

---

[4] As discussed in the previous section, "unaccompanied children" categorically does not overlap with any prospective children arriving through the CHNV programs, so even if they had lay witness knowledge of these statistics, the testimony must still be excluded as irrelevant.

children, rather than providing factual information within the purview of their own experience.

Each of these opinions requires "specialized knowledge" and could not "be reached by any ordinary person." *Metro Hosp. Partners, Ltd.* 84 F. Supp. 3d at 564. Indeed, these declarations "adduc[e] expert testimony in lay witnesses' clothing." *DIJO, Inc.,* 351 F.3d at 685-86. Because both Mr. Lopez and Mr. Terry have not introduced evidence "sufficient to support a finding that [they have] personal knowledge of the matter," their declarations should be excluded as improper lay witness testimony. Fed. R. Evid. 602.

### c. Declarations of Susan Bricker, Texas Health and Human Services Commission

#### i. *The Bricker Declarations are Irrelevant*

The declarations of Susan Bricker, ECF 22-5; ECF 195 Ex. 7, of the Texas Health and Human Services Commission are also irrelevant.

The declarations rely on data reflecting health costs based on services estimated to have been provided to undocumented immigrants. *See, e.g.*, ECF 195 Ex. 7 ¶ 5 ("HHSC provided three principal categories of services and benefits to undocumented immigrants in Texas: (i) Texas Emergency Medicaid; (ii) the Texas Family Violence Program (FVP); and (iii) Texas Children's Health Insurance Program (CHIP) Perinatal Coverage . . . . Undocumented immigrants also receive uncompensated medical care from public hospitals in the State."). As stated above, undocumented immigrants are a distinct population from the individuals paroled into the United States through the CHNV Pathways with guarantees of financial

11

sponsorship. *See supra* I(a)(i). Plaintiffs offer no basis to suggest that the undocumented population approximates the population of individuals at issue in this case.

Moreover, the Bricker declarations offer only estimated gross costs, based on untold numbers of undocumented immigrants. Plaintiffs have offered no basis to determine that *total* healthcare costs incurred relating to all undocumented immigrants estimated to be in Texas are relevant to their hypothesis that Texas will incur greater healthcare costs as a result of the CHNV Pathways. *Hall,* 653 F.2d at 1005 (to be relevant, evidence "must be part of the hypothesis governing the case"). This evidence is irrelevant.

The Bricker declarations also rely on data describing costs related generally to "individuals from Cuba, Haiti, Nicaragua, and Venezuela," "regardless of documentation status," meaning regardless of whether they entered through the CHNV Pathways. ECF 195 Ex. 7 ¶¶ 6, 9-12. Again, Plaintiffs offer no justification for this group as a proxy. To the extent Plaintiffs are suggesting that Cuban, Haitian, Nicaraguan, and Venezuelan nationals have unspecified but unique health needs as compared to people of other national origins residing in Texas, such a suggestion surely cannot be credited. And the Bricker declarations offer only gross costs as to an unspecified number of individuals from Cuba, Haiti, Nicaragua, and Venezuela, again offering no basis to draw any helpful or relevant information about the costs Texas is likely to incur as a result of the CHNV Pathways. This information bears

no relationship to the "hypothesis governing the case," and so the Bricker declarations are irrelevant.

      *ii.   The Bricker Declarations Lack Personal Knowledge and Offer Improper Lay Witness Opinion*

The Bricker declarations also present highly technical opinions about the healthcare costs incurred by noncitizens that exceed the bounds of permissible lay witness testimony.  Fed. R. Evid. 701.  Ms. Bricker's declarations detail complex methodologies and resulting estimates based on certain data and assumptions—but do not state that she had anything to do with determining, verifying, or performing those analyses.  *See generally* ECF 195, Ex. 7.  Ms. Bricker offers her opinion on an "updated method" to "better estimate" certain costs—with no stated personal knowledge to support these assertions that require technical, specialized knowledge. *See, e.g.*, *id.* ¶ 11 ("The September 2022 estimate for the cost of CHIP Perinate benefits provided to undocumented immigrants used TIERS data in combination with capitation payments to better estimate the fraction of CHIP Perinate expenditures attributable to undocumented immigrants. The updated method uses the percentage of CHIP Perinate clients with 'UN' alien status among individuals that did not have a null/blank value for their Alien Type Code in TIERS to estimate the portion of CHIP Perinate capitation payments attributable to undocumented immigrants in Texas.").

