**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| *Plaintiffs,* | |
| v. | Case 6:23-cv-00007 |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | |
| *Defendants.* | |

## PLAINTIFF STATES' RESPONSES TO DEFENDANTS' MOTIONS TO EXCLUDE EVIDENCE

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ II

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................................................. 1

ARGUMENT ........................................................................................................... 1

   I.    The Record Rule Does Not Apply ............................................................. 1

   II.   Even if the Record Rule Applies, Plaintiffs' Evidence Falls Within Exceptions to that Rule. ........................................................................................................... 3

   III.  Plaintiffs' Declarations are Admissible. ..................................................... 8

      A.   Rebecca Waltz ............................................................................... 100

      B.   James Terry and Leonardo Lopez .................................................. 122

      C.   Susan Bricker and Sheri Gipson ..................................................... 14

CONCLUSION ...................................................................................................... 16

CERTIFICATE OF COMPLIANCE .......................................................................... 211

CERTIFICATE OF SERVICE ................................................................................... 211

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Rural Fire Ins. Co. v. Naylor*,
530 F.2d 1221 (5th Cir. 1976) ..................................................................... 3

*Arkla Expl. Co. v. Tex. Oil & Gas Corp.*,
734 F.2d 347 (8th Cir. 1984) ............................................................... 5, 6, 7

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ................................................................................... 2

*Asarco, Inc. v. EPA*,
616 F.2d 1153 (9th Cir. 1980) ..................................................................... 5

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................... 8

*Carroll v. Safford*,
44 U.S. 441 (1845) ..................................................................................... 2

*Community Action Group v. City of Columbus*,
473 F.2d 966 (5th Cir. 1973) ..................................................................... 9

*Cty. of Suffolk v. Sec'y of Interior*,
562 F.2d 1368 (2d Cir. 1977) ..................................................................... 5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ................................................................................... 9

*Davis Mountains Trans-Pecos Heritage Ass'n v. FAA*,
116 F. App'x 3 (5th Cir. 2004) ............................................................... 1, 5

*Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*,
249 F. Supp. 2d 763 (N.D. Tex. 2003) ................................................... 1, 5

*East Bay Sanctuary Covenant v. Trump*,
354 F. Supp. 3d 1094 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020),
*aff'd sub nom. East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir.
2021) ......................................................................................................... 2

*Eco Tour Adventures, Inc. v. Zinke*,
249 F. Supp. 3d 360 (D.D.C. 2017) ............................................................ 2

*Envtl. Def. Fund, Inc. v. Costle,*
   657 F.2d 275 (D.C. Cir. 1981) ................................................................................5

*Esch v. Yeutter,*
   876 F.2d 976 (D.C. Cir. 1989) ................................................................................1

*Euzebio v. McDonough,*
   989 F.3d 1305 (Fed. Cir. 2021) ..........................................................................3, 4

*Green Valley Special Util. Dist. v. City of Schertz, Tex.,*
   969 F.3d 460 (5th Cir. 2020) ..................................................................................2

*Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers,*
   No. 3:13-cv-126, 2015 WL 1883522 (S.D. Tex. Apr. 20, 2015) (Costa, J.) ......................4, 5, 7

*Lands Council v. Powell,*
   395 F.3d 1019 (9th Cir. 2005).................................................................................5

*Larson v. Domestic & Foreign Com. Corp.,*
   337 U.S. 682 (1949) .............................................................................................2, 3

*Leal v. Azar,*
   489 F. Supp. 3d 593 (N.D. Tex. 2020) ...............................................................2, 3

*Lightning Lube, Inc. v. Witco Corp.,*
   4 F.3d 1153 (3d Cir. 1993).....................................................................................10

*Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.,*
   602 F.3d 687 (5th Cir. 2010) ...............................................................................4, 8

*Null v. Wainwright,*
   508 F.2d 340 (5th Cir. 1975) ..................................................................................9

*Oceana, Inc. v. Pritzker,*
   126 F. Supp. 3d 110 (D.D.C. 2015) ........................................................................6

*Pub. Power Council v. Johnson,*
   674 F.2d 791 (9th Cir. 1982) (Kennedy, J.).............................................................1

*Qureshi v. Holder,*
   663 F.3d 778 (5th Cir. 2011) ..................................................................................8

*San Luis & Delta-Mendota Water Auth. v. Locke,*
   776 F.3d 971 (9th Cir. 2014) ..................................................................................6

*Sierra Club v. Marsh,*
   976 F.2d 763 (1st Cir. 1992) ..................................................................................6

