# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | § |
| | § |
| *Plaintiffs*, | § |
| | § |
| vs. | § CIVIL ACTION NO. |
| | § 6:23-CV-00007 |
| UNITED STATES DEPARTMENT OF | § |
| HOMELAND SECURITY, *et al.*, | § |
| | § |
| *Defendants,* and | § JUDGE DREW B. TIPTON |
| | § |
| VALERIE LAVEUS, *et al.*, | § |
| *Intervenor Defendants.* | § |
| | § |

**INTERVENOR DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)**

### I. The Court Must Consider All Record Evidence When Assessing Texas's Standing.

Texas errs in asserting that "facts cited" from the record cannot "retroactively defeat standing." Plaintiffs' Opposition to Intervenor Defendants' Motion to Dismiss, ECF 253 at 18. That is not the rule for *factual* standing challenges like this one. In such cases, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[A]t the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial." *Id.* (cleaned up).

Texas cites *Paterson v. Weinberger*, claiming it need only plead facts to establish standing, but *Paterson* was "only a 'facial attack.'" 644 F.2d 521, 523 (5th Cir. 1981). Texas also cites *Ramming v. United States*, but it holds "[i]n examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." 281 F.3d 158, 161 (5th Cir. 2001). Indeed, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). That is all Intervenor Defendants seek here.

Thus, no authority permits this Court to do what Texas requests—to ignore *evidence already in the record* on standing. Unless Texas can show *based on all record evidence* that it has suffered cognizable injury from the CHNV Pathways, this Court

must dismiss for lack of standing. Texas has not come close to making that showing. *See* ECF 253.

## II. Texas Lacks Standing Under *United States v. Texas.*

Texas fails to distinguish the immigration case it just lost on standing at the Supreme Court, *United States v. Texas,* 143 S. Ct. 1964 (2023) (hereinafter *Texas*).

### A. No "Precedent, History, or Tradition" Supports Texas's Indirect Injury Claim.

Like *Texas*, this case concerns a federal immigration policy grounded in a statute that permits the Executive to exercise discretion—to allow exceptions to the grounds of inadmissibility through parole. *See* ECF 197 at 9-10 (citing 8 U.S.C. 1182(d)(5)); *Texas*, 143 S. Ct. at 1970. And, like *Texas*, the program here is part of a long line of similar programs that stretches back decades. *See* ECF 175 at 12-15; ECF 175-76. Texas cites "no precedent, history, or tradition of federal courts entertaining lawsuits" challenging any previous parole program, whether before or after the 1996 amendments. *Texas,* 143 S. Ct. at 1966.

In addition, as in *Texas*, this policy involves no exercise of coercive authority over Texas. Indeed, the harms Texas asserts are only "indirect," and therefore "more attenuated." *Id.* at 1971-72 n.3. Texas contends its harm is direct under *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023). But there Missouri suffered direct injury because the challenged program discharged loans held by the state, *directly* costing it tens of millions of dollars in fees it would not collect. *Id.* at 2365-66. Here, the government has not discharged any asset held by Texas. Its injuries remain "indirect," and it must show "much more" to establish standing. *Texas*, 143 S. Ct. at

3

1972. Moreover, *Nebraska* does not concern the Executive's exercise of discretion in the immigration context, which presents unique redressability considerations. *Id.* at 1971-72 (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490-491 (1999)).

### B. Texas's New "Abdication" Theory Does Not Establish Standing.

Texas now raises a completely new theory of standing, arguing the CHNV Pathways constitute "abdication" of the statutory requirement that parole be granted on a "case by case" basis, and that the Supreme Court "explicitly approved this basis for standing" in *Texas*. ECF 253 at 15. This argument is utterly meritless.

*First*, neither *Texas* nor *Heckler v. Chaney*, 470 U.S. 821 (1985), held that a state could show standing on an "abdication" theory. *Texas*, 143 S. Ct. at 1973 (citing *Heckler*, 470 U.S. at 833 n.4). Rather, both cases merely hypothesized that an "extreme case of non-enforcement" "might change" their analysis. *Texas*, 143 S. Ct. at 1973. Thus, to win this entirely novel argument, Texas has to explain how the Pathways are "so extreme so as to amount to an abdication," of the case-by-case requirement. ECF 253 at 13. It utterly fails that demanding test.

Most obviously, Texas never disputes the CHNV Pathways operate on a model the agency has used for decades—including since the 1996 amendments—without Congressional disapproval. ECF 175 at 12-15; 175-76. Texas acknowledges the Pathways were "modeled off recent programs" created for Ukraine, ECF 20 ¶ 43, but never explains how this Court could find a widely utilized model to constitute "extreme" abdication. That its theory would require the invalidation of various other

programs Texas never challenged shows the Pathways are not "extreme" non-enforcement.

*Second*, Texas cites no authority that programmatic parole is "extreme" abdication. The Fifth Circuit's decision in the MPP litigation states that "en masse" parole grants would violate the statute, ECF 253 at 14, but Texas never explains how the CHNV Pathways constitute "en masse" parole given that the government individually considers requests under the program. And the MPP ruling was *reversed by the Supreme Court. Compare* ECF 253 at iv (citing "*Texas v. Biden (MPP)*, 20 F.4th 928 (5th Cir. 2021)" *passim* throughout its brief) *with Biden v. Texas*, 142 S. Ct. 2528, 2548 (2022) ("We therefore reverse the judgment of the Court of Appeals").[1]

Texas also claims that programs that grant parole to some unspecified number of people constitute extreme abdication of the case-by-case requirement, but again its authorities are inapposite. Judge Kacsmaryk's decision on remand in the MPP case states that high numbers of parole grants provide "a strong inference" that decisions are not case-by-case, ECF 253 at 14, not that such programs constitute "extreme" abdication of the case-by-case requirement. And its analysis rests on the *dissent* in the MPP decision. *See Texas v. Biden*, No. 2:21-cv-067-Z, 2022 WL 17718634, at *12 (N.D. Tex. Dec. 15, 2022) (quoting *Biden v. Texas,* 142 S. Ct. 2528, 2554 (Alito, J., dissenting)). Texas also cites Judge Hanen's DAPA rulings, but DAPA did not concern parole authority. And even there, Judge Hanen acknowledged "the concept of state standing by virtue of federal abdication is not well-established." *Texas v. United*

---

[1] Texas inexplicably fails to acknowledge the Supreme Court reversal in its brief.

*States*, 86 F. Supp. 3d 591, 640 (S.D. Tex.), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015).

Thus, Texas fails to establish the CHNV Pathways constitute extreme abdication. That baseless last-minute assertion cannot establish its standing.

### C. The CHNV Pathways Are Not a "Benefits" Program Sufficient to Establish Standing.

Texas next relies on *Texas*'s statement that programs involving "both … prosecution priorities *and* … legal benefits" could be distinguishable. ECF 253 at 15 (citing *Texas*, at 1974). But, again, the Court did not hold Texas had standing to challenge such programs, but only that they "*could* lead to a different standing analysis." *Texas*, at 1974 (emphasis added).

Whether or not that argument could establish standing for DACA, it does not here. *First*, it remains undisputed that parole under the CHNV Pathways rests on longstanding statutory authority that the Executive Branch has repeatedly exercised through materially indistinguishable programs. ECF 175 at 12-15; ECF 175-76.

*Second*, the employment authorization for which Pathways parolees are eligible undermines Texas's injury claims. Employment creates revenue for the state through taxes. Texas cannot assert injury from parolees receiving employment authorization while simultaneously asserting injury from spending money on social and welfare services. *See* ECF 253 at 16.

*Third*, Texas asserts injury from beneficiaries' alleged future reliance on SNAP and TANF benefits. Texas did not assert this injury in its complaint, ECF 20, or Preliminary Injunction, ECF 22. Because Defendants could not take discovery into

these allegations, the Court should not permit Texas to rely on them now. That Texas asserts this new injury on the eve of trial constitutes another reason to dismiss and allow Texas to refile with new allegations.

In any event, any potential future SNAP and TANF benefits costs do not flow from the CHNV Pathways. As Texas acknowledges, parolees would not be eligible for such benefits for *five years after receiving parole*, ECF 253 at 16, which would be *three years after their parole expires*. Such potential future injury is far too speculative for standing. *Clapper*, 568 U.S. 398, 410 (2013).

### III. Texas's Failure to Establish Harm from the CHNV Pathways Defeats Standing.

Although the CHNV Pathways program has operated for more than eight months—with thousands of beneficiaries now here—Texas has *no evidence* it has suffered harm from any of them. It argues instead that standing doctrine does not require it to show such harm, but its arguments are meritless.

Texas first relies on the MPP decision reversed by the Supreme Court. ECF 253 at 18-19. But, as previously discussed, that case is not good law, and its analysis of the record there has no bearing on this case.

Texas next asserts it can rely on evidence about undocumented immigration because, on the merits, it contends that CHNV Pathways are unlawful. *Id*. at 19. But CHNV Pathways parolees have very different experiences in this country because they enter with authorization, are supported by vetted financial sponsors, undergo thorough background checks, and receive official work authorization. *See* ECF 175-3.

7

That Texas believes their admission unlawful does not erase these dramatic differences.

Texas cites *Texas v. United States (DACA)*, to argue that undocumented immigrants are proxies for CHNV Pathways parolees, but the comparison fails. ECF 253 at 19-20 (citing *DACA,* 50 F.4th 498, 520 (5th Cir. 2022)). Without DACA, DACA recipients would be in the United States and undocumented. *Id.* In contrast, without the CHNV Pathways, recipients may not be in the United States at all. Indeed, if Texas's theory were correct, it would prove only that *termination* of the CHNV Pathways would cause harm.

Texas separately relies on the costs of driver's licenses, ECF 253 at 19 n.6, but that argument is also flawed. The record shows the overall number of people from Cuba, Haiti, Nicaragua, and Venezuela—including those released after processing at or between ports of entry, and those who enter through the CHNV Pathways—has *decreased* since the program's implementation. ECF 176-1 ¶ 31 n.16. Because Texas cannot show the Pathways "increase" migration from Cuba, Haiti, Nicaragua, and Venezuela, it cannot show greater costs from driver's licenses.

Finally, Texas's reliance on *DAPA* to argue that offsetting revenues are irrelevant fails because here, as the record shows, ECF 175-75 ¶ 25, such revenues *do* "arise from the same transaction as the costs," *Texas v. United States (DAPA)* 809 F.3d 134, 155-56 (5th Cir. 2015). For example, Texas failed to count fees individuals pay for driver's licenses. ECF 175-75 ¶ 25. That is obviously part of the "same [driver's license] transaction." *DAPA,* 809 F.3d at 155.

Thus, Texas has not made the heightened showing required given the attenuated injury it asserts.

### IV. Texas Has Not Explained Why Nominal Plaintiffs Should Not Be Dismissed.

Texas fundamentally misunderstands the one-plaintiff standing rule. While courts *may* permit all plaintiffs to proceed where only one establishes standing, "courts retain discretion" to "dismiss those plaintiffs that lack standing." *Thiebaut v. Colo. Springs Utils.*, 455 F. App'x 795, 802 (10th Cir. 2011).

Texas asserts the relief in this case will be "identical" whether the other States remain or not, ECF 253 at 23, but leaving them as Plaintiffs will afford them separate appellate and enforcement rights. They cite no case where a party that declined to participate in the litigation nonetheless was afforded that opportunity. Thus, judicial economy and fundamental fairness require dismissing the other states. ECF 197 at 15-18.

### CONCLUSION

Thus, the Court should grant Intervenor Defendants' Motion to Dismiss.

Dated: August 21, 2023       Respectfully submitted,

*/s/ Monika Y. Langarica*
**Monika Y. Langarica***
California Bar No. 308518
langarica@law.ucla.edu

**Ahilan T. Arulanantham***
California Bar No. 237841
arulanantham@law.ucla.edu

**Talia Inlender***
California Bar No. 253796

9

inlender@law.ucla.edu

**CENTER FOR IMMIGRATION LAW AND POLICY**
UCLA SCHOOL OF LAW
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

**Esther H. Sung (Attorney-In-Charge)\***
California Bar No. 255962
*Application for Admission pending*
esther.sung@justiceactioncenter.org

**Karen C. Tumlin\***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Jane Bentrott\***
California Bar No. 323562
D.C. Bar No. 1029681
Virginia Bar No. 87903
jane.bentrott@justiceactioncenter.org

**Lauren Michel Wilfong\***
New York Bar No. 5975529
New Jersey Bar No. 378382021
*Not admitted to practice law in California*
lauren.wilfong@justiceactioncenter.org

**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

**Vanessa Rivas-Bernardy\***
California Bar No. 341464
vanessa.rivas@raicestexas.org

**Brandon Galli-Graves\***
Texas Bar No. 24132050
brandon.galli-graves@raicestexas.org

**THE REFUGEE AND IMMIGRANT CENTER FOR**

10

**EDUCATION AND LEGAL SERVICES (RAICES)**
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
Telephone: (210) 960-3206
Facsimile: (210) 634-1279

*admitted pro hac vice

**Kate Kaufmann Shih**
Texas Bar No. 24066065
Federal Bar No. 1214426
kateshih@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: (713) 221-7000
Facsimile: (713)221-7100

## CERTIFICATE OF WORD COUNT

I certify that the word count for this brief, not including the case caption, table of contents, table of authorities, signature block, and certificates, is 1992 words.

/s/ *Monika Y. Langarica*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was served via ECF pursuant to the Federal Rules of Civil Procedure on the 21st day of August 2023, upon all counsel of record in this matter.

/s/ *Monika Y. Langarica*