**United States District Court**
**Southern District of Texas**
**Victoria Division**

STATE OF TEXAS, *et al.*,
*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants*.

Case 6:23-cv-00007

# EXHIBIT 17

PLAINTIFF'S
EXHIBIT

**Muster**

**Date:** January 5, 2023

**Topic:** Updated Processing of Venezuelan Nationals Arriving to the United States with Advance Travel Authorization

**HQ POC/Office:** Admissibility and Passenger Programs

This muster outlines the considerations for processing noncitizens arriving in the United States who have obtained advance authorization to travel to the United States to seek parole under the Department of Homeland Security (DHS) established Venezuela parole process.

- This process implements the use of the DHS Secretary's authority to consider the parole of certain Venezuelan nationals and their qualifying immediate family members[1] into the United States, based on significant public benefit and urgent humanitarian reasons.

- Parole may only be considered on a case-by-case basis, for urgent humanitarian reasons or significant public benefit, and only after appropriate vetting.

- Parole under this process will utilize the "VHP – *Venezuelan Humanitarian Parole*" disposition in Unified Secondary (USEC).

- Noncitizens encountered without travel documents sufficient for entry and who have not received advance authorization to travel under this process will be processed as appropriate, consistent with established policy and procedure, and may not be considered for parole under this process.

    - VHP may not be used for any noncitizen without an approved corresponding travel authorization under this process as verified in CBP systems and a valid passport.
    - VHP may not be used for noncitizens arriving at any location other than an air port of entry (POE).

- Consistent with the National Assembly decree of May 21, 2019, certain expired Venezuelan passports remain valid. A Venezuelan passport:

    - Issued before June 7, 2019 (even if expired before this date), without a passport extension ("prorroga"), is considered valid and unexpired for five years beyond the expiration date printed in the passport.

---

[1] Immediate family members are limited to spouse or common-law partner and unmarried children under the age of 21. Family members must travel with the principal noncitizen to be considered for parole under this process upon arrival in the United States.

Updated Processing of Venezuelan Nationals Arriving to the United States with Advance Travel Authorization
Page 2

- Issued before June 7, 2019 (even if expired before this date), with a "prorroga" issued before June 7, 2019, is considered valid and unexpired for five years beyond the expiration date of the "prorroga".
- Issued before June 7, 2019 (even if expired before this date), with a "prorroga" issued on or after June 7, 2019, is considered valid and unexpired through the expiration date of the "prorroga" or for five years beyond the expiration date printed in the passport, whichever is later.
- Issued on or after June 7, 2019, without a "prorroga" is not considered valid beyond the expiration date printed in the passport.
- Issued on or after June 7, 2019, with a "prorroga" issued on or after June 7, 2019, is considered valid and unexpired through the expiration date of the "prorroga".

- Noncitizens may not have their inspection deferred in order to allow them to obtain advance travel authorization under this process post-arrival in the United States.

- Consistent with current policy, CBP officers (CBPOs) will refer undocumented noncitizens who appear to be inadmissible to the United States for secondary admissibility inspection. Generally, noncitizens arriving under this process are expected to be lacking documents sufficient for admission and therefore must be referred for secondary admissibility inspection.

- Simplified Arrival (SA) does not currently display an approved advance authorization to travel to the United States to seek parole. However, USEC will display an approved travel authorization in the Subject Details and as part of the Subject System Checks in the secondary referral.

- Noncitizens determined to be unaccompanied noncitizen children (UC), consistent with 6 U.S.C. § 279(g)(2), are not eligible for parole under this process.

  - UC may be processed for other available processing dispositions, including but not limited to issuance of a Notice to Appear (NTA).
  - Under no circumstance is a UC to be released from CBP custody to a non-parent or non-legal guardian.
  - Consistent with the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), UC must be turned over to the custody of the U.S. Department of Health and Human Services (HHS).

- Moreover, for all noncitizens arriving as part of a family unit, CBPOs are reminded that the guidance implementing *Ms. L*, including "Interim Guidance on Preliminary Injunction in Ms. L. v. ICE" issued on June 27, 2018, as well as the June 1, 2021, memorandum "Clarifying Guidance on Separation of Family Units Due to 8 U.S.C § 1326 Prosecutions or Related Criminal History" remain in effect.

- Consistent with current practice, POEs should coordinate with the National Targeting Center (NTC) where noncitizens arriving under this process are determined to be possible

For Official Use Only
Law Enforcement Sensitive

23-cv-00007_0029

Updated Processing of Venezuelan Nationals Arriving to the United States with Advance Travel Authorization
Page 3

matches to national security records or who present a public safety risk upon arrival in the United States.

- Those with a final negative vetting from NTC may be paroled, consistent with this guidance, if appropriate.
- Those with positive vetting results may not be paroled pursuant to this guidance. Instead, they must be processed consistent with established policy and procedure.

- CBPOs will determine the appropriate processing disposition for each noncitizen on a case-by-case-basis at the time the noncitizen presents themselves at the POE.

- Where parole for this population is appropriate, CBPOs will initiate a USEC event with the appropriate program specific disposition and complete all necessary case processing, to include recordation of the A-number in the event and the issuance of an electronic I-94.

  - CBPOs should utilize the "A-number Validation" search in USEC to validate if an A-number was previously issued by United States Citizenship and Immigration Services (USCIS). *Note: All individuals arriving under this process are expected to have an existing A-number.*
    - If no A-number was issued, CBPOs must issue an A-number following current processing procedures prior to completion of processing for parole under this process.
  - Parole under this process must include biometric capture (search & enroll) and review of results for all noncitizens age 14-79 considered in scope for biometric collection or for whom collection is otherwise warranted.
  - To be considered for parole under this process, each individual must have their own travel authorization approval.
  - Individuals not independently eligible under this process <u>must be traveling with</u> their principal family member to be considered for parole under this process as a dependent.
  - Noncitizens for whom parole is appropriate under this guidance should generally be paroled for a period of two years.
  - CBPOs are reminded to ensure both the A-number and the passport number are correct prior to issuance of an electronic I-94.
  - CBP will provide a *Parole Information For Certain Nationals of: Cuba, Haiti, Nicaragua, Ukraine, Venezuela* tear sheet to all noncitizens paroled under this process.

Nothing in this guidance supersedes the local exercise of discretionary authority and the ability of the port to make determinations regarding appropriate processing, on a case-by-case basis considering the totality of the circumstances.

For Official Use Only
Law Enforcement Sensitive

23-cv-00007_0030

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants*. | Case 6:23-cv-00007 |

EXHIBIT 19

PLAINTIFF'S
EXHIBIT



U.S. Citizenship
and Immigration
Services

# Uniting for Ukraine/ CHNV Parole Processes Review of Form I-134A

## An Overview

April 2023



# Overview

U.S. Citizenship
and Immigration
Services

1. Parole
2. Form I-134A, Online Request to be a Supporter and Declaration of Financial Support
3. Expected Review



# Parole – Five New Programs

U.S. Citizenship
and Immigration
Services

1. Uniting for Ukraine – U4U
    - Automated and streamlined parole process
    - Bifurcated process between USCIS and CBP
2. Processes for Cubans, Haitians, Nicaraguans, and Venezuelans
    - Modeled after U4U
    - Part of Administration's efforts to address irregular migration
    - Offers safe, orderly, human process to come to the U.S.





# Process Overview

U.S. Citizenship
and Immigration
Services

- U4U & Processes for CHNV provides a streamlined way for nationals of Ukraine, Cuba, Haiti, Nicaragua, and Venezuela and their immediate family members to come to the U.S. temporarily for up to a two-year period of parole.
- U.S.-based supporter must submit Form I-134A on behalf of their beneficiary through a USCIS online account.
- Supporter must submit a separate Form I-134A for each beneficiary including immediate family members and minor children.
- USCIS' role in both programs is to intake and review the Form I-134A and determine whether to confirm or non-confirm a supporter.



# Uniting for Ukraine, as of April 4, 2023

U.S. Citizenship
and Immigration
Services

- 233,747 U4U supporter applications received
- 157,951 travel authorizations have been issued by CBP
- 123,125 arrivals under the U4U process
- 295,992 Ukrainian arrivals since March 24, 2022
  - This includes U4U, immigrants, non-immigrants, refugees, and traditional parole
- 94,391 U4U EAD approvals



# Process for Cubans, as of April 10, 2023

U.S. Citizenship
and Immigration
Services

- 24,111 Process for Cubans applications confirmed
- 21,413 travel authorizations have been issued by CBP
- 17,642 arrivals under the Cuban process
- Top 5 Supporter Locations
  - Florida, Texas, Nevada, Kentucky, and California
- Data is cumulative from January 6, 2023



# Process for Haitians, as of April 10, 2023

U.S. Citizenship
and Immigration
Services

- 36,783 Process for Haitian applications confirmed
- 31,028 travel authorizations have been issued by CBP
- 21,447 arrivals under the Haitian process
- Top 5 Supporter Locations
  - Florida, New York, Massachusetts, New Jersey, and Georgia
- Data is cumulative from January 6, 2023



# Process for Nicaraguans, as of April 10, 2023

U.S. Citizenship and Immigration Services

- 17,860 Process for Nicaraguan applications confirmed
- 14,864 travel authorizations have been issued by CBP
- 8,745 arrivals under the Nicaraguan process
- Top 5 Supporter Locations
  - Florida, California, Texas, Maryland, and New Jersey
- Data is cumulative from January 6, 2023



U.S. Citizenship
and Immigration
Services

# Process for Venezuelans, as of April 10, 2023

- 53,075 Process for Venezuelans applications confirmed
- 45,048 travel authorizations have been issued by CBP
- 34,249 arrivals under the Venezuelan process
- Top 5 Supporter Locations
  - Florida, Texas, Georgia, New York, and Utah
- Data is cumulative from October 18, 2022



# Who Can Be A Supporter?

U.S. Citizenship
and Immigration
Services

**To be a supporter you must:**

- Be in lawful status in the U.S. or a parolee or beneficiary of deferred action or Deferred Enforced Departure;
- Pass background check;
- Show you can support named beneficiary(ies);
- Submit Form I-134A online for each person the supporter is supporting

**Supporters can be:**

- U.S. citizens and nationals
- Permanent, conditional and temporary residents
- Nonimmigrants in lawful status
- Asylees, refugees, and parolees
- Holders of Temporary Protected Status, and
- Beneficiaries of deferred action (including DACA), or Deferred Enforced Departure

23-cv-00007_0050



# Form I-134A

U.S. Citizenship
and Immigration
Services

**Online Request to be a Supporter and Declaration of Financial Support**

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

pe or print in black ink.

**iling**

rm on behalf of: ☐ Myself as the beneficiary. ☐ Another individual who is

rm under one of the following:

**on about the Beneficiary**

dless of whether you are filing this form on behalf of yourself as the beneficiary or on
neficiary.

rent Legal Name (Do not provide a nickname.)

- The Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, is a form used to document that a parolee will have sufficient financial support in the United States for the period of parole
- Although Form I-134 is typically filed along side the Form I-131, Application for Travel Document, but in this process, it will be filed as a stand-alone form.
- In U4U and CHNV cases, the Form I-134A must be completed and signed by a lawfully present individual in the US who agrees to provide financial support to the Ukrainian, Cuban, Haitian, Nicaraguan, or Venezuelan beneficiary listed on the form-based sponsor.



# Form I-134A

U.S. Citizenship
and Immigration
Services

- Individuals agreeing to provide financial support will be completing the Form I-134A electronically so that we can review the documentation in ELIS

- ELIS will collect certain data points to ensure that all the appropriate fields and/or documentation is submitted

- An application will only be considered complete if the fields and/or documentation is complete



U.S. Citizenship
and Immigration
Services

# Form I-134A ~ What is needed?

- Biographical Information of Supporter
  - Name, Aliases, Address, DOB, Place of Birth, SSN, A Number, etc….
- Citizenship or Residency Status of Supporter
  - Any individual in an authorized period of stay may file Form I-134A on behalf of a Ukrainian beneficiary.
- Information about the Beneficiary
  - Name, DOB, Marital Status, Relationship to Supporter, Address, Passport Information
- Supporter's Financial Information
  - Employment, Employer's Address, Income and Asset Information
  - Other Dependents and other Forms I-134A filed on behalf of other beneficiaries



U.S. Citizenship
and Immigration
Services

# Form I-134A
# ~ Citizenship or Residency Status

- Some examples of evidence of lawful status in the United States
  - Birth Certificate
  - Citizenship Certificate
  - Consular Report of Birth abroad to US parents
  - US Passport
  - Permanent Residence Card
  - Alien Registration Receipt Card
  - I-94 Card
  - Employment Authorization Document
  - Form DS-2019, Certificate of Eligibility for Exchange Visitor
  - Form I-20, Certificate of Eligibility for Nonimmigrant Student Status



# Form I-134A ~ What is needed?

U.S. Citizenship
and Immigration
Services

- Supporting Documentation
  - Must show sufficient income or financial resources to support the beneficiary during the period of parole.
  - Some evidence should be submitted to show proof of ability to support. Types of evidence that may be submitted to show this include:
    - Bank statement
    - Letter from employer verifying employment and income
    - Tax returns
    - Documentation of bonds and names of record owners
    - Documentation of personal assets or ability to cover beneficiary's expenses and needs while in the US
    - Documentation or letter of commitment showing that a company, institution, or organization will be providing funding to the sponsor or beneficiary to help support



U.S. Citizenship
and Immigration
Services

# Form I-134A
# ~ What is needed?

- In general, we are checking to see that sufficient funds are available to provide for the beneficiary's basic needs throughout the duration of the parole period – 2 years.

- Although not determinative, it may be helpful to reference the Department of Health and Human Services (HHS) Federal poverty guidelines for the household size in question (including the Beneficiary)

- Look at the HHS Guidelines at:
  - https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines



# Form I-134A ~ What is needed?

U.S. Citizenship
and Immigration
Services

- Multiple individuals or organizations may join together to support one beneficiary.
- In that case, their combined financial resources should be taken into account when determining whether sufficient financial resources exist to support the beneficiary.
- If an organization is supporting, the individual signing the I-134A does not need to provide financial information, but the organization must provide a letter and the financial information
- Each sponsor will be filing his or her own Form I-134A. Only one beneficiary can be listed on each Form I-134A.
- An Account is created in ELIS for the Supporter. You can go to that Individual's ELIS Account and see all cases that have been filed by that Individual. The information can also be pulled in reports.



# Form I-134A ~ Security Checks for Supporter

U.S. Citizenship and Immigration Services

- Run in the background automatically by ELIS
  - TECS/NCIC
    - TECS/ NCIC will be run automatically
    - The hits will be resolved by SCOPS BCU
    - The hit resolution will occur before you review the case with a Red Banner or a Green Banner/No Match



# Form I-134A
# ~ Security Checks for Sponsor

- Not Running
  - Name Checks
    - Please note we will not be harvesting names from supporting documentation
  - Fingerprints
    - May need to be manually uploaded from CPMS



U.S. Citizenship
and Immigration
Services

# Review of Form I-134A

- If Supporter can financially support the beneficiary and sec[...] background checks clear?
  - Green-light the individual, which will trigger continued processing for the beneficiary's parole consideration by CBP.

- If more information is needed in order to continue processing?
  - Issue Request for Evidence
    - Only RFE for lack of immigration status or unclear/illegible documents
  - If necessary, we can request the Supporter to obtain biometrics
  - If necessary, we can interview the Supporter
- This additional biometric or interview will be determined by FDNS

- Once reply to RFE is received, decision can be made whether to trigger continued processing for the beneficiary's parole consideration by CBP.



# Elevation of Issues

- Security Checks
  - If TECS hit, BCU will assist in resolving TECS hits by highlighting Red Banner or Green Banner/ No Match
- Do security checks or other information in the record raise potential concerns about trafficking/exploitation?
  - Hit indicates arrest or conviction for certain types of crimes
  - Single Supporter filing for 11 or more nationals to whom the Supporter is not related
  - More information may be needed, or a denial may be warranted, this is an automatic referral to FDNS within ELIS



# Elevation of Issues

- Adoption Concerns, if applicable
  - If reviewing a minor child, Verification reviewers will check whether Form I-134A supporters have also filed intercountry adoption applications or petitions.
  - Verification reviewers will also review the form and evidence to determine whether a Supporter identifies their relationship with a minor beneficiary as that of prospective adoptive parent or previous/future hosting family.

- If necessary, a referral to FDNS should be made for resolution



# Elevation of Issues

U.S. Citizenship
and Immigration
Services

- Fiancé Concerns, if applicable
  - In order to address trafficking concerns, Verification reviewers will cross-check whether Form I-134A supporters have also filed multiple fiancé petitions, Form I-129F.
- If questions arise during review of the I-134A, or you believe further inquiry is warranted through biometric collection or Supporter interview, please raise with your Supervisor



# Disclaimer

U.S. Citizenship
and Immigration
Services

This training module is intended solely to provide training. It is not intended to, does not, and may not be relied upon to create or confer any right(s) or benefit(s), substantive or procedural, enforceable at law by any individual or other party in benefit applications before USCIS, in removal proceedings, in litigation with the United States, or in any other form or manner. This training module does not have the force of law, or of a DHS directive.



# Dissemination

This presentation may not be reproduced or further disseminated without the express written consent of the Office of Policy & Strategy, USCIS.

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants.* | Case 6:23-cv-00007 |

# EXHIBIT 20

PLAINTIFF'S
EXHIBIT
tabbies

**USCIS Detailee Refresher Training – March 29, 2023**
**Agenda**

1. MS Teams
    a. Show search bar using key words
    b. Keeping the conversation in the same conversation bubble
    c. Always add a receipt number for your questions
    d. No need to add a screen shot, the SMEs will look up your case
    e. Place questions in **USCIS Detailee Reviewers Discussion** not the General Chat
    f. Wait 24 hours for a response, place case aside and pull another case – your queues will get kind of long, but that is part of the process remain flexible and organized under your My Cases tab

2. Organize your My Cases tab and your queue – see Darcy's example

3. Cases will be **on hold or suspended** – even if your case is open to work under the pending work status, **if you see an associated case on hold or suspended on the same sponsor,** keep this case open in your queue until the hold or suspension is released.  Usually, these cases will be worked in the background by a SME and they will re-assign it away from your queue.



4. Case tracking spreadsheet is found here (Please do not make copies)



USCIS Detailee Refresher Training – March 29, 2023
Agenda

Primary issue drop down includes

a. **Financial** - 100% review, do not NC yourself
b. **ROA** – working these cases are more complex, so SMEs are doing them at this point
c. **Possible Serial Support 11+** - when the sponsor hit's their 11th unique bene (not including duplicates) filing place one of the receipt numbers on the tracker; these could be across multiple ELIS accounts

d. **<u>Important leave the case open in your ELIS queue when placing on the spreadsheet</u>**

5. ROA will show up with this banner after opening the case under the pending task

ROA looks like this under Case Details/Case



**USCIS Detailee Refresher Training – March 29, 2023**
**Agenda**

6. **Pull cases one at a time** and open to the pending hyperlink under tasks, this will allow all pending cases for same sponsor to be auto assigned by ELIS

Case Details History Flags Tasks

| Work | Work Status | Updated On |
|---|---|---|
| Case Review | Pending | 07/22/2022 9: |
| TECS Backend | Completed | 07/18/2022 4: |
| Systematic Case Linking | Completed | 07/18/2022 4: |
| Verify/Issue A-Number | Completed | 07/18/2022 4: |

7. Need clearer evidence? Check under "Raw file" view can be found under Case Details Tab/Case/Evidence and RFE

Name: SULLIV
Date of Birth: 12/18/
Country of Birth: Venezu

Case Details History Flags Tasks

WorkSheet ?

INFO: Alien Number must be assigned in order to load worksheet data.

- Sponsor
- Beneficiary Account
- Case

Case

- Case Summary
- Payment
- Representative Info
- Biometrics
- Appointments
- Notices and Snapshots
- Evidence and RFE
- Employment
- Immigration Information

vidence Open Evidence

| Receipt Number | File Name | Category | Uploaded On | Source | Actions |
|---|---|---|---|---|---|
| IOE918905 | ...A0C-422D-917D-FDED62DEAAEA.jpeg New | Financial | 10/26/2022 | EXTERNAL | Edit Print Raw File |
| IOE918905 | ...76D-4719-A0E4-F39DC4C9FB37.jpeg New | Financial | 10/26/2022 | EXTERNAL | Edit Print Raw File |

8. Must look beyond COA in PCIS for legal status (See Status Update - Reference Guide)

9. #27, 28 & 29 must be in English and must be a description of how the sponsor (not "the host") intend to support. This description can be brief

   a. if not in English - you can place a case comment and non-confirm

**USCIS Detailee Refresher Training – March 29, 2023**
**Agenda**

b. if no description or no affirmative response acknowledging assistance – you can place a case comment and non-confirm
c. if stating "the host" – hold case as we are pending policy, see example below

```
The host is the husband and father of this family. He has confirmed that he will
provide financial support for as long as needed. Here is his name and contact
information. They will live in Minneapolis, Mn.
Nikola              
508 5T              t. 5,
Minnea              55413-2141
phone:              16
```

10. All financial evidence that you use, including bank accounts in the U.S. needs to be in English or have a translation provided in English

11. We do not accept employment **offer letters** (for jobs that have not started) – if there is an employment letter see form instructions below for what should be included

**2.** Statement(s) from your employer on business stationery showing:

**A.** Date and nature of employment;

Form I-134 Instructions 02/13/19

**B.** Salary paid; and

**C.** Whether the position is temporary or permanent.

12. **Status examples** found under Form I-134 Reviewer Guides (excel spreadsheet)

13. **Financial examples** found under Form I-134 Reviewer Guides



**USCIS Detailee Refresher Training – March 29, 2023**
**Agenda**

14. Review duplicate cases
    a. 5 Data points to review: Name, DOB, Passport #, Passport Expiration, email address
    b. Admin close if "true" duplicate and first filed case has been confirmed
    c. Your case might be pending with another reviewer, have a discussion with them via MS Teams chat if needed
    d. Travel authorization is expired, the sponsor will file again, continue to process the new filed case
    e. The bene departed the US, they will have to file again so continue to process the new filed case
    f. If travel is not authorized after confirmation and there is a second filing, continue to process that new case as the circumstances may have changed why travel was not authorized

15. Do a few live cases walking through the steps in this order
    a. **Pull one case at a time** - guidance will be ongoing what cases you are assigned to pull, this could change daily! Prioritize Mexico if there are 100 cases in the queue
    b. Open all the way to "pending" under the task tab, this is so any pending associated cases will also be auto assigned to you
    c. If TECS red banner, non-confirm, if green or no banner continue to process
    d. Check for sponsor signature on form, page 11; NC if no signature or if the signature is not the sponsor
    e. Check for answers to 27, 28 & 29 on form, page 8; NC if not affirming support or if in foreign language
    f. Locate how many total I-134s there are via
        i. ELIS Account Number
        ii. Alien Number
        iii. Name and DOB check in ELIS (include a DOB range 01/01/YEAR to 01/01/+1YEAR
    g. Check for status by first checking what the sponsor sent in with the evidence/compare contrast with PCIS. Often the sponsor sends in evidence that is not sufficient, but a PCIS check will provide the data that we need, if you can find status in a DHS system no need to request evidence, if you need help with status place a comment in the chat
    h. Look at financials starting with Form 1040 first, look deeper if necessary
    i. Sponsor household (if known) + I-134's filed = how many you need toward the money
    j. Look at the I-134 information via the left side ELIS tabs or under I-134 picture in evidence
    k. Render decision

**Pulling from Ukraine Program: Based on your daily assignment**



USCIS Detailee Refresher Training – March 29, 2023
Agenda

**Pulling from CHNV Program (Cuba, Haiti, Nicaragua, Venezuela):** Based on your daily assignment

Get Work

All Queues My Recent Queues Search for Available Work

Location Form Type Program: Country: Beneficiary Location:

HQC I-134 CHNV NIC All

Select one... I-130 I-134 I-134A I-290B I-485 I-90

Available Cases

A-Number 0

Address R 0

Mexico first if there are 100 cases in the queue

Helpful poverty level chart 2023, for 48 states and DC:

| Persons | Poverty guideline |
|---|---|
| 1 | $14,580 |
| 2 | $19,720 |
| 3 | $24,860 |
| 4 | $30,000 |
| 5 | $35,140 |
| 6 | $40,280 |
| 7 | $45,420 |
| 8 | $50,560 |
| 9 | $55,700 |
| 10 | $60,840 |
| 11 | $65,980 |
| 12 | $71,120 |
| 13 | $76,260 |
| 14 | $81,400 |
| 15 | $86,540 |
| 16 | $91,680 |
| 17 | $96,820 |
| 18 | $101,960 |
| 19 | $107,100 |
| 20 | $112,240 |
| 21 | $117,380 |
| 22 | $122,520 |
| 23 | $127,660 |
| 24 | $132,800 |
| 25 | $137,940 |
| 26 | $143,080 |
| 27 | $148,220 |
| 28 | $153,360 |

**USCIS Detailee Refresher Training – March 29, 2023**
**Agenda**

**United States District Court**
**Southern District of Texas**
**Victoria Division**

STATE OF TEXAS, *et al.*,
*Plaintiffs,*

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants.*

Case 6:23-cv-00007

# EXHIBIT 21

PLAINTIFF'S
EXHIBIT
tabbies

**Office of Policy & Strategy**

**Immigration Records and Identity Services Directorate**

# *Form I-134A – Reviewers Guide*

(Last Revision – April 11, 2023)

Version 5.0

| Version | Date | Updated by | Description of Changes |
|---|---|---|---|
| 1.0 | April 27, 2022 | M. Dhanjal | Issuance of Draft Reviewers Guide |
| 2.0 | October 4, 2022 | M. Dhanjal | Addition of Step by Step Guides |
| 3.0 | October 19, 2022 | M. Dhanjal | Addition of Process for Venezuelans |
| 4.0 | January 17, 2023 | M. Dhanjal | Addition of CHNV and 134A |
| 5.0 | March 28, 2023 & April 11, 2023 | M. Dhanjal, M. Parades | Preparation of Training, merging worksheets into the Guide; corrections |

## I. Introduction

### a. Background – *Uniting for Ukraine*

On April 21, 2022, President Biden announced *Uniting for Ukraine*, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression as a result of the ongoing Russia-Ukraine crisis.

For the full press release, see Appendix I(a) or https://www.dhs.gov/news/2022/04/21/president-biden-announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians

*Uniting for Ukraine* will provide a safe and orderly process for displaced Ukrainians with a sponsor in the United States to be considered for parole, on a case-by-case basis, for a period of up to two years. Ukrainians participating in Uniting for Ukraine must have a supporter in the United States who agrees to provide them with financial support for the duration of their stay in the United States. The process begins when the supporter files Form I-134, Declaration of Financial Support, with U.S. Citizenship and Immigration Services (USCIS) to include information both on the supporter and the Ukrainian beneficiary. Ukrainians who meet the requirements receive authorization to travel directly to the United States and seek parole, authorized by Customs and Border Patrol (CBP), at a port of entry. If granted parole under this process, Ukrainians are eligible for employment authorization.

More information on accessing and navigating procedures will be available on the DHS website at, https://www.dhs.gov/ukraine

### a. Background – *Process for Venezuelans*

On October 12, 2022, the Department of Homeland Security announced joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela. DHS' effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States. The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.

This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

For the full announcement, see Appendix I(b) or https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans

    b.   Background – *Process for Cubans, Haitians, and Nicaraguans*

On January 5, 2023, DHS announced the establishment of new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways.

Building upon the success of Uniting for Ukraine and the process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements. Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside legally in the United States for up to two years and to receive permission to work here, during that period.

For the full announcement, see Appendix I(c) or https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and

    c.   Who May be a Parole Supporter?

The parole supporter is the individual who makes a financial obligation to provide support to the beneficiary while he or she is in the United States for the duration of the parole authorization period. Generally, the supporter is a lawful permanent resident (LPR) or U.S. citizen (USC) and has sufficient income or financial resources to meet the Health and Human Services (HHS) Federal poverty guidelines. The supporter is required to submit an I-134A, *Declaration of Financial Support* for each parole request in order to establish the adequacy of financial resources to support the parolee during his or her stay in the United States. Occasionally, a non-profit organization or medical institution may serve as a supporter on a parole application, with an individual completing the individual I-134A. In those instances, staff may accept a letter of commitment from the organization.

## II. Reviewing the I-134A, Online Request to be a Supporter and Declaration of Financial Support

This section provides detailed guidance regarding the workflow and requirements related to reviewing the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support.[1]

### a. Case Assignment

At this time, staff will assign workloads to themselves from ELIS for review. However, it should be noted that cases may be assigned based on their need to be expedited and on the age of the case.

Once your profile has been updated in ELIS, you will click on the **"Get Work"** tab to find an available case to start reviewing.

Currently ELIS allows you to work the previous Form I-134 as well as the Form I-134A. Depending on your case assignment, you may be asked to work the Form I-134 or the Form I-134A. In addition, you may also be asked to work a specific country.

[1] Please note that the electronic Form I-134 was replaced by the Form I-134A. This user guide references the I-134A, but the information still applies to any pending I-134 cases.

The drop down for the Form I-134/I-134A looks like:

When you pull a specific country it will look like:

Once your profile has been updated in ELIS, you will click on the **"Get Work"** tab to find an available case to start reviewing.

**a. Review if Security Checks are complete for the Supporter, has TECS been run?**

When a Supporter completes an application in ELIS, biographic security checks will be performed automatically on the Supporter. If biographic security checks result in a TECS hit, the Form I-134A will be taken out of the queue, and SCOPS BCU (Texas Service Center Background Check Unit) will prepare a resolution memo and give a "red light" or resolve the hit before the reviewer reviews the case.

To review the TECS check, go to **"Case"** section, and open up the **"Risk & Fraud"** accordion, to see TECS result run by SCOPS BCU.

In this example, the TECS check was run and there is no match and you can continue reviewing the case:

If there is a TECS/NCIC Hit, SCOPS BCU will give a "red banner" in the following circumstances:

- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any Egregious Public Safety (EPS) offenses (see Appendix II);
- Where the supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any specified offense against a minor as defined by the Adam Walsh Act (see Appendix III); and
- Where the supporter is the subject of a protected person order, is under investigation for, has been arrested for (without disposition), or has been convicted of domestic violence, has been arrested for (without disposition), or has been convicted of sexual assault, or is under investigation for, has been arrested for (without disposition), or has been convicted of immigration fraud or passport or identity theft (not applicable for individuals who have had a passport lost or stolen).

- If FDNS otherwise determines in reviewing the TECS hit that the supporter poses a significant national security or public safety risk, they will issue a "red banner"

A TECS check with a "red banner" will look like this example, with the "TECS Results affect eligibility":

If it is determined that there is a TECS hit and it relates, staff will issue a **"non-confirmation"** letter, by going to the **"Case"** section, and open up the **"Render Decision"** and then select **"Non-Confirmation."**

### b. Checking Ten or More Beneficiaries

A supporter filing more than ten (10) Form I-134A, including duplicates, will result in a one-time automatic referral to FDNS for additional vetting. ELIS automatically refers to FDNS the eleventh (11th) Form I-134A filed by a supporter and suspends case review on other open Form I-134A associated with the same supporter. When the FDNS Immigration Officer completes review, a Record of Action will be uploaded to the ELIS file for the QA/SME team to review.

This will look like, with a yellow banner:



**c. Checking Intercountry Adoptions**

In order to ensure that individuals are not circumventing intercountry adoption procedures, reviewers will need to do the following:

Check ELIS and PCIS to see if the supporter has previously filed any approved or pending Form I-600A, Form I-600, Form I-800A, Form I-800, or Form I-130 (on the basis of adoption) filed by the supporter

If so, we can refer to FDNS through QA/SME Team **(at this time post onto Teams Channel)**

**d. To Be Added – Checking multiple Fiancé petitions**

In order to ensure that individuals are not circumventing the Fiancé process, reviewers will need to do the following:

Check ELIS and PCIS to see if the supporter has previously filed 3 or more I-129F, Petition for Alien Fiancé(e), applications

If so, we can refer to FDNS through QA/SME Team **(at this time post onto Teams Channel)**

**e. Review if the Supporter is eligible to file the I-134A, are they in lawful status?**

**i. Reviewing for Lawful Status**

The Supporter completes an online application with myUSCIS with the appropriate supporting documentation. A Supporter has to be:

- A U.S. Citizen or national,
- Lawful Permanent Resident (including lawful temporary resident and conditional permanent resident),
- nonimmigrant in lawful status (i.e., maintains the nonimmigrant status and has not violated any of the terms or conditions of the nonimmigrant status),

- asylee,
- refugee,
- parolee,
- TPS holder,
- beneficiary of deferred action (including DACA) or Deferred Enforced Departure (DED)
- or anyone else in the United States with lawful immigration status meets this requirement.

It should be noted that it is ***not*** sufficient that a supporter has a pending application/petition with USCIS; however, if a pending application/petition for lawful status, or deferred action is approved (or if the supporter has been paroled into the United States) between the time the Form I-134 is filed and the time of review, then the supporter has met the lawful status requirement.

If in lawful status, then staff will examine financial records of the Supporter.

**i. If submitted documents are insufficient to determine lawful status**

If initial evidence is insufficient to show the Supporter holds lawful status, or is a parolee or beneficiary of deferred action or DED as of the date of filing, staff will issue a Request for Evidence (RFE). See Appendix V for RFE Step by Step guide

If the response to the RFE demonstrates the individual holds lawful status or has been paroled into the United States or granted deferred action or DED as of the date the response is received/reviewed, we will consider the Supporter to have met this requirement.

If, however, after the RFE response is received, the evidence is still insufficient, or if no response to the RFE is received by the deadline, we will issue a non-confirmation. Staff will issue a **"non-confirmation"** letter, by going to the go to **"Case"** section, and open up the **"Render Decision"** and then select **"Non-Confirmation."**



**f. Review the Supporters Financial Records**

Reviewing the Form I-134A and the supporting evidence submitted with Form I-134A, the Supporter should demonstrate that they are able to "receive, maintain, and support" the Beneficiary listed on the Form I-134A for two years (the anticipated period of parole).

One guideline to be used in assessing the Supporter's ability to meet this requirement is whether the income/assets/outside support evidenced in the Form I-134A and supporting evidence meet at least 100% of the HHS poverty guidelines based on the number of persons in the family/household, which includes the Supporter, any other dependents (including those in their household and any other Beneficiaries already claimed otherwise), and the Beneficiary on whose behalf Form I-134A is being filed.

- Regardless of the information submitted into the form fields, the supporting documentation should demonstrate that the Supporter has income/assets/outside support to meet at least 100% of the poverty guideline threshold for the supporter's household size.
- The 2023 HHS poverty guidelines are located at: https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines, or see Appendix IV
- Any reported income would be assumed to continue at the same rate for subsequent years, and household size would be assumed to be static. If there is insufficient income to meet the poverty guidelines threshold, we assume liquid assets would be spent over the course of the period of support.

Staff will assess income, assets, and any commitments of support from outside organizations or additional individual supporters to determine in the totality of the

circumstances whether the Supporter is able to financially support the beneficiary for the duration of parole.

It should be noted that income from illegal sources or means-tested public benefits (as defined in 8 CFR 213a.1):

- Income from illegal sources or means-tested public benefits is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

If initial evidence is insufficient to show the supporter is able to provide financial support to the beneficiary for the duration of the parole period (2 years), staff will issue a **"non-confirmation"** letter, by going to the go to **"Case"** section and open up the **"Render Decision"** and then select **"Non-Confirmation."**

If remainder of income/assets meets at least 100% of the HHS poverty guidelines, staff will issue a "confirmation letter" by consider the supporter to have met this requirement and issue a **"confirmation"** by going to the go to **"Case"** section and open up the **"Render Decision"** and then select **"Confirmation."**



Case
Case Summary
Payment
Representative Info
Biometrics
Appointments
Notices and Snapshots
Evidence and RFE
Employment
Risk and Fraud
Render Decision
Select Decision *
Select one...
Select one...
Confirmation
Non-Confirmation
Case Comments

**Appendix I(a) – Press Release – President Biden to Announce Uniting for Ukraine, a new Streamlined Process to Welcome Ukrainians Fleeing Russia's Invasion of Ukraine**

https://www.dhs.gov/news/2022/04/21/president-biden-announce-uniting-ukraine-new-streamlined-process-welcome-ukrainians

WASHINGTON – Today, the President will announce *Uniting for Ukraine*, a new streamlined process to provide Ukrainian citizens who have fled Russia's unprovoked war of aggression opportunities to come to the United States, fulfilling President Biden's commitment to welcome up to 100,000 Ukrainians and others fleeing Russia's aggression as a result of the ongoing Russia-Ukraine crisis. In addition, the State Department is announcing increased refugee resettlement processing and broadened access to visa processing at consular posts overseas. This builds on the robust humanitarian assistance the U.S. government is providing to complement the efforts of generous countries throughout Europe who are hosting Ukrainian citizens who have been displaced.

"We are proud to deliver on President Biden's commitment to welcome 100,000 Ukrainians and others fleeing Russian aggression to the United States. The Ukrainian people continue to suffer immense tragedy and loss as a result of Putin's unprovoked and unjustified attack on their country," **said Secretary of Homeland Security Alejandro N. Mayorkas.** "DHS will continue to provide relief to the Ukrainian people, while supporting our European allies who have shouldered so much as the result of Russia's brutal invasion of Ukraine."

"The U.S. Department of State stands with the people of Ukraine," **said Secretary of State Antony J. Blinken.** "We will help deliver on the President's commitment to welcome 100,000 Ukrainian citizens and others forced to flee their homes in Ukraine, and our partnership with the Department of Homeland Security will help us fulfill that commitment."

*Uniting for Ukraine* is a streamlined process for Ukrainian citizens who have been displaced by Russia's aggression to apply for humanitarian parole in the United States. To be eligible, Ukrainians must have been residents in Ukraine as of February 11, 2022, have a sponsor in the United States, complete vaccinations and other public health requirements, and pass rigorous biometric and biographic screening and vetting security checks. Ukrainians approved via this process will be authorized to travel to the United States and be considered for parole, on a case-by-case basis, for a period of up to two years. Once paroled through this process, Ukrainians will be eligible for work authorization.

Beginning on April 25, 2022, U.S.-based individuals and entities can apply to DHS to sponsor Ukrainian citizens who have been displaced by Russia's aggression through the *Uniting for Ukraine* process, which will go live that day on the DHS website. Any U.S. citizen or individual, including representatives of non-government organizations, can sponsor Ukrainian applicants. Individuals and organizations seeking to sponsor Ukrainian citizens in the United States will be required to declare their financial support and pass security background checks to protect against exploitation and abuse. The Department of Homeland Security will administer the

program. Eligibility requirements will include required vaccinations and other public health requirements, as well as biographic and biometric screening, vetting, and security checks.

The United States strongly encourages Ukrainians seeking refuge in the United States who do not have and are not eligible for a visa to seek entry via *Uniting for Ukraine* from Europe, this will be the safest and most efficient way to pursue temporary refuge in the United States. The U.S. government is working with European partners to ensure Ukrainians can meet the vaccination requirements of *Uniting for Ukraine.*

Ukrainians should not travel to Mexico to pursue entry into the United States. Following the launch of *Uniting for Ukraine*, Ukrainians who present at land U.S. ports of entry without a valid visa or without pre-authorization to travel to the United States through *Uniting for Ukraine* will be denied entry and referred to apply through this program.

In addition to *Uniting for Ukraine*, the United States is announcing a series of measures designed to expand access to existing legal pathways for Ukrainian citizens.

The Department of State will expand U.S. Refugee Admissions Program (USRAP) operations in Europe to provide eligible Ukrainians with greater access to refugee resettlement processing under the Lautenberg program, while also expanding referral mechanisms for Ukrainians and others fleeing Russia's war in Ukraine who are in need of permanent resettlement.

As part of these efforts, the Department of State will expand U.S. resettlement operations in Europe to provide more resources to process Ukrainian citizens for refugee resettlement under the Lautenberg program, and will expand referral mechanisms for Ukrainian citizens and others fleeing Russia's war against Ukraine to the U.S. Refugee Admissions Program (USRAP). To do so, the United States is working with European partners, the UN High Commissioner for Refugees and NGOs to identify particularly vulnerable Ukrainian citizens and others fleeing the conflict who may warrant permanent resettlement through USRAP. These particularly vulnerable populations include women and girls, children, older persons with special needs, members of ethnic and religious minority groups, LGBTQI+ persons, persons with disabilities, medically fragile individuals, and stateless persons.

In addition, European embassies and consulates are increasing, to the extent possible, the number of nonimmigrant visa appointments and ensuring there is an expedited visa appointment program for individuals with humanitarian, medical, or other extraordinary circumstances to get priority access.

The Biden-Harris Administration remains committed to supporting the people of Ukraine and continues to closely coordinate our efforts with our European allies and partners who are on the frontlines of aiding Ukrainian citizens forced to flee due to Russian aggression. The United States has contributed nearly $300 million in humanitarian assistance to provide displaced Ukrainians with food, safe drinking water, shelter, and winterization services, and will continue to serve as a global leader in the international humanitarian response. The United States is

prepared to provide more than $1 billion in new funding toward humanitarian assistance for those affected by Russia's war in Ukraine and its severe impacts around the world.

###

**Appendix I(b) – Announcement – DHS Announces New Migration Enforcement Process for Venezuelans**

https://www.dhs.gov/news/2022/10/12/dhs-announces-new-migration-enforcement-process-venezuelans

WASHINGTON – Today, as part of the Biden-Harris Administration's ongoing work to build a fair, orderly, and secure immigration system, the Department of Homeland Security (DHS) is announcing joint actions with Mexico to reduce the number of people arriving at our Southwest border and create a more orderly and safe process for people fleeing the humanitarian and economic crisis in Venezuela.

Almost four times as many Venezuelans as last year attempted to cross our southern border, placing their lives in the hands of ruthless smuggling organizations. Meanwhile, irregular migration from northern Central America is down by a quarter from the level encountered last year. The actions the United States and Mexico are announcing today are intended to address the most acute irregular migration and help ease pressure on the cities and states receiving these individuals.

Effective immediately, Venezuelans who enter the United States between ports of entry, without authorization, will be returned to Mexico. At the same time, the United States and Mexico are reinforcing their coordinated enforcement operations to target human smuggling organizations and bring them to justice. That campaign will include new migration checkpoints, additional resources and personnel, joint targeting of human smuggling organizations, and expanded information sharing related to transit nodes, hotels, stash houses, and staging locations. The United States is also planning to offer additional security assistance to support regional partners to address the migration challenges in the Darién Gap.

Our comprehensive effort to reduce the irregular migration of Venezuelans also includes a new process to lawfully and safely bring up to 24,000 qualifying Venezuelans into the United States.  The United States will not implement this process without Mexico keeping in place its independent but parallel effort to accept the return of Venezuelan nationals who bypass this process and attempt to enter irregularly.

"These actions make clear that there is a lawful and orderly way for Venezuelans to enter the United States, and lawful entry is the only way," **said Secretary of Homeland Security Alejandro N. Mayorkas**. "Those who attempt to cross the southern border of the United States illegally will be returned to Mexico and will be ineligible for this process in the future. Those who follow the lawful process will have the opportunity to travel safely to the United States and become eligible to work here."

This effort is intended to enhance border security by reducing the number of Venezuelans seeking to irregularly enter the United States. It is derived from the success of the Uniting for

Ukraine (U4U) program, which decreased flows at the border by creating an orderly process for the entry of Ukrainians fleeing Russia's invasion of Ukraine.

DHS will closely monitor the implementation of this process, and Mexico's independent and parallel efforts, and may consider expanding it in the future.

To be eligible, Venezuelans must:

- have a supporter in the United States who will provide financial and other support;
- pass rigorous biometric and biographic national security and public safety screening and vetting; and
- complete vaccinations and other public health requirements.

Venezuelans are ineligible if they:

- have been ordered removed from the United States in the previous five years;
- have crossed without authorization between ports of entry after the date of announcement;
- have irregularly entered Mexico or Panama after the date of announcement, or are a permanent resident or dual national of any country other than Venezuela, or currently hold refugee status in any country; or
- have not completed vaccinations and other public health requirements.

Venezuelans should not travel to Mexico to pursue entry into the United States.

Venezuelans approved via this process will be authorized on a case-by-case basis to travel to the United States by air directly to an interior port of entry, thus relieving pressure at the border. Once in the United States, they will be eligible to apply for work authorization.

DHS will administer the process, working with communities and other partners. Any U.S.-based individual with lawful status, including representatives of businesses or other organizations or entities, can support a potential beneficiary from Venezuela. A supporter must prove that they have the means to provide financial and other support for the beneficiary. In the coming days, potential supporters can apply to DHS to support individual eligible Venezuelans via www.uscis.gov/Venezuela. Individuals and representatives of organizations seeking to apply as a supporter must declare the organization's financial support and they must pass security background checks to protect against exploitation and abuse.

The State Department will also engage in a robust in-region messaging campaign to communicate about this new process and the consequences of attempting irregular entry.

More information will be available at www.uscis.gov/Venezuela in the coming days.

Today's actions are part of the Biden-Harris Administration's ongoing efforts to reduce irregular migration throughout the Western Hemisphere, including through the U.S. Strategy for Addressing the Root Causes of Migration and the multinational Los Angeles Declaration on Migration and Protection. The process announced today is one more element of the United States' multilateral approach to addressing irregular migration that is impacting countries

throughout Latin America, and it is premised on pairing increased enforcement in response to irregular immigration with the development of lawful and safe pathways for qualifying individuals.

Venezuelans have been migrating throughout the hemisphere since approximately 2014, yet the level of irregular migration of Venezuelans has increased dramatically throughout the hemisphere in the past several years. There are currently 2.4 million Venezuelans residing in Colombia. More than 25% of Venezuela's population has left the country. The United States is seeing a rising rate of Venezuelans encountered at our border over the past two years, which has surged in the last few months. Average monthly unique encounters of Venezuelan nationals at the land border totaled 15,494 in FY 2022, rising further to over 25,000 in August and 33,000 in September, compared to a monthly average of 127 unique encounters from FY 2014–2019. Of note, unique encounters of Venezuelan nationals rose 293 percent between FY 2021 and FY 2022, while unique encounters of all other nationalities combined increased 45 percent. Panama is currently seeing more than 3,000 people, mostly Venezuelan nationals, crossing into its territory from Colombia via the Darién jungle each day.

The United States, in partnership with Mexico, also is committing to further expanding lawful labor pathways for Mexican and Northern Central American nationals. This last year, the United States doubled the number of H-2 visas issued to nationals of the Northern Central American countries of Guatemala, Honduras, and El Salvador. Today, we are announcing the largest H-2B supplemental in history for Fiscal Year 2023: nearly 65,000 new H-2B visas, including a set-aside of 20,000 to nationals of Northern Central American countries and Haiti. Historically, approximately 90% of these visas have been used by Mexican nationals. This increase is coupled with strong measures to protect both U.S. and H-2B workers. Concurrent with this announcement, the Biden-Harris Administration is launching a White House-led Worker Protection Task Force to ensure ethical recruitment and dignified labor standards for foreign workers alongside protections for U.S. workers.

The United States also is renewing its commitment to tackle the root causes of migration and support countries in the region that are most impacted by these flows. For that reason, the United States has announced nearly $817 million in new assistance since September 2022 under the Los Angeles Declaration on Migration and Protection. This includes more than $240 million in new regional humanitarian and security assistance, $376 million in additional humanitarian assistance for people affected by the Venezuela regional crisis, and more than $199 million in additional humanitarian assistance for Mexico and Central America.

###

**Appendix I(c) – Announcement – DHS Continues to Prepare for End of Title 42; Announces New Border Enforcement Measures and Additional Safe and Orderly Processes**

https://www.dhs.gov/news/2023/01/05/dhs-continues-prepare-end-title-42-announces-new-border-enforcement-measures-and

WASHINGTON – The Department of Homeland Security (DHS) continues to prepare for the end of the Title 42 public health order, which is currently the subject of multiple court orders, and a return to processing all noncitizens under the Department's Title 8 immigration authorities. To that end, DHS today announced new border enforcement measures to improve border security, limit irregular migration, and create additional safe and orderly processes for people fleeing humanitarian crises to lawfully come to the United States. These measures, taken together, are concrete steps to enhance the security of our border while the Title 42 public health order is in place, and that DHS will continue to build on in preparation for the Title 42 order being lifted.

- DHS is establishing new parole processes for Cubans, Haitians, and Nicaraguans, modeled on the successful processes for Venezuelans and Ukrainians, which combine safe, orderly, and lawful pathways to the United States, including authorization to work, with significant consequences for those who fail to use those pathways. We are also continuing the process with respect to Venezuelans.
- Through the CBP One app, we are also providing a new mechanism for noncitizens to schedule appointments to present themselves at ports of entry, facilitating safe and orderly arrivals. Initially this will be used for those seeking an exception from the Title 42 public health order. Once the Title 42 order is no longer in place, CBP One will be used to help ensure safe and orderly processing at ports of entry.
- DHS is increasing and enhancing the use of expedited removal under Title 8 authorities for those who cannot be processed under the Title 42 public health order. These efforts include surging personnel and resources and enrolling individuals under the asylum processing interim final rule published in March 2022.
- As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and the Department of Justice (DOJ) intend to shortly issue a proposed rule that will, subject to public comment, incentivize the use of the new and existing lawful processes available in the Unites States and partner nations, and place certain conditions on asylum eligibility for those who fail to do so.

DHS will continue to monitor developments on the southwest border and will accelerate or implement additional measures, as needed, consistent with applicable court orders.

"We can provide humanitarian relief consistent with our values, cut out vicious smuggling organizations, and enforce our laws," said **Secretary Alejandro N. Mayorkas**. "Individuals without a legal basis to remain in the United States will be subject to prompt expulsion or removal. Individuals who are provided a safe, orderly, and lawful path to the United States are less likely to risk their lives traversing thousands of miles in the hands of ruthless smugglers, only to arrive at our southern border and face the legal consequences of unlawful entry."

As required by a combination of the Supreme Court's December 27 order and a separate district court injunction prohibiting the implementation of the CDC termination of the Title 42 public health order, the Title 42 order remains in effect, and individuals who attempt to enter the United States without authorization will continue to be expelled.

**Country-Specific Enforcement Processes**

Building upon the success of Uniting for Ukraine and the process for Venezuelans announced in October – which combine a safe and lawful pathway with a consequence for failing to use that pathway – today's announcement establishes similar processes for Cuban, Haitian, and Nicaraguan nationals who face unique challenges in their home countries. The Venezuelan process also will continue; Border Patrol saw a dramatic drop – 90 percent – in the number of Venezuelans encountered at the border following the establishment of the program in October. Nationals from Venezuela, Cuba, Haiti, and Nicaragua who do not avail themselves of this process, attempt to enter the United States without authorization, and cannot establish a legal basis to remain will be removed or returned to Mexico, which will accept returns of 30,000 individuals per month who fail to use these new pathways. The expansion of the Venezuela process to Cuba, Haiti, and Nicaragua is contingent on the Government of Mexico's willingness to accept the return or removal of nationals from those countries. It also is responsive to a request from the Government of Mexico to provide additional legal pathways for migrants, and it advances both countries' interests in addressing the effects throughout the hemisphere of deteriorated conditions in these countries.

Specifically, these processes will provide a lawful and streamlined way for qualifying nationals of Cuba, Haiti, Nicaragua, and Venezuela to apply to come to the United States, without having to make the dangerous journey to the border. Through a fully online process, individuals can seek advance authorization to travel to the United States and be considered, on a case-by-case basis, for a temporary grant of parole for up to two years, including employment authorization, provided that they: pass rigorous biometric and biographic national security and public safety screening and vetting; have a supporter in the United States who commits to providing financial and other support; and complete vaccinations and other public health requirements. Individuals who enter the United States, Mexico, or Panama without authorization following today's announcement will generally be ineligible for these processes. These processes will allow up to 30,000 qualifying nationals per month from all four of these countries to reside

legally in the United States for up to two years and to receive permission to work here, during that period.

Starting tomorrow, potential supporters can apply to DHS to support eligible individuals via www.uscis.gov/CHNV. Individuals and representatives of organizations seeking to apply as supporters must declare their financial support, and they must pass security background checks to protect against exploitation and abuse.

**Safe and Orderly Processes at Ports of Entry**

To facilitate the safe and orderly arrival of noncitizens seeking an exception from the Title 42 public health order, DHS is expanding use of the free CBP One mobile app for noncitizens to schedule arrival times at ports of entry. Individuals do not need to be at the border to schedule an appointment; expanded access to the app in Central Mexico is designed to discourage noncitizens from congregating near the border in unsafe conditions. Initially, this new scheduling function will allow noncitizens to schedule a time and place to come to a port of entry to seek an exception from the Title 42 public health order for humanitarian reasons based on an individualized assessment of vulnerability. This will replace the current process for individuals seeking exceptions from the Title 42 public health order, which requires noncitizens to submit requests through third party organizations located near the border.

Once the Title 42 public health order is no longer in place, this scheduling mechanism will be available for noncitizens, including those who seek to make asylum claims, to schedule a time to present themselves at a port of entry for inspection and processing, rather than arriving unannounced at a port of entry or attempting to cross in-between ports of entry. Those who use this process will generally be eligible for work authorization during their period of authorized stay.

Individuals who use the CBP One app will be able to schedule an appointment to present themselves at the following ports of entry:

- Arizona: Nogales;

- Texas: Brownsville, Hidalgo, Laredo, Eagle Pass, and El Paso (Paso Del Norte); and

- California: Calexico and San Ysidro (Pedestrian West – El Chaparral).

During their inspection process, noncitizens must verbally attest to their COVID-19 vaccination status and provide, upon request, proof of vaccination against COVID-19 in accordance with Title 19 vaccination requirements.

Individuals will be able to schedule appointments in CBP One in the coming days. The CBP One

application is free to download and available in the Apple and Google App Stores as well as at https://www.cbp.gov/about/mobile-apps-directory/cbpone.

**Enhanced Use of Expedited Removal**

We will comply with the court orders that require us to continue enforcing the Title 42 public health order. There are, however, migrants who cannot be expelled pursuant to Title 42 authorities and as a result are processed under Title 8 authorities. For those processed under Title 8, we are increasing and enhancing our use of expedited removal, which allows for the prompt removal of those who do not claim a fear of persecution or torture or are determined not to have a credible fear after an interview with an Asylum Officer, in accordance with established procedures.

This enhanced expedited removal process will include: dedicating additional resources including personnel, transportation, and facilities; optimizing processes across DHS and DOJ; and working with the State Department and countries in the region to increase repatriations. We also will continue to process individuals under the interim final rule published in March 2022 outlining procedures for U.S. Citizenship and Immigration Services to process asylum requests for noncitizens found to have a credible fear. Together, these measures will allow for the prompt removal of those who do not have a legal basis to stay and improve our overall preparedness for when the Title 42 public health order is lifted. Individuals removed under Title 8 are subject to a five-year bar on admission and potential criminal prosecution should they seek to reenter.

**Notice of Proposed Rulemaking**

As a complement to these efforts, and in response to the unprecedented surge in migration across the hemisphere and to reduce encounters at our border, DHS and DOJ intend to issue a proposed rule to provide that individuals who circumvent available, established pathways to lawful migration, and also fail to seek protection in a country through which they traveled on their way to the United States, will be subject to a rebuttable presumption of asylum ineligibility in the United States unless they meet exceptions that will be specified. Individuals who cannot establish a valid claim to protection under the standards set out in the new rule will be subject to prompt removal under Title 8 authorities, which carries a five-year ban on reentry. DHS and DOJ will invite public comment on the proposed rule.

Overall, through today's announcements, DHS is strengthening the availability of legal, orderly pathways to the United States while imposing consequences on those who fail to use pathways made available to them by the United States and its regional partners.

These new measures complement ongoing efforts to increase refugee resettlement from the Western Hemisphere. The U.S. Government intends to welcome at least 20,000 refugees from

Latin America and the Caribbean in Fiscal Year 2023 and 2024, putting the United States on pace to more than triple refugee admissions from the Western Hemisphere this Fiscal Year alone. This delivers on the President's commitment under the Los Angeles Declaration for Migration and Protection to scale up refugee admissions from the Western Hemisphere.

Taken together, these efforts will: reduce irregular migration by disincentivizing migrants from taking the dangerous journey to the southwest border of the United States and attempting to cross without authorization; significantly expand lawful pathways to the United States for vetted individuals; and reduce the role for – and profits of – smuggling networks that callously endanger migrants' lives for personal gain.

The Department is taking these measures in light of Congress's failure to pass the comprehensive immigration reform measures President Biden proposed on his first day in office and the economic and political instability around the world that is fueling the highest levels of migration since World War II, including throughout the Western Hemisphere. The surge in global migration is testing many nations' immigration systems, including that of the United States. The actions announced today are part of the Biden-Harris Administration's ongoing commitment to enforce our laws and build a fair, orderly, and humane immigration system, and build on efforts outlined in the Department's December 2022 Update on Southwest Border Security and Preparedness. Today's announcements also show the imperative of partner countries working together, as agreed in the Los Angeles Declaration following the Summit of the Americas, to take action against smugglers and provide protection to asylum seekers. Hemispheric challenges require hemispheric solutions.

Everyone agrees that we are operating within a fundamentally broken immigration system. The steps we are taking reflect the constraints of our outdated statutes, which have not been updated in decades and were designed to address a fundamentally different migratory reality than that which exists today along the southwest border and around the world. As it has since its first day in office, the Biden-Harris Administration continues to call on Congress to pass legislation that strengthens border security, holistically addresses the root causes of migration, and improves legal pathways. We also encourage Congress to provide critical funding and advance bipartisan efforts to create a fair, fast, and functioning asylum system – enabling those who merit protection to quickly receive it, and those who do not to quickly be removed. In the absence of such action, the Administration is committed to pursuing every avenue within its authority to secure our borders, enforce our laws, and stay true to our values as we build safe, orderly, and humane processes.

###

**Appendix II – Egregious Public Safety (EPS) Concerns**

An **EPS** case is defined by USCIS and ICE in the 2020 Memorandum of Agreement (MOA) Between DHS USCIS and DHS ICE Regarding the Referral of Immigration Benefit Fraud and Public Safety Cases as a case where information indicates the noncitizen is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

a) Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the Immigration and Nationality Act (INA).
b) Illicit trafficking of controlled substances as defined in section 101(a)(43)(B) of the INA.
c) Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.
d) Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.
e) Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.
f) An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.
g) An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.
h) An offense relating to racketeer influenced corrupt organizations as defined in 101(a)(43)(J) of the INA.
i) An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.
j) An offense relating to alien smuggling as defined in section 101(a)(43)(N) of the INA.
k) An offense relating to an attempt or conspiracy to commit any EPS offense in accordance with 101(a)(43)(U) of the INA.
l) An offense related to Human Rights Violators, including aliens who persecuted others as described in sections 101(a)(42)(B), 212(a)(2)(G), 212(a)(3)(E), 212(a)(3)(G), 212e, 237(a)(4)(D), 237(a)(4)(E), 237(a)(4)(F) of the INA, known or suspected street gang members, or Interpol hits.
m) Re-entry after an order of exclusion, deportation or removal subsequent to a conviction for a felony where Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

**Appendix III – Adam Walsh Act**

Under the **Adam Walsh Act**, the term "specified offense against a minor" means an offense against a minor (defined as an individual who has not attained the age of 18 years) that involves any of the following:

- An offense (unless committed by a parent or guardian) involving kidnapping;
- An offense (unless committed by a parent or guardian) involving false imprisonment;
- Solicitation to engage in sexual conduct;
- Use in a sexual performance;
- Solicitation to practice prostitution;
- Video voyeurism as described in 18 USC 1801;
- Possession, production, or distribution of child pornography;
- Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such
- conduct; or
- Any conduct that by its nature is a sex offense against a minor.

**Appendix IV – Health and Human Services – 2023 Federal Poverty Guidelines**

***Poverty Guidelines for the District of Columbia and 48 Contiguous States***

| 2023 POVERTY GUIDELINES FOR THE 48 CONTIGUOUS STATES AND THE DISTRICT OF COLUMBIA | |
|---|---|
| Persons in family/household | Poverty guideline |
| 1 | $13,590 |
| 2 | $18,310 |
| 3 | $23,030 |
| 4 | $27,750 |
| 5 | $32,470 |
| 6 | $37,190 |
| 7 | $41,910 |
| 8 | $46,630 |
| For families/households with more than 8 persons, add $4,720 for each additional person. | |

*Poverty Guidelines for Alaska*

| 2022 POVERTY GUIDELINES FOR ALASKA | |
|---|---|
| Persons in family/household | Poverty guideline |
| 1 | $16,990 |
| 2 | $22,890 |
| 3 | $28,790 |
| 4 | $34,690 |
| 5 | $40,590 |
| 6 | $46,490 |
| 7 | $52,390 |
| 8 | $58,290 |
| For families/households with more than 8 persons, add $5,900 for each additional person. | |

*Poverty Guidelines for Hawaii*

| 2022 POVERTY GUIDELINES FOR HAWAII | |
|---|---|
| Persons in family/household | Poverty guideline |
| 1 | $15,630 |
| 2 | $21,060 |
| 3 | $26,490 |
| 4 | $31,920 |
| 5 | $37,350 |
| 6 | $42,780 |
| 7 | $48,210 |
| 8 | $53,640 |
| For families/households with more than 8 persons, add $5,430 for each additional person. | |

**Appendix V – Request for Evidence Step-by-Step Guide**[2][3]

- We are only issuing an RFE for two reasons:
  - If a Supporter has failed to submit any documentation evidencing their legal immigration status, or
  - If a Supporter has submitted illegible documents.
- ***No other*** RFEs are being issued at this time.

- It should be noted that if a Supporter failed to submit evidence of their legal immigration status and Staff are able to confirm the Supporter's legal immigrations status through a use of USCIS records an RFE ***does not need*** to be issued. This confirmation would need to be an exact match, including their Name and Date of Birth. A system check in PCIS could be performed with the biographical information submitted on Form I-134A, as well as any other documents that may evidence an A# and/or a Social Security Number (from tax records).

***Entering into Case Review***

- ☐ Start reviewing the Form I-134A by beginning **"Case Review"**
  - From My Cases select "Actions" next to case and open case details
  - From Case Details you go to "Tasks" and select "pending" from the work Status to bring you to I-134A Case Review Page

***Issuing an RFE in ELIS***

- ☐ Under **"Case Data"** click on **"Evidence and RFE,"** about half way down, you will see the **RFE Banner**
- ☐ Under the **RFE Banner** select the Letter Type, **"VER Request for Evidence Form I-134 (84 days),"** then under RFE Type, select **"Initial"**
- ☐ This will launch you into the ECHO system

***Issuing an RFE in ECHO***

- ☐ In ECHO you will select your letter type, selecting the appropriate form **VER 001, VER 002 (I-134) or VER 003, VER 004 (I-134A) Letter**
- ☐ Once you check, it click the **Compose** button
- ☐ This will bring you to the Edit Screen where you will have to add the Supporter's information in the Petitioner Line and also add the Beneficiary.
- ☐ Click on the **Edit Contact Info** button to edit the Supporter and Beneficiary information
- ☐ Under the **"Petitioner Information"** click on the **green plus sign** to add the Supporter's Name and Contact Information.
- ☐ Under the Edit Contact Info – Add Petitioner screen, add the Supporter's information, clicking the **"Save Petitioner"** button.
- ☐ Under the "Beneficiary Information" click on the magnifying glass to edit the beneficiary information. You will have to delete out the Supporter's Information, including the Date of Birth and enter the Beneficiary's name. Click the **"Save Beneficiary"** button

---

[2] This Step-by-Step guide is intended to assist with issuing a Request for Evidence. Currently this is to be used solely for issuing an RFE for lack of evidence showing immigrations status and for illegible documents.
[3] Drafted May 12, 2022, updated January 17, 2023

- Please note you do no need to add the Beneficiary's address. This is different from our training, and we confirmed that you ***do not*** need to enter the beneficiary's address.

- ☐ Once done, click **"Close Window"** and this will bring you back to the Edit screen in ECHO.
- ☐ There is no need to edit the letter, once you confirm that the Beneficiary and Supporter are correctly listed, you can click on the **"Build"** button.

***Final Review***

- ☐ This will bring up a PDF version of the letter, once again review the contact information, once confirmed, click on the **"Finalize"** button. This will create a pop-up window to confirm the return date. This is automatic and confirm that.
- ☐ Once the letter is finalized, you will then have to click the **"Mark Sent"** button to send the letter out to ELIS for notification to the Supporter.

**Appendix VI – Form I-134/I-134A Tip Sheet**

**Supporter Status:**

- Supporter needs to provide some type of proof as to their immigration status in order to support:
  - US Birth Certificate and/or Passport (does not need to be both)
  - Naturalization Certificate
  - Legal Permanent Resident Card (LPR)
  - Other acceptable status for supporter's can be found in the Form I-134 - Status Update - Reference Guide - 20221102 (002)
  - A driver's license and/or social security card alone are NOT acceptable proofs of status
- If uncertain about a supporter's status, please place a question in the **USCIS Detailee Reviewers Discussion channel** and please include receipt#.

**Supporter sponsorship:**

- It is ok for a supporter to apply for an immediate family member or other family members (spouse/fiancé, child, sibling parent), this program does not preclude them from doing so; however, check to see if supporter has filed multiple I-134/I-134As for other beneficiaries claiming they are a fiancé as well check to see if an I-129F has been filed and denied, could be possible fraud, then escalate up.
- If supporter has also filed an I-130 or I-129F for the beneficiary, still ok to proceed with I-134A.
- If the supporter states the beneficiary will live elsewhere other than with the supporter, that is ok to process, no requirement for beneficiary to live with supporter.
- When you have a case where the supporter is filing for a few beneficiaries and does not upload sufficient evidence/documents/proof of status for one case, but the other cases have it in their evidence, you can still confirm the one that lacks it, but please place a comment in the case that lacks the evidence referencing to the IOE# that contains the evidence.
- Supporters must sign Form I-134/I-134A, page 11, Part 5, #6-Signature of Individual Agreeing to Financially Support the Beneficiary.
  - Acceptable signatures are initials, X and if there are two signatures, as long as one belongs to the financial supporter.
  - No signature at all (blank) would be a non-confirmation.

**I-134/I-134A application questions:**

- If supporter responds only "Yes" under Intent to Provide Specific Contributions to the Beneficiary, page 8, Part 3, #27-29, non-confirm, those are not acceptable responses; we're looking to see that the supporter responds affirmatively to accepting financial responsibility and assisting the beneficiary in their basic needs.
  - The supporter's response does not need to specifically state "learn English" or "get a job" but needs to be an affirmative response.
  - If supporter responds in any other language than English, non-confirm.
- If there are no dates entered under the Beneficiary's Anticipated Length of Stay, page 2, Part 2, #16, you can continue to process, this is not a requirement.

- If there is no X under Beneficiary's Financial Information, Beneficiary's Income, page 3, Part 2, #18 & 19, you can continue to process, this is not a requirement.
- The beneficiary does not need to show proof of status or photo ID nor sign the form.
- If the Supporter provides information requesting Beneficiary's information needs updating (DOB/Passport #/Expiration date/Email), please update it under the Beneficiary Account.
- If the supporter references and/or alludes to a "host" (an unknown/unidentified 3rd party) place a question in the **USCIS Detailee Reviewers Discussion channel** for review/guidance and hold in a folder in your queue. Please be sure to include receipt number and tag Manpreet Dhanjal and Russ Filighera for review. They or a SME will reply.
- When non-confirming a case, please place a case comment as to why and please be mindful that our case comments are subject to FOIA.
    - Non-confirm for lack of status to support
    - Non-confirm for lack of evidence/supporting documents
    - Non-confirm for lack of responses to questions #27-29
    - Non-confirm because of insufficient financial evidence per HHS guidelines
    - Non-confirm for insufficient supporter signature on form
    - Supporter has numerous accounts exceeding the number of beneficiaries to financially support based on the evidence provided (use for the known serial supporters)
    - Supporter asked to withdraw so USCIS non-confirmed the case, without prejudice (use when you see a letter from the Supporter requesting to withdraw Form I-134/I-34A

**Financial support**:

- If the supporter lacks sufficient financial funds to support based on HHS poverty guidelines, place the case on the tracker and hold in a folder in your queue.
- If supporter does not submit Form 1040 and/or1040 Tax Transcript (taxes) but shows proof of other financial evidence and meets the HHS Poverty Guidelines, ok to proceed to confirm case.
- Form 1040 and/or 1040 Tax Transcripts are not required as long as they show proof of financial support through other means.
- If the supporter's AGI (adjusted gross income) from their Form 1040 taxes (usually line 11) or 1040 Tax Transcript, shows sufficient financial funds to support beneficiary(s), except if they've hit the 11+ limit) plus themselves and number of others living in household, case is ok to confirm, no need to look at all other financial documents provided.
- If the AGI is insufficient to meet guidelines or in some cases a negative dollar amount, but there is other evidence such as an employment validation letter, bank account balances, W2's etc. that do meet the guidelines – continue to process the case.
- When counting totality of beneficiaries + # in HH, please include prior confirmed I-134/I-134As to that total number.
- If there is a co-sponsor to assist with the financial support, we do not need to confirm co-sponsor's status as long as the person signing the I-134/I-134A has status.
- Home/vehicle equity is not considered when calculating income.
- Guidance is forthcoming on US bank documents in a foreign language as well as foreign bank documents. If encountered place a question in the **USCIS Detailee Reviewers Discussion Chat** for review/guidance. Please be sure to include receipt number and tag Manpreet Dhanjal and Russ Filighera for review. They or a SME will reply.

**RFE:**

- The only 2 scenarios' when we RFE:
    - If the supporter has provided no proof of status and you cannot find any evidence of status in our databases, RFE for status; remember native born USC will not be in our databases.
    - If the evidence the supporter submits is blurry or illegible.
        - However, first try looking under the Raw Documents in their account under Notices and Snapshots (for the I-134) and Evidence and RFE (for all supporting documentation), if after looking there it is still blurry or illegible, RFE for evidence.
- When we do not RFE:
    - If supporter did not provide their A# or evidence of proof of status, and you confirm they are a USC or have another acceptable status to support after a search in PCIS or other database, you can proceed with the case, no need to update their ELIS account or RFE. But place a comment: verified status via database.
    - If supporter provides no proof of financial support or no supporting documents at all, non-confirm the case, do not RFE and do not place on tracker.

**Duplicate cases:**

- If you find a true duplicate, 5 data points match exactly: (1) Name, (2) DOB, (3) Passport #, (4) Passport Expiration date, (5) email address:
    - Before administratively closing the new filing, please ensure the first case was travel authorized, if travel authorization has not yet expired, proceed to administratively closing the new filing.
    - If the initial filing was NOT travel authorized OR if the travel authorization time period has expired, continue to process the new case. You can add a comment: duplicate of confirmed case IOExxxxxxx but the case was not travel authorized. Or; case was travel authorized but has expired.
    - Administratively closing because duplicate case IOExxxxxxx has updated DOB/Passport #/Passport Expiration date/Email, etc.

**TECS cases:**

- When a case falls into your queue that may have been bundled with related cases, and under the Task Tab workflow status it states: Backend TECS Review, Review Backend TECS Hit Check, please unassign that case as it needs to complete the process prior to processing.
- If you pull a case that has related cases with mixed TECS banners (green/red), please place in the chat with the IOE#s and do not process until you receive a message.

**Case State Information:**

- Evolution of Case State:
    - Resolving Preprocessing Checks = case is ready for review
    - Awaiting Beneficiary Attestation = case has been confirmed awaiting beneficiary to attest

- Accepted = case is ready to review and/or Awaiting Beneficiary Attestation (this is found in the ELIS account page of the supporter at the bottom for the I-134A)
- Closed – Confirmation = case was confirmed, beneficiary attested, now closed
- Closed – Not Confirmed = case was not confirmed, and it is now closed
- Administratively Closed = case was administratively closed (probably because it was a duplicate)

**Tracker**:

- Cases that go on tracker:
  - Financial support cases (i.e., insufficient financial support or questionable financials)
  - 11+ Serial Supporter cases
  - Record Of Action (ROA) banner cases (yellow)
- When placing cases on the tracker, and there are multiple cases to one supporter, it is not necessary to place all cases, only one IOE#, and place in notes number of how many other cases.

**USCIS Detailee Reviewers Discussion Channel**:

- When in doubt about anything, please place the question in the **USCIS Detailee Reviewers Discussion channel** for someone to respond prior to taking action on a case.
  - Please remember to include the IOE# of the case when you place a question in the chat for us to review.
- If you have not received a response to your question in the chat, please repost question in the chat.
- Please check the chat for questions that may have already been asked/answered, by doing a search in the **USCIS Detailee Reviewers Discussion channel**.

**Appendix VII – Form I-134/I-134A Frequently Asked Questions (updated 4/11/2023)**

**Administrative Issues**

- **Why are there two form – Form I-134 and Form I-134A? And what does it mean for my review?**

  The Form I-134, Declaration of Financial Support, was utilized by supporters filing for individual beneficiaries for both *Uniting for Ukraine* and *Process for Venezuelans*. In January 2023, when *Processes for Cuba, Haiti, and Nicaragua* was announced, USCIS amended the Form I-134 to the Form I-134A, *Online Request to be a Financial Supporter and Declaration of Financial Support*, under the direction of the Office of Information and Regulatory Affairs (OIRA), a Division within the Office of Management and Budget (OMB).

  Form I-134A is the only form being used for both *Uniting for Ukraine (U4U) and Processes for Cubans, Haitians, Nicaraguans, and Venezuelans (CHNV).*

- **What Teams Channel should I post questions to?**

  Please refer to the Reviewer Discussion Channel within U4U to post questions. The General channel is for broadcast/ team messages. If you have a case that needs review or a non-confirmation review, please place that inquiry onto the Case Tracker. Please note when adding a case to the Case Tracker, please do not enter any decision into ELIS, just leave it blank and assigned to yourself.

- **Does a Supporter have to file a Form I-134A for every beneficiary including minor children of parents claimed on a Form I-134A?**

  Yes, a Form I-134A needs to be filed for every individual separately; for every individual beneficiary including minor children.

- **If I catch a mistake, what should I do if I confirmed already?**

  Be careful when selecting Confirmation or Non-confirmation. But if you make a mistake and select the wrong decision (confirm vs nonconfirm), please email your Supervisor with a cc to Manpreet Dhanjal and Russ Filighera with the case information ASAP.

  The ELIS team has developed a pop-up to remind you of the decision you are rendering. The ELIS team has also created a re-assess (re-open) feature that is available to a Level 6 Supervisor.

<u>Review Process</u>

- **Does the lawful Status have to be the front and back of the document?**

  No, the evidence can be the front of the document if it provides enough information to confirm the lawful status (example LPR card front) in other USCIS systems.

- **Can we accept an expired US passport for Lawful Status?**

  Yes, we can accept an expired US passport to evidence lawful status (a US Citizen) for the supporter.

- **Can I render a non-confirmation decision without a QA Review?**

  We are only doing a QA review on a financial non-confirmation. If you wish to non-confirm a supporter for lack of financials, please place case receipt number on the Case Tracker on the Form I-134 Review Team – Teams Page.

  However, in the following categories, a decision can be rendered without a QA Review:

  - If there is no Beneficiary listed on Form I-134, please issue a non-confirmation letter, you do not need to place that case on the spreadsheet. We have seen some "over eager" folks just wanting to help, but they must name the individual they are helping

  - If someone doesn't submit ***any*** financial evidence, issue a non-confirmation letter. If you don't see any tax returns, any bank accounts, any investment accounts, any financials at all, go ahead and issue a non-confirmation. There is no need to submit the case on the spreadshee.

  - If you see a Supporter that has an asylum application pending, that is not considered lawful status. We have seen Supporters submit evidence of their asylum application pending to be either an asylum application receipt or an Employment Authorization (c)(8). You can render a non-confirmation without QA review.

    - Please note that some asylum applicants have an underlying non-immigrant visa that allows them to be in lawful status, i.e. TPS, J-1 student visa, F-1 student visa, and/or work related visa. If you have any questions, please submit them in the "Reviewer Discussion" section of the U4U – Verifications Team site.

- **Can I render a decision if there is an open TECS Task?**

  Currently ELIS has corrected the TECS glitch and is not releasing any cases into Case Review unless the TECS check has been run. However, if you have any cases with an open TECS task. Do not assign the TECS task to yourself. It will be assigned automatically to someone in FDNS for review. So, if you have a case with a result and it isn't resolved, just put it aside and wait till the TECS hit is resolved. If you see this green light banner result you can proceed:

Case - IOE[redacted] Open Evidence

I-134 Task - *Case Review Read Only* -

TECS Results do not affect eligibility

Risk and Fraud

If you see this red light banner result, please place on the tracker for further review for now:

Case - IOE[redacted]

I-134 - *Declaration of Financial Support*

TECS Results affect eligibility

- **What do I do if the Supporter leaves Part 3, Question 27, Question 28, or Question 29 blank or with a negative response on whether they intend to provide financial support to the Beneficiary?**

  These questions were added to understand the intent of the supporter. It is not our role to weigh those answers, rather we want to see an answer in the questions. If a supporter simply answers "yes" for all three questions, you can non-confirm them. However, if there is a response, you should continue processing.

- **What do I do if the Beneficiary does not have a Ukrainian Passport and/or the Beneficiary is not Ukrainian?**

  If you see a Beneficiary that does not have a Ukrainian Passport and/or the Beneficiary is not Ukrainian, you should render a decision for the Supporter (confirmation or non-confirmation), without it going for QA review. Based upon feedback with CBP, myUSCIS has built in an attestation for the Beneficiary to explain how they may be connected to a Ukrainian Beneficiary. We are not reviewing the Beneficiary data as CBP will be making that final determination.

- **What do I do if I see on the worksheet it says "Applicant is a USC. This case should not be approved"**

  There is a process with the the CIS worksheet for US Citizens, it will say "Applicant is a USC. This case should not be approved" or that you have to issue an A number. Unfortunately, this is a statement in ELIS and doesn't pertain to our review process. You can review the case as you think and you should ***Not*** issue an A number for a USC.

- **When do I update name and DOB and what happens?**

  When the document or ELIS data clearly shows a supporter made a typo in the Form I-134A application process you can update name and DOB. This will automatically initiate another TECS check and could create a task that will hold the case from being able to be rendered. There is a known issue with ELIS where some DOBs may be off by 1 day due to time zone issues. You *can* update the DOB if the Supporter DOB entered on the form does not match the uploaded identity document.

  1. Under the Date of Birth section for the Supporter, you can add a new DOB (upper right "+ Add" button
  2. Once added, at the far-right side for the correct DOB, click on the 3 dots
  3. A drop down will appear indicating Make Primary or Make Inactive
  4. Select Make Primary and the "N" in the Primary column will change to "Y"

  We understand that a new TECS check will be re-run if a new DOB is entered into ELIS. If you have any of these, you may correct the DOB based on the document upload.

- **Does relationship of beneficiary to supporter matter?**

  No, we have seen the relationship question filled in and we have seen the relationship question to be empty.

- **What RFEs are available?**

  We have two RFE's available for our process, they are the same RFE's but is dependent if you are working the previous I-134s or the current I-134As.

  For I-134s, they are:

- VER – 001 – No Evidence for Requirement was Submitted – this RFE should be used if the Supporter is missing Legal Status Documents.
- VER – 002 – Illegible Documents – Legal Status and/or Financials – this RFE should be used if the Supporter submitted those documents, and you cannot read them.

For I-134As, they are:

- VER – 003 – No Evidence for Requirement was Submitted – this RFE should be used if the Supporter is missing Legal Status Documents.
- VER – 004 – Illegible Documents – Legal Status and/or Financials – this RFE should be used if the Supporter submitted those documents, and you cannot read them.

If the Supporter has not have provided enough information for the Beneficiary, i.e. not enough financial documents, we would issue a non-confirmation. At this time, this non-confirmation would go on the QA review spreadsheet.

- **What does it mean if my "Case Review - Suspended," in the context of 10+ or more Beneficiaries?**

  ELIS has built in automatic referral to FDNS when a supporter files more than ten (10) I-134/I-134As beneficiary applications. This automatic referral is triggered automatically when the eleventh application is filed. The automatic referral for 11 cases also includes any duplicate filings that a supporter may have filed. Once a referral is made to FDNS, the case will now be listed as "Case Review - Suspended." Until FDNS releases it or resolves it, a reviewer will be unable to review the case.

  FDNS completes a case by uploading a Record of Action (ROA) for a Tier 2 review before going back to reviewers. In some cases, the application may be "taken" over by Tier 2 reviewer and finalized.

<u>Financial Questions</u>

- **When reviewing a supporter tax return do I use adjusted gross income or taxable income?**

  You will want to review the Supporter's Adjusted Gross Income ***NOT*** their taxable income.

- **What is considered Federal Means trusted benefits?**

  Income from illegal sources or means-tested public benefits, as defined in 8 CFR 213a.1, is excluded from consideration in meeting at least 100% of the HHS poverty guidelines.

  This includes public benefit, which is funded in whole or in part by funds provided by the Federal Government and/or State Government. Some examples we have seen include, but are not limited to, the Federal Child Tax Credit that was administered last Summer, public assistance funds, and/or state assistance funds.

- **How do I calculate household total members?**

  For calculating household total members for the purposes of the Form I-134, you look to see how many dependents is first declared on the Form I-134. If there is evidence of a Tax Filing, you also look to see how many dependents are declared on the Tax Filing. It is possible that there is a difference between the two forms as a spouse may not be included on the Form I-134.

  Under the totality of the circumstances, look to see what the lowest number of dependents and/or highest income is to better assist the Supporter. Thus, if it helps them calculate a lower number as declared on the Form I-134 and you are only using the Supporter's income, then use that information. However, if you need to pull the spouse's income then you add the spouse as a dependent for household income purposes.

- **Is a supporter required to provide tax information?**

  Tax documentation is not a requirement. The Supporter does need to provide evidence to show enough liquid assets to exceed the poverty threshold

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants.* | Case 6:23-cv-00007 |

# EXHIBIT 22



***Step-by-Step Guide for Form I-134A,***
***Online Request to be a Supporter and Declaration of Financial Support***[1][2]

***Assignment of Work***

- ☐ Obtain a Case from ELIS by selecting **"Get Work"** from ELIS My Cases Dashboard
  - Make sure under Location you select "HQC" and then under Form Type Select I-134 or I-134A, depending on our assignment
  - Then under Program, "UHP" for the Verification staff with "Ukraine," or
  - Under Program, "CHNV" for the detailee staff with "Cuba," "Haiti," "Nicaragua," or "Venezuela;"
    - For the detailees, please make sure to prioritize "Mexico" as a beneficiary location when that queue reaches 100
  - Select # cases to pull from "Case Review" queue

- ☐ Start reviewing the Form I-134A by beginning **"Case Review"**
  - From My Cases select "Actions" next to case and open case details
  - From Case Details you go to "Tasks" and select "pending" from the work Status to bring you to I-134A Case Review Page

***Background Checks – Risk & Fraud***

- ☐ Under **"Risk & Fraud"**
  - Verify TECS Check has been completed
    - If relates, "red banner," from BCU issue **Non-Confirmation Letter**
    - If it does not relate or "green banner," continue reviewing

- ☐ Under **"Prior and Related Cases"** or **"Names"** check to see if Supporter has filed additional I-134A applications
  - Open cases should have been assigned to you when you clicked on the "pending" task to conduct the Case Review
  - Also looking to see if Supporter is filing for 10 or more Beneficiaries for automatic FDNS referral

- ☐ Under **"Prior and Related Cases"** or **"Names"** check to see if Supporter has previously filed 3 or more I-129F, Petition for Alien Fiancé(e), applications
  - Looking to see if Supporter may be involved in abuse of immigration system and/or trafficking
  - Also check PCIS to see any additional I-129F filings
  - If so, refer to FDNS through Teams Channel

---

[1] This Step-by-Step guide is intended to assist with a review. For detailed information, please see the Verification User Guide.

[2] Drafted April 29, 2022; revised June 15, 2022, October 18, 2022, January 17, 2023, and April 11, 2022

- ☐ Check ELIS and PCIS to see if Supporter has previously filed any approved or pending Form I-600A, Form I-600, Form I-800A, Form I-800, or Form I-130 (on the basis of adoption) filed by the supporter
    - o Looking to see if Supporter is attempting to circumvent the intercountry adoption agreements to expedite any Ukrainian adoptions
    - o If so, refer to FDNS through Supervisor **(at this time send to Teams Channel until process to refer to FDNS is determined)**

*Case Review*

- ☐ Under **"Immigration Status"** check financial supporters' status under the Form I-134A
- ☐ Verify immigration status by looking at the documentary evidence submitted by Supporter.
    - o Looking to see if Supporter is in lawful immigration status;
    - o If missing evidence of lawful immigration status, can issue RFE;
        - ▪ If not in lawful immigration status, issue **"Non-confirmation"** letter;
    - o If in lawful immigration status, continue reviewing
    - o If question on status place question on teams Channel for further review

- ☐ Under **"Financial Information"** and **"Financial Support to other Beneficiaries"** look to see the total income of the Supporter, any additional supporters (Spouse, Friend, Partner, religious organization, non-profit, and/or company), while also seeing the total Beneficiaries the Supporter is responsible for (including dependents and aggregate Beneficiaries)
    - o May need to review documentary evidence to find financial information, along with total number of beneficiaries
    - o Evidence provided supersedes data entry when determining sufficiency of support
    - o Will need to verify total beneficiaries and income to see if Supporter can support Beneficiaries at 100% of the HHS Federal Poverty Guidelines
    - o Non-confirmations are subject to 100% review by QA/SME team, location to be sent for the spreadsheet to track the cases.

*Final Review*

- ☐ If Supporter can support aggregate Beneficiaries, then issue **"Confirmation"** letter
- ☐ If Supporter can not support aggregate Beneficiaries, then issue **"Non-Confirmation" letter**

## *Form I-134 – Legal Status*

*Quick Reference Guide*

| Form or CODE | Name of form or code | Continue Processing Financials | Not sufficient status | Additional data |
|---|---|---|---|---|
| I-485 approved | Adjustment of Status/Green card (I-551) | X | | |
| I-485 pending | Adjustment of Status/Green card (I-551) | | X | Look for a lawful status or parole, DA, or DED, that IS able to support |
| B2 valid date | Visitor Visa | | X | This alone is not valid, look for a lawful status (or parole, DA, or DED) that IS able to support |
| B2 overstay | Visitor that did not depart | | X | This alone is not valid, look for a lawful status (or parole, DA, or DED) that IS able to support |
| C08 | EAD category - work authorized based on pending asylum | | X | Look to see if there is evidence that shows granted asylum or is there is another lawful status or parole, DA, or DED |
| I-821 TPS approved | Temporary Protected Status | X | | Expired TPS may be within auto extension period and should be considered valid TPS |
| I-821 TPS in process | Temporary Protected Status | | X | Check for most recent status in ELIS, might be approved at time of review. Expired TPS but within auto extension period should be considered TPS. If this is an initial application, applicant doesn't have TPS until I-821 is approved. |
| A12 | EAD category - Approved TPS | X | | Dates must be valid Expired TPS but within extension period should be considered TPS Applicant retains TPS if country still designated for TPS and previous TPS grant was not revoked, withdrawn, or denied. |
| C19 | EAD category - Approved TPS | X | | Dates must be valid Expired TPS but within extension period should be considered TPS Applicant retains TPS if country still designated for TPS and previous TPS grant was not revoked, withdrawn, or denied. |
| I-589 pending | Asylum Application | | X | Look for a lawful status (or parole, DA, or DED) that IS able to support |
| I-589 approved | Asylum Application | X | | |
| I-765 | Work Authorization | | | Depends on the underlying reason. Look for a lawful status (or parole, DA, or DED) that IS able to support |
| H2B visa | Temporary Worker Visa | X | | Date of visa must be current |
| PEN | COA code in PCIS | | | More data required, need to look for a lawful status or parole, DA, or DED) that IS able to support |
| I-129 | Petition for Nonimmigrant Worker | X | | More data required, need to look for a lawful status or parole, DA, or DED) that IS able to support |
| I-131 | Application for Travel Document | | | More data required, alone not proof of valid status. Need to look for parole data or proof of lawful status or DA or DED) |
| C09 | EAD category work authorized based on pending I-485 | | X | Until I-485 is approved this alone is not a valid status. Need to look for underlying lawful status or parole, DA, or DED) that IS able to support |
| I-130 | Petition for Alien Relative | | X | This alone is not valid, look for a lawful status (or parole, DA, or DED) that IS able to support |
| I-140 | Immigrant Petition for Alien Worker | | X | This alone is not valid, look for a lawful status (or parole, DA, or DED) that IS able to support |
| I-360 | Petition for Special Immigrant | | X | This alone is not valid, look for a lawful status (or parole, DA, or DED) that IS able to support |
| J1 | Exchange visitor visa or DS2019 | X | | Visa dates must be valid, please note that som J1s will be notated as duration of stay (D/S), if you see this, you will need to dig further to see if they are maitning their status. |
| F1 | Student visa or I-120 | X | | Visa dates must be valid, please note that som F1s will be notated as duration of stay (D/S), if you see this, you will need to dig further to see if they are maitning their status. |
| C03B | EAD category - Stu: Post-Completion OPT | X | | Visa dates must be valid |
| IJ | COA in PCIS for Immigration Judge | | | More detail required on underlying status, usually Non-Confirmed, but could be granted by the judge and that would be a confirmation |
| DA | PCIS will show this from ADIS - entry using advance parole | X | | Dates must be valid |

| | | | | |
|---|---|---|---|---|
| UHP | COA in PCIS for Ukraine Humanitarian Parole | X | | Review financials carefully, they just entered U.S. |
| A10 | EAD category - withholding of removal | X | | |
| I-821D DACA | DACA (same form used for TPS)(NOTE: "D" form is different than TPS form) | X | | Must be approved and current dates |
| H1B visa | Temporary Specialty Occupation Worker Visa | X | | Dates must be current |
| IR1 or IR6 | Category on LPR card | X | | |
| DV1 | Category on LPR card | X | | |
| IR0 | Category on LPR card | X | | |
| AS1 or AS6 | Category on LPR card | X | | |
| RE1 or RE6 | Category on LPR card | X | | |
| LPR card expired | | X | | Person should have a pending I-90 or N400 filed, but not required |
| IB1 | Visa Self-Petitioning spouse of U.S. citizen | X | | Usually shown on a 797 notice from approved I-360 |
| CF1 or CF6 | Category on LPR card | X | | Should have a pending I-751 to remove conditions; please note will need further review if there is no pending I-751 and the card has expired |

**United States District Court**
**Southern District of Texas**
**Victoria Division**

STATE OF TEXAS, *et al.*,
*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants*.

Case 6:23-cv-00007

# EXHIBIT 23

PLAINTIFF'S
EXHIBIT

**U4U Supporter Vetting Process for FDNS and SCOPS BCU**

| Version | Date | Author | Description of Changes |
|---|---|---|---|
| 1.0 | Oct 11, 2022 | M. Dhanjal | Issued |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**U4U Supporter Vetting Process for FDNS and SCOPS BCU**

**Introduction**

On April 21, 2022, President Biden announced *Uniting for Ukraine (U4U)*, a streamlined process for Ukrainian citizens and their immediate family members who have been displaced by Russia's aggression in the Ukraine to come to the United States and stay temporarily for a two-year period of parole. To be eligible, Ukrainian citizens and their immediate relatives must have been physically present in Ukraine as of February 11, 2022, have a supporter in the United States who agrees to provide them with financial support for the duration of their stay in the United States, complete vaccinations and other public health requirements, and pass biometric and biographic vetting. Ukrainian citizens and their family members approved pursuant to this process will be authorized to travel to the United States for the purpose of seeking a discretionary grant of parole, on a case-by-case basis, for urgent humanitarian reasons or significant public benefit, for a period of up to two years.

The process begins with a supporter[1] submitting a Form I-134, *Declaration of Financial Support*, to establish that the supporter has sufficient financial resources to support the beneficiary for the duration of the parole period. Occasionally, a non-profit organization or medical institution may serve as a supporter, with an authorized individual completing the Form I-134. All Forms I-134 submitted as part of the *Uniting for Ukraine* process are filed electronically; no paper filings are accepted.

**A. Purpose and Scope of the Standard Operating Procedure**

USCIS established guidelines to help ensure the integrity of the U4U process through the screening and vetting of program supporters. USCIS will screen and vet supporters to protect beneficiaries who are paroled into the United States through this process.

This Standard Operating Procedure (SOP) establishes procedures to ensure that Fraud Detection and National Security (FDNS) and Service Center Operations (SCOPS) Background Check Unit (BCU) screening and vetting processes are applied uniformly. The goal of the SOP is to mitigate specific identified risks within the U4U process including, but not limited to:

- the risk of human trafficking and other forms of abuse and exploitation,
- attempts to circumvent the intercountry adoption process, and
- national security and public safety risks.

---

[1] A supporter is an individual who holds lawful status in the United States or is a parolee or beneficiary of deferred action or Deferred Enforced Departure (DED) who has passed security and background vetting and demonstrated sufficient financial resources to receive, maintain, and supports the individuals whom they commit to support for the duration of their stay in the United States.

Examples of individuals who meet the supporter requirement include:

- U.S. citizens and nationals;
- Lawful permanent residents, lawful temporary residents, and conditional permanent residents;
- Nonimmigrants in lawful status (that is, who maintain the nonimmigrant status and have not violated any of the terms or conditions of the nonimmigrant status);
- Asylees, refugees, and parolees;
- TPS holders; and
- Beneficiaries of deferred action (including DACA) or Deferred Enforced Departure.

**U4U Supporter Vetting Process for FDNS and SCOPS BCU**

This SOP explains how FDNS and SCOPS BCU referrals are processed and sets forth procedures for additional screening and vetting in certain circumstances. The SOP is a "living document" and changes will be made in an ongoing and as needed. Each change and update will be recorded in the version history log.

The following scenarios are referred to SCOPS BCU or FDNS for further vetting of the supporter:

| No. | Scenario Type | Referral Process | Referred To |
|---|---|---|---|
| 1 | TECS hits (based on primary name and DOB of the supporter)/National Crime Information Center (NCIC) Results | ELIS automated referral | BCU |
| 2 | An 11th Form I-134 (10+) Form I-134 filed by the same supporter (based on the supporter's myUSCIS account) | Manual report provided to FDNS* | FDNS |
| 3 | Any approved or pending Form I-600A, Form I-600, Form I-800A, Form I-800, or Form I-130 (on the basis of adoption) filed by the supporter or other indication that the supporter is part of a prospective adoptive family or host family. | IRIS Verification will check PCIS and will manually refer any hits* | FDNS |
| 4 | Any approved or pending Form I-600A, Form I-600, or Form I-130 (on the basis of adoption) that identifies an orphan or a minor child who is a U4U beneficiary listed on the supporter's Form I-134. | IRIS Verification will check on form and in evidence provided and manually refer any hits* | FDNS |
| 5 | Three or more Form I-129F filings by the same supporter on behalf of different beneficiaries. | IRIS Verification will check ELIS pending or prior cases and refer any hits* | FDNS |

**Will be replaced by automated checking and referral functionality in ELIS. Development of the automated process will be completed in priority order based upon the corresponding No. value listed in this table.*

**B. Referral to BCU for TECS/NCIC Result**

Upon ingestion of a Form I-134 case into ELIS, the case will be evaluated for national security related information or program integrity concerns. ELIS will automatically run TECS and NCIC systems checks on supporters for all submissions and will automatically refer cases with results (or "hits") to BCU for resolution.

**C. BCU Review of TECS/NCIC Referral**

Upon receipt of the referral, the BCU officer will first determine whether the hit relates to the supporter. If the hit does NOT relate to the supporter, the BCU officer will issue a "green light" for the case and the case is returned to the normal process queue.

If the hit DOES relate to the supporter, the BCU officer will determine whether the hit indicates the supporter falls within any of the "red banner" criteria listed below; otherwise, the BCU officer will issue a green banner/no match.

The following TECS/NCIC hit(s)[2] criteria constitute a "red banner":

- The supporter is the subject of an order of protection.
- The supporter is under investigation for, has been arrested for (without disposition), or has been convicted of any of the following offenses:
  - Egregious Public Safety;[3]
  - Adam Walsh Act;[4]
  - Domestic Violence;
  - Sexual Assault; or
  - Immigration Fraud.
- The BCU officer otherwise determines the hit indicates the supporter poses a significant national security or public safety risk.
- TECS/NCIS hit(s) regarding crimes involving children (child exploitation, child sex abuse, child abuse, etc.) or a TECS/NCIC hit(s) involving trafficking in persons.

Where a supporter has submitted more than one Form I-134, the BCU officer will issue the same "green banner/ no match" or "red banner" for all Form I-134 cases associated with the supporter's ELLIS account.

**D. BCU TECS/NCIC Hit Resolution**

For cases that fall within the "red banner" criteria, the BCU officer MUST contact the TECS record owner to inform them of the Form I-134 filing and potentially gather additional information about the hit. The BCU officer does not need to receive a response from the TECS record owner before continuing with review and resolution of the TECS/NCIC hit.

Each TECS/NCIC hit requires documentation of any resolution. A TECS/NCIC resolution memo specifies whether the:

- Information in the hit(s) does or does NOT affect eligibility to be a supporter
- Include a *brief* description of the specific red-light criterion/criteria found to be at issue; and
- TECS/NCIC hit is resolved as of the date of the resolution memo.

---

[2] Automated biographic TECS/NCIC checks based upon exact first name, last name, date of birth are conducted through the ELIS case management system for all primary and alias names and dates of birth. Limited criminal history may return through TECS/NCIC checks. NCIC only contains information on active Wants or Warrants (misdemeanor information is limited to those with extradition requested). Protection order information includes both active and expired orders.

[3] *See* Appendix I, Egregious Public Safety (EPS) Concerns.

[4] *See* Appendix II, Adam Walsh Act.

After the BCU officer resolves any national security related information or program integrity concerns and uploads the TECS/NCIC resolution memo to ELIS in the Risk and Fraud section of the case, the BCU officer will automatically return the case to the queue for continued processing by IRIS Verification.

The "green banner/no match" or "red banner" issued by the BCU officer (or FDNS officer as discussed in Section F) prompts the display in ELIS of a correlating red or green banner for the supporter's associated case. This banner notifies the IRIS Verification reviewer whether IRIS may process the case review task (green banner), or if IRIS must render a non-confirmation (red banner).

It should be noted that supporters file multiple Form I-134s, creating duplicate filings. BCU officers may review the supporter on different occasions.

If a BCU Officer issues a "green banner/no match" and then subsequent learns new information and then issues a "red banner," the Verification staff should "non-confirm" the pending cases based upon the recent red banner.

Conversely, if earlier BCU officers issued a "red banner" and then new information resolves the hit, where they issue a "green banner/ no match," Verification staff should continue process the Form I-134.

**E. Referrals to FDNS**

**1. Supporters Filing More than Ten Form I-134**

A supporter filing more than ten (10) Form I-134, including duplicates, will result in a one-time automatic referral to FDNS for additional vetting. ELIS automatically refers to FDNS the eleventh (11th) Form I-134 filed by a supporter and suspends case review on other open Form I-134 associated with the same supporter.

The FDNS officer will conduct a review comparing biographic information provided in the Form I-134 with USCIS, DHS, and other external agency data systems to identify any derogatory information. The FDNS officer will also examine any financial evidence submitted to determine whether there is an articulable suspicion of fraud.

Any additional Form I-134 filed by the supporter after the eleventh (11th) Form I-134 generally will not require additional FDNS inquiry. However, additional FDNS inquiry will be required if the FDNS officer provides instructions in the Record of Action (ROA)[5] for further investigation at some future threshold (e.g., an accumulated 25 filings or some other trigger representative of potential future concerns) and that threshold is met, or an additional Form I-134 contains new information or evidence. Any additional inquiry is noted by the FDNS officer in the Case Comments in ELIS.

**2. Intercountry Adoptions**

IRIS Verification reviewers will cross-check whether Form I-134 supporters have also filed intercountry adoption applications or petitions, as follows:

[5] See Section F. FDNS Referral Resolution for further discussion of ROAs.

- Check PCIS for any approved or pending Form I-600A, Form I-600, Form I-800A, Form I-800, or Form I-130 (on the basis of adoption) filed by the supporter, and
- Check the Form I-134 and evidence provided to determine whether a supporter identifies their relationship with a minor beneficiary as that of prospective adoptive parent or previous/future hosting family.
- If the IRIS Verification reviewer finds any indication the supporter could be trying to circumvent the intercountry adoption process, the reviewer will manually refer the case via email to FDNS at **u4ufdnsreferrals@uscis.dhs.gov** for further inquiry.

**3. Multiple Form I-129F**

IRIS Verification staff will check PCIS to identify if a supporter has filed three (3) or more Form I-129F on behalf of different people, as this may be an indicator the supporter is engaged in trafficking, fraud, other activities of concern. If three (3) or more filings are found, IRIS will manually refer the case to FDNS via email at **u4ufdnsreferrals@uscis.dhs.gov**

**4. Tips on previous supporters or potential future supporters**

In the event that USCIS receives information about a supporter with a prior confirmed Form I-134, that raises concerns over whether the individual's ability to be a supporter in the future, FDNS will vet the information and supporter. If the FDNS officer determines that the individual should not be confirmed as a supporter in future cases, the officer will create a TECS record.

Additionally, if USCIS receives concerning reports about an individual who may attempt to support individuals in the future, FDNS will vet the information and create a TECS record if the FDNS officer(s) validate the concerns.

**F. FDNS Vetting Process**

**1. Interview**

As part of the FDNS vetting process the FDNS officer will attempt to interview the supporter (either by phone or in person), if warranted. Keeping in mind the BCU "red banner" criteria (above), the FDNS officer will use individual discretion according to each unique case regarding what issues need to be addressed during the interview. Interview questions may cover any topic the FDNS officer deems appropriate to evaluate any national security or program integrity concerns, including but not limited to the following examples:

- Organizational entities behind/related to the supporter's Form I-134(s)
- Plans to support the beneficiary
- Relationship with the beneficiary
- Plans for unexpected medical issues or other costs
- Plans regarding beneficiary employment and/or any related issues
- Concerns about women or child beneficiaries, including where they will live and who will financially support them
- Adoption or hosting questions

NOTE: the supporter may ask for one rescheduled meeting/visit for good cause.

1. **Biometrics**

If the FDNS officer determines during or after the initial investigation or interview that requiring biometrics submission by the supporter is necessary to complete their review (such as resolving a background check result or identity confirmation), the FDNS officer may use discretion to require the supporter to submit biometrics. Case-by-case requests for biometric submission can be made directly in ELIS. Biometrics should be required on a very limited basis and must be authorized by an FDNS supervisor.

**G. FDNS Referral Resolution**

Upon completion of the inquiry, the FDNS officer will upload into the Risk and Fraud section of the case in ELIS, the ROA for secondary FDNS review before the case is returned to the queue for continued processing by IRIS Verification staff.[6] ELIS is developing the ability to automate this functionality but is not yet available. In the interim, FDNS staff must explicitly select "Go to Verification Review Task."

If the FDNS officer determines that there are still national security and program integrity issues, the FDNS officer will issue a "red light"[7] and corresponding red banner will appear in ELIS. IRIS Verification staff will render a non-confirmation in ELIS based on the red banner.

If the FDNS officer determines that there is no longer a national security and program integrity issue about the supporter, the FDNS officer will issue a "green banner/no match" and corresponding green banner will appear in ELIS. IRIS Verification staff will continue the Form I-134 review process.

If a supporter does not appear for an interview as requested by FDNS, the FDNS officer will issue a "red banner" and a corresponding red banner will appear in ELIS. IRIS Verification staff will render a non-confirmation.

> NOTE: FDNS National Security and Public Safety Division (NSPSD) would like to review all flagged supporters so they may liaise with the Center for Countering Human Trafficking on cases and other issues arising from these U4U reviews. This should be incorporated into the team's process internally, where the CCHT and U4U inboxes are copied .

The case will be returned to the queue for IRIS Verification staff only after the FDNS inquiry is completed, the FDNS officer issued the appropriate "red banner" or "green banner," and the FDNS officer uploaded the ROA.

---

[6] If the basis for referral to FDNS is that the supporter filed more than ten (10) I-134s, the ROA will be based on FDNS review of the eleventh (11th) Form I-134 filed by the supporter. However, the ROA will be attached to each Form I-134 associated with the same supporter in ELIS.

[7] The described BCU and the FDNS red and green banners in ELIS are unique to U4U 134 cases and appear for the internal USCIS user. There will not also appear any corresponding indicators on the supporters or beneficiaries online account.

**APPENDIX**

**Appendix I – Egregious Public Safety (EPS) Concerns**

An **EPS** case is defined by USCIS and ICE in the 2020 Memorandum of Agreement (MOA) Between DHS USCIS and DHS ICE Regarding the Referral of Immigration Benefit Fraud and Public Safety Cases as a case where information indicates the noncitizen is under investigation for, has been arrested for (without disposition), or has been convicted of, any of the following:

a) Murder, rape, or sexual abuse of a minor as defined in section 101(a)(43)(A) of the Immigration and Nationality Act (INA).
b) Illicit trafficking of controlled substances as defined in section 101(a)(43)(B) of the INA.
c) Illicit trafficking in firearms or destructive devices as defined in section 101(a)(43)(C) of the INA.
d) Offenses relating to explosive materials or firearms as defined in section 101(a)(43)(E) of the INA.
e) Crimes of violence for which the term of imprisonment imposed, or where the penalty for a pending case, is at least one year as defined in section 101(a)(43)(F) of the INA.
f) An offense relating to the demand for, or receipt of, ransom as defined in section 101(a)(43)(H) of the INA.
g) An offense relating to child pornography as defined in section 101(a)(43)(I) of the INA.
h) An offense relating to racketeer influenced corrupt organizations as defined in 101(a)(43)(J) of the INA.
i) An offense relating to peonage, slavery, involuntary servitude, and trafficking in persons as defined in section 101(a)(43)(K)(iii) of the INA.
j) An offense relating to alien smuggling as defined in section 101(a)(43)(N) of the INA.
k) An offense relating to an attempt or conspiracy to commit any EPS offense in accordance with 101(a)(43)(U) of the INA.
l) An offense related to Human Rights Violators, including aliens who persecuted others as described in sections 101(a)(42)(B), 212(a)(2)(G), 212(a)(3)(E), 212(a)(3)(G), 212e, 237(a)(4)(D), 237(a)(4)(E), 237(a)(4)(F) of the INA, known or suspected street gang members, or Interpol hits.
m) Re-entry after an order of exclusion, deportation or removal subsequent to a conviction for a felony where Form I-212, Application for Permission to Reapply for Admission into the U.S. after Deportation or Removal, has not been approved.

**Appendix II – Adam Walsh Act**

Under the **Adam Walsh Act**, the term "specified offense against a minor" means an offense against a minor (defined as an individual who has not attained the age of 18 years) that involves any of the following:

- An offense (unless committed by a parent or guardian) involving kidnapping;
- An offense (unless committed by a parent or guardian) involving false imprisonment;
- Solicitation to engage in sexual conduct;
- Use in a sexual performance;
- Solicitation to practice prostitution;
- Video voyeurism as described in 18 USC 1801;
- Possession, production, or distribution of child pornography;
- Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such
- conduct; or
- Any conduct that by its nature is a sex offense against a minor.

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants.* | Case 6:23-cv-00007 |

EXHIBIT 28

PLAINTIFF'S
EXHIBIT

## Administratively Closed Guide

- If you are going to render an Administratively Closed decision due to a duplicate case, it is important that the most recently filed case is confirmed first prior to administratively closing the other receipt so that the supporter receives the confirmation notice prior to the administrative close notice.
- If a new receipt for the same supporter and beneficiary has a change in name, DOB, passport number, passport expiration, passport country, email address, the Travel Authorization was denied/expired on the original receipt, or the beneficiary left the U.S and a new Travel Authorization is being requested it is not a true duplicate and could be an attempt to update information or refile. For this type of scenario, you would treat the filing as new case. You would not Administratively Close this type of case.
- If documents uploaded show an update to a beneficiary passport number, country, or email address, please see the instructions for updating this information in ELIS. Refer to "Adding passport number, country, email document"

**Duplicate Case Check Scenarios:**

| Scenario | Selection | Reason |
|---|---|---|
| You have more than one case from the same supporter for the same beneficiary in your queue that has not been rendered a decision and meets confirmation criteria. | Render the confirmation on the most recently filed case, then select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |
| You have one case that you would confirm and see an unassigned duplicate for the same supporter and beneficiary. | Assign the unassigned case to yourself and render confirm on the most recently filed case. Select Administratively Closed for the oldest case. Case Acceptance in the Task or History will show date and time of submission. | The case most recently submitted may have edited info for next phase of processing such as Name, DOB, passport number, passport expiration, passport country, or email address. |
| You have one case that you would confirm and see an assigned duplicate for the same supporter and beneficiary with another reviewer. | If your case is the most recent render the confirm and notify the other reviewer. If your case is the oldest, do not Select Administratively Closed until the other reviewer renders the confirmation on their receipt. | The case most recently submitted may have edited info for next phase of processing such as email address. Admin close only after most recent has been confirmed to not confuse supporter notices. |

| | | |
|---|---|---|
| You have a case to confirm that has an exact duplicate resolved by another reviewer as confirm. | Select Administratively Closed if Exact Duplicate. | Make sure it is an exact duplicate with no changes to name, dob, passport number, passport expiration, passport country, email address, or expired Travel Authorization. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have the associated duplicate case from the same supporter that still is non-confirm. | Select Non-confirm. | Supporter can submit for reconsideration multiple times. |
| Duplicate case in queue, assigned, or already worked that is a non-confirm and you have another case that now meets confirmation. | Select Confirm. | Supporter can submit for reconsideration multiple times. |
| Any scenario that has a duplicate that does not meet confirm criteria on the open case. | Select Non-confirm. | We should not confirm a case that does not meet confirmation criteria. We do not select Admin close on any case that is a non-confirmation. |



| Receipt Number | | Case Type |
|---|---|---|
| [redacted] | | I134A - Online Request to be a Supporter and Declaration of Financial Support |
| Received Date 01/08/2023 | Priority Date | Supporter [redacted] |
| Notice Date 01/20/2023 | Page 1 of 2 | Beneficiary [redacted] |

[redacted]

**Notice Type: CONFIRM Notice**

A Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, was filed by the supporter named above on your behalf. The declaration states that they agree to provide financial support to you for the duration of the period of parole in the United States that you may be granted. USCIS has reviewed the Form I-134A and confirmed it is sufficient. We have notified the supporter named above.

To continue the process to seek parole into the United States, you must:

- **Create a USCIS Online Account:** We will email a separate USCIS Account Access Notice to you within 24 hours with instructions on how to create a USCIS Online Account. Once you create your account, you can complete the steps below.
- **Confirm Your Biographic Information:** Once you are logged into your account, you will be asked to confirm your biographic information (e.g., name, physical address, etc.) that was provided by your supporter.
- **Attest to Your Vaccination Status:** Your USCIS Online Account provides instructions for attesting to your vaccination status. You must attest that you have received at least one dose of a measles, polio, and WHO-emergency use listed (EUL) COVID-19 vaccine prior to receiving authorization to travel to the United States.
  **Additionally, within 90 days of being granted parole, you must:**
  - if two years of age or older, undergo tuberculosis screening starting with an IGRA (interferon-gamma release assay) blood test. You must take appropriate isolation and treatment measures if the tuberculosis screen is positive;
  - if you did not receive a polio or COVID-19 vaccine prior to arriving to the United States because it was not approved or licensed for your age group, you must be vaccinated against polio and COVID-19 (if age-eligible and have no medical contraindications for these vaccines available in the United States); and
  - report compliance with these requirements to USCIS through the USCIS Online Account you created prior to travel at https://myaccount.uscis.gov/.
- **Attest to Eligibility Statement:**
  - You will also need to attest to your understanding that, for the protection of children, only minors (under the age of 18) traveling with and in the care and custody of a parent or legal guardian are eligible for parole;
  - You may also be required to attest that you meet other eligibility requirements to be considered for parole.

For beneficiaries traveling together as a group:

- An adult member of the group who has eligible citizenship must add any immediate family members (spouse or unmarried children under age 21) who are not eligible citizens. Group members who do not have eligible citizenship cannot be added after you have submitted the biographic information and minor attestations. The eligible adult citizen must complete the biographic data review and attestations on behalf of the non-citizen immediate family member(s) traveling with the group.
- One adult member may complete the biographic data review and attestations on behalf of each adult group member who does not have a minor child in the group.
- If a minor child or children are traveling in the group, the head of household (e.g., mother, father, or legal guardian) may complete the biographic data review and attestations on behalf of each adult family member but must complete them on behalf of their minor child/children.

**Please note that you are not obligated to repay, reimburse, work for or serve, marry, or otherwise compensate the supporter in exchange for filing Form I-134A on your behalf or for providing you financial support while you are in the United States.**

DHS recommends the following actions to avoid intimidating situations:

- Beware of individuals who promise to "get you to the United States quickly" if you pay an exorbitant sum of money.
- Keep your passport and other identity documents in your possession at all times.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

USCIS HQ
U.S. CITIZENSHIP & IMMIGRATION SVC
5900 Capital Gateway Dr
Suite #2040
Camp Springs MD 20746

**USCIS Contact Center:** www.uscis.gov/contactcenter





| Receipt Number | | Case Type |
|---|---|---|
| [redacted] | | I134A - Online Request to be a Supporter and Declaration of Financial Support |
| Received Date<br>01/08/2023 | Priority Date | Supporter [redacted] |
| Notice Date<br>01/20/2023 | Page<br>2 of 2 | Beneficiary [redacted] |

- If you are concerned that the individual who filed Form I-134A on your behalf is not a legitimate organization or entity or legal representative, see information on the USCIS website: https://www.uscis.gov/scams-fraud-and-misconduct/.
- Call the 24-hour National Human Trafficking Hotline at 1-888-373-7888 or report an emergency to law enforcement by calling 911. Trafficking victims, whether or not U.S. citizens, are eligible for services and immigration assistance.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

USCIS HQ
U.S. CITIZENSHIP & IMMIGRATION SVC
5900 Capital Gateway Dr
Suite #2040
Camp Springs MD 20746

USCIS Contact Center: www.uscis.gov/contactcenter





| Receipt Number | | Case Type |
|---|---|---|
| [redacted] | | I134A - Online Request to be a Supporter and Declaration of Financial Support |
| Received Date<br>01/08/2023 | Priority Date | Supporter [redacted] |
| Notice Date<br>01/20/2023 | Page<br>1 of 1 | Beneficiary [redacted] |

[redacted]

**Notice Type: CONFIRM Notice**

USCIS has reviewed the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, that you filed on behalf of the beneficiary named above, and we have confirmed that your Form I-134A is sufficient.

We will notify the beneficiary of this confirmation and provide instructions they must follow to seek parole into the United States.

By signing Form I-134A, you have agreed to provide financial support to the above-named beneficiary for the duration of the period of parole in the United States that the beneficiary may be granted. This includes ensuring that the beneficiary listed in this Form I-134A will have sufficient financial resources or financial support to pay for necessary expenses for the period of his or her temporary stay in the United States.

Examples of the types of support you can expect to provide the beneficiary during their stay in the United States include:

- Receiving the beneficiary upon arrival in the United States and transporting them to initial housing;
- Ensuring that the beneficiary has safe and appropriate housing for the duration of their parole and initial basic necessities;
- As appropriate, helping the beneficiary complete necessary paperwork and pay associated fees, such as for employment authorization, for a Social Security card, and for services for which they may be eligible;
- Ensuring that the beneficiary's health care and medical needs are met for the duration of the parole; and
- As appropriate, assisting the beneficiary with accessing education, learning English, securing employment and enrolling children in school.

Anyone who has submitted and signed a Form I-134A as a supporter has:

- Declared, under penalty of perjury of the laws of the United States, that they will financially support the beneficiary while the beneficiary is in the United States, and
- Certified that they are willing and able to receive, maintain, and support the beneficiary to ensure that the beneficiary will have sufficient financial resources or financial support to pay for necessary expenses for the period of their temporary stay in the United States.

This means that by submitting Form I-134A, you are assuring the U.S. Government that you have the ability to financially support the beneficiary without requiring the beneficiary to:

- Repay or reimburse you for any of your expenditures on their behalf; or
- Work or perform any service as a replacement for any costs expended to maintain the beneficiary while in the United States.

Thank you for your participation.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

USCIS HQ
U.S. CITIZENSHIP & IMMIGRATION SVC
5900 Capital Gateway Dr
Suite #2040
Camp Springs MD 20746

**USCIS Contact Center:** www.uscis.gov/contactcenter

| Receipt Number | | Case Type |
|---|---|---|
| [redacted] | | I134A - Online Request to be a Supporter and Declaration of Financial Support |
| **Received Date** 01/12/2023 | **Priority Date** | **Supporter** [redacted] |
| **Notice Date** 01/13/2023 | **Page** 1 of 1 | **Beneficiary** [redacted] |

**Notice Type: NON CONFIRM Notice**

A Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, was filed on your behalf by the supporter named above, and USCIS has reviewed the Form. We cannot confirm that the Form I-134A is sufficient.

If you still wish to seek parole into the United States, USCIS must confirm that a Form I-134A filed on your behalf is sufficient as the first step in the process as described on the USCIS website. This means that either the supporter listed above will need to file a new Form I-134A on your behalf in which the supporter demonstrates that they are eligible to be a supporter and that they have sufficient income or financial resources to support you during your stay in the United States, or another individual who is willing to provide you with financial support for the duration of your period of parole in the United States will need to file a new Form I-134A on your behalf. Until USCIS has confirmed the sufficiency of a Form I-134A filed on your behalf, you cannot be considered for parole under this parole processes.

You can find more information on the requirements for parole at https://www.uscis.gov/.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

USCIS HQ
U.S. CITIZENSHIP & IMMIGRATION SVC
5900 Capital Gateway Dr
Suite #2040
Camp Springs MD 20746

**USCIS Contact Center: www.uscis.gov/contactcenter**





| Receipt Number | | Case Type |
| --- | --- | --- |
| [redacted] | | I134A - Online Request to be a Supporter and Declaration of Financial Support |
| Received Date 01/12/2023 | Priority Date | Supporter [redacted] |
| Notice Date 01/13/2023 | Page 1 of 1 | Beneficiary [redacted] |

**Notice Type:** NON CONFIRM Notice

USCIS has reviewed the Form I-134A, Online Request to be a Supporter and Declaration of Financial Support, that you filed on behalf of the beneficiary named above. We cannot confirm that your Form I-134A is sufficient.

We will notify the beneficiary of this non-confirmation.

There is no administrative appeal of this non-confirmation. If you still wish to agree to provide financial support to the beneficiary seeking parole, you must file a new Form I-134A on their behalf. You must provide evidence to demonstrate:

- You hold lawful immigration status in the United States or are a parolee or beneficiary of deferred action or Deferred Enforced Departure (DED); and
- You have sufficient income or financial resources to support the beneficiary for the duration of the parole period.

USCIS must confirm that the Form I-134A is sufficient as the first step in the process for the beneficiary to seek parole into the United States. You can find more information on the requirements for parole at https://www.uscis.gov.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

USCIS HQ
U.S. CITIZENSHIP & IMMIGRATION SVC
5900 Capital Gateway Dr
Suite #2040
Camp Springs MD 20746

**USCIS Contact Center: www.uscis.gov/contactcenter**

Criminal History Available in IIDS

| Parole Program | Parole Date | Sex | Charge Date | Charge Dismissed Date | Charge Dropped Date | Charge Overturned Date | Crime Class | Crime Class Code | NCIC Category | NCIC Category Code | NCIC Charge | NCIC Charge Code | Sentence Days | Sentence Months | Sentence Years | Criminal Charge Category | Criminal Charge Category DUI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Venezuela | 11/5/2022 | M | 1/18/2023 | | | | Misdemeanor | MISDE | Obstructing the Police | OP | Resisting Officer | 4801 | | | | Obstructing the Police | Obstructing the Police |
| Venezuela | 11/5/2022 | M | 1/18/2023 | | | | Felony | FELON | Dangerous Drugs | DD | Marijuana - Possession | 3562 | | | | Dangerous Drugs | Dangerous Drugs |
| Cuba | 1/27/2023 | F | 3/27/2023 | | | | Misdemeanor | MISDE | Assault | ASSL | Battery | 13AA | | | | Assault | Assault |

This record reflects three line items. However, this criminal history pertains to only two individuals.