**United States District Court**
**Southern District of Texas**
**Victoria Division**

STATE OF TEXAS, *et al.*,
*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants*.

Case 6:23-cv-00007

# EXHIBIT 29

PLAINTIFF'S
EXHIBIT

# ERO LESA Statistical Tracking Unit

**For Official Use Only (FOUO)/Pre-decisional**

**Texas v. DHS (CHNV Parole Litigation) - Discovery Request for Production - 05/18/2023**

**Footnotes**

Criminal History Data are updated through 05/06/2023 (IIDS run as of 05/08/2023; EID as of 05/06/2023).

'Parole Beneficiaries by Nationality: January 20, 2021 - March 31, 2023' provided by DHS Office of Immigration Statistics on 04/25/2023. USCIS Data as of 4/11/2023. OFO data as of 4/7/2023.

***Tab RPF 5***

Criminal history records are as entered in the Crime Entry Screen by the Officer and may not reflect the full criminal history for the noncitizen.

Criminal history records are inclusive of all records available in the system and not limited to just ICE records.

While criminal history records are associated with the provided Parole Beneficiaries A Numbers, ERO cannot confirm that those criminal records have any direct relationship to the Parole Program.

Of the provided 71,168 Parole Program AFNs, criminal history records for 2 AFNs were found in the system.

Parole Program Beneficiaries of School Age: October 18, 2022 - March 31, 2023

| Program Country | Age 6-17 |
|---|---|
| Cuba | 1,878 |
| Haiti | 1,318 |
| Nicaragua | 823 |
| Venezuela | 4,866 |
| Total | 8,885 |

Notes: School age is defined as individuals aged 6-17. USCIS Data as of 4/11/2023. OFO data as of 4/7/2023.
Source: DHS Office of Immigration Statistics analysis of OFO and USCIS data.

Unauthorized Immigrants Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - March 31, 2023

| Nationality | Individuals |
|---|---|
| Cuba | 355,951 |
| Haiti | 70,646 |
| Nicaragua | 298,633 |
| Venezuela | 270,691 |
| Total | 995,921 |

Note: Data as of 4/21/2023.

Source: DHS Office of Immigration Statistics.

Unauthorized Immigrants of School Age Encountered by USBP at the
Southwest Border by Select Nationality: January 20, 2021 - March
31, 2023

| Nationality | Age 6-17 |
|---|---|
| Cuba | 28,874 |
| Haiti | 4,786 |
| Nicaragua | 26,160 |
| Venezuela | 33,952 |
| Total | 93,772 |

Notes: School age is defined as individuals aged 6-17. Data as of 4/21/2023.
Source: DHS Office of Immigration Statistics.

Criminal Unauthorized Immigrants Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - March 31, 2023

| Nationality | Individuals |
|---|---|
| Cuba | 137 |
| Haiti | 14 |
| Nicaragua | 862 |
| Venezuela | 36 |
| Total | 1,049 |

Note: Data as of 4/21/2023.
Source: DHS Office of Immigration Statistics.

Criminal Unauthorized Immigrants of School Age Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - March 31, 2023

| Nationality | Age 6-17 |
|---|---|
| Cuba | 0 |
| Haiti | 0 |
| Nicaragua | 0 |
| Venezuela | 0 |
| Total | 0 |

Notes: School age is defined as individuals aged 6-17. Data as of 4/21/2023.
Source: DHS Office of Immigration Statistics.

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants.* | Case 6:23-cv-00007 |

# EXHIBIT 30



# CBP One™

Traveler > Air > Request Advance Travel Authorization (Mobile)

P1.3: September 27, 2022

U.S. Customs and Border Protection

# CBP One – Traveler > Air > Advance Travel Authorization

Default flow, first-time user using a NON-EPASSPORT (no ECHIP)

CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)



23-cv-00007_0153

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)

9:41

Traveler

**Advance Travel Authorization**

Request authorization for non-United States citizens intending to travel to the United States via flight. This action is only available to travelers following the approval of their supporter on Form I-134 through USCIS.

BACK

9:41

Advance Travel Request

REQUEST ADVANCE TRAVEL AUTHORIZATION

DID YOU ALREADY SUBMIT?

If you have already submitted your information to CBP, please visit https://my.uscis.gov to check for status updates on your advance travel authorization request.

Missing Information

Please fill out required fields in profile information.

Cancel | Go to Profile

BACK

Pop-up appears if user has not filled out profile information prior.

9:41

Edit Profile Information

PROFILE INFORMATION

First Name*

Last Name*

SAVE

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)

9:41

Advance Travel Request

REQUEST ADVANCE TRAVEL AUTHORIZATION

DID YOU ALREADY SUBMIT?

If you have already submitted your information to CBP, please visit https://my.uscis.gov to check for status updates on your advance travel authorization request.

Please be aware that response times vary and can take up to 3 weeks.

BACK

9:41

Advance Travel Request

Please enter only 9 digits of your A-number exactly as it appears on your document. Do not enter the letter "A" or dash (-).

A-Number*

To learn more about Form I-134, CLICK HERE.

BACK CONTINUE

9:41

Advance Travel Request

Please enter only 9 digits of your A-number exactly as it appears on your document. Do not enter the letter "A" or dash (-).

A-Number*
123456789

To learn more about Form I-134, CLICK HERE.

BACK CONTINUE

# CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)

MRZ scanner detects if passport has an ECHIP or not. This passport does NOT, so backend needs to gather passport photo of traveler.

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)

9:41

**Take a Photo**

In order to verify your identity, we'll need to take a photo of your face.

Hold the phone in front of your face and make sure you are in good lighting before you begin.

Tap anywhere to continue.

9:41

Center your face in the oval.

9:41

Your photo has been successfully captured.

Continue

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)

9:41

Advance Travel Request

PASSPORT DETAILS

SCAN PASSPORT*

Scan the original biographic page of your passport. Do not scan your prórroga.

Passport No.*

123456789

Date of Birth*

July 4, 1776

IDENTITY VERIFICATION

TAKE A PHOTO*

Please take a photo of yourself to help verify your identity.

BACK CONTINUE

9:41

Advance Travel Request

REQUEST SUMMARY Edit

Date of Submission

September 27, 2022

A-Number

123456789

Passport No.

123456789

Date of Birth

July 4, 1776

BACK SUBMIT

9:41

Advance Travel Request

REQUEST SUMMARY

Date of Submission

September 27, 2022

A-Number

123456789

Passport No.

123456789

July

Submit Advance Travel Request

Would you like to submit this advance travel authorization request?

Back Yes, Submit

BACK SUBMIT

# CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (NO ECHIP)

9:41

Confirmation

SUBMITTED

Your information has been successfully submitted to CBP. Your advance travel authorization request is being reviewed.

Visit https://my.uscis.gov to check for status updates on your advance travel authorization request. Please be aware that response times vary and can take up to 3 weeks.

REQUEST SUMMARY

Date of Submission
October 12, 2022

A-Number
123456789

Passport No.
123456789

Date of Birth
July 4, 1776

DONE

9:41

Advance Travel Request

REQUEST ADVANCE TRAVEL AUTHORIZATION

DID YOU ALREADY SUBMIT?

If you have already submitted your information to CBP, please visit https://my.uscis.gov to check for status updates on your advance travel authorization request.

Please be aware that response times vary and can take up to 3 weeks.

BACK

BACK should take the user back to the Air Traveler action list.

# CBP One – Traveler > Air > Advance Travel Authorization

Default flow, first-time user using an EPASSPORT (yes ECHIP)

CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

# CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

9:41

Traveler

Advance Travel Authorization

Request authorization for non-United States citizens intending to travel to the United States via flight. This action is only available to travelers following the approval of their supporter on Form I-134 through USCIS. >

BACK

9:41

Advance Travel Request

REQUEST ADVANCE TRAVEL AUTHORIZATION

DID YOU ALREADY SUBMIT?

If you have already submitted your information to CBP please visit https://my.uscis.gov to check for status updates on your advance travel authorization request.

Missing Information

Please fill out required fields in profile information.

Cancel | Go to Profile

BACK

Pop-up appears if user has not filled out profile information prior.

9:41

Edit Profile Information

PROFILE INFORMATION

First Name*

Last Name*

SAVE

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

9:41

Advance Travel Request

REQUEST ADVANCE TRAVEL AUTHORIZATION

DID YOU ALREADY SUBMIT?

If you have already submitted your information to CBP, please visit https://my.uscis.gov to check for status updates on your advance travel authorization request.

Please be aware that response times vary and can take up to 3 weeks.

BACK

9:41

Advance Travel Request

Please enter only 9 digits of your A-number exactly as it appears on your document. Do not enter the letter "A" or dash (-).

A-Number*

To learn more about Form I-134, CLICK HERE.

BACK CONTINUE

9:41

Advance Travel Request

Please enter only 9 digits of your A-number exactly as it appears on your document. Do not enter the letter "A" or dash (-).

A-Number*
123456789

To learn more about Form I-134, CLICK HERE.

BACK CONTINUE

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

MRZ scanner detects if passport has an ECHIP or not. This passport DOES, so user is automatically directed to scan ECHIP.

23-cv-00007_0164

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

Reading RFID chip data

Reading RFID Biometry - Facial data (DG2) data

9:41

Advance Travel Request

PASSPORT DETAILS

SCAN PASSPORT*

Scan the original biographic page of your passport. Do not scan your prórroga.

Passport No.*

123456789

Date of Birth*

July 4, 1776

IDENTITY VERIFICATION

TAKE A PHOTO*

Please take a photo of yourself to help verify your identity.

BACK

CONTINUE

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

9:41

Center your face in the oval.

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

23-cv-00007_0167

## CBP One – Traveler > Air > Advance Travel Authorization: Request Advance Travel Authorization (with ECHIP)

9:41
Confirmation
SUBMITTED
Your information has been successfully submitted to CBP. Your advance travel authorization request is being reviewed.
Visit https://my.uscis.gov to check for status updates on your advance travel authorization request. Please be aware that response times vary and can take up to 3 weeks.
REQUEST SUMMARY
Date of Submission
October 12, 2022
A-Number
123456789
Passport No.
123456789
Date of Birth
July 4, 1776
DONE
9:41
Advance Travel Request
REQUEST ADVANCE TRAVEL AUTHORIZATION
DID YOU ALREADY SUBMIT?
If you have already submitted your information to CBP, please visit https://my.uscis.gov to check for status updates on your advance travel authorization request.
Please be aware that response times vary and can take up to 3 weeks.
BACK

BACK should take the user back to the Air Traveler action list.

# Edgecase 1

User selects "To learn more about Form I-134, CLICK HERE."

# CBP One – Traveler > Air > Advance Travel Authorization: Edgecase 1

9:41
Advance Travel Request
Please enter only 9 digits of your A-number exactly as it appears on your document. Do not enter the letter "A" or dash (-).
A-Number*
To learn more about Form I-134, CLICK HERE.
BACK
CONTINUE
9:41
USCIS Form I-134
The Advance Travel Authorization action is only available to travelers following the approval of their supporter on Form I-134 through USCIS.
Read more about Form 1-134 at https://www.uscis.gov/i-134.
BACK

23-cv-00007_0170



# Edgecase 2

Information issue upon submission.

23-cv-00007_0171

# CBP One – Traveler > Air > Advance Travel Authorization: Edgecase 2

9:41

Advance Travel Request

REQUEST SUMMARY Edit

Date of Submission
September 27, 2022

A-Number
123456789

Passport No.
123456789

Date of Birth
July 4, 1776

BACK SUBMIT

9:41

Advance Travel Request

REQUEST SUMMARY Edit

Date of Submission
September 27, 2022

A-Number
123456789

Passport No.
123456789

Submit Advance Travel Request
Would you like to submit this advance travel authorization request?

Back Yes, Submit

BACK SUBMIT

9:41
Advance Travel Request
REQUEST SUMMARY
Edit
Date of Submission
September 27, 2022
A-Number
123456789
Passport No.
Record Cannot Be Found
Please review your Alien Registration number, date of birth, and passport number in your myUSCIS account to ensure the information is correct.
Continue
BACK
SUBMIT

23-cv-00007_0172

# Edgecase 3

Liveness Detection fails.

23-cv-00007_0173

CBP One – **Traveler > Air > Advance Travel Authorization: Edgecase 3**

9:41
Center your face in the oval.

9:41
Submission unsuccessful.
Please try again.
Cancel
Try Again

23-cv-00007_0174





# Edgecase 4

ECHIP scan fails.

23-cv-00007_0175

## CBP One – Traveler > Air > Advance Travel Authorization: Edgecase 4

### ePassport Detected

Please scan your eChip by placing the back of your phone directly on the barcode located on the last page of your passport.

You may need to adjust the phone's positioning until the scanner is activated.

×

### eChip Scan Unsuccessful

Please try again. Scan your eChip by placing the back of your phone directly on the barcode located on the last page of your passport.

You may need to adjust the phone's positioning until the scanner is activated.

**Tap anywhere to continue.**

×

**United States District Court**
**Southern District of Texas**
**Victoria Division**

STATE OF TEXAS, *et al.*,
*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
*Defendants.*

Case 6:23-cv-00007

EXHIBIT 38



**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, et al. | ) | |
| Plaintiffs | ) | |
| v. | ) | No. 6:23-cv-00007 |
| DEPARTMENT OF HOMELAND SECURITY., et al. | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' [REVISED] FIRST SET OF DISCOVERY REQUESTS**

Pursuant to Federal Rules of Civil Procedure 33, 34, 36 Defendants hereby submit their objections and responses to Plaintiffs' [Revised] First Set of Discovery Requests.

Defendants' responses and objections are based on the information known to Defendants at this time and are made without prejudice to supplement these responses should additional responsive information be discovered. By answering any request, Defendants do not concede the materiality of the subject matter to which it refers. Defendants' responses are made expressly subject to, and without waiving or intending to waive, any questions, or objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence or for any other purpose, of any of the documents or information provided, or of the subject matter thereof, in any proceeding including any trial of this action or any subsequent proceeding. Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute a waiver of any privilege or other ground for objecting to discovery with respect to that document or any other document, or its subject

matter, or the information contained therein, or of Defendants' right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1**

Produce all checklists, lesson plans, or training materials used to implement or administer the Parole Program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1**

Defendants object to Request No. 1 on the grounds that its reference to "checklists" and "lesson plans" is vague and ambiguous. Defendants further object to this request on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). To the extent Plaintiffs seek internal pre-decisional documents and/or communications and internal agency communications that could implicate the deliberative process, attorney-client, and attorney work product privileges, Defendants object that any such documents would be deliberative in nature and therefore privileged and not subject to discovery. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Subject to and notwithstanding these objections, Defendants refer Plaintiffs to documents at Bates labeled 23-cv-00007_0001-143.

**REQUEST FOR PRODUCTION NO. 2**

Produce all documents related to crime rates of or criminal activity by Parole Program beneficiaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2**

Defendants object to Request No. 2 on the grounds that it is vague as to the meaning of "crime rates" and "criminal activity." These terms are not defined, and thus, could conceivably be interpreted in a variety of different ways, to include, for example, documents relating to convictions, arrests, and/or charges. Additionally, it is unclear whether this Request is seeking information regarding *any* crimes, committed anywhere in the world, at any time, or whether it is limited in any temporal or geographic manner. Moreover, this Request is overly broad to the extent it seeks all "documents related to" crime rates or criminal activity, which may include information not within the Defendants' possession, custody, and control, such as documents maintained by state or local agencies, and/or by foreign governments.

Defendants also object to Request No. 2 to the extent it seeks internal agency communications which could implicate the deliberative process, attorney-client, and attorney-work-product privileges. Subject to and notwithstanding these objections and confining the terms "crime rates" and "criminal activity" to convictions, arrests and/or charges, Defendants are producing information regarding criminal history after arrival to the United States pursuant to the CHNV parole processes of CHNV parole beneficiaries between October 18, 2022 and March 31, 2023, at Bates labeled 23-cv-00007_0144-145. For an explanation of how Defendants generated "criminal history" see document Bates labeled at 23-cv-00007_145.

**REQUEST FOR PRODUCTION NO. 3**

Produce all documents related to reduction of wages or displacement of American workers caused by Parole Program beneficiaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3**

Defendants object to Request No. 3 on the grounds that it is vague and confusing as to what Plaintiffs mean by "displacement of American workers" and on the grounds that it is overly broad to the extent it seeks all "documents related to" reduction of wages or displacement of workers. Defendants also object to the extent this Request seeks documents which may include internal agency communications which could implicate the deliberative process, attorney-client, and attorney work product privileges. Subject to and notwithstanding these objections, Defendants state that they have no responsive documents as this is not data that Defendants systematically track.

**REQUEST FOR PRODUCTION NO. 4**

Produce all documents related to forecasted or actual use of public education by Parole Program beneficiaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

Defendants object to Request No. 4 on the grounds that it is overly broad to the extent it seeks all "documents related to" forecasted or actual use of public education by Parole Program beneficiaries which may include internal agency communications which could implicate the deliberative process, attorney-client, and attorney work product privileges. Subject to and notwithstanding these objections, Defendants refer Plaintiffs to document Bates labeled 23-cv-00007_0146, which contains the number of Cuban, Haitian, Nicaraguan, Venezuelan (CHNV)

beneficiaries of school age (children 6 to 17 years old) who have arrived in the United States pursuant to the CHNV parole processes for the period of October 18, 2022 to March 31, 2023.

**REQUEST FOR PRODUCTION NO. 5**

Produce all documents related to the subjects of Request for Production Nos. 2, 3, and 4 but for all aliens from Cuba, Haiti, Nicaragua, and Venezuela who have illegally arrived at the border since January 20, 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

*See* Responses to Request for Production Nos. 2, 3, and 4, which we incorporate herein. Defendants further object to Request No. 5 on the grounds that it is vague as to the phrase "illegally arrived." For purposes of this request, Defendants interpret "illegally arrived" as referring to CHNV noncitizens who were encountered by USBP between ports of entry at the Southwest Border. Defendants also object to the extent that such information may include internal agency communications which could implicate the deliberative process, attorney-client, and attorney-work-product privileges. Defendants further object to this request on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Subject to and notwithstanding these objections, Defendants refer Plaintiffs to documents Bates labeled 23-cv-00007_0147-150 which contains information regarding the number of CHNV nationals who were encountered by USBP at the Southwest Border between January 20, 2021 and March 31, 2023.

**REQUEST FOR PRODUCTION NO. 6**

Produce copies of any advance travel authorization questionnaires or forms. Note that this requests only the template forms, not completed forms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

Defendants object to Request No. 6 as vague and ambiguous. It is unclear what Plaintiffs mean by "questionnaires" and unclear if Plaintiffs refer to online forms or applications. Defendants also object because the term is ambiguous in that it does not identify the type of "travel authorization" it refers to. Defendants also object to this Request to the extent it seeks information related to the required steps that intending CHNV parole beneficiaries must complete to be considered for an advance travel authorization. Defendants also object to this Request to the extent it seeks any prior draft versions of the requested documents, as such documents may implicate the deliberative process, attorney-client, and attorney work product privileges. Subject to and notwithstanding these objections, Defendants refer Plaintiffs to documents Bates labeled 23-cv-00007_0151-176.

**REQUEST FOR PRODUCTION NO. 7**

Produce all documents consulted or relied upon in responding to this First Set of Discovery Requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

Defendants object to Request No. 7 on the grounds that it is overly broad and includes internal agency communications which could implicate the deliberative process, attorney-client, and attorney-work-product privileges.

**INTERROGATORIES**

**INTERROGATORY NO. 1**

Identify, by month, the number of Parole Program applications (a) received, (b) adjudicated, (c) approved, (d) denied, (e) pending, (f) granted employment authorization, and (g) denied employment authorization.

**RESPONSE TO INTERROGATORY NO. 1**

Defendants object to Interrogatory No. 1 on the grounds that it is vague as to the word "applications." The word "applications" in the CHNV parole processes could potentially refer to information submitted by a person seeking to become a financial supporter, a person seeking advance travel authorization, and a person with advance travel authorization seeking parole at a port of entry. Subject to and notwithstanding these objections, construing the word "applications" to refer to USCIS confirmations of Forms I-134/I-134A for the CHNV parole processes, Defendants provides the following response:

For Interrogatory No. 1(a)-(e), DHS's Office of Immigration Statistics ("OIS") has information on the number of CHNV nationals who initiated the parole processes and whose applications were confirmed by USCIS; CHNV nationals who have submitted information through CBP One and whose applications were approved, denied, or expired; CHNV nationals with approved advance travel authorization; CHNV nationals with denied advance travel authorization; and CHNV nationals whose application was pending adjudication for the period covering October 18, 2022 to March 31, 2023. This information is broken down by country and month with associated totals for each category.

CHNV Parole Process Applications by Month and Status: October 18, 2022 - March 31, 2023 and January 6, 2023 - March 31, 2023

| Month | Venezuela | | | | |
|---|---|---|---|---|---|
| | Received | Adjudicated | Approved | Denied | Pending |
| October 2022 | 37,452 | 8,997 | 8,661 | 322 | 4 |
| November 2022 | 7,158 | 6,606 | 6,380 | 197 | 11 |
| December 2022 | 1,853 | 2,062 | 2,018 | 42 | 5 |
| January 2023 | 4,934 | 13,235 | 12,996 | 236 | 68 |
| February 2023 | 1,420 | 6,216 | 6,085 | 127 | 30 |
| March 2023 | 901 | 6,044 | 5,931 | 111 | 150 |
| Total | 53,718 | 43,160 | 42,071 | 1,035 | 268 |
| **Month** | **Nicaragua** | | | | |
| | **Received** | **Adjudicated** | **Approved** | **Denied** | **Pending** |
| October 2022 | 0 | 0 | 0 | 0 | 0 |
| November 2022 | 0 | 0 | 0 | 0 | 0 |
| December 2022 | 0 | 0 | 0 | 0 | 0 |
| January 2023 | 6,064 | 1,900 | 1,839 | 61 | 7 |
| February 2023 | 12,695 | 5,881 | 5,730 | 151 | 16 |
| March 2023 | 1,319 | 6,017 | 5,888 | 129 | 74 |
| Total | 20,078 | 13,798 | 13,457 | 341 | 97 |
| **Month** | **Haiti** | | | | |
| | **Received** | **Adjudicated** | **Approved** | **Denied** | **Pending** |
| October 2022 | 0 | 0 | 0 | 0 | 0 |
| November 2022 | 0 | 0 | 0 | 0 | 0 |
| December 2022 | 0 | 0 | 0 | 0 | 0 |
| January 2023 | 27,448 | 4,098 | 4,024 | 73 | 9 |
| February 2023 | 8,148 | 11,698 | 11,543 | 153 | 37 |
| March 2023 | 4,266 | 13,266 | 13,131 | 134 | 106 |
| Total | 39,862 | 29,062 | 28,698 | 360 | 152 |
| **Month** | **Cuba** | | | | |
| | **Received** | **Adjudicated** | **Approved** | **Denied** | **Pending** |
| October 2022 | 0 | 0 | 0 | 0 | 0 |
| November 2022 | 0 | 0 | 0 | 0 | 0 |
| December 2022 | 0 | 0 | 0 | 0 | 0 |
| January 2023 | 17,803 | 5,814 | 5,735 | 78 | 10 |
| February 2023 | 5,217 | 5,964 | 5,799 | 165 | 21 |
| March 2023 | 2,057 | 8,176 | 8,103 | 73 | 105 |
| Total | 25,077 | 19,954 | 19,637 | 316 | 136 |

Notes: Data as of 4/14/2023. "Applications received" pertains to CHNV beneficiaries (i.e., people with my USCIS accounts). Due to datasource differences, the number of USCIS applications received is not equal to the sum of those OFO adjudicates and labels as pending. Adjudicated applications include expired applications, in addition to approved and denied applications. Data are preliminary and subject to change. Data do not include individuals with multiple nationalities. Applications approved are those that have not expired due to failure to travel within a 90-day window and have not been cancelled. Includes approved applications for people that have already entered the United States. The Venezuela parole process started October 18, 2022 so numbers start then. The Cuba, Haiti, and Nicaragua parole processes started January 6, 2023 so CHN numbers start then.

Source: DHS Office of Immigration Statistics analysis of USCIS and OFO data.

For Interrogatory No. 1(f) and (g), USCIS has information about the number of employment authorization applications it has granted and denied to CHNV beneficiaries. This

information is broken down in the table below. The information was pulled from USCIS systems on April 17, 2023 and is an accurate reflection of what the systems showed on that date. This information is subject to change with the passage of time.

I-765, Application for Employment Authorization
For CHNV Approvals and Denials, by year and month
Through March, 2023

U.S. Citizenship and Immigration Services

| Country | Year | Month | Approval | Denial | Total |
|---|---|---|---|---|---|
| Grand Total | | | 10,675 | 18 | 10,693 |
| Cuba | | | 3,216 | 4 | 3,220 |
| Cuba | 2023 | Feb | 967 | - | 967 |
| Cuba | 2023 | Mar | 2,249 | 4 | 2,253 |
| Haiti | | | 2,683 | 1 | 2,684 |
| Haiti | 2023 | Feb | 290 | - | 290 |
| Haiti | 2023 | Mar | 2,393 | 1 | 2,394 |
| Nicaragua | | | 333 | - | 333 |
| Nicaragua | 2023 | Feb | 32 | - | 32 |
| Nicaragua | 2023 | Mar | 301 | - | 301 |
| Venezuela | | | 4,443 | 13 | 4,456 |
| Venezuela | 2022 | Nov | 47 | - | 47 |
| Venezuela | 2022 | Dec | 850 | - | 850 |
| Venezuela | 2023 | Jan | 790 | 1 | 791 |
| Venezuela | 2023 | Feb | 787 | 3 | 790 |
| Venezuela | 2023 | Mar | 1,969 | 9 | 1,978 |

Note(s):
1) This report reflects the most up to date data available at the time the database is queried.
2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

Source:
Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality

## INTERROGATORY NO. 2

Identify (for the Parole Program) the average processing time for (a) the adjudication of Form I-134(a) by an intending supporter of an alien, (b) from approval of the Form I-134(a) to the approval of advanced travel authorization, and (c) at the port of entry for parole beneficiaries.

## RESPONSE TO INTERROGATORY NO. 2

Defendants object to Interrogatory No. 2 on the grounds that it incorrectly refers to Form I-134/134A as "Form I-134(a)" and is unduly burdensome because data is not tracked in all instances in the manner requested. Additionally, Defendants object to this Request on the grounds that it is vague and ambiguous because Plaintiffs have not defined the term "processing" and it is not clear what specific actions Plaintiffs intend to be covered by this term. Defendants further

object on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Subject to and notwithstanding these objections, construing the term "processing" as referring to the required actions and steps to make one of the determinations referenced in subparts (a) through (c), Defendants provide the following response:

For Interrogatory No. 2(a), USCIS has information about the average processing time for the adjudication of Form I-134/I-134A. This information is broken down in the table below. The information was pulled from USCIS systems on April 24, 2023, and is an accurate reflection of what the systems showed on that date. This information is subject to change with the passage of time.

| Country | Average Processing Time (In months) | Total Completions |
|---|---|---|
| **CNHV** | **1.2** | **138,254** |
| Cuba | 0.8 | 24,279 |
| Haiti | 0.9 | 38,523 |
| Nicaragua | 0.6 | 17,961 |
| Venezuela | 1.7 | 57,491 |

For Interrogatory No. 2(b), CBP does not have an automated way to track the average time between approval of a Form I-134/I-134A and the determination of whether to issue an advance travel authorization. The time for such an assessment varies based on several factors including, for example, the length of time between the point the Form I-134/I-134A is confirmed to when the beneficiary goes into myUSCIS to confirm biographic data and submit an attestation. CBP's role

in the overall process does not start until the beneficiary goes into myUSCIS, completes the necessary steps within myUSCIS, and the case is then referred to CBP. Once the case is referred to CBP and the beneficiary completes the required steps in CBP One, CBP conducts systems checks and vetting to determine the individual's eligibility for the CHNV processes and whether it is appropriate to issue a travel authorization. The travel authorization is either approved following such comprehensive systems checks and vetting or, if more detailed vetting is needed, is referred for further vetting. If further vetting is required, the vetting is generally completed within approximately fourteen days.

For Interrogatory No. 2(c), Defendants require additional time to respond to this Request. Defendants will supplement this response by May 24, 2023.

**INTERROGATORY NO. 3**

Identify the number residing in Texas from the totals in each subcategory of Interrogatory No. 1.

**RESPONSE TO INTERROGATORY NO. 3**

*See* Response to Interrogatory No. 1, which is incorporated herein by reference. Defendants object to Interrogatory No. 3 on the grounds that it is vague and ambiguous as to whether it refers to financial supporters residing in Texas, or beneficiaries residing in Texas, or a combination thereof for each of the enumerated categories. The address information collected at the time of parole is only that provided by the noncitizen. Subject to and notwithstanding these objections, and limiting the response to (a), (b), (c), Defendants provide the following responses: as of May 18, 2023, CBP records reflect that, of the noncitizens paroled into the United States under the CHNV parole processes between October 18, 2022 and March 31, 2023, 7,198 beneficiaries provided OFO with an intended destination address in the state of Texas.

**INTERROGATORY NO. 4**

Identify the number of minors from the populations identified in the subcategories in Interrogatory Nos. 1 and 3 (both total and residing in Texas).

**RESPONSE TO INTERROGATORY NO. 4**

*See* Responses to Interrogatory Nos. 1 and 3, which are incorporated herein by reference. Subject to and notwithstanding these objections and limiting the response to the categories in Interrogatory No. 1 (a), (b), (c), Defendants provide the following response: as of May 18, 2023, CBP records reflect that, of the noncitizens paroled into the United States under the CHNV parole processes between October 18, 2022 and March 31, 2023, there were 1,399 CHNV beneficiaries under the age of 18 with an intended address in Texas and there were 8,374 CHNV beneficiaries under the age of 18 in total.

**INTERROGATORY NO. 5**

Identify, by month, the number (both total and residing in Texas) of (1) grants of parole of aliens under 8 U.S.C. § 1182(d)(5)(A) since January 20, 2021, and (2) how many of such grantees of parole remain in the United States (and within Texas). Note that this inquiry is not limited to grants of parole under the Parole Program.

**RESPONSE TO INTERROGATORY NO. 5**

Defendants object to Interrogatory No. 5 to the extent it seeks information about parole granted by any DHS component other than CBP. As such, this request exceeds the scope of this case. Defendants further object on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing

court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Further, to compile information about a parolee's current residence is unduly burdensome, as this would require months of manual review of A-Files and electronic information systems. DHS also has no comprehensive method to track whether a parolee remains in the United States. A parolee does not need permission to leave the United States either before or after the expiry of the parole period. Subject to and notwithstanding these objections, Defendants provide the following response:

OIS has information about CBP paroles for the period covering January 20, 2021 to March 31, 2023. The data below covers paroles by both U.S. Border Patrol (USBP) and Office of Field Operations (OFO). This information is broken down by the table below. The information was pulled from CBP systems and analyzed on May 4, 2023.

CBP Paroles by Fiscal Year: January 20, 2021 - March 31, 2023

| | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | NA | NA | NA | 691 | 2,380 | 2,766 | 2,146 | 4,324 | 6,220 | 8,926 | 23,761 | 26,583 | 77,797 |
| 2022 | 13,430 | 8,579 | 22,804 | 22,164 | 12,417 | 31,560 | 68,301 | 68,033 | 62,768 | 65,031 | 67,507 | 128,678 | 571,272 |
| 2023 | 106,308 | 133,752 | 177,404 | 52,927 | 53,429 | 62,719 | NA | NA | NA | NA | NA | NA | 586,539 |
| Total | 119,738 | 142,331 | 200,208 | 75,782 | 68,226 | 97,045 | 70,447 | 72,357 | 68,988 | 73,957 | 91,268 | 155,261 | 1,235,608 |

Notes: Data as of May 4, 2023. USBP paroles based on apprehension date; OFO paroles based on event date. OFO paroles include individuals with a parole disposition and individuals given a Notice to Appear and released with an I-94. USBP paroles only include individuals with a parole disposition. "NA" here means not applicable, as data does not cover dates later than March 2023.

Source: OIS analysis of CBP data.

**INTERROGATORY NO. 6**

Identify, by month, the number (both total and residing in Texas) of aliens from each of Cuba, Haiti, Nicaragua, and Venezuela who have illegally arrived at, or crossed, the border since the initiation of the Parole Program.

**RESPONSE TO INTERROGATORY NO. 6**

Defendants object to Interrogatory No. 6 on the grounds that it is vague and ambiguous as to the phrase "illegally arrived at…the border," as this term is not defined. In addition, Plaintiffs

have not defined the term "crossed the border," and do not state whether this is intended to cover a population different from individuals who have "illegally arrived." DHS is only able to provide information about nationals of CHNV countries who were encountered by USBP. DHS is unable to provide information about whether this specific population resides in Texas, or elsewhere, because this is not the type of information tracked through automated systems. Rather, this information may be found through a manual review of A-Files, which would take months to complete. Further, DHS cannot provide information about those who were not encountered. Subject to and notwithstanding these objections, and construing this Interrogatory as requesting information about the number of nationals of CHNV countries who have been encountered by the USBP after crossing the Southwest Border between ports of entry, Defendants provide the following information:

OIS has information about the number of nationals from CHNV countries encountered by USBP at the Southwest Border for the period covering October 18, 2022 (the beginning of the Venezuela process) to March 31, 2023 for Venezuelans, and from January 6, 2022 (the beginning of the Cuba, Haiti and Nicaragua parole processes) to March 31, 2023 for Cubans, Haitians, and Nicaraguans. This information is broken down in the table below. This information was pulled from CBP systems and analyzed on April 21, 2023.

Unauthorized Immigrants Encountered by USBP at the Southwest Border by Select Nationality: October 18, 2022 - March 31, 2023 and January 6, 2023 - March 31, 2023

| Nationaltiy | Individuals |
|---|---|
| Cuba | 3,571 |
| Haiti | 220 |
| Nicaragua | 2,571 |
| Venezuela | 19,985 |
| Total | 26,347 |

Note: Data as of 4/21/2023. Venezuelan numbers start October 18, 2022, the date the Venezuelan parole program started. All other numbers start January 6, 2023, the date the Cuban, Haitian, and Nicaraguan parole processes started.
Source: DHS Office of Immigration Statistics.

**INTERROGATORY NO. 7**

State how you identified the nationalities of the persons in your response to Interrogatory No. 6.

**RESPONSE TO INTERROGATORY NO. 7**

*See* Response to Interrogatory No. 6, which is incorporated herein by reference. Subject to and notwithstanding these objections, Defendants state that the noncitizens referenced in Interrogatory No. 6 self-report their country of origin and such information may be cross-checked through documents and/or databases which may confirm or refute the information provided if there have been prior encounters and successful repatriations.

**INTERROGATORY NO. 8**

Identify any enforcement actions to collect from intending supporters who have signed Form I-134(a).

**RESPONSE TO INTERROGATORY NO. 8**

Defendants object to Interrogatory No. 8 on the grounds that it incorrectly refers to Form I-134/134A as "Form I-134(a)" and is vague as to the phrases "enforcement action" and "collect."

Subject to and notwithstanding this objection, Defendants state that no enforcement actions have commenced.

**INTERROGATORY NO. 9**

Identify any policies or procedures (planned or implemented) to provide information from Form I-134(a) to States to collect from intending supporters.

**RESPONSE TO INTERROGATORY NO. 9**

*See* Response to Interrogatory No. 8, which is incorporated herein by reference. Defendants further object to Interrogatory No. 9 on the grounds that in seeking policies or procedures that are "planned," such request may include internal agency communications which could implicate the deliberative process, attorney-client, and attorney-work-product privileges. Subject to and notwithstanding this objection, Defendants state that there is no information responsive to this Interrogatory and refer Plaintiffs to the administrative record.

**INTERROGATORY NO. 10**

Identify the average processing time for approval of an alien's Advance Travel Authorization under the Parole Program.

**RESPONSE TO INTERROGATORY NO. 10**

Defendants object to Interrogatory No. 10 on the grounds that it is irrelevant to the claims and defenses in this APA litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Additionally, this Interrogatory is duplicative of Interrogatory No. 2, to the extent that Interrogatory No. 2(b) encompassed the time to assess

advance travel authorizations. Subject to and notwithstanding this objection, Defendants refer Plaintiffs to the response for Interrogatory No. 2.

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1**

Admit that Texas does not get reimbursed by the federal government for expenses incurred to provide public education to individuals who are paroled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 1**

Defendants object to Request for Admission No. 1 because the Request is overbroad and relates to information outside the control of DHS. Defendants lack comprehensive insight into whether any federal agency may or may not reimburse Texas for public education costs associated with CHNV parole process beneficiaries or parolees in general. Accordingly, Defendants are unable to admit or deny.

**REQUEST FOR ADMISSION NO. 2**

Admit that Texas does not get reimbursed by the federal government for expenses incurred to provide Emergency Medicaid services to individuals who are paroled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 2**

Defendants object to Request for Admission No. 2 on the grounds that "Emergency Medicaid" is not defined. This Request is also overbroad because it relates to information outside the control of DHS. Defendants lack comprehensive insight into whether and the extent to which any federal agency may or may not reimburse Texas for expenses incurred to provide Emergency Medicaid services to CHNV parole process beneficiaries or parolees in general. Accordingly, Defendants can neither admit nor deny.

**REQUEST FOR ADMISSION NO. 3**

Admit that Texas does not get fully reimbursed by the federal government for expenses incurred to incarcerate individuals who are paroled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3**

Defendants object to Request for Admission No. 3 because "expenses incurred" is not defined. This Request is also overbroad because it relates to information outside the control of DHS. Defendants lack comprehensive insight into whether any federal agency may or may not reimburse Texas for expenses incurred to incarcerate parolees, if and when, they engage in and are charged with criminal activity resulting in incarceration. Accordingly, Defendants are unable to admit or deny.

**REQUEST FOR ADMISSION NO. 4**

Admit that Texas does not get reimbursed by the federal government for expenses incurred to provide driver's licenses to individuals who are paroled.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4**

Defendants object to Request for Admission No. 4 because "expenses incurred" is not defined. This Request is also overbroad because it relates to information outside the control of DHS. Defendants lack comprehensive insight into whether any federal agency may or may not reimburse Texas for expenses related to the issuance of drivers' licenses for parolees. In this instance, Defendants believe that the Request is based on a premise that has not been established

as true, and which, on information and belief, is false—that Texas incurs a net expense from issuing drivers licenses to individuals who are paroled. Accordingly, deny.

**REQUEST FOR ADMISSION NO. 5**

Admit that Parole Program beneficiaries are not being detained pending any immigration proceedings.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Defendants object to Request for Admission No. 5 on the grounds that it is vague and ambiguous as to what Plaintiffs mean by "immigration proceedings." It is unclear if Plaintiffs are asking whether any CHNV parole process beneficiary has been detained or whether any could be detained. Further, the Request assumes a fact not established: that there are pending immigration proceeding for CHNV beneficiaries. Therefore, Defendants can neither admit nor deny.

**REQUEST FOR ADMISSION NO. 6**

Admit that you do not know whether the number of Parole Program beneficiaries paroled into the United States is lower than the number of aliens from Cuba, Haiti, Nicaragua, and Venezuela who would have otherwise illegally arrived at the border.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6**

Deny.

**REQUEST FOR ADMISSION NO. 7**

Admit that the vetting and screening of Parole Program beneficiaries is not as thorough as aliens applying for a visa to come to the United States.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Defendants object to Request for Admission No. 7 on the grounds that it seeks information that is not relevant to the claims and defenses in this APA litigation, which must be governed by

a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Defendants further object to this request on the grounds that the word "thorough" is vague and ambiguous. Defendants further object that it does not specify what type of visa it refers to. Defendants therefore can neither admit nor deny.

**REQUEST FOR ADMISSION NO. 8**

Admit that you consider a lack of detention capacity to meet the standard of "urgent humanitarian reasons" or "significant public benefit" under 8 U.S.C. § 1182(d)(5)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Defendants object to Request for Admission No. 8 on the grounds that it seeks information not relevant to the claims or defenses in this APA litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Subject to and notwithstanding this objection, Defendants admit that lack of detention capacity is one factor considered based on a totality of the circumstances and in connection with other factors, that may be considered by an immigration officer when determining the appropriate processing pathway, which could include parole.

**REQUEST FOR ADMISSION NO. 9**

Admit that you consider an overall reduction of aliens arriving at the border to meet the standard of "urgent humanitarian reasons" or "significant public benefit" under 8 U.S.C. § 1182(d)(5)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Defendants object to Request to Admit No. 9 on the grounds that it is vague and ambiguous, and therefore Defendants can neither admit nor deny.

**REQUEST FOR ADMISSION NO. 10**

Admit that, under the Parole Program, you make no determination that paroling any individual applicant satisfies the standards of "urgent humanitarian reasons" or "significant public benefit" under 8 U.S.C. § 1182(d)(5)(A).

**RESPONSE TO REQUEST FOR ADMISSION NO. 10**

Deny.

**REQUEST FOR ADMISSION NO. 11**

Admit that Parole Program beneficiaries are free to relocate to another state other than the state of residence at the time of initial application or parole.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11**

Defendants object to Request for Admission No. 11 on the grounds that the words "are free" are vague and ambiguous. Defendants admit that they are aware of no physical impediment to prevent parole beneficiaries from relocating between States.

**REQUEST FOR ADMISSION NO. 12**

Admit that the advance travel authorization questionnaire under the Parole Program seeks less information from applicants than the forms aliens must complete for Electronic System for Travel Authorization, nonimmigrant visas, or immigrant visas.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12**

Defendants object to Request for Admission No. 12 on the grounds that it is vague and ambiguous as to what Plaintiffs mean by "questionnaires" and unclear if Plaintiffs refer to online forms or applications. It is also unclear whether Plaintiffs intend to seek information about parole beneficiaries, parole supporters, or both. Defendants also object to the extent that Plaintiffs are seeking to draw a comparison between the processing of individuals for visas and ESTAs and the ATA processes, as the processes are completely separate and serve fundamentally different purposes. Defendants construe this Request as asking for information related to the required steps that both intending supporters and intending parole beneficiaries must complete to be considered for an advance travel authorization. Defendants only admit with regards to ESTA.

Date: May 19, 2023

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

BRIAN C. WARD
*Senior Litigation Counsel*

*/s/ Erin T. Ryan*
ERIN T. RYAN
ELISSA P. FUDIM
*Trial Attorneys*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 532-5802
Email: erin.t.ryan@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

STATE OF TEXAS., *et al.*,

*Plaintiffs*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants*

Case No. 6: 23-cv-00007

**CERTIFICATION OF DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

I, Avideh Moussavian, hereby declare that I am the Chief of the Office of Policy and Strategy at U.S. Citizenship and Immigration Services. Based upon reasonable inquiry, I certify that the information contained in USCIS's responses to Interrogatory Nos. 8 and 9 are true and correct to the best of my knowledge, information, and belief.

Dated: May 18, 2023

AVIDEH MOUSSAVIAN Digitally signed by AVIDEH MOUSSAVIAN Date: 2023.05.18 16:18:00 -04'00'

Avideh Moussavian
Chief, Office of Policy and Strategy
U.S. Citizenship and Immigration Services
Department of Homeland Security

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

STATE OF TEXAS, et al.

Plaintiffs

v.

DEPARTMENT OF HOMELAND SECURITY., et al.

Defendants.

No. 6:23-cv-00007

CERTIFICATION OF RESPONSES TO PLAINTIFFS' [REVISED] FIRST SET OF INTERROGATORIES

I, Marc Rosenblum, hereby declare that I am the Deputy Assistant Secretary in the Office of Immigration Statistics for the U.S. Department of Homeland Security (DHS). Based on reasonable inquiry and information provided to me in my official capacity, I certify that the information pertaining to DHS contained in Defendants' Responses to Interrogatory Nos. 1(a)-(e), and 5-7 of Plaintiffs' [Revised] First Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

Dated: May 19, 2023

MARC R ROSENBLUM Digitally signed by MARC R ROSENBLUM Date: 2023.05.19 13:47:42 -04'00'

Marc Rosenblum
Deputy Assistant Secretary
U.S. Department of Homeland Security

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

STATE OF TEXAS., *et al.*,

*Plaintiffs*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants*

Case No. 6: 23-cv-00007

**CERTIFICATION OF DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

I, Katherine J. Lotspeich, hereby declare that I am the Chief of the Office of Performance and Quality. Based upon reasonable inquiry, I certify that the information contained in USCIS's responses to Interrogatory Nos. 1(f), 1(g), and 2(a) are true and correct to the best of my knowledge, information, and belief.

Digitally signed by KATHERINE J LOTSPEICH
Date: 2023.05.18 16:52:53 -04'00'

Dated: May 18, 2023

Katherine J. Lotspeich
Chief, Office of Performance and Quality

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

STATE OF TEXAS., *et al.*,

*Plaintiffs*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants*

Case No. 6: 23-cv-00007

**CERTIFICATION OF DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

I, Graham Dudley, hereby declare that I am the Acting Director, Enforcement Programs Division, Admissibility and Passenger Programs, Office of Field Operations, U.S. Customs and Border Protection. Based upon reasonable inquiry, I certify that the information contained in CBP's responses to Interrogatory Nos. 2(b), 2(c), 3, 4, and 10, is true and correct to the best of my knowledge, information, and belief.

Dated: May 19, 2023

Graham Dudley
Acting Director, Enforcement Programs Division
Admissibility and Passenger Programs
Office of Field Operations
U.S. Customs and Border Protection

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants*. | Case 6:23-cv-00007 |

# EXHIBIT 39



**CHNV Process Amendment**
**Guidance to IRIS Reviewers**

Background:

Because the demand for the Processes for Cuba, Haiti, Nicaragua, and Venezuela (CHNV) far outstrips the monthly limit of 30,000 travel authorizations, DHS is instituting a case prioritization mechanism based upon an open-ended question added to the Form I-134A, *Online Request to be a Supporter and Declaration of Financial Support*:

**"A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Please explain why a favorable exercise of discretion is merited for this individual."**

This question will be answered by the supporter in an open text field. There is a minimum required character count of 750 and a maximum of 1500 characters (approximately 150-250 words). This question is a required field; thus, it is not possible to submit the form with this field left blank.

This question and guidance will only apply to cases filed with USCIS on or after July 13, 2023. USCIS is not requesting supporters who have previously filed a Form I-134A to amend their pending application.

The USCIS I-134A Reviewer will read this answer as part of the Form I-134A review and consider, taking into account the considerations described below, whether the explanation supports prioritization. If the Reviewer determines that the case warrants a confirmation and that the provided explanation is sufficient for prioritization, the case will proceed to the next step where the beneficiary will be invited to enter the online system and complete their stage of the process, including attesting that the explanation supporting the prioritization that was provided by the supporter on the I-134A is accurate. On the other hand, if the explanation provided by the supporter is not sufficient to support prioritization of the case, the case will be placed on hold and not permitted to proceed through to the next step of the process.

Considerations:

When considering whether a case should be prioritized based on the supporter's response to Part 2, Question 4, the reviewer should take the below considerations into account.

- Does the response demonstrate the need for pressing or immediate action or attention?
- Does the response demonstrate a concern for the beneficiary's welfare?
- Does the response demonstrate that parole would be helpful to a community or population?

The reviewer may also take into account how the reason expressed in the response compares to the reasons expressed in other responses.

For example, the Reviewer may consider whether the response references any of the following:

- General civil strife or political unrest;
- Rejoining with family;
- Medical needs or treatment;
- Vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance;
- Severe economic hardship

Process

- The I-134A Reviewer will review each I-134A per existing guidance.
- If, after review of the form and all accompanying evidence, the Reviewer determines that a non-confirmation is warranted for any reason under existing guidance, the non-confirmation should be issued, and the response to Part 2, Question 4 will not need to be considered.
- If, after review of the form and all accompanying evidence, the Reviewer determines that a confirmation is warranted under existing guidance, for Forms I-134A which include Part 2, Question 4, the Reviewer should proceed to consider whether the case should be prioritized.
    - If a need for prioritization has been articulated, the Reviewer should confirm the I-134A, and the case will proceed through the process.
      If an individualized need for prioritization has not been articulated, the reviewer should deprioritize the case by putting the case on hold and neither issuing a confirmation nor a non-confirmation. When placing a case on Hold, please select **Other** and enter **"Eligible for Confirmation, being held for lack of prioritization."**

**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br>*Defendants*. | Case 6:23-cv-00007 |

# EXHIBIT 40

PLAINTIFF'S
EXHIBIT
tabbies



U.S. Citizenship
and Immigration
Services

# CHNV Parole Processes Change in Form I-134A

## Additional Question - Review

July 2023

U.S. Citizenship and Immigration Services

# Overview

1. Addition of New Question
2. Expected Review

23-cv-00007_0180

# Form I-134A – New Question

U.S. Citizenship and Immigration Services

**Part 2. Information about the Beneficiary**

Complete **Part 2.** regardless of whether you are filing this form on behalf of yourself as the beneficiary or on behalf of another individual who is the beneficiary.

1. Beneficiary's Current Legal Name (Do not provide a nickname.)

   Family Name (Last Name) | Given Name (First Name) | Middle Name

2. Other Names Used

   Provide all other names the beneficiary has ever used, including aliases, maiden name, and nicknames. If you need extra space to complete this section, use the space provided in **Part 8. Additional Information.**

   Family Name (Last Name) | Given Name (First Name) | Middle Name

3. If "Family Reunification Program" selected in **Part 1., Item Number 2.** Is this the individual listed as the principal beneficiary in your Family Reunification Parole Process invitation letter? ☐ Yes ☐ No

4. A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Please explain why a favorable exercise of discretion is merited for this individual.

- New Question was added under Part 2, Question 4.
- "A grant of parole is a discretionary determination granted on a case-by-case basis for urgent humanitarian reasons or significant public benefit. Please explain why a favorable exercise of discretion is merited for this individual."



# Form I-134A – New Question

- This question and guidance will only apply to cases filed with USCIS on or after July 13, 2023. USCIS is not requesting supporters who have previously filed a Form I-134A to amend their pending application.

- This question will be answered by the supporter in an open text field. There is a minimum required count of 150-250 words.

- This question is a required field; thus, it is not possible to submit the form with this field left blank.



# Form I-134A ~ So what does this mean?

- The I-134A Reviewer will review each I-134A per existing guidance.
- If, after review of the form and all accompanying evidence, the Reviewer determines that a non-confirmation is warranted for any reason under existing guidance, the non-confirmation should be issued, and the response to Part 2, Question 4 will not need to be considered.



U.S. Citizenship and Immigration Services

# Form I-134A ~ So what does this mean

- If the Reviewer determines that a confirmation is warranted under existing guidance, for Forms I-134A which include Part 2, Question 4, the Reviewer should proceed to consider whether the case should be prioritized.
  - If a need for prioritization has been articulated, the Reviewer should confirm the I-134A, and the case will proceed through the process.
- If an individualized need for prioritization has not been articulated, the reviewer should deprioritize the case by putting the case on hold and neither issuing a confirmation nor a non-confirmation.
  - When placing a case on Hold, please select **Other** and enter **"Eligible for Confirmation, being held for lack of prioritization."**
  - In addition, place the confirmable case that is not being prioritized on the **Tracker**



U.S. Citizenship and Immigration Services

# Form I-134A ~ What is needed?

- You should look at:
  - Does the response demonstrate the need for pressing or immediate action or attention?
  - Does the response demonstrate a concern for the beneficiary's welfare?
  - Does the response demonstrate that parole would be helpful to a community or population?

- For example, the Reviewer may consider whether the response references any of the following:
  - General civil strife or political unrest;
  - Rejoining with family;
  - Medical needs or treatment;
  - Vulnerabilities of either the beneficiary or a US-based person, including the need to provide caregiving assistance;
  - Severe economic hardship

# Disclaimer

U.S. Citizenship and Immigration Services

- This training module is intended solely to provide training. It is not intended to, does not, and may not be relied upon to create or confer any right(s) or benefit(s), substantive or procedural, enforceable at law by any individual or other party in benefit applications before USCIS, in removal proceedings, in litigation with the United States, or in any other form or manner. This training module does not have the force of law, or of a DHS directive.



# Dissemination

This presentation may not be reproduced or further disseminated without the express written consent of the Office of Policy & Strategy (OP&S) and Immigration Records and Identity Services (IRIS).

**Parole Program Beneficiaries of School Age: October 18, 2022 - June 30, 2023**

| Program Country | Age 6-17 |
|---|---:|
| Cuba | 4,555 |
| Haiti | 4,020 |
| Nicaragua | 2,637 |
| Venezuela | 7,531 |
| Total | 18,743 |

Notes: DHS-OIS analysis of data pulled from a live system that matures over time. USCIS data as of July 24, 2023; OFO data as of July 7, 2023. School age is defined as individuals aged 6-17. Venezuelan numbers start October 18, 2022, the date the Venezuelan parole program started. All other numbers start January 6, 2023, the date the Cuban, Haitian, and Nicaraguan parole processes started.

Source: DHS Office of Immigration Statistics analysis of USCIS and OFO data.

PLAINTIFF'S EXHIBIT
CASE NO. 6:23-cv-7
EXHIBIT NO. 41

**Unauthorized Immigrants Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - June 30, 2023**

| Nationality | Individuals |
|---|---|
| Cuba | 354,742 |
| Haiti | 69,610 |
| Nicaragua | 296,942 |
| Venezuela | 327,193 |
| Total | 1,048,487 |

Note: Data as of July 7, 2023.

Source: DHS Office of Immigration Statistics.

**Unauthorized Immigrants of School Age Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - June 30, 2023**

| Nationality | Age 6-17 |
|---|---|
| Cuba | 28,635 |
| Haiti | 4,642 |
| Nicaragua | 25,992 |
| Venezuela | 42,133 |
| Total | 101,402 |

Notes: School age is defined as individuals aged 6-17. Data as of July 7, 2023.

Source: DHS Office of Immigration Statistics.

**Criminal Unauthorized Immigrants Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - June 30, 2023**

| Nationality | Individuals |
|---|---|
| Cuba | 148 |
| Haiti | 12 |
| Nicaragua | 874 |
| Venezuela | 37 |
| Total | 1,071 |

Note: Data as of July 7, 2023.

Source: DHS Office of Immigration Statistics.

**Criminal Unauthorized Immigrants of School Age Encountered by USBP at the Southwest Border by Select Nationality: January 20, 2021 - June 30, 2023**

| Nationality | Age 6-17 |
| --- | --- |
| Cuba | 0 |
| Haiti | 0 |
| Nicaragua | 0 |
| Venezuela | 0 |
| Total | 0 |

Notes: School age is defined as individuals aged 6-17. Data as of July 7, 2023.

Source: DHS Office of Immigration Statistics.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, et al.<br><br>Plaintiffs<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY., et al.<br><br>Defendants. | ) | No. 6:23-cv-00007 |

**DEFENDANTS' SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFFS'[REVISED] FIRST SET OF DISCOVERY REQUESTS**

Pursuant to Federal Rules of Civil Procedure 33, 34, 36 Defendants hereby submit their supplemental objections and responses to Plaintiffs' [Revised] First Set of Discovery Requests.

**UPDATED REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 4**

Produce all documents related to forecasted or actual use of public education by Parole Program beneficiaries.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4**

Defendants object to Request No. 4 on the grounds that it is overly broad to the extent it seeks all "documents related to" forecasted or actual use of public education by Parole Program beneficiaries which may include internal agency communications which could implicate the deliberative process, attorney-client, and attorney work product privileges. Subject to and notwithstanding these objections, Defendants refer Plaintiffs to document Bates labeled 23-cv-00007_188, which contains the number of Cuban, Haitian, Nicaraguan, Venezuelan (CHNV)

beneficiaries of school age (children 6 to 17 years old) who have arrived in the United States pursuant to the CHNV parole processes for the period of October 18, 2022 to June 30, 2023.

**REQUEST FOR PRODUCTION NO. 5**

Produce all documents related to the subjects of Request for Production Nos. 2, 3, and 4 but for all aliens from Cuba, Haiti, Nicaragua, and Venezuela who have illegally arrived at the border since January 20, 2021.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

*See* Responses to Request for Production Nos. 2, 3, and 4, which we incorporate herein. Defendants further object to Request No. 5 on the grounds that it is vague as to the phrase "illegally arrived." For purposes of this request, Defendants interpret "illegally arrived" as referring to CHNV noncitizens who were encountered by USBP between ports of entry at the Southwest Border. Defendants also object to the extent that such information may include internal agency communications which could implicate the deliberative process, attorney-client, and attorney-work-product privileges. Defendants further object to this request on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Subject to and notwithstanding these objections, Defendants refer Plaintiffs to documents Bates labeled 23-cv-00007_189-192 which contains information regarding the number of CHNV nationals who were encountered by USBP at the Southwest Border between January 20, 2021 and June 30, 2023.

## INTERROGATORIES

### INTERROGATORY NO. 1

Identify, by month, the number of Parole Program applications (a) received, (b) adjudicated, (c) approved, (d) denied, (e) pending, (f) granted employment authorization, and (g) denied employment authorization.

### RESPONSE TO INTERROGATORY NO. 1

Defendants object to Interrogatory No. 1 on the grounds that it is vague as to the word "applications." The word "applications" in the CHNV parole processes could potentially refer to information submitted by a person seeking to become a financial supporter, a person seeking advance travel authorization, and a person with advance travel authorization seeking parole at a port of entry. Subject to and notwithstanding these objections, construing the word "applications" to refer to USCIS confirmations of Forms I-134/I-134A for the CHNV parole processes, Defendants provides the following response:

For Interrogatory No. 1(a)-(e), DHS's Office of Immigration Statistics ("OIS") has information on the number of CHNV nationals who initiated the parole processes and whose applications were confirmed by USCIS[1]; CHNV nationals who have submitted information through CBP One and whose applications were approved, denied, or expired; CHNV nationals

---

[1] In other words, a potential financial sponsor has filed the Form I-134A with USCIS and the intended/potential beneficiary is eligible to set up a myUSCIS account, after the potential beneficiary has been confirmed. Because review and confirmation takes time, the number of applications received in a particular month may increase as applications are later confirmed and added to the total. As for prioritization, USCIS initially prioritized first in first out, but as the CHNV parole processes have continued, USCIS has split prioritization between first in first out and a randomizer. *See* U.S. Citizenship and Immigration Services, *Frequently Asked Questions About the Processes for Cubans, Haitians, Nicaraguans, and Venezuelans*, https://www.uscis.gov/humanitarian/frequently-asked-questions-about-the-processes-for-cubans-haitians-nicaraguans-and-venezuelans (stating "[u] nder the new review process, we will randomly select about half of the monthly total of Forms I-134A, regardless of filing date, from the entire pending workload to review. We will review the other half of the monthly total based on when the case was submitted under the first-in, first-out method, which prioritizes the oldest Forms I-134A for review").

with approved advance travel authorization; CHNV nationals with denied advance travel authorization; and CHNV nationals whose application was pending adjudication for the period covering October 18, 2022 to June 30, 2023. This information is broken down by country and month with associated totals for each category. The information was pulled from USCIS and CBP systems on July 24, 2023 and was analyzed by OIS over the course of July 24 and 25, 2023.

Parole Process Applications by Month and Status: October 18, 2022 – June 30, 2023 and January 6, 2023 – June 30, 2023

| Month | Venezuela | | | | |
|---|---|---|---|---|---|
| | Received | Adjudicated | Approved | Denied | Pending |
| October 2022 | 37,504 | 9,017 | 8,681 | 320 | 3 |
| November 2022 | 10,906 | 6,631 | 6,397 | 206 | 3 |
| December 2022 | 2,312 | 2,077 | 2,028 | 46 | 0 |
| January 2023 | 8,311 | 13,355 | 13,059 | 266 | 16 |
| February 2023 | 2,368 | 6,306 | 6,141 | 149 | 7 |
| March 2023 | 1,809 | 6,333 | 6,114 | 197 | 8 |
| April 2023 | 1,704 | 5,984 | 5,676 | 283 | 11 |
| May 2023 | 3,037 | 6,294 | 6,029 | 235 | 29 |
| June 2023 | 3,682 | 4,425 | 4,272 | 108 | 44 |
| Total | 71,633 | 60,422 | 58,397 | 1,810 | 121 |
| **Month** | **Nicaragua** | | | | |
| | **Received** | **Adjudicated** | **Approved** | **Denied** | **Pending** |
| October 2022 | 0 | 0 | 0 | 0 | 0 |
| November 2022 | 0 | 0 | 0 | 0 | 0 |
| December 2022 | 0 | 0 | 0 | 0 | 0 |
| January 2023 | 6,122 | 1,913 | 1,841 | 69 | 2 |
| February 2023 | 13,119 | 5,942 | 5,768 | 170 | 3 |
| March 2023 | 13,011 | 6,184 | 6,006 | 166 | 5 |
| April 2023 | 4,886 | 6,896 | 6,650 | 239 | 6 |
| May 2023 | 1,576 | 4,976 | 4,802 | 158 | 14 |
| June 2023 | 985 | 5,019 | 4,868 | 95 | 56 |
| Total | 39,699 | 30,930 | 29,935 | 897 | 86 |
| **Month** | **Haiti** | | | | |
| | **Received** | **Adjudicated** | **Approved** | **Denied** | **Pending** |
| October 2022 | 0 | 0 | 0 | 0 | 0 |
| November 2022 | 0 | 0 | 0 | 0 | 0 |
| December 2022 | 0 | 0 | 0 | 0 | 0 |
| January 2023 | 48,335 | 4,168 | 4,083 | 78 | 1 |
| February 2023 | 13,179 | 11,814 | 11,629 | 169 | 5 |
| March 2023 | 9,824 | 13,518 | 13,295 | 200 | 5 |
| April 2023 | 3,981 | 13,129 | 12,887 | 228 | 6 |
| May 2023 | 2,229 | 11,519 | 11,334 | 181 | 3 |
| June 2023 | 1,290 | 10,137 | 9,986 | 110 | 41 |
| Total | 78,838 | 64,285 | 63,314 | 966 | 61 |
| **Month** | **Cuba** | | | | |
| | **Received** | **Adjudicated** | **Approved** | **Denied** | **Pending** |
| October 2022 | 0 | 0 | 0 | 0 | 0 |
| November 2022 | 0 | 0 | 0 | 0 | 0 |
| December 2022 | 0 | 0 | 0 | 0 | 0 |
| January 2023 | 24,499 | 5,849 | 5,761 | 81 | 2 |
| February 2023 | 7,730 | 6,006 | 5,823 | 180 | 1 |
| March 2023 | 3,466 | 8,363 | 8,242 | 108 | 9 |
| April 2023 | 2,144 | 5,803 | 5,701 | 90 | 8 |
| May 2023 | 4,909 | 9,045 | 8,936 | 88 | 22 |
| June 2023 | 1,612 | 3,979 | 3,933 | 35 | 9 |
| Total | 44,360 | 39,046 | 38,396 | 582 | 51 |

Notes: Data as of 7/24/2023. "Applications received" pertains to CHNV beneficiaries (i.e., people with my USCIS accounts). Due to datasource differences, the number of USCIS applications received is not equal to the sum of those OFO adjudicates and labels as pending. Adjudicated applications include expired applications, in addition to approved and denied applications. Data are preliminary and subject to change. Data does not include individuals with multiple nationalities. Applications approved are those that have not expired due to failure to travel within a 90-day window and have not been cancelled. Includes approved applications for people that have already entered the United States. The Venezuela parole process started October 18, 2022 so numbers start then. The Cuba, Haiti, and Nicaragua parole processes started January 6, 2023 so CHN numbers start then.

Source: DHS Office of Immigration Statistics analysis of USCIS and OFO data.

For Interrogatory No. 1(f) and (g), USCIS has information about the number of employment authorization applications it has granted and denied to CHNV beneficiaries. This information is broken down in the table below. The information was pulled from USCIS systems on July 26, 2023 and is an accurate reflection of what the systems showed on that date. This information is subject to change with the passage of time.

I-765, Application for Employment Authorization
For CHNV Approvals and Denials, by year and month
through 6/30/2023

U.S. Citizenship and Immigration Services

| Parole Country | Year | Month | Approval | Denial | Total |
|---|---|---|---|---|---|
| | | | | | |
| Grand Total | | | 64,370 | 124 | 64,494 |
| | | | | | |
| Cuba | | | 14,463 | 23 | 14,486 |
| Cuba | 2023 | Feb | 967 | - | 967 |
| Cuba | 2023 | Mar | 2,249 | 4 | 2,253 |
| Cuba | 2023 | Apr | 2,268 | - | 2,268 |
| Cuba | 2023 | May | 4,445 | 5 | 4,450 |
| Cuba | 2023 | Jun | 4,534 | 14 | 4,548 |
| Haiti | | | 20,930 | 31 | 20,961 |
| Haiti | 2023 | Feb | 290 | - | 290 |
| Haiti | 2023 | Mar | 2,393 | 1 | 2,394 |
| Haiti | 2023 | Apr | 3,919 | 3 | 3,922 |
| Haiti | 2023 | May | 6,418 | 10 | 6,428 |
| Haiti | 2023 | Jun | 7,910 | 17 | 7,927 |
| Nicaragua | | | 3,921 | 32 | 3,953 |
| Nicaragua | 2023 | Feb | 32 | - | 32 |
| Nicaragua | 2023 | Mar | 301 | - | 301 |
| Nicaragua | 2023 | Apr | 578 | 4 | 582 |
| Nicaragua | 2023 | May | 1,202 | 20 | 1,222 |
| Nicaragua | 2023 | Jun | 1,808 | 8 | 1,816 |
| Venezuela | | | 25,056 | 38 | 25,094 |
| Venezuela | 2022 | Nov | 47 | - | 47 |
| Venezuela | 2022 | Dec | 849 | - | 849 |
| Venezuela | 2023 | Jan | 790 | 1 | 791 |
| Venezuela | 2023 | Feb | 787 | 3 | 790 |
| Venezuela | 2023 | Mar | 1,969 | 9 | 1,978 |
| Venezuela | 2023 | Apr | 1,713 | 5 | 1,718 |
| Venezuela | 2023 | May | 5,827 | 9 | 5,836 |
| Venezuela | 2023 | Jun | 13,074 | 11 | 13,085 |

Note(s):

1) This report reflects the most up to date data available at the time the database is queried.

2) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.

Source:

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
CLAIMS3 & ELIS queried 07/2023, TRK #12559.

**INTERROGATORY NO. 2**

Identify (for the Parole Program) the average processing time for (a) the adjudication of Form I-134(a) by an intending supporter of an alien, (b) from approval of the Form I-134(a) to the approval of advanced travel authorization, and (c) at the port of entry for parole beneficiaries.

**RESPONSE TO INTERROGATORY NO. 2**

Defendants object to Interrogatory No. 2 on the grounds that it incorrectly refers to Form I-134/134A as "Form I-134(a)" and is unduly burdensome because data is not tracked in all instances in the manner requested. Additionally, Defendants object to this Request on the grounds that it is vague and ambiguous because Plaintiffs have not defined the term "processing" and it is not clear what specific actions Plaintiffs intend to be covered by this term. Defendants further object on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Subject to and notwithstanding these objections, construing the term "processing" as referring to the required actions and steps to make one of the determinations referenced in subparts (a) through (c), Defendants provide the following response:

For Interrogatory No. 2(a), USCIS has information about the average processing time for the adjudication of Form I-134/I-134A. This information is broken down in the table below. The information was pulled from USCIS systems on July 26, 2023 and is an accurate reflection of what the systems showed on that date. This information is subject to change with the passage of time.

Form I-134/I-134A, Online Request to be a Supporter and Declaration of Financial Support
Processing Times (in Months)
Cuba, Haiti, Nicaragua, and Venezuela
January 1, 2023 to June 30, 2023

U.S. Citizenship and Immigration Services

| Country | Average Processing Time | Completions |
|---|---|---|
| CNHV TOTAL | 1.9 | 219,232 |
| Cuba | 1.5 | 45,598 |
| Haiti | 1.9 | 78,718 |
| Nicaragua | 1.2 | 39,177 |
| Venezuela | 2.7 | 55,739 |

Note(s):

1) Some petitions/applications/requests approved or denied may have been received in previous reporting periods.
2) This report reflects the most up to date data available at the time the database is queried.
3) Counts may differ from those reported in previous periods due to system updates and post-adjudicative outcomes.
4) For a complete list of USCIS forms and descriptions, visit: https://www.uscis.gov/forms

Source:

Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Performance and Quality
ELIS, queried 7/2023, TRK 12552

For Interrogatory no. 2(b). there are no updates. For Interrogatory No. 2(c), CBP construes this request as seeking information about the average time that CHNV nationals who were paroled from a POE remained in CBP custody prior to the parole determination. This information is not tracked by CBP in any automated manner. However, on July 27, 2023 CBP reviewed data reflecting the time in custody for CHNV nationals who were ultimately paroled between October 18, 2023 through June 30, 2023. Of this population, the estimated average time in custody, as measured by the time to complete to complete processing up until the release of the individual was 1.63 hours. The data pulled excluded cases in which the time, high or low, appeared to be aberrational. For instance, this number does not include clear data errors, such as an individual who the system shows remained in custody for more than 160 days. Such data anomalies are generally caused by human error during the manual entry of data or due to case updates or

corrections made after an individual has left custody. Without excluding these cases, the average time in custody was 5.35 hours.

**INTERROGATORY NO. 3**

Identify the number residing in Texas from the totals in each subcategory of Interrogatory No. 1.

**RESPONSE TO INTERROGATORY NO. 3**

*See* Response to Interrogatory No. 1, which is incorporated herein by reference. Defendants object to Interrogatory No. 3 on the grounds that it is vague and ambiguous as to whether it refers to financial supporters residing in Texas, or beneficiaries residing in Texas, or a combination thereof for each of the enumerated categories. The address information collected at the time of parole is only that provided by the noncitizen. Subject to and notwithstanding these objections, and limiting the response to (a), (b), (c), Defendants provide the following responses: as of July 26, 2023, CBP records reflect that, of the noncitizens paroled into the United States under the CHNV parole processes between October 18, 2022 and June 30, 2023, 13,990 beneficiaries provided OFO with an intended destination address in Texas.

**INTERROGATORY NO. 4**

Identify the number of minors from the populations identified in the subcategories in Interrogatory Nos. 1 and 3 (both total and residing in Texas).

**RESPONSE TO INTERROGATORY NO. 4**

*See* Responses to Interrogatory Nos. 1 and 3, which are incorporated herein by reference. Subject to and notwithstanding these objections and limiting the response to (a),(b),(c), Defendants provide the following response: as of July 26, 2023, CBP records reflect that, of the noncitizens paroled into the United States under the CHNV parole processes between October 18, 2022 and

June 30, 2023, there were 2,664 CHNV beneficiaries under the age of 18 with an intended address in Texas and there were 17,806 CHNV beneficiaries under the age of 18 in total.

**INTERROGATORY NO. 5**

Identify, by month, the number (both total and residing in Texas) of (1) grants of parole of aliens under 8 U.S.C. § 1182(d)(5)(A) since January 20, 2021, and (2) how many of such grantees of parole remain in the United States (and within Texas). Note that this inquiry is not limited to grants of parole under the Parole Program.

**RESPONSE TO INTERROGATORY NO. 5**

Defendants object to Interrogatory No. 5 to the extent it seeks information about parole granted by any DHS component other than CBP. As such, this request exceeds the scope of this case. Defendants further object on the grounds that it seeks information that is not relevant to the claims and defenses raised in this Administrative Procedures Act ("APA") litigation, which must be governed by a review of the Certified Administrative Record. Under the APA, the district court's review of merits issues must be "based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Further, to compile information about a parolee's current residence is unduly burdensome, as this would require months of manual review of A-Files and electronic information systems. DHS also has no comprehensive method to track whether a parolee remains in the United States. A parolee does not need permission to leave the United States either before or after the expiry of the parole period. Subject to and notwithstanding these objections, Defendants provide the following response:

OIS has information about CBP paroles for the period covering January 20, 2021 to June 30, 2023. The data below covers paroles by both U.S. Border Patrol (USBP) and Office of Field Operations (OFO). This information is broken down by the table below. The information was pulled from CBP systems on July 6 and 7, 2023 and was analyzed by OIS on July 25, 2023.

**CBP Paroles by Fiscal Year: January 20, 2021 - June 30, 2023**

| Year | October | November | December | January | February | March | April | May | June | July | August | September | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | NA | NA | NA | 691 | 2,380 | 2,766 | 2,146 | 4,324 | 6,220 | 9,013 | 46,505 | 57,809 | 131,854 |
| 2022 | 27,199 | 10,581 | 24,145 | 22,164 | 12,415 | 32,537 | 69,025 | 62,345 | 51,635 | 53,326 | 51,859 | 112,674 | 529,905 |
| 2023 | 106,400 | 133,905 | 177,587 | 52,937 | 53,452 | 62,695 | 59,424 | 77,761 | 78,666 | NA | NA | NA | 802,827 |
| Total | 133,599 | 144,486 | 201,732 | 75,792 | 68,247 | 97,998 | 130,595 | 144,430 | 136,521 | 62,339 | 98,364 | 170,483 | 1,464,586 |

Notes: DHS-OIS analysis of data pulled from a live system that matures over time; reporting is current as of July 7, 2023 except for Operation Allies Refuge (OAR) paroles which are based on locked-down data as of July 6, 2023. USBP paroles based on apprehension date; OFO paroles based on event date except for OAR paroles which are based on arrival date. OFO paroles include individuals with a parole disposition and individuals given a Notice to Appear and released with an I-94. USBP paroles only include individuals with a parole disposition. "NA" here means not applicable, as data does not cover dates before January 2021 or later than June 2023.

Source: DHS Office of Immigration Statistics analysis of CBP data.

**INTERROGATORY NO. 6**

Identify, by month, the number (both total and residing in Texas) of aliens from each of Cuba, Haiti, Nicaragua, and Venezuela who have illegally arrived at, or crossed, the border since the initiation of the Parole Program.

**RESPONSE TO INTERROGATORY NO. 6**

Defendants object to Interrogatory No. 6 on the grounds that it is vague and ambiguous as to the phrase "illegally arrived at...the border," as this term is not defined. In addition, Plaintiffs have not defined the term "crossed the border," and do not state whether this is intended to cover a population different from individuals who have "illegally arrived." DHS is only able to provide information about nationals of CHNV countries who were encountered by USBP. DHS is unable to provide information about whether this specific population resides in Texas, or elsewhere, because this is not the type of information tracked through automated systems. Rather, this information may be found through a manual review of A-Files, which would take months to complete. Further, DHS cannot provide information about those who were not encountered.

Subject to and notwithstanding these objections, and construing this Interrogatory as requesting information about the number of nationals of CHNV countries who have been encountered by the USBP after crossing the Southwest Border between ports of entry, Defendants provide the following information:

OIS has information about the number of nationals from CHNV countries encountered by USBP at the Southwest Border for the period covering October 18, 2022 (the beginning of the Venezuela process) to June 30, 2023 for Venezuelans, and from January 6, 2022 (the beginning of the Cuba, Haiti and Nicaragua parole processes) to June 30, 2023 for Cubans, Haitians, and Nicaraguans. This information is broken down in the table below. The information was pulled from CBP systems on July 7, 2023 and was analyzed by OIS on July 27, 2023.

**Unauthorized Immigrants Encountered by USBP at the Southwest Border by Select Nationality: October 18, 2022 - March 31, 2023 and January 6, 2023 - June 30, 2023**

| Nationality | Individuals |
|---|---|
| Cuba | 4,982 |
| Haiti | 831 |
| Nicaragua | 3,330 |
| Venezuela | 78,002 |
| Total | 87,145 |

Notes: Data as of July 7, 2023. Venezuelan numbers start October 18, 2022, the date the Venezuelan parole process started. All other numbers start January 6, 2023, the date the Cuban, Haitian, and Nicaraguan parole processes started.

Source: DHS Office of Immigration Statistics.

Date: August 14, 2023

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

*/s/ Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
Email: brian.c.ward@usdoj.gov

Elissa P. Fudim
Erin T. Ryan
*Trial Attorneys*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

STATE OF TEXAS., *et al.*,

*Plaintiffs*,

v.

DEPARTMENT OF HOMELAND SECURITY, *et al.*,

*Defendants*

Case No. 6: 23-cv-00007

**CERTIFICATION OF DEFENDANTS' UPDATED RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES TO ALL DEFENDANTS**

I, Katherine J. Lotspeich, hereby declare that I am the Chief of the Office of Performance and Quality at USCIS. Based upon reasonable inquiry, I certify that the information contained in USCIS's responses to Interrogatory Nos. 1(f), 1(g), and 2(a) are true and correct to the best of my knowledge, information, and belief.

Dated: July 28, 2023

KATHERINE J LOTSPEICH Digitally signed by KATHERINE J LOTSPEICH Date: 2023.07.28 15:56:47 -04'00'

Katherine J. Lotspeich
Chief, Office of Performance and Quality
USCIS

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, et al. <br> Plaintiffs <br> v. <br> DEPARTMENT OF HOMELAND SECURITY., et al. <br> Defendants. | ) | No. 6:23-cv-00007 |

**CERTIFICATION OF UPDATED RESPONSES TO PLAINTIFFS' [REVISED] FIRST SET OF INTERROGATORIES**

I, Marc Rosenblum, hereby declare that I am the Deputy Assistant Secretary in the Office of Immigration Statistics for the U.S. Department of Homeland Security (DHS). Based on reasonable inquiry and information provided to me in my official capacity, I certify that the information pertaining to DHS contained in Defendants' Updated Responses to Interrogatory Nos. 1(a)-(e), and 5-6 of Plaintiffs' [Revised] First Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

Dated: August 9, 2023

MARC R ROSENBLUM
Digitally signed by MARC R ROSENBLUM
Date: 2023.08.09 16:42:48 -04'00'

Marc Rosenblum
Deputy Assistant Secretary
U.S. Department of Homeland Security