**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br>     *Plaintiffs,* <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br>     *Defendants.* | Case 6:23-cv-00007 |

## PLAINTIFF STATES' MEMORANDUM IN OPPOSITION TO INTERVENOR DEFENDANTS' MOTION TO STRIKE

Intervenor Defendants seek to curtail this Court's discretion to take judicial notice of relevant, public information. Specifically, they have moved to strike citations to CBP data—available for the entire world to review on an official government website maintained by the Federal Defendants—that Plaintiffs included in their supplemental filings. The Court has discretion to judicially notice appropriate information after trial. Post-trial notice will not abridge Intervenors' due process rights or contradict this Court's decision to close the evidentiary record. The CBP data that Plaintiffs cited are relevant and qualify for judicial notice under Rule 201 of the Federal Rules of Evidence. Therefore, Intervenors' motion to strike should be denied.

After holding trial on August 24 and 25, this Court requested supplemental memoranda of law addressing several topics. Plaintiffs submitted their opening supplemental brief on September 29. ECF No. 285. Subsequently, on October 27, Plaintiffs submitted their supplemental brief in response. ECF No. 294. Plaintiffs included in both supplemental briefs citations to data collected by U.S. Customs and Border Protection ("CBP") recording the number of Border Patrol encounters with illegal aliens on a monthly basis.

The CBP data is available on publicly accessible government websites. In light of the data's accessibility and reliable source, Plaintiffs asked the Court in both supplemental briefs to take judicial notice of it. The CBP data Plaintiffs included in their opening supplemental brief reflect border encounters up to and including August 2023, ECF No. 285 at 21–26;[1] while data cited by the supplemental brief in response extends to September 2023, the most recent month for which numbers were currently available at the time the brief was filed. ECF No. 294 at 7–10.

Intervenors filed their motion to strike on October 27, petitioning the Court to strike four sets of CBP figures that appear in Plaintiffs' opening supplemental brief. ECF No. 292 at 2. The motion targets CBP data describing (1) nationwide encounters of CHNV aliens; (2) nationwide encounters of aliens of all nationalities; (3) encounters along the Southwest border of aliens of all nationalities; and (4) encounters along the Southwest border of CHNV migrants. The motion only asks that this data be stricken "through August 2023." ECF No. 292 at 2.

Intervenors have yet to file a similar motion to strike the updated CBP data in Plaintiffs' supplemental brief in response—that includes CBP data for September 2023, which shows an even greater surge of CHNV migrant flows than occurred in August and July. The same arguments made here against striking the data would apply there as well.

**A.  The CBP data is information that is subject to judicial notice.**

Defendants accuse Plaintiffs of "misleading" the Court by quoting the government's new data and of lacking an opportunity to rebut it. ECF No. 292 at 8. Ironically, Defendants make up for this supposed lost chance in their motion by launching into no fewer than three reasons why

---

[1] References to pagination for documents filed on this Court's electronic docket are to the stamped page numbers in the header of those filings.

Plaintiffs' presentation of the data was mistaken. Nonetheless, they urge the Court not to notice the data because Plaintiffs' "portrayal of the Post-Trial Data … is both inaccurate and misleading" ECF No. 292 at 8.

However, Plaintiffs have not asked the Court to take judicial notice of their "portrayal" of the data but only to take notice of the data itself. Intervenors fail to distinguish between the data and the conclusions this Court could draw from the data. The conclusions that may be drawn from the updated data may be contested (and Intervenors have had every opportunity to do so), but the data itself is not subject to reasonable dispute. Naturally, in their opening supplemental brief, Plaintiffs used the data to undermine the arguments advanced by Federal Defendants and Intervenors regarding Article III standing—the updated data shows that CHNV border encounters now exceed the levels prior to the parole program challenged here—but Plaintiffs' request for judicial notice only extends to the data.

Facts "not subject to reasonable dispute" which either are "generally known within the trial court's territorial jurisdiction" or can "readily be determined from sources whose accuracy cannot reasonably be questioned" may be judicially noticed. Fed. R. Evid. 201(b). Statistics hosted on publicly accessible government websites are easily determined by the Court and reliably accurate. *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (upholding lower court's judicial notice of crime data hosted on government website); *see also Perez v. Abbott*, No. SA-11-cv-360, 2017 WL 1406379 at *43 (W.D. Tex. Apr. 20, 2017) (taking judicial notice of the county results of several successive general elections). Courts "fail to see any merit to an objection to the [court] taking judicial notice of the [federal] agency's own website." *Coleman*, 409 F.3d at 667.

The CBP data is not subject to reasonable dispute by the parties. CBP collects comprehensive statistics of encounters between federal border enforcement and migrants. Further, Plaintiffs, Federal Defendants, and the Intervenors alike have relied on government statistics compiled by CBP throughout this litigation. *See, e.g.,* Trial Tr. Vol. 1 of 2, 26:21–27:13 (Intervenors arguing from CBP data). To begin questioning the accuracy of the government's data now would be self-defeating.

The data can readily be determined because it is freely available online, and the accuracy of its source cannot reasonably be questioned because CBP is the best source for encounters between its agents and migrants. In *Coleman*, the Fifth Circuit approved judicial notice of online statistics compiled by the government litigant after noting that the statistics measured outcomes of a program that the government mandated and supervised. 409 F.3d at 667. Likewise, the CBP data records the actions of federal immigration agents as they perform their enforcement duties. The data is simply CBP recording its own activity. Accordingly, the CBP data's accuracy cannot be reasonably doubted.

Finally, the data is relevant. Plaintiffs included the data in their briefing because it speaks to the injury prong of their Article III standing. Federal Defendants and the Intervenors argued at trial that Plaintiffs could not be injured by immigration-related costs stemming from the parole program because the flow of migrants from the four CHNV countries dropped following the program's implementation. Indeed, Intervenors had exhibits admitted into the record that included the same categories of CBP data—showing the data is both relevant and that Intervenors do not truly question its accuracy. *See* Intervenors' Exs. 45–59. But data from the most recent months shows that immigration from CHNV countries has shot past its pre-parole program levels.

At trial, Intervenors understood that CBP data available on its website was subject to judicial notice—indeed, *Intervenors asked the Court to take such notice*, despite Intervenors' exhibits with that data having already been excluded, with no objection from Plaintiffs:

> MS. SUNG: I wanted to address your questions about the data and what is in and not in the record.
>
> So, Your Honor was asking about data showing the overall migration from the four CHNV countries as down following adoption of the Parole Pathways. So that evidence is not in the record. It's actually the three exhibits that we had tried to add late.
>
> There is proof—data in the record of border migration, of border encounters at the southwest border for—and there is proof that border encounters with nationals from the four CHNV countries is down following adoption of the CHNV Parole Pathways, and that's Intervenor Defendants Trial Exhibits 51, 52 and 53. … We have data for, again, southwest border encounters, and that's Intervenor Defendants Trial Exhibits 54 and 55.
>
> **With regards to—to the data that shows that overall migration is down, I wanted to suggest that perhaps Your Honor could take judicial notice of this data. It's publicly available on a government website.**
>
> **THE COURT: I think the States have agreed.**
>
> **MS. SUNG: The States have agreed. If you would like to have the actual data, the numbers, we could file a motion for you to take judicial notice and attach specifically that information.**
>
> **THE COURT: If it is something I can take judicial notice of, that is one thing. I have already denied the States the opportunity to supplement the record, so I think that I need to be careful about that.**
>
> **MS. SUNG: Okay. Well, it is publicly available on the government website. We think you can take judicial notice of it.** It's just I was going to offer to make a motion because on the government website, you have to toggle different fields in order to specify that you are looking at nationwide encounters or border encounters, and you have to toggle another field for data from which nationals of which country you would like to see.
>
> **THE COURT: Okay.**

> MS. SUNG: And so to avoid any confusion, if you would like for us to toggle all of that appropriately and submit specifically that data relating to overall migration numbers from the CHNV countries from—I think the—the data available on the website is for fiscal year at least 2021, 2022, 2023. We can do that for you or—or we can—**we can certainly direct you to the website and you can play around with the data yourself. It's there.**
>
> THE COURT: Right. I think at the very end of all of the argument when we are done, I am going to ask the parties to confer about what to submit post-trial, and there are also a few subject matters that I would like the parties to address specifically. **And then, of course, you can add anything that you would like to in addition to that.** So...
>
> MS. SUNG: Okay. Okay. That sounds great. Thank you, Your Honor.

Trial Tr. Vol. 2 of 2, 147:21–150:2. At that point, Intervenors understood the distinction between exhibits in the record and facts subject to judicial notice.

### B. Judicial notice is appropriate at any stage of litigation.

"The court may take judicial notice *at any stage of the proceeding*." Fed. R. Evid. 201(d) (emphasis added). The Fifth Circuit has not departed from this straightforward instruction by preventing judicial notice after trial—courts take notice of relevant facts throughout all stages of litigation, including post-trial. *See, e.g., Ball v. LeBlanc*, 792 F.3d 584, 591–92 (5th Cir. 2015) (upholding post-trial judicial notice of publicly accessible weather statistics); *Smith v. Hustler, Inc.*, 514 F. Supp. 1265, 1268 (W.D. La. 1981) (taking post-trial judicial notice of geographical facts to resolve jurisdictional challenge); *Wantou v. Wal-Mart Stores Texas, LLC*, No. 5:17-cv-18, 2020 WL 4664739, *6 (E.D. Tex. Mar. 12, 2020) *aff'd* 23 F.4th 422 (5th Cir. 2022) (taking post-trial judicial notice of statute even where it had "reservations" that notice could subvert a jury verdict). The Fifth Circuit has even upheld post-trial judicial notice that was taken *sua sponte* and not made known to the parties until the district court's written opinion was published. *LeBlanc,* 792 F.3d at 591.

Information may be judicially noticed even if had yet to exist at the time of trial. *See, e.g., Texas v. Biden*, 554 F. Supp. 3d 818, 837 n.7 (N.D. Tex. 2021) (Kacsmaryk, J.) (explicitly taking judicial notice of August 2, 2021, declaration filed in another case after bench trial concluded on July 22, 2021).

The language of Rule 201(d) and its reception in the Fifth Circuit leave no doubt that judicial notice remains available after trial. The practice of taking judicial notice of federal agency data post-trial is so common that courts usually do so without explanation. *See, e.g., Texas v. United States*, 606 F. Supp. 3d 437, 453, 460–61 (S.D. Tex.) (Tipton, J.) (findings of fact nos. 17, 19, 21. 22, 92 noticing ICE data through April 2022 after bench trial concluded on February 24, 2022). This Court would be on solid ground in taking judicial notice of the CBP data.

## C. Judicial notice does not reopen the record.

Intervenors reference the Court's instructions to close the evidentiary record at trial and argue judicial notice would contravene that order. ECF No. 292 at 4. In deciding to close the record, the Court denied Texas's request that the Federal Defendants continue to supplement their discovery responses after the trial and make them part of the record. Trial Tr. Vol. 1 of 2, 15:22 (Federal Defendants noting Texas's request involved "ongoing discovery post-trial"). That data was not from any publicly available source that would have been subject to judicial notice. Intervenors erroneously believe that an invitation to judicially notice publicly available data here amounts to reopening the record.

Judicial notice is not the same as responses to discovery or entering exhibits into the record; instead, "[j]udicial notice is a[] long-established *substitute* for normal proof by evidence." 60 Am. Jur. Proof of Facts 3d 175 at § 1 (2001) (emphasis added). Judicially noticed facts are not included in the evidentiary record. *See United States v. Herrera-Ochoa*, 245 F.3d 495, 500–01 (5th Cir. 2001)

7

(describing judicial notice as an alternative to the evidentiary record). This distinction explains why appellate courts can judicially notice new facts even though the evidentiary record is typically closed on appeal. Fed. R. Evid. 201, Note to Subdivision (f) ("judicial notice may be taken at any stage of the proceedings, whether in the trial court *or on appeal*") (emphasis added). This Court noted at trial that its denial of Texas's request for Federal Defendants to continue to supplement their discovery responses and make them part of the trial record did not preclude "some other avenue under the rules … as you continue to request that information." Trial Tr. Vol. 1 of 2, 15:2–3.

Accordingly, taking notice of the CBP data would not be inconsistent with the Court's decision to close the record at trial. Plaintiffs are simply asking the Court to acknowledge information that is posted online at CBP's website—not asking for further supplementation of discovery responses or adding new exhibits from such responses to the trial record. As pointed out above, Intervenors themselves asked the Court to take judicial notice of CBP data that had been previously excluded as trial exhibits, to no objection.

**D. Judicial notice of the CBP data would not be unfair to Intervenors.**

Despite the discretion that courts have to notice relevant information at any stage of litigation, Intervenors contend that they would be deprived of due process or otherwise unfairly prejudiced if the Court took notice of the latest CBP data. They argue new information must be presented at or before trial to allow them an opportunity to "object to the data's introduction, offer their own counterevidence, and provide a fulsome rebuttal at trial" ECF No. 292 at 7.

Rule 201 clarifies the procedural rights that litigants have to contest judicial notice: "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed" Fed. R. Evid. 201(e). This right to be heard is minimal. "Rule 201(e) does not require a

8

formal hearing" much less a trial. *Badaiki v. Schlumberger Holdings Corp.*, No. 4:20-cv-2216, 2021 WL 6010580 ,at *2 (S.D. Tex. Aug. 23, 2021). In fact, the adverse party's "opportunity to address the issue in briefing is sufficient." *MAZ Encryption Techs., LLC v. Blackberry Ltd.*, 347 F. Supp. 3d 283, 293 (N.D. Tex. 2018) (citing *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 423 (5th Cir. 2013)). The procedural restraints are so minimal that the Fifth Circuit upholds judicial notice taken without warning to the parties on the grounds that the parties can contest the notice by a motion for reconsideration or appeal. *See Ctr. for Biological Diversity, Inc.*, 347 F. Supp. 3d at 424 ("even after the district court took judicial notice in its written decision, the Center could have moved for reconsideration or a further hearing but it did not do so"); *see also Leblanc*, 792 F.3d at 591-92.

Intervenors note that courts sometimes decline to take judicial notice in response to due process concerns that specifically arise post-trial, but they make a hash of this case law. ECF No. 292 at 6. Due process bars on judicial notice are the exception, not the norm, and Intervenors do not fit under any exception.

*Colonial Leasing* extensively lists situations in which post-trial notice would be inadvisable, including where the fact to be noticed is an element of a crime or tort, where several years have elapsed since the close of discovery, and where notice would frustrate jury deliberations. *Colonial Leasing Co. of New England v. Logistics Control Grp. Int'l*, 762 F.2d 454, 461 (5th Cir.), *on reh'g sub nom. Colonial Leasing of New England, Inc. v. Logistics Control Int'l*, 770 F.2d 479 (5th Cir. 1985). Similarly, the Fifth Circuit declined to judicially notice average reaction times following an appeal from a personal injury case out of "due process" concerns. *Conway v. Chem. Leaman Tank Lines,*

9

*Inc.*, 610 F.2d 360, 365 fn. 5 (5th Cir. 1980) (noting that reaction time was both dispositive of the claim and typically a subject of expert opinion). These exceptions have no application here.

Intervenors' complaint of prejudice "is vague, cursory and unpersuasive," *Leblanc*, 792 F.3d at 592, as they have not articulated why post-trial notice is inappropriate here. They have not explained how any of the Fifth Circuit's exceptions apply to Plaintiffs' request for judicial notice. Instead, they have broadly gestured at precedent that cautions that judicial notice can be unfair under certain rare circumstances.

Plaintiffs' notice request falls under the "broadly and bluntly stated" scope of Rule 201, *Colonial Leasing*, 762 F.2d at 461, and no exception applies to limit the Court's ability to take notice here. The CBP data is publicly available information that does not call for expert testimony. Judicial notice of the data will not be dispositive of any claims. The relevance is to an argument where Intervenors and the Federal Defendants cite the same categories of data to argue that Plaintiffs lack standing. Courts often consider issues of Article III standing *sua sponte*, even after trial. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 99 (1998) (noting instance of Supreme Court raising issue *sua sponte* after oral argument on appeal and ordering supplemental briefing).

Intervenors' due process rights are not affected. They are aware of Plaintiffs' notice request and have had an opportunity to object to its propriety—in fact they have done so. Notice and a chance to be heard are all Rule 201 requires. Defendants have no right to a trial over a request for judicial notice over the same categories of data that they themselves have relied on.

## CONCLUSION

The Court should take judicial notice of the CBP data that Plaintiffs have included in their supplemental briefing and deny Intervenors' motion to strike it.

Dated: November 17, 2023.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

Respectfully submitted,

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Chief, Special Litigation Division
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON
JAMES K. ROGERS
America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
james.rogers@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512)686-3940 (phone)
(512)686-3941 (fax)
jonathan@mitchell.law

*Counsel for the State of Texas*

Steve Marshall
Alabama Attorney General
Edmund G. LaCour Jr.
Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*

Tim Griffin
Arkansas Attorney General
Nicholas J. Bronni
Arkansas Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Nicholas.Bronni@arkansasag.gov

*Counsel for the State of Arkansas*

Raúl R. Labrador
Attorney General of Idaho
Lincoln Davis Wilson, ISB No. 11860
Office of the Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
lincoln.wilson@ag.idaho.gov

*Counsel for the State of Idaho*

Treg Taylor
Attorney General of Alaska
Cori M. Mills
Deputy Attorney General
Christopher A. Robison
Alaska Bar No. 2111126
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Counsel for the State of Alaska*

Ashley Moody
Attorney General of Florida
James H. Percival (FBN 1016188)
Deputy Attorney General of Legal Policy
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

Brenna Bird
Attorney General of Iowa
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel: (515) 823-9117
Fax: (515) 281-4209
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

Kris Kobach
Attorney General of Kansas
Jesse A. Burris, Kan. Sup. Ct. #26856
Assistant Attorney General
Office of Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for the State of Kansas*

Jeff Landry
Attorney General of Louisiana
Elizabeth B. Murrill (La #20685)
Solicitor General
Joseph Scott St. John (La #36682)
Deputy Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
stjohnj@ag.louisiana.gov

*Counsel for the State of Louisiana*

Andrew Bailey
Attorney General of Missouri
Joshua M. Divine, Mo. Bar #69875
Solicitor General
Maria Lanahan, Mo. Bar #65956
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*

Daniel Cameron
Attorney General of Kentucky
Marc Manley
Associate Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478

*Counsel for the Commonwealth of Kentucky*

Lynn Fitch
Attorney General of Mississippi
Justin L. Matheny
Deputy Solicitor General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for the State of Mississippi*

Austin Knudsen
Attorney General of Montana
Christian B. Corrigan
Solicitor General
Peter M. Torstensen, Jr.
Assistant Solicitor General
Office of the Attorney General
215 N Sanders
Helena, Montana 59601
Tel: (406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for the State of Montana*

Michael T. Hilgers
Attorney General of Nebraska
Eric J. Hamilton
Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for the State of Nebraska*

Gentner F. Drummond
Attorney General of Oklahoma
Garry M. Gaskins, II
Solicitor General
Zach West
Director of Special Litigation
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov

*Counsel for the State of Oklahoma*

Jonathan Skrmetti
Tennessee Attorney General
and Reporter
Whitney Hermandorfer
Director of Strategic Litigation and
Assistant Solicitor General
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 253-5642
Whitney.Hermandorfer@ag.tn.gov

*Counsel for the State of Tennessee*

Dave Yost
Ohio Attorney General
Mathura Jaya Sridharan
Ohio Deputy Solicitor General
Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
mathura.sridharan@OhioAGO.gov

*Counsel for the State of Ohio*

Alan Wilson
Attorney General of South Carolina
Thomas T. Hydrick
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

Sean D. Reyes
Utah Attorney General
Melissa Holyoak
Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
Tel: (801) 538-9600
melissaholyoak@agutah.gov

*Counsel for the State of Utah*

Patrick Morrisey
Attorney General of West Virginia
Lindsay See
Solicitor General
Michael R. Williams
Principal Deputy Solicitor General
Office of the West Virginia
Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
Tel: (681) 313-4550
Lindsay.S.See@wvago.gov
Michael.R.Williams@wvago.gov

*Counsel for the State of West Virginia*

Bridget Hill
Wyoming Attorney General
Ryan Schelhaas
Chief Deputy Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
Tel: (307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for the State of Wyoming*

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 17, 2023, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS