# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, § § *Plaintiffs*, § § vs. § § UNITED STATES DEPARTMENT OF § HOMELAND SECURITY, *et al.*, § § *Defendants,* and § § VALERIE LAVEUS, *et al.*, § § *Intervenor Defendants.* § | CIVIL ACTION NO. 6:23-CV-00007 JUDGE DREW B. TIPTON |

## INTERVENOR DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE TEXAS'S EXTRA-RECORD POST-TRIAL EVIDENCE

Texas seeks to circumvent this Court's evidentiary procedures by injecting extra-record data during the *final* stage of district court proceedings. In its Supplemental Brief, ECF No. 285 (hereinafter "Post-Trial Brief"), Texas introduced, and Intervenor Defendants subsequently moved to strike, extra-record U.S. Customs and Border Protection ("CBP") data concerning nationwide encounters of noncitizens through August 2023. *See* ECF No. 285 at 21-26. In its Supplemental Response Brief, ECF No. 294 (hereinafter "Post-Trial Response Brief"), Texas additionally introduced CBP data through September 2023. *See* ECF No. 294 at 7-10. Intervenor Defendants

1

now incorporate the September CBP data as part of the Post-Trial Data they moved to strike, as it suffers from the same flaws.[1]

Texas's extra-record Post-Trial Data should be stricken for three independent reasons. First, Texas effectively asks the Court to reopen the trial record, which the Court should decline to do. Second, granting Texas's request at this stage would prejudice Intervenor Defendants. Third, Texas grossly mischaracterizes the data and misleads the Court in the process. The record has closed, and Texas should not be allowed to remake its case at this late stage.

## I. Texas Should Not Be Permitted to Reopen the Trial Record.

The Court already denied Texas's request to rely on post-trial data and, in doing so, clearly instructed that the record closed at trial. Trial Tr. vol. 1 of 2 at 14:17–15:1 ("I have never had a trial close and had supplemental evidence submitted post-trial. . . . I don't know how I receive data after the record is closed. . . . So at this point, I am not inclined to accept [the data] as part of the trial record.").

All parties and the Court have treated CBP data concerning noncitizen encounters as subject to established evidentiary procedures, including the Court's Procedures, Federal Rules of Evidence, and scheduling orders, *e.g.*, Order, ECF No. 159. Accordingly, the parties availed themselves of these procedures to admit CBP data as trial exhibits. *Before* trial, the Court denied as untimely Intervenor Defendants' request to supplement their exhibit list with CBP data. Order on Int.

---

[1] In the alternative, Intervenor Defendants request to supplement their Motion to Strike to incorporate Texas's references to the September CBP data.

Defs' Mot. to Reconsider or Clarify, ECF No. 231 at 2. And at trial, the Court denied Texas's attempt to supplement the record with July CBP data. Trial Tr. vol. 1 of 2 at 6:23–7:8; *id.* at 15:25–16:3 ("I just don't see an avenue to keep a trial record open after the plaintiff rests. So, I am going to deny that request.").

Texas contends that because its Post-Trial Data is publicly available and relevant, it can be judicially noticed. *See* Pls' Opp. to Int. Defs' Mot. to Strike, ECF No. 298 at 4. Yet Texas fails to explain why it should be permitted to bypass this Court's procedures and decision at trial, and rely on precisely the type of data the Court previously rejected as untimely. Perhaps recognizing its untenable position, Texas suggests that Intervenor Defendants admitted at trial that any request for judicial notice of CBP data is proper. *Id.* at 5-6. That discussion, however, concerned CBP data that was publicly available *at the time of trial*, and which all parties had the opportunity to interrogate and object to before and during trial. In contrast, neither the parties nor the Court had the opportunity to litigate at trial the data Texas now seeks to introduce.

Additionally, Texas's position has no limiting principles. CBP publishes its data monthly, and Texas argues judicial notice is available at *any* stage of litigation, including appeal. Pls' Opp. to Int. Defs' Mot. to Strike, ECF No. 298 at 8. By Texas's logic, it could continue to unilaterally introduce new data until this case reaches a final disposition, which could be years from now. Federal Defendants aptly predicted this at trial:

> "[W]ith regard to what months' data should come in, there has to be a line somewhere. I mean, you have July. And if the Court doesn't issue a

3

>decision until October, is there then an argument, well, now we want September, and so on and so forth? . . . [T]here has to be a cutoff point, and the most logical cutoff point is today . . . ."

Trial Tr. vol. 1 of 2, 13:14-14:1.

Finally, the cases Texas cites in support of judicial notice are plainly distinguishable, as the facts judicially noticed in those cases differ markedly from the Post-Trial Data. In *Wantou v. Wal-Mart Stores Tex., LLC*, the court judicially noticed a section of the Texas Administrative Code, No. 517-CV-00018-RWS-CMC, 2020 WL 4664739, at *6 (E.D. Tex. Mar. 12, 2020), and in *Smith v. Hustler, Inc.*, the judicially noticed facts related to a lake's former and present use, 514 F. Supp. 1265, 1269 (W.D. La. 1981). Such facts are hardly comparable to the data at issue here. Texas also cites *Texas v. Biden* as an example of a court judicially noticing facts that postdate trial, Pls' Opp. to Int. Defs' Mot. to Strike, ECF No. 298 at 7—but while the judicially noticed declaration postdated trial by eleven days, none of the agency data within the declaration post-dated the month of trial. 554 F. Supp. 3d 818, 837 n.7 (N.D. Tex. 2021).

Because this Court closed the record at trial, after the parties availed themselves of the associated procedural safeguards, this Court should reject Texas's invitation to reopen it and effectively keep it open in perpetuity.

## II. Texas's Introduction of Post-Trial Data Would Prejudice Intervenor Defendants.

Allowing Texas to rely on the Post-Trial Data would implicate due process and fairness concerns, which may limit the availability of judicial notice. *See Colonial Leasing Co. of New England, Inc. v. Logistics Control Grp. Int'l*, 762 F.2d 454, 460

4

(5th Cir. 1985) (remanding for new trial where "the court's taking judicial notice after trial prejudiced [the party's] presentation of its own case"); *Wantou*, No. 5:17-CV-00018-RWS-CMC, 2020 WL 4664739 at *6 (recognizing judicial notice "raises concerns" when a party cannot rebut the other party's interpretation of a judicially-noticed fact at trial). Indeed, Texas wholly fails to grapple with the cases that undermine its position. *See JJ Plank Co., LLC v. Bowman*, No. CV-18-0798, 2018 WL 4291751, at *4 (W.D. La. Sept. 7, 2018) (striking reference to publicly-available information offered for the first time in briefing after a preliminary injunction hearing because "equity and fairness" were implicated); *see also Rivera v. Marriott Int'l, Inc.*, 456 F. Supp. 3d 330, 337 (D.P.R. 2020) ("[A]ccepting disputed evidence not tested in the crucible of trial is a sharp departure from standard practice.") (internal citation omitted).

Texas blithely addresses any claims of prejudice by asserting Intervenor Defendants' Motion to Strike allowed them to "make up for" any lost opportunity to rebut the Post-Trial Data. Pls' Opp. to Int. Defs' Mot. to Strike, ECF 298 at 2-3. Because the Post-Trial Data did not exist at the time of trial, however, the other parties had *no* opportunity to interrogate or object to the data, present counterevidence, or raise questions at trial, which the Court could have then examined with the parties, as it did with other timely admitted evidence. *See, e.g.*, Trial Tr. vol. 2 of 2, 86:15-89:2; 125:20-136:20. Briefing is no substitute for the dialogue trial affords the parties and the Court. Briefing during the *final stage* of district court proceedings is especially inadequate.

Intervenor Defendants have dutifully followed this Court's procedures to build their trial record, including by seeking reconsideration of this Court's prior exclusion of exhibits. *See* Int. Defs' Mot. to Reconsider or Clarify, ECF No. 225. Allowing Texas to unilaterally introduce post-trial evidence (of the same kind that this Court previously excluded as untimely) by circumventing the established procedures and timelines that ensure due process for all litigants would render the Court's procedures meaningless and be fundamentally unfair. This showing of prejudice is far from "vague, cursory [or] unpersuasive," *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015).

### III. Texas Mischaracterizes and Cherry-Picks the Post-Trial Data.

As Intervenor Defendants explained in their Post-Trial Response Brief, ECF No. 291 at 23-29, and Motion to Strike, ECF No. 292 at 8-10, Texas's characterization of the Post-Trial Data falls far short of Rule 201's requirement that the facts "be accurately and readily determined." Fed. R. Evid. 201(b)(2). Texas plainly misrepresented the August 2023 Post-Trial Data in its Post-Trial Brief, arguing the numbers "rebounded to their pre-CHNV levels," where the graph unequivocally shows total migration of individuals from CHNV countries has significantly *decreased* since before the implementation of the CHNV Pathways. *See* ECF No. 285 at 22.

Further, Texas attempts to attribute the post-implementation reduction in migration to seasonal weather patterns. *Id.* at 22-26. But this is at odds with the data itself, *see* Int. Defs' Post-Trial Response Brief, ECF 291 at 24-25, and with record evidence and expert analyses, which strongly suggest the impact of the CHNV

6

Pathways is best discerned from the data immediately following their implementation, *see* Decl. of Blas Nuñez-Neto, Fed. Defs' Trial Ex. HH at ¶ 26; Memorandum of Law of Drs. Stan Veuger, Tara Watson, Douglas Holtz Eakin & Leah Boustan as Amici Curiae in Opp. to Pls' P.I., ECF No. 222 at 11.

More recent data impugns Texas's characterization of the Post-Trial Data. Nationwide encounters with nationals of CHNV countries *decreased* to 91,697 in October (the beginning of Fiscal Year 2024)—a 19 percent reduction from September, and, again, a net reduction from pre-CHNV levels.[2]

---

[2] To the extent the Court is inclined to take judicial notice of Texas's Post-Trial Data, Intervenor Defendants request the Court do the same for the post-trial data cited in Intervenor Defendants' post-trial briefing and the October 2023 CBP data cited here.



*Nationwide Encounters*, U.S. CBP, https://www.cbp.gov/newsroom/stats/nationwide-encounters (selecting "Cuba," "Haiti," "Nicaragua," and "Venezuela" under "Citizenship," showing October 2023 data as an orange dot). Encounters with Venezuelan nationals—which accounted for over half the October encounters—decreased by 36.4 percent, from 72,325 to 45,950. *Id.* (selecting "Venezuela" under "Citizenship").

Ultimately, Texas seeks to rely on the August and September Post-Trial Data in isolation because it cannot reconcile its theory of harm with the continued net decrease in migration that the trial record shows and the October CPB data confirms.

Instead, Texas promotes two self-serving—and contradictory—interpretations of the record evidence and Post-Trial Data. On the one hand, it asks this Court to ignore the *trial record data* concerning encounter rates immediately following the implementation of the CHNV Pathways, contending there is no way to attribute the "reduced migrant flows" to the CHNV Pathways because such flows are "affected by a multitude of variables." Texas's Post-Trial Brief, ECF No. 285 at 26. Yet at the same time, Texas urges the Court to accept as dispositive the *extra-record Post-Trial Data* that postdates the implementation of CHNV by more than *ten months,* and which Texas mischaracterizes. *See* Int. Defs' Post-Trial Response Brief, ECF No. 291 at 25-26.

The context-dependent nature of this data underscores why the opportunity to interrogate data "in the crucible of trial" is critical. *Rivera,* 456 F. Supp. 3d at 337. Texas must prove standing with evidence adduced *at trial. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[T]he specific facts set forth by the plaintiff to support standing must be supported adequately by the evidence adduced at trial.") (internal quotation marks omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (holding the party bearing the burden of proving jurisdiction must do so "with the manner and degree of evidence required at the successive stages of the litigation"). Unable to do so, Texas now cherry-picks post-trial, extra-record data in an attempt to save its case. That serves Texas no better, and should not be permitted.

The Court should grant Intervenor Defendants' Motion to Strike. Alternatively, Intervenor Defendants request an "[o]pportunity to be heard" pursuant to Rule 201. Fed. R. Evid. 201(e).

Dated: November 24, 2023

Respectfully submitted,

/s/ *Esther H. Sung*
**Esther H. Sung (Attorney-In-Charge)***
California Bar No. 255962
*Application for Admission pending*
esther.sung@justiceactioncenter.org

**Karen C. Tumlin***
California Bar No. 234961
karen.tumlin@justiceactioncenter.org

**Jane Bentrott***
California Bar No. 323562
D.C. Bar No. 1029681
Virginia Bar No. 87903
jane.bentrott@justiceactioncenter.org

**JUSTICE ACTION CENTER**
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

**Monika Y. Langarica***
California Bar No. 308518
langarica@law.ucla.edu

**Ahilan T. Arulanantham***
California Bar No. 237841
arulanantham@law.ucla.edu

**Talia Inlender***
California Bar No. 253796
inlender@law.ucla.edu

**CENTER FOR IMMIGRATION LAW AND POLICY**
**UCLA SCHOOL OF LAW**
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
Telephone: (310) 983-3345

**Brandon Galli-Graves\***
Texas Bar No. 24132050
brandon.galli-graves@raicestexas.org

**THE REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES (RAICES)**
5121 Crestway Drive, Suite 105
San Antonio, Texas 78239
Telephone: (210) 960-3206
Facsimile: (210) 634-1279

**Will Thompson**
Texas Bar No. 24094981
willthompson@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
3100 McKinnon Street, Suite 1125
Dallas, Texas 75201
Telephone: (469) 902-3612
Facsimile: (469) 902-3610

\**admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2023, I filed this Motion through the Court's CM/ECF system, which automatically served it upon all counsel of record.

/s/ *Esther H. Sung*

**CERTIFICATE OF WORD COUNT**

I certify that the total number of words in this motion, exclusive of the matters designated for omission, is 1998 words, as counted by Microsoft Word Software.

/s/ *Esther H. Sung*