United States District Court
Southern District of Texas
Victoria Division

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>    *Plaintiffs,*<br><br>  v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>  *et al.*,<br>    *Defendants.* | Case 6:23-cv-00007 |

### PLAINTIFF STATES' NOTICE OF SUPPLEMENTAL AUTHORITY

The Plaintiff States respectfully inform the Court of three supplemental authorities that bear on this case: 1) a recent decision of the Northern District of Florida, *Florida v. United States*, --- F.Supp.3d ----, 2024 WL 677713 (N.D. Fla. Feb. 20, 2024); 2) an official announcement from the Defendants: "Re-Parole Process for Certain Ukrainian Citizens and Their Immediate Family Members"; and 3) a new statistical report released by DHS's Office of Homeland Security Statistics, titled "Immigration Enforcement and Legal Processes Monthly Tables."

**A.  Florida v. United States.**

In *Florida v. United States*, --- F.Supp.3d ----, 2024 WL 677713 (N.D. Fla. Feb. 20, 2024), (attached as Exhibit A), the Northern District of Florida reaffirmed its prior determination that Florida had standing to challenge certain parole policies of the federal government. The district court's decision was issued on remand from the Eleventh Circuit, which "remanded this case for the limited purpose of determining whether [the district court] had jurisdiction in light of *United States v. Texas* ["*Priorities*"], 599 U.S. 670 (2023)." *Id.* at *1 (cleaned up).

The *Florida* court's decision there supports the Plaintiff States' arguments about standing here. Specifically, the court determined that the State of Florida had standing to challenge certain parole policies for three main reasons:

*First*, "[t]he policies at issue in these cases do not involve arrest or prosecution, but rather explain how DHS will exercise its statutory 'parole' authority … [for] aliens … in … custody after arriving at the Southwest Border. Nothing in [*Priorities*] held that federal courts cannot adjudicate the validity of non-detention/parole policies like these." *Id.* at *2. Thus, "the fact that the Supreme Court made a point in [*Priorities*] of stating that a different standing analysis may apply to non-detention/release policies such as those at issue in these cases establishes that [*Priorities*] does not control the resolution of the standing issue in these cases." *Id.* "Moreover, … there is nothing extraordinary (or unusual) about … challenging DHS's … parole policies. The Court was simply asked … to decide whether the challenged policies complied with the clear and unambiguous terms of the statute that restricted DHS's authority to 'parole' aliens into the country." *Id.* *Priorities*, thus, did not apply because "[t]hat is precisely the type of issue that, according to [*Priorities*], federal courts 'routinely and appropriately decide[ ].... '" *Id.* (quoting *Priorities*, 599 U.S. at 686).

*Second*, Florida was able to establish standing based on the financial hardships it faced due to federal policies or programs. The court acknowledged the holding in *Priorities* that "a state's claim for standing 'can become more attenuated' when the claim is based on policies that 'generate indirect effects on state revenues or state spending.'" *Id.* at *3 (quoting *Priorities*, 599 U.S. at 680 n.3). Yet, "the fact that standing might be 'more attenuated' in those circumstances does not mean that a state can never establish standing based on the adverse financial impacts of federal policies

2

or programs." *Id.* The State of Florida continued to incur additional costs because of the policies in question, and these expenses were "far less 'attenuated' than the potential loss of future population-based funding that the Supreme Court held was sufficient to give New York and other states standing to challenge the inclusion of a citizenship question on the census." *Id.* (citing *Dep't of Com. v. New York*,139 S. Ct. 2551, 2565 (2019)).

*Third*, the court found that Florida had experienced an injury to its sovereignty. This was because the state was unable to exclude aliens who, under the policies being challenged, had been released into the country but should have been detained while their immigration proceedings were ongoing. Thus, the court explained, "[i]njuries to 'state sovereignty' can support standing because they are real and concrete even though they are 'intangible,' and nothing in [*Priorities*] appears to undermine that holding." *Id.* at *3 (quoting *West Virginia v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1136 (11th Cir. 2023)).

**B.   DHS announces re-parole process for Ukrainian parolees.**

 On February 27, 2024, USCIS issued a notice titled "Re-Parole Process for Certain Ukrainian Citizens and Their Immediate Family Members." USCIS, *Re-Parole Process for Certain Ukrainian Citizens and Their Immediate Family Members*, (Feb. 27, 2024), https://tinyurl.com/59mu8vvm (attached as Exhibit B); *see also, Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (courts may take "judicial notice of publicly-available documents and transcripts produced by the [a federal agency], which were matters of public record directly relevant to the issue at hand").

In that notice, USCIS announced that any "Ukrainian citizen or immediate family member who was paroled into the United States on or after Feb. 11, 2022" may apply for re-parole. *Id.* The

notice further explains that Ukrainians are "eligible for re-parole under this process" by "demonstrate[ing] the following:"

- That you are a Ukrainian citizen or immediate family member who was paroled into the United States on or after Feb. 11, 2022;
- That there are continued urgent humanitarian reasons or significant public benefit for a new period of parole, as well as any additional factors;
- That you warrant a favorable exercise of discretion;
- That you are physically present in the United States;
- That you have complied with the conditions of the initial parole; and
- That you clear biographic and biometric background checks.

*Id.*

This re-parole announcement follows the same pattern that the Defendants have always followed—treating "temporary" parole as permanent. The announcement provides further support for the Plaintiff States' argument at trial and in post-trial briefing that "the Defendants have a long track record of instituting 'temporary' programs for allowing aliens into the country that never actually end," ECF No. 285 at 67–69,[1] as Defendants have conceded that "[t]he [CHNV parole] process [challenged in this case] was modeled on the similar Uniting for Ukraine (U4U) parole process." ECF No. 283 at 22 (Proposed Finding of Fact No. 22). Defendants' strained contentions that the program challenged in this case will not allow beneficiaries to be re-paroled, ECF No. 293 at 49–50, are not credible in light of this development.

---

[1] References to page numbers for documents filed electronically on this Court's docket are to the stamped pagination in the header of those documents.

C. **Immigration Enforcement and Legal Processes monthly tables.**

On January 5, 2024, DHS's Office of Homeland Security Statistics (OHSS) began issuing a monthly statistical report titled "Immigration Enforcement and Legal Processes Monthly Tables."[2] OHSS issued its most recent report on February 9, 2024.[3] The report is an Excel spreadsheet that contains 27 separate sheets, the last of which is titled "CHNV Paroles" and which has the following heading: "Confirmed CHNV Paroles by Process: Fiscal Years 2023 to 2024 YTD (October 2023)".[4] The following is a copy of that chart[5]:

---

[2] DHS, *Office of Homeland Security Statistics Publishes First Immigration Enforcement and Lawful Processes Monthly Tables Report*, (Jan. 5, 2024), https://tinyurl.com/yck8nfum

[3] DHS, *Immigration Enforcement and Legal Processes Monthly Tables*, (Feb. 9. 2024), https://tinyurl.com/sc74hred

[4] DHS, *Immigration Enforcement and Legal Processes Monthly Tables - October 2023*, (Feb. 9, 2024), https://tinyurl.com/4ar5m4rb.

[5] *Id.*; *see also, Funk*, 631 F.3d at 783.

| Fiscal Year | Month | Total | Cuba | Haiti | Nicaragua | Venezuela |
|---|---|---|---|---|---|---|
| 2023 | Total | 233,912 | 49,191 | 83,245 | 36,325 | 65,151 |
| | October | 472 | X | X | X | 472 |
| | November | 5,248 | X | X | X | 5,248 |
| | December | 5,142 | X | X | X | 5,142 |
| | January | 11,450 | 3,959 | 1,569 | 331 | 5,591 |
| | February | 21,894 | 5,460 | 6,170 | 2,256 | 8,008 |
| | March | 26,925 | 5,094 | 10,058 | 4,478 | 7,295 |
| | April | 27,730 | 6,901 | 10,171 | 4,926 | 5,732 |
| | May | 28,375 | 6,129 | 11,384 | 5,459 | 5,403 |
| | June | 28,800 | 7,628 | 10,674 | 4,417 | 6,081 |
| | July | 21,521 | 3,402 | 9,274 | 4,156 | 4,689 |
| | August | 27,981 | 6,037 | 10,643 | 5,255 | 6,046 |
| | September | 28,374 | 4,581 | 13,302 | 5,047 | 5,444 |
| 2024 | Total | 28,697 | 5,325 | 13,411 | 5,092 | 4,869 |
| | October | 28,697 | 5,325 | 13,411 | 5,092 | 4,869 |

Confirmed CHNV Paroles by Process: Fiscal Years 2023 to 2024 YTD (October 2023)

X Not applicable.

Notes: Table includes noncitizens who are confirmed beneficiaries of a CHNV I-134/I-134A petition and have received a discretionary grant of parole and entered the United States under CHNV parole processes. Data are reported by parole date. In very limited circumstances, an individual eligible for a parole process may have a nationality that differs from the type of parole process, including in the case of minors whose nationalities differ from their parents. The Venezuela parole process started October 18, 2022; Cuba, Haiti, and Nicaragua parole processes started January 6, 2023. Records may not match Component reporting due to differences in reporting methodologies. Data are current as of November 30, 2023; future reporting may include updates to previous reports' data.

Source: Office of Homeland Security Statistics persist data and analysis of USCIS I-134/I-134A data.

The chart shows that from October 2023 until October 2024, the Defendants paroled 262,609 aliens into the United States through the CHNV Program. Furthermore, it shows that more than 240,297 aliens have been paroled into the United States since the Plaintiff States filed this action on January 24, 2023.

The chart also demonstrates that, every month, the Defendants consistently parole into the United States a number of aliens that is close to the CHNV Program's maximum monthly number of 30,000 aliens. From February 2023 to October 2023, the monthly average number of CHNV aliens programmatically paroled into the United States was 26,700. Assuming the Defendants have continued to maintain this average, the total number of aliens unlawfully paroled into the United

States under the CHNV Program from the date this action was filed until February 29, 2024, would be over 347,097.

The chart thus demonstrates that for every month that passes—indeed, for every *day* that passes—the CHNV Program causes even more irreversible harm to the Plaintiff States.

Dated: March 8, 2024.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

Respectfully submitted,

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Chief, Special Litigation Division
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON
JAMES K. ROGERS
America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
james.rogers@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512)686-3940 (phone)
(512)686-3941 (fax)
jonathan@mitchell.law

*Counsel for the State of Texas*

Steve Marshall
Alabama Attorney General
Edmund G. LaCour Jr.
Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*

Tim Griffin
Arkansas Attorney General
Nicholas J. Bronni
Arkansas Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Nicholas.Bronni@arkansasag.gov

*Counsel for the State of Arkansas*

Raúl R. Labrador
Attorney General of Idaho
Joshua N. Turner, ISB No. 12193
Alan M. Hurst, ISB No. 12425
Office of the Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
josh.turner@ag.idaho.gov
alan.hurst@ag.idaho.gov

*Counsel for the State of Idaho*

Treg Taylor
Attorney General of Alaska
Cori M. Mills
Deputy Attorney General
Christopher A. Robison
Alaska Bar No. 2111126
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Counsel for the State of Alaska*

Ashley Moody
Attorney General of Florida
James H. Percival (FBN 1016188)
Deputy Attorney General of Legal Policy
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

Brenna Bird
Attorney General of Iowa
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel: (515) 823-9117
Fax: (515) 281-4209
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

9

Kris W. Kobach
Attorney General of Kansas
Jesse A. Burris
Kansas Bar Number 26856
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 368-8197
Fax: (785) 296-3131
Jesse.Burris@ag.ks.gov

*Counsel for the State of Kansas*

Elizabeth B. Murrill
Attorney General of Louisiana
Benjamin Aguiñaga
Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov

*Counsel for the State of Louisiana*

Russell Coleman
Attorney General of Kentucky
Marc Manley
Assistant Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478
Marc.Manley@ky.gov

*Counsel for the Commonwealth of Kentucky*

Lynn Fitch
Attorney General of Mississippi
Justin L. Matheny
Deputy Solicitor General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for the State of Mississippi*

Andrew Bailey
Attorney General of Missouri
Joshua M. Divine, Mo. Bar #69875
Solicitor General
Maria Lanahan, Mo. Bar #65956
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*

Michael T. Hilgers
Attorney General of Nebraska
Eric J. Hamilton
Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for the State of Nebraska*

Gentner F. Drummond
Attorney General of Oklahoma
Garry M. Gaskins, II
Solicitor General
Zach West
Director of Special Litigation
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov

*Counsel for the State of Oklahoma*

Austin Knudsen
Attorney General of Montana
Christian B. Corrigan
Solicitor General
Peter M. Torstensen, Jr.
Assistant Solicitor General
Office of the Attorney General
215 N Sanders
Helena, Montana 59601
Tel: (406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for the State of Montana*

Dave Yost
Ohio Attorney General
Mathura Jaya Sridharan
Ohio Deputy Solicitor General
Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
mathura.sridharan@OhioAGO.gov

*Counsel for the State of Ohio*

Alan Wilson
Attorney General of South Carolina
Thomas T. Hydrick
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

11

| | |
|---|---|
| Jonathan Skrmetti<br>Tennessee Attorney General<br>and Reporter<br>Whitney Hermandorfer<br>Director of Strategic Litigation<br>P.O. Box 20207<br>Nashville, TN 37202<br>Tel: (615) 741-7403<br>Whitney.Hermandorfer@ag.tn.gov<br><br>*Counsel for the State of Tennessee* | Sean D. Reyes<br>Utah Attorney General<br>Melissa Holyoak<br>Utah Solicitor General<br>350 N. State Street, Suite 230<br>P.O. Box 142320<br>Salt Lake City, UT 84114-2320<br>Tel: (801) 538-9600<br>melissaholyoak@agutah.gov<br><br>*Counsel for the State of Utah* |
| Patrick Morrisey<br>Attorney General of West Virginia<br>Lindsay See<br>Solicitor General<br>Michael R. Williams<br>Senior Deputy Solicitor General<br>Office of the West Virginia<br>Attorney General<br>State Capitol, Bldg 1, Room E-26<br>Charleston, WV 25305<br>Tel: (681) 313-4550<br>Lindsay.S.See@wvago.gov<br>Michael.R.Williams@wvago.gov<br><br>*Counsel for the State of West Virginia* | Bridget Hill<br>Wyoming Attorney General<br>Ryan Schelhaas<br>Chief Deputy Attorney General<br>Wyoming Attorney General's Office<br>109 State Capitol<br>Cheyenne, WY 82002<br>Tel: (307) 777-5786<br>ryan.schelhaas@wyo.gov<br><br>*Counsel for the State of Wyoming* |

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on March 8, 2024, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS