# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

|  |  |
|---|---|
| STATE OF TEXAS, *et al.*, ) | |
| ) | |
| *Plaintiffs,* ) | |
| ) | |
| v. ) | Civil Action No. 6:23-cv-00007 |
| ) | |
| U.S. DEPARTMENT OF ) | |
| HOMELAND SECURITY, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |

# DEFENDANTS' RESPONSE IN OPPOSITION
# TO MOTION TO RECONSIDER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

I.    The Court Did Not Engage in an Impermissible Accounting Exercise. ................................ 1

II.    The Opinion Did Not Rely on Facts Occurring After the Complaint to Find Lack of Standing ................................................................................................. 6

III.    Plaintiffs Have Not Established the Number of CHNV Nationals Entering the United States Increased Because of the CHNV Processes ............................................... 8

CONCLUSION ..................................................................................................................... 13

## TABLE OF AUTHORITIES

### Cases

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) .................................................................................................... 9

*Crawford v. Hinds Cnty. Bd. of Supervisors*,
    1 F.4th 371 (5th Cir. 2021) ..................................................................................... 8, 9

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
    704 F.3d 413 (5th Cir. 2013) ...................................................................................... 8

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ........................................................................................ 9, 10, 12

*GLO v. Biden*,
    71 F.4th 264 (5th Cir. 2023) ....................................................................................... 5

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .................................................................................................... 12

*Louisiana v. Nat'l Oceanic & Atmospheric Admin.*,
    70 F.4th 872 (5th Cir. 2023) ....................................................................................... 6

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) ....................................................................................... 5

*Texas v. United States*,
    40 F.4th 205 (5th Cir. 2022) ....................................................................................... 6

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ................................................................................... 2, 4

*United States v. Texas*,
    599 U.S. 670 (2023) ................................................................................................ 3, 6

**INTRODUCTION**

On March 8, 2024, this Court dismissed the present case because Plaintiffs lack standing to pursue their challenges to the CHNV parole processes. On April 4, 2024, Plaintiffs filed a motion asking this Court to reconsider its decision. First, Plaintiffs argue the Court improperly considered the number of CHNV nationals removed to Mexico as offsetting their assertions of harm from CHNV nationals entering Texas through the parole processes. The Court did not, however, consider potential offsets because Plaintiffs failed to present any evidence of harm. Second, Plaintiffs argue the Court improperly considered data post-dating the operative complaint when ruling Plaintiffs lack standing. But the Court made specific findings that the number of CHNV nationals released into the United States after the CHNV processes were implemented had already significantly declined by the time of the operative complaint. Third, despite previously arguing the Court could only consider facts predating the filing of the complaint, Plaintiffs argue the Court should have considered evidence from after the operative complaint to evaluate standing. Both parties have consistently argued, however, that standing should be evaluated at the time of the operative complaint, as the Court correctly held. And even if the Court could consider this later evidence, it does not establish harm to the Plaintiff States.

The Court should deny the motion to reconsider.

**ARGUMENT**

**I.      The Court Did Not Engage in an Impermissible Accounting Exercise.**

The Court did not consider improper factors in support of its conclusion that Plaintiffs did not demonstrate harm sufficient to establish Article III standing. Plaintiffs argue the Court "engaged in an impermissible accounting exercise" when it found that "the number of CHNV nationals entering the United States has decreased." Mot. at 2-3. Plaintiffs do not challenge the Court's finding that the number of CHNV nationals entering the United States decreased between

1

implementation of the parole processes and the operative complaint. *See* Op. at 18-19. Rather, they argue the Court could not consider the decrease in arrivals in evaluating standing, even though Plaintiffs framed their harm as premised on an "increase in the presence of" noncitizens in Texas. Op. at 20-21.

This Court did not engage in any improper accounting exercise. Rather, the Court correctly held there was no need for it to consider any offsetting benefits of the parole processes because Plaintiffs put forth no evidence that the parole processes would lead to an increase in CHNV nationals released into Texas. *See* Op. 31 & n.17. Plaintiffs quote the Fifth Circuit's statement that "once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits." Mot. at 2 (quoting *Texas v. United States*, 809 F.3d 134, 156 (5th Cir. 2015)); *but see id.* at 155 (exception for offsetting benefits that "arise from the same transaction as the costs," which must be considered if injury is shown). The Fifth Circuit held that possible offsetting benefits become relevant only after "injury is shown," and it is to this circumstance that the Fifth Circuit's discussion of an "accounting exercise" applies. *Id*. Where injury is not shown, such as here where Plaintiffs failed to identify any evidence of harm between the start of the CHNV processes and the operative complaint, courts have no reason to consider potential offsetting benefits. Because Plaintiffs do not dispute that the evidence in the trial record showed CHNV arrivals decreased following the parole processes and prior to the operative complaint, Texas failed to establish any injury at all. Any issue of offsets is therefore irrelevant, as the Court correctly concluded: "[b]ecause the Court finds that Texas has not suffered an injury, it need not consider Defendants' other arguments with respect to (1) offsetting benefits." Op. 31 n.17.[1]

---

[1] Plaintiffs argue the potential State costs that might occur if there were an increase in CHNV nationals in Texas should be "sufficient to establish standing." Mot. at 3. But without any evidence of an increase in CHNV nationals, Plaintiffs were unable to put forward any evidence of associated

2

Plaintiffs argue the Court should have considered only "the indisputable increased flows of 30,000 aliens a month created by the CHNV Program itself." Mot. at 3. But the evidence at trial unequivocally demonstrated fewer CHNV nationals arrived in and were released into the United States after the CHNV parole processes began, including those paroled through the processes. As the Court found, the noncitizens paroled through these processes were part of an overall decrease in the numbers. Op. at 18-19. Plaintiffs argue that "even if overall immigration flows decreased for such a discrete period of time, they would have decreased *even more* if the unlawful CHNV Program were enjoined." Mot. at 3. But they cite nothing to support this proposition, and there is no basis to adopt that view when all the evidence in the record supports the opposite conclusion. As the Court correctly noted, the evidence established that migration from Cuba, Haiti, Nicaragua, and Venezuela was increasing prior to the parole processes, reaching historically high levels, and "has been especially challenging because it is difficult for DHS to remove CHNV nationals to their home countries." Op. at 8-9. Any argument the Court must assume that no CHNV nationals would have come to the United States or Texas absent the parole processes defies reality and is foreclosed by the evidence in the record. *See* ECF No. 284 at 20-26.

Plaintiffs acknowledge that "due to various reasons, it is difficult for the United States" to remove noncitizens "from Cuba, Haiti, Nicaragua, and Venezuela back to those countries." Mot. at 4. Plaintiffs argue, however, that the Court should not consider Mexico's agreement to accept the return of CHNV nationals who do not migrate through lawful pathways such as the CHNV processes or treat such returns as an "offset[]" to "the costs to Texas." *Id*. There are several flaws with Plaintiffs' argument.

---

costs. If Plaintiffs had been able to prove costs, the Court then would have had to consider Defendants' arguments on both offsetting benefits and "(2) the viability of indirect costs constituting injury in the wake of *United States v. Texas*, 599 U.S. 670 [(2023)]." Op. 31 n.17.

3

First, as noted above, Texas has not shown any costs for which these offsets would be relevant. The undisputed rise in migration from the CHNV countries prior to the CHNV processes, the inability to remove these individuals, and the subsequent decline in arrivals after those processes were in place foreclose any argument for costs to Texas. As a result, the Court did not count the removals of CHNV nationals to Mexico in its finding or account for this potential offset. Rather, the Court found the total number of CHNV nationals arriving in the United States after the CHNV processes went into effect was lower than before the processes went into effect, and did not subtract the number of CHNV nationals who arrived but could now be returned to Mexico. Op. at 18-19. The Court's opinion also correctly noted that Plaintiffs conceded this overall decrease at trial. *Id*. at 19.

Second, Plaintiffs argue that the Court could not consider any offsetting decrease in the number of CHNV nationals in Texas from additional removals to Mexico because, in their view, these benefits are not of the same type and do not arise from the same transaction as the challenged parole processes. Mot. at 4-5. But the CHNV processes were "contingent on the government of Mexico accepting the return, departure, or removal to Mexico of [CHNV] nationals seeking to enter … without authorization." *See* ECF No. 284 at 24-25. It would have been entirely appropriate, therefore, for the Court to consider these additional removals because they were made possible by the CHNV processes. They therefore "arise from the same transaction as the costs," *Texas*, 809 F.3d at 156, and would have been relevant had Plaintiffs been able to show an increase in CHNV nationals or related costs. Ultimately, however, because the Court did not reach the issue of offsets, Plaintiffs' arguments that these offsets are not of the type courts should consider are irrelevant. Plaintiffs cannot seek reconsideration based on the assertion that the Court should not have considered an argument that the Court did not, in fact, consider.

Plaintiffs next argue the Court's decision is contrary to *GLO v. Biden*, 71 F.4th 264 (5th Cir. 2023), because that case, like *Texas v. United States*, held courts should "consider only those offsetting benefits that are of the same type and arise from the same transaction as the costs." Mot. at 5. Plaintiffs' argument again overlooks that the Court found Texas had not established harm even without accounting for potential offsets. Plaintiffs' arguments about what offsets courts can consider have no bearing on the Court's decision and provide no grounds for reconsideration.

Plaintiffs further argue the Court's decision is contrary to the Fifth Circuit's ruling in litigation challenging the termination of the Migrant Protection Protocols (MPP). Mot. 5-6 (citing *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021), *rev'd and remanded*, 597 U.S. 785 (2022)). They note the district court and Fifth Circuit found that ending MPP as a mechanism to return individuals to Mexico would necessarily increase the number of noncitizens who would be released in Texas, and thus found Texas had standing even if other evidence demonstrated that border encounters increased while MPP was in place. Mot. at 6-7. Here, however, there is no similar basis to argue the CHNV processes increased the overall number of CHNV nationals paroled into the United States. DHS has very limited ability to remove noncitizens to Cuba, Haiti, Nicaragua, and Venezuela, and therefore effectively could not remove most CHNV nationals before the parole processes were established. Mexico's agreement to accept CHNV nationals who enter without authorization created a new deterrent and consequence for unauthorized entry by CHNV nationals that did not previously exist. *See, e.g.*, 88 Fed. Reg. at 1268 (explaining how the CHNV processes combine "a clear meaningful consequence for unauthorized entry along the SWB with a significant incentive for migrants to wait where they are and use a lawful process to come to the United States"). There is no basis to argue that the CHNV processes increased the number of CHNV arrivals or releases.

Finally, Plaintiffs cite the Fifth Circuit's decision in the *Texas priorities* case for the proposition that a state can establish standing even where some statistics show an increase in arrests, expulsions, and enforcement actions compared to the previous year. Mot. at 7 (citing *Texas v. United States*, 40 F.4th 205 (5th Cir. 2022)). Of course, the Supreme Court ultimately found Texas did not have standing in that case. *See United States v. Texas*, 143 S. Ct. 1964 (2023). Regardless, Plaintiffs' argument fails on its own terms. They argue the standing "inquiry is whether" the challenged action "caused Texas to have to incur additional financial, law enforcement, and welfare costs." Mot. at 7 (quoting *Texas*, 40 F.4th at 218 n.6). But Texas put forth no evidence of any additional financial, law enforcement, or welfare costs in this case. Rather, all the evidence in the record supports the conclusion that the CHNV processes led to a decrease in CHNV nationals released in Texas, and by extension a logical net saving of any associated costs to the State of Texas. As the Court noted, "[t]he Fifth Circuit has consistently looked to the impact that the challenged agency action had on the State's fiscal interests," and in doing so, "has invariably considered whether expenditures increased as compared to pre-agency action expenditures." Op. at 30. The Court correctly concluded Texas could not establish standing because it could not show the CHNV processes had increased State expenditures compared to expenditures prior to the implementation of those processes. *Id*. at 29 (citing *Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023)).

**II.    The Opinion Did Not Rely on Facts Occurring After the Complaint to Find Lack of Standing.**

Plaintiffs incorrectly argue the Court "impermissibly evaluated facts occurring after the complaint to find a lack of standing." Mot. at 7. Plaintiffs acknowledge the Court "recognized" standing is determined at the time of the complaint. Mot. at 7 (citing Op. at 20). They argue, however, the Court erroneously found a lack of standing based on a comparison of the daily border

6

crossing numbers for the five months before and after the parole processes when it determined "DHS conditionally released an average of 2,356 CHNV nationals per day" in the months prior to the CHNV processes and the "figure had dwindled to 1,326" in the months after the CHNV processes. Mot. at 8. There was no error in the Court's reasoning.

While the Court acknowledged that conditional releases of CHNV nationals continued to decline in the months following the operative complaint, the Court made specific findings that conditional releases of CHNV nationals significantly declined under the CHNV processes prior to the operative complaint. *See* Op. at 18, ¶ 80 ("The decline in CHNV nationals entering the United States after the rollout of the Program was occurring at the time that Plaintiffs filed their Amended Complaint on February 14, 2023."); *id.* ¶ 81 (finding "the number of Venezuelan nationals attempting to enter the United States substantially decreased following the start of the Venezuelan parole process," declining from "October 12, 2022, when Venezuela's parole process was announced," and "DHS was encountering an average of 1,100 Venezuelan nationals per day at the Southwest border," to "a daily average of just 28 Venezuelan encounters per day" by "the week ending in January 22, 2023"); *id.* ¶ 82 (noting the pre-complaint "significant drop in encounters was not just limited to Venezuelan nationals," but "[r]ather, encounters of Cuban, Haitian, and Nicaraguan nationals dropped from a daily average of 1,231, recorded the week before the Program was implemented, to an average of 205 encounters just two weeks later"); *id.* ¶ 84 (finding that "on February 14, 2023, when Plaintiffs filed suit, fewer CHNV nationals were entering the country compared to before the Program began").

Plaintiffs argue the Court should have only inquired "whether Texas's alleged injuries were 'fairly likely' at the time of the complaint." Mot. at 8. That inquiry does not help Plaintiffs, however, because those alleged injuries were premised on an "increase in the presence of illegal

7

aliens" in Texas. Op. at 20-21. There is no basis to find an increase in CHNV nationals in Texas was fairly likely on February 14, 2023, when Plaintiffs filed the operative complaint, because all the evidence in the record showed that, prior to that time, the CHNV processes had already been implemented and that conditional releases of CHNV nationals had immediately, consistently, and significantly dropped in the time between their implementation and February 14, 2023.

Plaintiffs' remaining arguments on this point rely on post-complaint evidence, which is improper for the reasons noted below, or argue the Court should have applied the test for mootness. Mot. at 8-9. Mootness, however, applies only when Plaintiffs establish they had standing at the outset and later intervening circumstances eliminate the injury that was shown at the commencement of the suit. *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 424-25 (5th Cir. 2013). It has no bearing where, as here, Plaintiffs failed to show a concrete actual or imminent injury at the outset.

### III. Plaintiffs Have Not Established the Number of CHNV Nationals Entering the United States Increased Because of the CHNV Processes.

Plaintiffs next argue they need only show future injury is "fairly likely" because they seek "prospective relief." Mot. at 9. But Plaintiffs had no grounds to argue future injury was "fairly likely" at the time they filed the operative complaint, when the CHNV processes were already in effect and all available evidence showed they had reduced the number of CHNV nationals released into the United States, as Plaintiffs conceded. Op. at 19.

Plaintiffs rely on Judge Ho's concurrence in *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 377 (5th Cir. 2021), for the proposition that post-complaint evidence may show a potential injury alleged at the time of the complaint was, indeed, "fairly likely" to occur. Mot. at 10. *Crawford* is inapposite. In *Crawford*, the court held a plaintiff had standing to challenge a systemic barrier to serving on a jury where the facts showed it was fairly likely he would be called

8

for jury duty again because he lived in a county that was "not extremely populous, and only a subset of its population is eligible for jury service." *Id*. at 376. Concurring, Judge Ho noted that, at the time of the complaint, the plaintiff had already been called for jury duty twice, and twice had been unable to serve. *Id*. at 377. Thus, Judge Ho explained that the plaintiff's "alleged future injury at the time he brought suit is simply this: Based on the population of his county, he could expect to be called to jury duty on a regular basis—but would not be allowed to participate due to the county's lack of accommodations for his disability." *Id*. Judge Ho did note that two later jury summonses simply confirmed what the plaintiff had already established at the outset, that his injury was fairly likely to recur, *id*., but that point was not necessary for the court's holding.

This case is not like *Crawford*. Plaintiffs have not shown there was any increase in arrivals of CHNV nationals or associated costs following implementation of the CHNV processes at the time of the operative complaint. And nothing in *Crawford* relieves Plaintiffs of the burden to show an injury was "fairly likely" to occur at the time of the operative complaint. *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 11-12 (2013) (burden on plaintiff to establish that injury is "*certainly impending*"); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (To establish standing based on "prospective injury," plaintiff still bears the burden to show "the threatened injury is real, immediate, and direct.").

Plaintiffs point to extra-record evidence from well after the operative complaint. Mot. 10-11. But Plaintiffs themselves argued that the Court cannot consider post-complaint facts or evidence in evaluating standing. *See* ECF No. 285 at 1-4; Mot. 7-9. Moreover, even if the Court were to consider the post-complaint evidence, it does not establish that encounters of CHNV nationals have increased because of the CHNV processes. Plaintiffs rely on month-to-month variations in post-complaint encounter data to argue that arrivals of CHNV nationals increased at

9

certain times from one month to the next. Mot. at 11. But Plaintiffs acknowledge that month-to-month variations occur for many reasons, including "seasonal variation." *Id*. The fact remains that releases of CHNV nationals declined significantly after the parole processes took effect. And the post-complaint encounter data confirms that encounters of CHNV nationals along the southwest border were lower in the months following the CHNV processes than they had been over the same period in the previous year.



First, the encounter data shows, as the Court found, that there was a significant surge in migration of CHNV nationals at the end of 2022 before all four parole processes were implemented. DHS encounters at the southwest border reached:

- 78,550 CHNV nationals in October 2022,[2] compared to 29,475 in October 2021;

- 82,441 CHNV nationals in November 2022, compared to 41,642 in November 2021, and;

- 91,360 in December 2022, compared to 55,228 in December 2021.

Despite this significant year-over-year increase at the end of 2022, following implementation of the CHNV processes, the number of encounters moved in the opposite direction. In January 2023, CBP encountered only 22,120 CHNV nationals at the southwest border, down from 47,436 the previous year. In February 2023, CBP encountered only 14,381 CHNV nationals compared to 34,803 in February 2022. And in March 2023, CBP encountered 14,539 CHNV nationals compared to 54,394 in March of the previous year. That trend continued in the following months, such that the total number of CHNV nationals encountered between January and September of 2023 was *significantly* lower than the number encountered between January and September of the previous year. Thus, even if the Court could consider post-complaint evidence, that evidence does not show any increase in the number of CHNV nationals being released in Texas, nor does it provide any basis to conclude that Plaintiffs' alleged injury was fairly likely to occur at the time they filed their complaint.[3]

---

[2] This number is reflected in the row for Fiscal Year 2023 in the chart above. Fiscal Year 2023 ran from October 2022 through September 2023.

[3] Plaintiffs also cite nationwide data in their motion, but they previously stipulated they would "only seek to establish Article III injury based on alleged injuries to Texas and that they will not submit any evidence as to injury for any other State Plaintiff," and that "Plaintiffs may not attempt to introduce new evidence of injury or irreparable harm to any State other than Texas … at any stage of this case." ECF No. 139.

11

Plaintiffs argue the Court should attribute any decrease in arrivals of CHNV nationals to various other factors, such as the Circumvention of Lawful Pathways Rule. Mot. at 11-12. But as Plaintiffs acknowledge, that rule was not issued until May 16, 2023, well after the decrease in CHNV nationals had already begun. *Id*. Plaintiffs similarly cite a declaration Defendants submitted noting actions DHS was taking to secure the border as well as actions of other countries to address migration. Mot. at 12 (citing Defs. Ex. HH at ¶¶ 23, 50). Again, Plaintiffs cite actions well after the decline began, such as actions DHS took in May 2023, to address "the end of the Title 42 public health Order," *id*. ¶ 23, or actions before the CHNV processes were in effect, such as actions foreign countries took in 2022, *id*. ¶ 50. None of these actions correspond with or explain the significant and immediate decline in arrivals of CHNV nationals between the announcement of the parole processes and the operative complaint, or the significantly lower volume of arrivals over that period when compared to the same period the previous year.

Ultimately, the burden was on Plaintiffs to identify a concrete injury that had either already occurred or was certainly impending. Since all the evidence in the record shows a sharp decline in CHNV nationals had already taken place at the time of the operative complaint, there is no basis to conclude Plaintiffs met their burden. Their motion to reconsider does not identify any evidence that establishes they were "immediately in danger of sustaining some direct injury as the result of the challenged official conduct" at the time of the complaint. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (citations omitted). Rather, Plaintiffs continue to maintain some injury might occur at an unspecified date in the future because the CHNV processes have "no expiration date." Mot. at 12-13. The Supreme Court has repeatedly rejected such "conjectural" or "hypothetical" injuries as insufficient to satisfy Article III. *Lyons*, 461 U.S. at 102. The "threat of injury must be both real and immediate." *Id*. As the evidence in the trial record and even the post-complaint evidence

shows, there is no evidence Plaintiffs faced a threat of real and immediate injury at the time of the operative complaint.

## CONCLUSION

Plaintiffs' motion fails to identify any error in the Court's reasoning, findings, or conclusion. Defendants respectfully request that the Court deny the motion for reconsideration.

Dated: April 25, 2024              Respectfully submitted,

ALAMDAR S. HAMDANI              BRIAN M. BOYNTON
*United States Attorney*              *Principal Deputy Assistant Attorney General*

                                              WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court Section

EREZ REUVENI
*Assistant Director*

*/s/ Brian C. Ward*
BRIAN C. WARD
*Senior Litigation Counsel*
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel.: (202) 616-9121
Email: brian.c.ward@usdoj.gov

ELISSA FUDIM
*Trial Attorney*

*Counsel for Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief contains 3895 words, as counted by Microsoft Word.

/s/ Brian C. Ward
BRIAN C. WARD
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2024, I electronically filed this brief with the Clerk of the Court for the United States District Court for the Northern District of Texas by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Brian C. Ward
BRIAN C. WARD
U.S. Department of Justice