     Ms. Bricker concludes that the approximated gross healthcare costs of serving noncitizens and undocumented immigrants guarantee a net cost to Texas. *See* ECF 22-5 ¶ 10 ("Although all of these numbers are estimated costs for the respective programs, it is a *certainty* that each of these programs has *some positive cost* to the

State of Texas due to utilization by undocumented immigrants.") (emphases added); ECF 195, Exhibit 7 ¶ 13 ("Although all of these cost estimates include some margin of uncertainty, *it is clear* that both of these programs have *some positive cost* to the State of Texas due to utilization by non-citizens, including undocumented immigrants.") (emphases added).  These opinions not only require specialized knowledge, but they are not based on Ms. Bricker's "first-hand knowledge or observations," and are thus impermissible speculation from a lay witness. *DIJO, Inc.*, 351 F.3d at 685-86.  Moreover, because there is no evidence to show Ms. Bricker has personal knowledge of the matters to which she testifies, the declarations should be excluded under Rule 602.

### d.  Declarations of Sheri Gipson, Texas Department of Public Safety

#### i.  *The Gipson Declarations Lack Personal Knowledge and Offer Improper Lay Witness Opinion*

The Gipson declarations, ECF 22-3; ECF 195 Ex. 4, also offer improper lay witness opinion testimony and testimony that lacks personal knowledge and should thus be excluded.

As with Plaintiffs' other declarants, Ms. Gipson offers mere estimations and speculation to support her claims.  *E.g.*, ECF 195 Ex. 4 ¶ 8 ("DPS *estimates* that for an additional 10,000 driver license customers seeking a limited term license, DPS *would* incur a biennial cost of approximately $2,014,870.80") (emphases added); *id.* ("The table below outlines the *estimated* costs that DPS *would* incur . . . .") (emphases added); *id.* ("DPS *may* have to open additional driver license offices or expand current

14

facilities . . . .") (emphasis added); *id.* ¶ 11 ("The added customer base that *may* be created by an increase in the number of individuals authorized to be in the United States . . . .") (emphasis added).  Such statements are pure conjecture (conjecture unrelated to the CHNV populations at issue here, no less), and thus are not based on Ms. Gipson's personal knowledge.  *Washington*, 8 F.3d at 300 ("Under the Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible."); *see also* Fed. R. Evid. 602.  Moreover, various of these speculations are explicitly attributed to the Texas Department of Public Safety ("DPS"), and thus are not based on Ms. Gipson's *own* personal knowledge.  *E.g.*, ECF 195 Ex. 4 ¶ 8 ("*DPS* estimates that for an additional 10,000 driver license customers seeking a limited term license, DPS would incur a biennial cost of approximately $2,014,870.80") (emphasis added).  This is impermissible.

Additionally, Ms. Gipson is not a layperson qualified to testify under Rule 701—she is the Chief of the Texas DPS Driver License Division.  And even if she were, her testimony would still be "limited to [opinions] . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  *In re: Taxotere (Docetaxel) Prod. Liab. Litig.,* 26 F.4th 256, 266 (5th Cir. 2022).  Yet Ms. Gipson's entire declaration is based on technical and specialized knowledge of the Texas Transportation Code; driver license processes, databases, and technological systems; complex mathematical analyses; and predictions ostensibly based on all of these.  ECF 195 Ex. 4 ¶¶ 3-10.  For example, Ms. Gipson offers no basis for the

15

technical assertion, on which her opinion testimony relies, that the need for additional facilities would grow in a linear fashion for each additional estimated Texas driver paroled through the CHNV Pathways. Indeed, Ms. Gipson's opinions require a level of expertise in economic analysis that she does not purport to have. Such testimony far exceeds that contemplated by Rule 701 and forays impermissibly into the territory of expert witness testimony under Rule 702. For these reasons, Ms. Gipson's declarations should be excluded under Rules 701 and 602.

## II.   MOTION IN LIMINE TO EXCLUDE IRRELEVANT IMMIGRATION FORMS (EXHIBITS 31-37)

Plaintiffs likewise seek to rely on immigration forms that are associated with several unrelated immigration processes and benefits, including for non-immigrant and immigrant visas and green cards. Because the forms bear no relationship to the CHNV Pathways, they should be excluded as irrelevant. These exhibits consist of:

- **Exhibit 31, State Department Online DS-160 Form (Non-Immigrant Visa)**. "The DS-160, Online Nonimmigrant Visa Application form, is for temporary travel to the United States, and for K (fiancé(e)) visas." *DS-160: Online Nonimmigrant Visa Application*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/forms/ds-160-online-nonimmigrant-visa-application.html (last visited Aug. 7, 2023).

- **Exhibit 32, State Department's Online DS-260 Form (Immigrant Visa)**. "This application is for individuals who are applying for an

immigrant visa and alien registration." *DS-260 IV Application Sample*, U.S. Dep't of State (Oct. 2019), https://travel.state.gov/content/dam/visas/DS-260-Exemplar.pdf.

- **Exhibit 33, Customs and Border Protection ESTA (Electronic System for Travel Authorization) Form**. "ESTA is an automated system that determines the eligibility of visitors to travel to the United States under the Visa Waiver Program (VWP).  Authorization via ESTA does not determine whether a traveler is admissible to the United States." *Electronic System for Travel Authorization*, U.S. Customs & Border Protection, https://www.cbp.gov/travel/international-visitors/esta (last modified June 2, 2023).

- **Exhibit 34, United States Citizenship and Immigration ("USCIS") Form I-129, Petition for a Non-Immigrant Worker**.  "Petitioners use this form to file on behalf of a nonimmigrant worker to come to the United States temporarily to perform services or labor, or to receive training, as an H-1B, H-2A, H-2B, H-3, L-1, O-1, O-2, P-1, P-1S, P-2, P-2S, P-3, P-3S, Q-1 or R-1 nonimmigrant worker.  Petitioners may also use this form to request an extension of stay in or change of status to E-1, E-2, E-3, H-1B1 or TN, or one of the above classifications for a noncitizen." *I-129, Petition for a Nonimmigrant Worker*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-129 (last updated Apr. 11, 2023).

- **Exhibit 35, USCIS Form I-130, Petition for an Alien Relative**. "[T]his form [is used] if you are a U.S. citizen or lawful permanent resident (LPR) and you need to establish your relationship to an eligible relative who wishes to come to or remain in the United States permanently and get a Permanent Resident Card (also called a Green Card)." *I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-130 (last updated May 18, 2023).

- **Exhibit 36, USCIS Form I-140, Immigrant Petition for Alien Workers**. "[T]his form [is used] to petition for a noncitizen worker to become a permanent resident in the United States." *I-140, Immigrant Petition for Alien Workers*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-140 (last updated Aug. 2, 2023).

- **Exhibit 37, USCIS Form I-864, Affidavit of Support Under Section 213A of the INA**. "Most family-based immigrants and some employment-based immigrants use this form to show they have adequate means of financial support and are not likely to rely on the U.S. government for financial support." *I-864, Affidavit of Support Under Section 213A of the INA*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-864 (last updated Dec. 21, 2022).

The Court should exclude these documents under Rule 402 because they have no relevance to this action. This case deals strictly with the CHNV Pathways pursuant to Federal Defendants' humanitarian parole authority under 8 U.S.C. §

18

1182(d)(5)(A).  The only form applicants may use to apply for the CHNV Pathways is USCIS Form I-134A, Online Request to be a Supporter and Declaration of Financial Support.  The additional immigration forms Plaintiffs seek to introduce are distinct and unrelated to the parole processes or authority challenged in this suit. Underscoring their irrelevance, Plaintiffs have not once referred to these other forms or benefits in any court filing up to this point.

The only argument Plaintiffs offer for the inclusion of Exhibits 31 through 37 is a conclusory statement that they "are relevant to Plaintiff States' arguments that the challenged parole programs unlawfully 'circumvent congressionally established immigration policy.'"  ECF 209 at 2 (citing ECF 22 at 17).  Such a cursory justification fails to meet Plaintiffs' burden to establish relevance.  *Bourjaily,* 483 U.S. at 175-76.

Furthermore, there is no logical reason to consider processes for visas and green cards in a case pertaining to discretionary parole authority under 8 U.S.C. § 1182(d)(5)(A).  Any challenge to this authority must be based in the text, history, and implementation of the authority in question—not the processes of a seemingly random selection of other unrelated immigration benefits. And the support affidavit listed at Exhibit 37 fares no better.  Federal Defendants *elected* to implement a mechanism requiring a showing of financial support when it created the CHNV Pathways.  This form, Form I-134A, is already in the record.  Thus, comparing requirements of financial support for certain visas to financial support for CHNV parolees is irrelevant to Plaintiffs' hypothesis of *this* case: whether the CHNV Pathways were lawfully implemented under the parole statute.

Thus, the Court should find Exhibits 31 through 37 irrelevant and exclude them from the trial record.

## CONCLUSION

For the foregoing reasons, the Court should exclude certain evidence that Plaintiffs seek to offer in this action pursuant to Federal Rules of Evidence 402, 602, 701.

Dated: August 9, 2023

Respectfully submitted,

*/s/ Vanessa Rivas-Bernardy*
**Vanessa Rivas-Bernardy\***
California Bar No. 341464
vanessa.rivas@raicestexas.org

**THE REFUGEE AND IMMIGRANT CENTER
FOR EDUCATION AND LEGAL SERVICES (RAICES)**
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
Telephone: (210) 960-3206
Facsimile: (210) 634-1279

**Monika Y. Langarica\***
California Bar No. 308518
langarica@law.ucla.edu

**Ahilan T. Arulanantham\***
California Bar No. 237841
arulanantham@law.ucla.edu

**Talia Inlender\***
California Bar No. 253796
inlender@law.ucla.edu

**CENTER FOR IMMIGRATION LAW AND POLICY**
UCLA SCHOOL OF LAW
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

**Esther H. Sung (Attorney-In-Charge)\***
California Bar No. 255962
*Application for Admission pending*
esther.sung@justiceactioncenter.org

**Karen C. Tumlin\***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Jane Bentrott\***
California Bar No. 323562
D.C. Bar No. 1029681
Virginia Bar No. 87903
jane.bentrott@justiceactioncenter.org

**Lauren Michel Wilfong\***
New York Bar No. 5975529
New Jersey Bar No. 378382021
*Not admitted to practice law in California*
lauren.wilfong@justiceactioncenter.org

**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

*\*admitted pro hac vice*

**Kate Kaufmann Shih**
Texas Bar No. 24066065
Federal Bar No. 1214426
kateshih@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: (713) 221-7000
Facsimile: (713)221-7100

21

## CERTIFICATE OF WORD COUNT

I certify that the word count for this motion, not including the case caption, table of contents, table of authorities, signature block, and certificates, is 4911 words.

*/s/ Vanessa Rivas-Bernardy*

## CERTIFICATE OF CONFERENCE

I certify that on August 9, 2023, counsel for Individual Defendants, Federal Defendants, and Plaintiff States conferred in good faith via video conference and were not able to reach resolution on the matters presented in this Motion.

*/s/ Vanessa Rivas-Bernardy*

## CERTIFICATE OF SERVICE

I certify that on August 9, 2023, I filed this motion through the Court's CM/ECF system, which served it on all counsel of record.

*/s/ Vanessa Rivas-Bernardy*