*Texas v. Biden*,
    554 F. Supp. 3d 818 (N.D. Tex. 2021) .................................................................... 13

*Texas v. Biden (MPP)*,
    20 F.4th 928 (5th Cir. 2021) ............................................................. 11, 13, 15, 16

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) .............................................................................. 11

*Texas v. United States*,
    328 F. Supp. 3d 662 (S.D. Tex. 2018) ................................................................. 7

*Texas v. United States*,
    524 F. Supp. 3d 598 (S.D. Tex. 2021) ................................................................ 12

*Texas v. United States*,
    549 F. Supp. 3d 572 (S.D. Tex. 2021) (Hanen, J.), *aff'd in part, vacated in part,
    remanded,* 50 F.4th 498 (5th Cir. 2022) .............................................................. 13

*Texas v. United States*,
    86 F. Supp. 3d 591 (S.D. Tex. 2015) ................................................................ 7, 8

*Texas v. United States (DACA)*,
    50 F.4th 498 (5th Cir. 2022) ......................................................... 11, 13, 14

*Texas v. United States (DAPA)*,
    809 F.3d 134 (5th Cir. 2015) ..................................................................... 7, 8, 16

*Thompson v. City of Chi.*,
    472 F.3d 444 (7th Cir. 2006) ............................................................................. 9

*U.S. v. Whittemore*,
    776 F.3d 1074 (9th Cir. 2015) ........................................................................... 9

*United States v. Akzo Coatings of Am., Inc.*,
    949 F.2d 1409 (6th Cir. 1991) ........................................................................... 6

*United States v. Joy*,
    192 F.3d 761 (7th Cir. 1999) ............................................................................. 9

**Statutes**

8 U.S.C. S 1182(d)(5) ............................................................................................. 7

**Other Authorities**

FED. R. EVID. 401 ............................................................................................. 9, 10

FED. R. EVID. 602.............................................................................................................................9

FED. R. EVID. 701 ...........................................................................................................................10

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This Court correctly granted extra-record discovery to the parties on both Plaintiff's *ultra vires* claim and APA claims, and it noted that it would rule on the admissibility of the extra-record evidence related to Plaintiffs' *ultra vires* claim at trial. ECF No. 126 at 6–7. But both the Federal Defendants and the Intervenor Defendants (collectively, the "Defendants") filed Motions to Exclude such evidence—specifically, Plaintiffs' exhibits 2–37 and the declarations of Rebecca Waltz, James Terry, Leonardo Lopez, Susan Bricker, and Sheri Gipson. ECF Nos. 213, 214. As part of their motion to exclude, the Defendants relied on the "record rule" and the Federal Rules of Evidence to argue that Plaintiffs' evidence was inadmissible. But the Defendants' reliance is misplaced, and their arguments mistaken. Accordingly, the Court should deny Defendants' Motions to Exclude on the grounds that Plaintiffs' evidence is neither barred by the "record rule" nor the Federal Rules of Evidence.

## ARGUMENT

## I.  The Record Rule Does Not Apply.

The record rule does not govern issues like standing, other jurisdictional issues, or the non-merits factors for injunctive relief. *See Pub. Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982) (Kennedy, J.) ("[E]ven when judicial review is confined to the record of the agency, as in reviewing informal agency actions, there may be circumstances to justify expanding the record or permitting discovery[.]"). Indeed, "in cases where relief is at issue, especially at the preliminary injunction stage," courts may consider extra-record evidence. *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989); *Davis Mountains Trans-Pecos Heritage Ass'n v. FAA*, 116 F. App'x 3, 16 (5th Cir. 2004) (citing *Davis Mountains Trans-Pecos Heritage Ass'n v. U.S. Air Force*, 249 F. Supp. 2d 763, 775–76 (N.D. Tex. 2003) and reversing on other grounds).

The APA thus permits courts to assess "the balance of the equities and the public interest" for injunctive relief using extra-record evidence. *East Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1106–08 (N.D. Cal. 2018), *aff'd*, 950 F.3d 1242 (9th Cir. 2020), *aff'd sub nom. East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021). There would be no other way to do it, because "injunctive relief is generally not raised in the administrative proceedings below and, consequently, there usually will be no administrative record developed on these issues." *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 369 n.7 (D.D.C. 2017) (quotation omitted). "Thus, it will often be necessary for a court to take new evidence to fully evaluate claims of irreparable harm and claims that the issuance of the injunction is in the public interest." *Id.* (quotation omitted).

Federal Defendants maintain that Plaintiffs' "at equity" claim only exists against a "*State* official violating an individual right under the Constitution, and, therefore, is inapplicable in this case." ECF No. 213 at 5–6 (emphasis in original). For support of their proposition, Federal Defendants cite *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969 F.3d 460 (5th Cir. 2020). But the Supreme Court has stated that federal courts "may in some circumstances grant injunctive relief" for "violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) ("What our cases demonstrate is that, 'in a proper case, relief may be given in a court of equity ... to prevent an injurious act by a public officer.'" (citing *Carroll v. Safford*, 44 U.S. 441, 463 (1845))).

"Federal officials, notwithstanding sovereign immunity, may be enjoined under the *Larson* doctrine — the federal counterpart to [*Ex parte*] *Young*." *Leal v. Azar*, 489 F. Supp. 3d 593, 599 (N.D. Tex. 2020) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)),

*vacated as moot*, *Leal v. Becerra*, No. 20-11083, 2021 WL 5021034 (5th Cir. June 3, 2021).

"Under the *Larson* doctrine, there are two types of suits that can proceed against federal officers in their official capacities: (1) suits alleging a federal official acted *ultra vires* of statutorily delegated authority; and (2) suits alleging 'the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional.'" *Id.* at 599 (quoting *Larson*, 337 U.S. at 689–90).

As Defendants are exceeding the limitations of the parole authority granted by Congress, harming the States, the use of the CHNV Parole Program is *ultra vires* and subject to equitable relief outside the APA.

To the extent Federal Defendants assert their entitlement to sovereign immunity, this Court was correct that "courts have held that *ultra vires* 'acts of an agent of the sovereign are not those of the sovereign,' and '[t]hus, a suit is not violative of the doctrine of sovereign immunity if … the officer's powers are limited by statute and he acts in excess of that authority[.]'" ECF No. 126 at 6–7 (citing *Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976)). Because claims outside the APA context are not bound by the record rule, Plaintiffs' exhibits should not be excluded on this basis.

## II. Even if the Record Rule Applies, Plaintiffs' Evidence Falls Within Exceptions to that Rule.

While the Federal Defendants assert that the record rule precludes Plaintiffs' exhibits 2–3 and 8–37 from evidence because they "postdate DHS's decision to promulgate the CHNV Process" and thus cannot "show whether DHS failed to consider some factor in its decision-making," ECF No. 213 at 4, the record rule "is not without exceptions." *Euzebio v. McDonough*, 989 F.3d 1305, 1322 (Fed. Cir. 2021).

These exceptions apply in light of "[t]he record rule's purpose": "to guard against courts using new evidence to convert the arbitrary and capricious standard into effectively *de novo* review—not to preclude effective judicial review entirely." *Id.* (cleaned up). Thus, "in certain circumstances a court may permit supplementation of the record or the introduction of extra-record evidence to enable effective judicial review." *Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers*, No. 3:13-cv-126, 2015 WL 1883522, at *1 (S.D. Tex. Apr. 20, 2015) (Costa, J.).

Specifically, the Fifth Circuit has identified three circumstances in which consideration of extra-record evidence is appropriate:

(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision;

(2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors; or

(3) the agency failed to explain administrative action so as to frustrate judicial review.

*Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (alteration omitted). Courts have also recognized a more detailed list of "eight exceptions":

(1) when agency action is not adequately explained in the record before the court;

(2) when the agency failed to consider factors which are relevant to its final decision;

(3) when an agency considered evidence which it failed to include in the record;

(4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;

(5) in cases where evidence arising after the agency action shows whether the decision was correct or not;

(6) in cases where agencies are sued for a failure to take action;

4

(7)  in cases arising under NEPA; and

(8)  in cases where relief is at issue, especially at the preliminary injunction stage.

*Gulf Coast*, 2015 WL 1883522, at *2 (footnote omitted); *accord Nat'l Fed'n of Indep. Bus.*, 2016 WL 3766121, at *23.

Most important here, courts allow extra-record evidence when it is necessary to determine whether the agency "considered all the relevant factors." *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C. Cir. 1981). "[A]n adequate record can sometimes only be determined 'by looking outside the [administrative record] to see what the agency may have ignored.'" *Davis Mountains Trans-Pecos Heritage Ass'n v. U..S. Air Force*, 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003) (quoting *Cty. of Suffolk v. Sec'y of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977)); *see also Davis Mountains*, 116 F. App'x at 15–16 (finding district court abused its discretion by excluding extra-record evidence "necessary to determine" whether agency "took a hard look" at a factor). "[I]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980).

Consideration of extra-record evidence is also permitted "when supplementing the record is necessary to explain technical terms or complex subject matter." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quotations omitted). Thus, courts may supplement the administrative record with "affidavits, depositions, or other proof of an explanatory nature" if necessary to "explain the record and [] determine the adequacy of the procedures followed and the facts considered" by the agency. *Arkla Expl. Co. v. Tex. Oil & Gas Corp.*, 734 F.2d 347, 357 (8th

Cir. 1984); *see also, e.g., Sierra Club v. Marsh*, 976 F.2d 763, 772 (1st Cir. 1992); *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1428 (6th Cir. 1991).

In other words, such evidence is admissible "to educate the court and to illuminate the administrative record, not to substitute the court's judgment for the [agency's]." *Arkla Expl. Co.*, 734 F.2d at 357; *see San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). Such extra-record evidence is particularly appropriate in cases not involving formal adjudications or rulemakings—such as here—where Plaintiffs lacked an "opportunity to submit such evidence" into the administrative record. *Oceana, Inc. v. Pritzker*, 126 F. Supp. 3d 110, 113–14 (D.D.C. 2015).

In the instant case, Federal Defendants assert that because some of Plaintiffs' exhibits "postdate DHS's decision to promulgate the CHNV Processes," they cannot explain the agency action to create the CHNV Parole Program, and are thus barred by the Record Rule. ECF No. 213 at 4. But Plaintiffs' exhibits are relevant documents that postdate the program's inception in order to give this Court insight into the implementation of the CHNV Parole Program and its effects. Put simply, Plaintiffs' listed exhibits are necessary "to educate the court and to illuminate the administrative record, not to substitute the court's judgment for the [agency's]." *Arkla Expl. Co.*, 734 F.2d at 357.

Plaintiffs' exhibits are also relevant "to enable effective judicial review ... when agency action is not adequately explained in the record before the court and [because this] case is so complex that a court needs more evidence to enable it to understand the issues clearly." *Gulf Coast*, 2015 WL 1883522, at *2. For example, one of the reason Defendants' implementation of the CHNV program is unlawful is because it exceeds the Defendants' statutory parole authority under

8 U.S.C. S 1182(d)(5). Thus, the Court can consider extra-record evidence concerning Defendants' implementation of the CHNV program, especially when this use of extra-record evidence in APA cases is not unprecedented in immigration cases. Indeed, courts reviewing the lawfulness of both DAPA and DACA have considered evidence outside the administrative record. *See Texas v. United States*, 86 F. Supp. 3d 591, 666–670 (S.D. Tex. 2015) (considering evidence of the exercise of discretion to evaluate whether DAPA violated the APA); *Texas v. United States (DAPA)*, 809 F.3d 134, 171–76 (5th Cir. 2015) (same); *Texas v. United States*, 328 F. Supp. 3d 662, 732–34 (S.D. Tex. 2018) (considering evidence of the exercise of discretion to evaluate whether DACA violated the APA).

This Court has also previously allowed extra-record evidence to support a notice-and-comment claim:

> The Court recognizes that this is extra-record evidence. The Government contends that extra-record evidence cannot be considered for the States' APA merits claims, including their notice and comment claim. But the Court concludes that consideration of extra-record evidence for the States' notice and comment claim is proper. First, the Fifth Circuit's tests for determining whether an agency rule is covered by the APA's exceptions to the notice and comment requirements make evaluation of the rule's *effects* necessary. *See Texas DAPA*, 809 F. 3d at 171 (explaining that whether a rule is a general statement of policy turns on whether it "has binding effect"); *id.* at 176 (whether a rule is procedural turns on whether it has a "substantial impact"). Thus, the rule against extra-record evidence cannot apply. Alternatively, the third *Medina* exception allows for consideration of extra-record evidence when "the agency failed to explain administrative action so as to frustrate judicial review." *Medina Cnty.*, 602 F.3d at 706. Because consideration of the effects of the Final Memorandum is necessary to determine whether the Final Memorandum is a general statement of policy or a procedural rule, *see Texas DAPA*, 809 F.3d at 171–76, excluding that evidence would "frustrate judicial review"; thus, it is admissible under the third *Medina* exception. *See Medina Cnty.*, 602 F.3d at 706.

*Texas*, 606 F. Supp. 3d at 493 n.66.

This Court explained that extra-record evidence of how the challenged program was

implemented or enforced was proper in considering whether it was an exempt policy statement because of the need to determine if the program (1) imposed any rights or obligations, or (2) genuinely left the agency and its decisionmakers free to exercise discretion. *Id*. at 493–94.

Also, the Fifth Circuit considers the issue of whether there is final agency action to be a jurisdictional question. *See Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) ("if there is no final agency action, a federal court lacks subject matter jurisdiction"). This analysis of agency finality includes whether the action is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). This analysis is similar to that of whether the agency action is subject to notice-and-comment rulemaking or is instead an exempted policy statement. *Texas*, 606 F. Supp. at 493. For the same reasons as to the notice-and-comment claim, the other APA claims all require an analysis of whether there is final agency action. Questions of how the CHNV Parole Program is being implemented are relevant to whether the Program imposes any rights or obligations or actually allows agency decisionmakers discretion.

## III.   Plaintiffs' Declarations are Admissible.

The Federal Defendants move this Court to exclude the declarations from Rebecca Waltz and James Terry on the ground that the declarations do not meet the basic standard of relevance. ECF No. 213 at 9–12. Similarly, Intervenor-Defendants move to exclude the declarations of Rebecca Waltz, James Terry, Leonardo Lopez, Susan Bricker, and Sheri Gipson on the grounds that such declarations are irrelevant, based on a lack of personal knowledge, and not a proper lay opinion. *See* ECF No. 214 at 2–16.

Generally, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining

the action." FED. R. EVID. 401. "The Rule's basic standard of relevance thus is a liberal one." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993). Plaintiffs' evidence "need not conclusively decide the ultimate issue in a case, nor make the proposition appear more probable, but it must in some degree advance the inquiry." *Thompson v. City of Chi.*, 472 F.3d 444, 453 (7th Cir. 2006) (internal quotes omitted.). Also, in bench trials, "[s]trict evidentiary rules of admissibility are generally relaxed … as appellate courts assume that trial judges rely upon properly admitted and relevant evidence." *Null v. Wainwright*, 508 F.2d 340, 344 (5th Cir. 1975) (citing *Community Action Group v. City of Columbus*, 473 F.2d 966 (5th Cir. 1973)).

In addition to relevance, "[a] witness may testify to a matter only if evidence is introduced … that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." FED. R. EVID. 602. "Personal knowledge includes opinions and inferences grounded in observations and experience." *U.S. v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) (citing *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999)). A lay witness may offer her opinion if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Importantly, "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." FED. R. EVID. 701 advisory committee's note to 2000 amendment; *see, e.g., Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business).

Here, the challenged declarations are relevant to this trial, are based on personal knowledge, and are in the form of proper lay opinion testimony. Hence, this Court should deny the Defendants' motions to exclude.

### A. Rebecca Waltz

For starters, *contra* the Defendants' assertions, Rebecca Waltz's declarations are relevant because they have a strong tendency to make Plaintiffs' standing more or less probable. *See* FED. R. EVID. 401. Specifically, based on her experience as the Budget Director of the Texas Department of Criminal Justice, Ms. Waltz testifies through her declaration regarding the costs Texas absorbs for housing inmates and how the increase in aliens within the department would necessarily increase the costs to the State. *See* Pls. Ex. 5. She also testifies that Texas incurs costs whether they house inmates or supervise parolees, and she provides the calculations used in determining those costs. *Id*.

Federal Defendants maintain that the data discussed by Ms. Waltz is irrelevant because it is not specific to beneficiaries of the CHNV Parole Program. ECF No. 213 at 9–11. So do the Intervenor Defendants. ECF No. 214 at 4–6. But Texas need not show that any actual CHNV beneficiaries partake of any of these benefits to show standing. As the Fifth Circuit explained:

> The Government says that's not enough because Texas has not shown it has already issued any licenses to immigrants who became eligible [due to being paroled] because of MPP's termination. Tellingly, however, it offers no hint as to how Texas could make that showing—nor why we should require it to do so. Imagine Texas had produced copies of driver's license applications from paroled aliens. Would that have counted as evidence that Texas had, in the Government's words, "issued a single additional driver's license as a result" of MPP's termination? Of course not: There would always remain some possibility that *any given parolee* would have been paroled even under MPP. MPP is precisely the sort of large-scale policy that's amenable to challenge using large-scale statistics and figures, rather than highly specific individualized documents. And Texas's standing is robustly supported by just such big-picture evidence. There is nothing "conjectural" or "hypothetical" about that.

*Texas v. Biden (MPP)*, 20 F.4th 928, 971 (5th Cir. 2021) .

Both sets of Defendants make a similar point: that the data is irrelevant because they concern illegal aliens, but the beneficiaries of the CHNV Parole Program are paroled and thus not in the country illegally. ECF Nos. 213 at 10 n.3; 214 at 4–5. But data of costs from illegal aliens is relevant here because courts "assume, for purposes of the standing analysis, that Texas is correct on the merits of its claim[s]." *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019). And this declaration—as with all the others submitted by Texas—is for the purpose of establishing the State's standing. If the CHNV Parole Program is unlawful, then aliens paroled under its auspices have no basis to be considered lawfully present in the United States and would be removable as any other illegal alien. *See DACA*, 50 F.4th at 520 ("Those presently subject to DACA would be removable if the DACA program were ended" by judicial relief, despite having received deferred action status that grants lawful presence); *id*. at 508 (referring to DACA recipients as "illegal aliens" despite having "documented" deferred action status). The information in this and the other declarations relating to illegal aliens is therefore relevant to Texas's standing to challenge the CHNV Parole Program.

Further, Plaintiffs may establish injury in fact for standing purposes by producing evidence illustrating an impending threatened injury, which necessarily includes statistical evidence that "predates" the implementation of the program which is alleged to have caused the complained of injury. Texas' injury is imminent and occurring because Texas currently houses inmates and supervises their release on parole and intends to continue doing so in the future. *Texas v. United States*, 524 F. Supp. 3d 598, 619 (S.D. Tex. 2021) ("[A]lleged injuries to its detention and education costs are sufficiently concrete and actual or imminent" in challenge to 100-day pause in

removals[.]").

Separately, Intervenor-Defendants argue that Ms. Waltz's declaration should be excluded because she lacks personal knowledge, and her testimony is improper lay witness testimony. ECF No. 214 at 10–11. That is wrong. Here, Ms. Waltz's testifies in her declaration that she is TDCJ's Budget Director, and prior to her current role, she served as either a Deputy Budget Director or Budget Analyst for TDCJ since 2004, meaning that she is deeply and personally familiar with individualized costs of an inmate on Texas. Pls. Ex. 5 ¶¶1–3. Hence, her testimony is still relevant because it relates to the standing inquiry and is based on her knowledge and participation in the day-to-day affairs in her role as TDCJ's Budget Director. Accordingly, Plaintiffs' have met the low threshold in establishing the relevance of Ms. Waltz's testimony and the personal knowledge component, and the declaration should not be excluded.

### B. James Terry and Leonardo Lopez

Defendants offer the same objections to the declarations of James Terry and Leonardo Lopez, namely that the date offered is irrelevant because it predates the implementation of the CHNV program and involves evidence of Unaccompanied Alien Children (UAC) who are not eligible for the CHNV Parole Program. Thus, the evidence is not connected specifically to the CHNV Parole Program beneficiaries. ECF Nos. 213 at 11–12; 214 at 8–9. But as explained above, there is no such requirement for such a specific connection. *See MPP*, 20 F.4th at 971.

The evidence relating to UACs is referenced only because it is the data the federal government makes available to the public on illegal alien children in each State. Pls. Ex. 6 ¶4. The general costs of educating children in Texas—and the background legal eligibility of all school-age beneficiaries of the CHNV Parole Program to attend public schools in the State—is the purpose of

this testimony.

Even where UACs are not eligible for a program, court have accepted this evidence to show Texas' injuries in education costs. For example, UASCs were not eligible for the MPP program. *See Texas v. Biden*, 554 F. Supp. 3d 818, 832 (N.D. Tex. 2021) ("Certain categories of noncitizens were not amenable to MPP [including] unaccompanied alien children …").  But these declarations were accepted to that find school-age aliens *who were paroled* necessarily increased Texas's education costs. *Id.* at 638.

This Court has previously dealt with the same issue—with the nearly identical declarations for education costs—in *Texas v. United States*, 549 F. Supp. 3d 572, 593–94 (S.D. Tex. 2021) (Hanen, J.), *aff'd in part, vacated in part, remanded,* 50 F.4th 498 (5th Cir. 2022) (holding that Texas has standing to challenge DACA.). The Fifth Circuit subsequently affirmed the district court's holding that Texas sufficiently alleged an injury in fact and "demonstrated standing" in part because of the declaration setting out annual education costs per child and cost of bilingual education. *Texas v. United States (DACA)*, 50 F.4th 498, 518–19 (5th Cir. 2022) ("[Texas] identifies expenditures in providing emergency medical services, social services and public education for illegal aliens.").

Similar to the declaration which established Texas' standing in the DACA suit, Mr. Terry's declaration here sets out the annual education costs per child and cost of bilingual education. Pls. Ex. 6 ¶3.  In light of this Court's precedent, therefore, Defendants' assertion here that Mr. Terry's declaration is irrelevant is unpersuasive. *See DACA*, 549 F. Supp. 3d at 593–94 (Texas established injury in fact through a declaration which was "speaking in terms of unaccompanied children *but* setting out annual education costs per child and cost of bilingual

education" to aliens in general). And for the same reasons stated above, Defendants' argument that the declaration is irrelevant because it "predates the implementation of the CHNV" program is insufficient a basis to exclude Plaintiffs' exhibit because the exhibit is evidence sufficiently concrete to establish an impending threatened injury.

As with every other declaration, Intervenor Defendants argue the exclusion of Mr. Terry's declaration on the basis that he lacks personal knowledge and offers improper lay witness testimony. ECF No. 214 at 10–11. Mr. Terry testifies that he has over 30 years of experience at the school district level and is currently employed as the Associate Commissioner for School Finance/Chief School Finance Officer at the Texas Education Agency. Pls. Ex. 6 ¶1. In his role, Mr. Terry oversees TEA's school finance operations and analyzes processing of financial data. Id. ¶2. It can hardly be stated that the Chief School Finance Officer does not have personal knowledge related to the annual education costs per child and the cost of bilingual education in the State. Mr. Terry's testimony is thus proper because it is based on his knowledge and participation in the day-to-day affairs in his role as Associate Commissioner for School Finance/Chief School Finance Officer for the Texas Education Agency.

### C.  Susan Bricker and Sheri Gipson

Intervenor-Defendants repeat the same arguments against the declarations of Susan Bricker and Sheri Gipson as against the other declarations: relevance, personal knowledge, and the appropriateness of their respective lay opinions. ECF No. 214 at 15–20. As above, this Court has dealt with the same issue regarding medical services. The Fifth Circuit has already held that Texas suffered an actual injury sufficient to establish standing when it was shown that a large scale immigration policy—such as the CHNV program—would increase the number of aliens applying

for driver's licenses, and healthcare benefits, evaluating the same evidence in the declarations here. *MPP*, 20 F.4th at 970 ("[T]he district court found, without a hint of clear error, that *each granted license (and each reviewed application for a license, even if not granted) costs Texas money*. It follows that Texas has been actually injured—or at the least, that it faces imminent injury without the district court's injunction. *Likewise with healthcare costs[.]*") (emphasis added) (internal quotations and citations omitted).

Here, the declarations from Susan Bricker and Sheri Gipson are highly relevant to establish that Texas suffered actual injuries. For example, as the Manager of the Health Program Outcomes and Epidemiology Team within the Office of Data, Analytics and Performance at the Texas Health and Human Services Commission ("HHSC"), Susan Bricker testifies regarding various programs in which Texas is involved and how the costs bore by Texas would increase if additional aliens are admitted under the CHNV program. Pls. Ex. 7. Moreover, Sheri Gipson, the Chief of the Texas Department of Public Safety's Driver License Division, testifies about the costs suffered by Texas for the reviewing and granting of driver's licenses. Pls. Ex. 4. Ms. Gipson's testimony is relevant as aliens with parole status are eligible to receive subsidized licenses from Texas, Pls. Ex. 4 ¶5, and "[b]ecause driving is a practical necessity in most of the state, there's little doubt many newly paroled aliens have applied—and without the district court's injunction, will apply in the future— for Texas driver's licenses." *MPP*, 20 F.4th at 970–71 (citing *DAPA*, 809 F.3d at 156).

Intervenor Defendants also repeat their same arguments related to personal knowledge and lay witness testimony against Ms. Bricker and Ms. Gipson. ECF No. 214 15–20. It can hardly be maintained that Ms. Bricker—Manager of the Office of Data Analytics and Performance within HHSC—lacks personal knowledge regarding costs of health care provided by Texas. The same can

be said for Ms. Gipson—who is employed to oversee the DPS's driver's license division; indeed, any suggestion that Ms. Gipson lacks personal knowledge regarding the costs associated with reviewing and granting driver licenses is untenable. Finally, as above, Ms. Bricker and Ms. Gipson's lay witness testimony is admissible because it is based on their knowledge and participation in the day-to-day affairs of the Departments that employs them.

Therefore, Plaintiffs have overcome the low threshold of relevance and additional threshold for personal knowledge and proper lay opinion. Accordingly, this Court should deny Intervenor Defendants' motion to exclude Ms. Bricker and Ms. Gipson's declarations.

CONCLUSION

Plaintiffs respectfully request that the Court deny Federal Defendants' and Intervenor Defendants' Motions to Exclude Evidence.

Dated: August 18, 2023

Respectfully submitted,

ANGELA COLMENERO
Provisional Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Deputy Chief, Special Litigation Division
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

LUIS A. SUAREZ
Assistant Attorney General
Texas Bar No. 24117110
Southern District of Texas No. 3697939
luis.suarez@oag.texas.gov

GENE P. HAMILTON
JAMES K. ROGERS
America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
james.rogers@aflegal.org

*Counsel for the State of Texas*

Steve Marshall
Alabama Attorney General
Edmund G. LaCour Jr.
Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*

Tim Griffin
Arkansas Attorney General
Nicholas J. Bronni
Arkansas Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Nicholas.Bronni@arkansasag.gov

*Counsel for the State of Arkansas*

Raúl R. Labrador
Attorney General of Idaho
Lincoln Davis Wilson, ISB No. 11860
Office of the Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
lincoln.wilson@ag.idaho.gov

*Counsel for the State of Idaho*

Treg Taylor
Attorney General of Alaska
Cori M. Mills
Deputy Attorney General
Christopher A. Robison
Alaska Bar No. 2111126
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Counsel for the State of Alaska*

Ashley Moody
Attorney General of Florida
James H. Percival (FBN 1016188)
Deputy Attorney General of Legal Policy
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

Brenna Bird
Attorney General of Iowa
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel: (515) 823-9117
Fax: (515) 281-4209
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

Kris Kobach
Attorney General of Kansas
Jesse A. Burris, Kan. Sup. Ct. #26856
Assistant Attorney General
Office of Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for the State of Kansas*

Jeff Landry
Attorney General of Louisiana
Elizabeth B. Murrill (La #20685)
Solicitor General
Joseph Scott St. John (La #36682)
Deputy Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for the State of Louisiana*

Andrew Bailey
Attorney General of Missouri
Joshua M. Divine, Mo. Bar #69875
Solicitor General
Maria Lanahan, Mo. Bar #65956
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*

Daniel Cameron
Attorney General of Kentucky
Marc Manley
Associate Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for the Commonwealth of Kentucky*

Lynn Fitch
Attorney General of Mississippi
Justin L. Matheny
Deputy Solicitor General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for the State of Mississippi*

Austin Knudsen
Attorney General of Montana
Christian B. Corrigan
Solicitor General
Peter M. Torstensen, Jr.
Assistant Solicitor General
Office of the Attorney General
215 N Sanders
Helena, Montana 59601
Tel: (406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for the State of Montana*

19

Michael T. Hilgers
Attorney General of Nebraska
Eric J. Hamilton
Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for the State of Nebraska*

Dave Yost
Ohio Attorney General
Mathura Jaya Sridharan
Ohio Deputy Solicitor General
Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
mathura.sridharan@OhioAGO.gov

*Counsel for the State of Ohio*

Gentner F. Drummond
Attorney General of Oklahoma
Garry M. Gaskins, II
Solicitor General
Zach West
Director of Special Litigation
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov

*Counsel for the State of Oklahoma*

Alan Wilson
Attorney General of South Carolina
Thomas T. Hydrick
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

Jonathan Skrmetti
Tennessee Attorney General
and Reporter
Clark L. Hildabrand
Senior Counsel
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-5642
Clark.Hildabrand@ag.tn.gov

*Counsel for the State of Tennessee*

Sean D. Reyes
Utah Attorney General
Melissa Holyoak
Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
Tel: (801) 538-9600
melissaholyoak@agutah.gov

*Counsel for the State of Utah*

Patrick Morrisey
Attorney General of West Virginia
Lindsay See
Solicitor General
Michael R. Williams
Senior Deputy Solicitor General
Office of the West Virginia
Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
Tel: (681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for the State of West Virginia*

Bridget Hill
Wyoming Attorney General
Ryan Schelhaas
Chief Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for the State of Wyoming*

## CERTIFICATE OF COMPLIANCE

I certify that the total of words in this motion, exclusive of the matters designated for omission, is 4,898, as counted by Microsoft Word.

*/s/Ryan D. Walters*
RYAN D. WALTERS

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 18, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS