**United States District Court**
**Southern District of Texas**
**Victoria Division**

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br>    *Plaintiffs,*<br><br>        v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>  *et al.*,<br>    *Defendants.* | Case 6:23-cv-00007 |

# PLAINTIFF STATES' REPLY IN SUPPORT OF MOTION TO RECONSIDER JUDGMENT

## TABLE OF CONTENTS

Table of Contents .................................................................................................................. ii
Table of Authorities ............................................................................................................ iii
    I.     This Court has jurisdiction................................................................................. 1
    II.    The Plaintiffs have demonstrated manifest errors of law and fact. ....................... 2
        A.    Texas's injuries alleged in the Amended Complaint were "fairly likely" to occur. ................................................................................................................................ 3
        B.    Offsetting benefits may not be considered in the standing analysis .................... 5
Conclusion ........................................................................................................................... 6
Certificate of Compliance .................................................................................................. 11
CERTIFICATE OF SERVICE................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for Hippocratic Med. v. FDA*,
  78 F.4th 210 (5th Cir. 2023) .................................................................................... 1, 3, 4, 5

*Berezowsky v. Rendon Ojeda*,
  652 F. App'x 249 (5th Cir. 2016) ....................................................................................... 2

*Burt v. Ware*,
  14 F.3d 256 (5th Cir. 1994) ................................................................................................ 2

*Guy v. Crown Equip. Corp.*,
  394 F.3d 320 (5th Cir. 2004) .............................................................................................. 2

*Palacios v. Stephens*,
  723 F.3d 600 (5th Cir. 2013) .............................................................................................. 2

*Ross v. Marshall*,
  426 F.3d 745 (5th Cir. 2005) .............................................................................................. 2

*Texas v. United States* (*DAPA*),
  809 F.3d 134 (5th Cir. 2015) .............................................................................................. 5

*Trevino v. City of Fort Worth*,
  944 F.3d 567 (5th Cir. 2019) .............................................................................................. 2

*United States v. Holy Land Found. for Relief & Dev.*,
  722 F.3d 677 (5th Cir. 2013) .............................................................................................. 2

**Other Authorities**

Fed. R. App. P. 4 ........................................................................................................................ 2

Fed. R. App. P. 4(a)(4)(A) ......................................................................................................... 2

Rule 59(E) ............................................................................................................................. 1, 2

This Court's judgment rests on the incorrect assumption that the CHNV Program caused illegal crossings by CHNV aliens to decrease. However, the numbers show that illegal border crossings by *all* aliens decreased around this time. There is thus no reason to attribute causation for the decrease in CHNV aliens' crossings to the CHNV Program.

In their responses, the Federal Defendants and the Intervenors take causation as a given and never address Texas's arguments. Nor do they deal with the fact that illegal crossings of CHNV aliens have subsequently increased significantly and are now at the highest levels ever seen.

Furthermore, Texas has alleged unique harms caused by the CHNV Program itself because it provides parole to an additional 30,000 aliens per month who would not have received it, and parole status entitles aliens to receive government benefits and protection from removal that other unlawfully present aliens cannot receive. Since Texas has established its harm, it was inappropriate for the Opinion to engage in an accounting exercise attempting to offset the claimed benefits of the CHNV Program with its harms.

Because of these issues, the Opinion contains manifest errors of law and fact, and the Plaintiffs' Motion should be granted.

## I. This Court has jurisdiction.

This Court has jurisdiction to consider the Plaintiffs' Motion for Reconsideration. This is so even though the Plaintiffs have already filed their Notice of Appeal. ECF No. 307. The Intervenors believe otherwise, claiming that the Notice of Appeal divested this Court of jurisdiction to hear the Plaintiffs' Rule 59(E) reconsideration motion. ECF No. 312 at 3–5.[1] However, they are incorrect.

"If a party files in the district court any of" certain enumerated types of motions "and does so within the time allowed … the time to file an appeal runs for all parties from the entry of the

---

[1] References to pagination for documents filed on this Court's electronic docket are to the stamped page numbers in the header of those filings.

1

order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A). One such motion is "to alter or amend the judgment under Rule 59." *Id.*

The order of filing does not affect the application of Fed. R. App. P. 4(a)(4)(A)— it applies equally whether a notice of appeal was filed before or after the Rule 59 motion. As the Fifth Circuit has explained, "the timely filing of a motion listed in Rule 4(a)(4)(A) suspends or renders dormant a notice of appeal until all such motions are disposed of by the trial court. This holds true regardless of whether the motion was filed before or after the notice of appeal." *Ross v. Marshall*, 426 F.3d 745, 751–52 (5th Cir. 2005) (citation omitted); *Palacios v. Stephens*, 723 F.3d 600, 603 (5th Cir. 2013) ("a notice of appeal filed before a timely filed Rule 59 motion is sufficient to bring the underlying case to the court of appeals but 'is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals.'" (quoting *Ross*, 426 F.3d at 752 n. 13)); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 684 (5th Cir. 2013) (same); *Burt v. Ware*, 14 F.3d 256, 258–260 (5th Cir. 1994) (same). The notes to Fed. R. App. P. 4 also make clear that the rule "provides that a notice of appeal filed before the disposition of a specified posttrial motion will become effective upon disposition of the motion." Fed. R. App. P. 4 Advisory Committee note (1993 Amendments).

II.  **The Plaintiffs have demonstrated manifest errors of law and fact.**

A Rule 59(e) motion should be granted when there has been a "manifest error of law or fact." *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019). A manifest error of law "is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (cleaned up). A manifest error of fact is one that is "an obvious mistake or departure from the truth." *Berezowsky v. Rendon Ojeda*, 652 F. App'x 249, 251 (5th Cir. 2016) (quoting *Bank One, Texas, N.A. v. F.D.I.C.*, 16 F.Supp.2d 698, 713 (N.D. Tex. 1998)). Both categories of error are present here.

The Intervenors improperly mischaracterize the Plaintiffs' Motion as a "rehash" of "recycled arguments." ECF No. 312 at 3. Rather, the Motion raises critical legal issues and facts not considered in the Opinion.

### A. Texas's injuries alleged in the Amended Complaint were "fairly likely" to occur.

When a party seeks prospective relief, the proper standing inquiry is whether that party's "future injury is fairly likely." *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 228 (5th Cir. 2023) (cleaned up).

In the Amended Complaint, Texas alleged multiple harms from the CHNV program, such as that the CHNV Program "allows hundreds of thousands of aliens to enter the United States who otherwise have no basis for doing so," "the ability of the Plaintiff States to provide services to aliens paroled in through the program," that "the number of illegal aliens in Texas increases," and that "allow[ing] these new aliens into the United States in violation of federal law .... strains Texas's resources and ability to provide essential services, such as emergency medical care, education, driver's licenses, and other public safety services." ECF No. 20 ¶¶ 3, 62, 64, 71–72.

These harms were fairly likely when the amended complaint was filed, and subsequent events have confirmed this. ECF 310 at 14–17.

### 1. The CHNV Program did not cause illegal crossings by CHNV aliens to decrease.

The Federal Defendants and the Intervenors make much of the Opinion's finding that the number of CHNV aliens entering the United States decreased around the start of the CHNV Program and when the Amended Complaint was filed. *E.g.,* ECF No. 312 at 6; ECF No. 313 at 9. True enough. However, it is manifest error to attribute the causation of this decrease to the CHNV Program. The Plaintiffs have explained why—because *all* illegal border crossings decreased over that same period. Indeed, illegal border crossings of non-CHNV aliens showed the same decline as the decline seen among CHNV aliens. *See* ECF No. 310 at 15.

Neither the Federal Defendants nor the Intervenors ever grapple with this fact or attempt to offer *any* explanation. Rather, they simply ignore it. If the CHNV Program was responsible for

declines in illegal immigration, then why did *all* illegal immigration go down at the same time? The only reasonable explanation is that some factor *other* than the CHNV Program was responsible. If the CHNV Program did not cause a decline in illegal border crossings by CHNV aliens, then it was manifest error for this Court to find that Texas did not have standing.

### 2. Texas's claimed harms have come to pass.

Further confirming that Texas's claims were fairly likely is that Texas's claimed harms have come to pass. The CHNV Program is running at nearly maximum capacity, adding almost 30,000 new aliens to the United States every month. ECF No. 304 at 5–7. And illegal crossings by CHNV aliens are higher than ever. ECF No. 310 at 14–15.

Admittedly, the significant increase in illegal CHNV alien crossings post-dates the Amended Complaint. However, Texas is not proffering these facts as evidence of the actual injury suffered by Texas after the Amended Complaint was filed, but to confirm that Texas's alleged injuries alleged in the Amended Complaint were fairly likely.

This was the approach endorsed by Judge Ho's concurrence in *Crawford v. Hinds Cnty. Bd. of Supervisors,* and it is equally applicable here. 1 F.4th 371, 377 (5th Cir. 2021). The Federal Defendants attempt to distinguish *Crawford* because, they argue, "Plaintiffs have not shown there was any increase in arrivals of CHNV nationals or associated costs following implementation of the CHNV processes at the time of the operative complaint." ECF No. 313 at 12. However, because the Plaintiffs have indisputably shown that *all* illegal border crossings decreased at the time of the Amended Complaint, they have proven that the Federal Defendants are incorrect when they argue that the CHNV Program was the cause of the decrease in CHNV alien crossings around the time of the Amended Complaint. With the Federal Defendants' claim of causation soundly defeated, then the eventual enormous *increases* in CHNV aliens illegally entering the United States serve to confirm that Texas's claimed harms were fairly likely at the time of the Amended Complaint.

How do the Federal Defendants explain this significant increase in CHNV aliens illegally crossing into the United States? They can't. Instead, they evade the issue, making vague claims that this evidence "does not establish that encounters of CHNV nationals have increased because of the CHNV processes" and that the increase might have "occur[red] for many reasons." ECF No. 313 at 12–13.

They are forced to take the bizarre and contradictory position that *all* of the earlier decreases in CHNV alien crossings were entirely caused by the CHNV Program but that *none* of the later increases were caused by the same thing. Their position falls apart under the weight of its own contradictions.

The Motion provides a few examples of the Federal Defendants discussing the declines in CHNV crossings in the spring of 2023 and neglecting to attribute those declines to the CHNV Program, but instead to other unrelated policies and programs. ECF No. 310 at 15–17. The Federal Defendants also take issue with this, claiming that these policies and programs also post-date the Amended Complaint. ECF No. 313 at 15. But this misses the point. What these examples show is that, outside of this litigation, the Federal Defendants readily admit that changes in immigration levels are multi-faceted and caused by a variety of factors working in concert. When their ability to prevail in litigation is not at stake, the Federal Defendants readily admit that many factors affect border crossing numbers. It was thus manifest error to attribute the transitory decreases in alien crossings to the CHNV Program.

**B.  Offsetting benefits may not be considered in the standing analysis.**

"[O]nce injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant." *Texas v. United States* (*DAPA*), 809 F.3d 134, 156 (5th Cir. 2015). The Federal Defendants claim that because "Texas failed to establish any injury at all" and "[a]ny issue of offsets is therefore irrelevant." ECF No. 313 at 5. However, as explained above, Texas successfully met its burden to show that an increase

5

in CHNV aliens was "fairly likely" when the Amended Complaint was filed. Because Texas *did* meet its burden, it was a manifest error of law for the Opinion to consider offsetting benefits.

Apart from this, Texas *did* show that it suffers harm from the CHNV Program that exists independent of the number of illegal entries of CHNV aliens. Specifically, aliens paroled through the CHNV program cause unique harm distinct from the presence of illegal aliens who have not been paroled. The parole statute entitles aliens to receive public benefits that unlawfully present aliens cannot. Paroled aliens become eligible "for various benefits after five years," including Medicaid, SNAP, and TANF. ECF No. 244 at 10 ¶ 45; ECF No. 285 at 36. Thus, even if the CHNV Program caused a decrease in CHNV aliens unlawfully present in Texas, it indisputably caused an *increase* in the number of *paroled* aliens in Texas, which injures Texas through increased expenditures on such programs. It is, therefore, incorrect for the Federal Defendants to argue that Texas is not harmed because "[t]here is no basis to argue that the CHNV processes increased the number of CHNV arrivals or releases." ECF No. 313 at 8. Even if CHNV arrivals *had* decreased overall (which they have not), the number of CHNV parolees has indisputably *increased*, which has increased the number of aliens in Texas who will be eligible for those benefits, and who will not be subject to removal (aliens being removable would mean that Texas would not have to spend money on incarceration, public education, or Emergency Medicaid costs that it has to expend on them when present in the State).

## CONCLUSION

The Court should grant Plaintiffs' motion for reconsideration.

Dated: May 2, 2024.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy Attorney General for Legal Strategy

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-1700

Respectfully submitted,

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Chief, Special Litigation Division
Texas Bar No. 24105085
Southern District of Texas No. 3369185
ryan.walters@oag.texas.gov

DAVID BRYANT
Senior Special Counsel
Texas Bar No. 03281500
Southern District of Texas No. 808332
david.bryant@oag.texas.gov

GENE P. HAMILTON
JAMES K. ROGERS
America First Legal Foundation
Virginia Bar No. 80434
Southern District of Texas No. 3792762
611 Pennsylvania Avenue SE, #231
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org
james.rogers@aflegal.org

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512)686-3940 (phone)
(512)686-3941 (fax)
jonathan@mitchell.law

*Counsel for the State of Texas*

Steve Marshall
Alabama Attorney General
Edmund G. LaCour Jr.
Solicitor General
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Tel: (334) 242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*

Tim Griffin
Arkansas Attorney General
Nicholas J. Bronni
Arkansas Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Nicholas.Bronni@arkansasag.gov

*Counsel for the State of Arkansas*

Raúl R. Labrador
Attorney General of Idaho
Joshua N. Turner, ISB No. 12193
Alan M. Hurst, ISB No. 12425
Office of the Attorney General
700 W. Jefferson Street, Ste. 210
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
josh.turner@ag.idaho.gov
alan.hurst@ag.idaho.gov

*Counsel for the State of Idaho*

Treg Taylor
Attorney General of Alaska
Cori M. Mills
Deputy Attorney General
Christopher A. Robison
Alaska Bar No. 2111126
Texas Bar No. 24035720
Assistant Attorney General
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
chris.robison@alaska.gov

*Counsel for the State of Alaska*

Ashley Moody
Attorney General of Florida
James H. Percival (FBN 1016188)
Deputy Attorney General of Legal Policy
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
Tel: (850) 414-3300
james.percival@myfloridalegal.com

*Counsel for the State of Florida*

Brenna Bird
Attorney General of Iowa
Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel: (515) 823-9117
Fax: (515) 281-4209
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

8

Kris Kobach
Attorney General of Kansas
Jesse A. Burris, Kan. Sup. Ct. #26856
Assistant Attorney General
Office of Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Tel: (785) 368-8197
Jesse.Burris@ag.ks.gov

*Counsel for the State of Kansas*

Elizabeth B. Murrill
Attorney General of Louisiana
Kelsey L. Smith
Deputy Solicitor General
Louisiana Department of Justice
1885 N. Third Street
Baton Rouge, Louisiana 70804
Tel: (225) 326-6766
murrille@ag.louisiana.gov
smithkel@ag.louisiana.gov

*Counsel for the State of Louisiana*

Andrew Bailey
Attorney General of Missouri
Joshua M. Divine, Mo. Bar #69875
Solicitor General
Maria Lanahan, Mo. Bar #65956
Deputy Solicitor General
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, Missouri 65102
Tel: (573) 751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*

Russell Coleman
Attorney General of Kentucky
Marc Manley
Assistant Attorney General
Kentucky Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky
Tel: (502) 696-5478
Marc.Manley@ky.gov

*Counsel for the Commonwealth of Kentucky*

Lynn Fitch
Attorney General of Mississippi
Justin L. Matheny
Deputy Solicitor General
Office of the Mississippi Attorney General
P.O. Box 220
Jackson, MS 39205-0220
Tel: (601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for the State of Mississippi*

Austin Knudsen
Attorney General of Montana
Christian B. Corrigan
Solicitor General
Peter M. Torstensen, Jr.
Assistant Solicitor General
Office of the Attorney General
215 N Sanders
Helena, Montana 59601
Tel: (406) 444-2026
Christian.Corrigan@mt.gov

*Counsel for the State of Montana*

Michael T. Hilgers
Attorney General of Nebraska
Eric J. Hamilton
Solicitor General
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68509
Tel: (402) 471-2682
eric.hamilton@nebraska.gov

*Counsel for the State of Nebraska*

Gentner F. Drummond
Attorney General of Oklahoma
Garry M. Gaskins, II
Solicitor General
Zach West
Director of Special Litigation
313 N.E. 21st St.
Oklahoma City, OK 73105
Tel: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov

*Counsel for the State of Oklahoma*

Jonathan Skrmetti
Tennessee Attorney General
and Reporter
Whitney Hermandorfer
Director of Strategic Litigation
P.O. Box 20207
Nashville, TN 37202
Tel: (615) 741-7403
Whitney.Hermandorfer@ag.tn.gov

*Counsel for the State of Tennessee*

Dave Yost
Ohio Attorney General
Mathura Jaya Sridharan
Ohio Deputy Solicitor General
Ohio Attorney General
30 E. Broad St., 17th Floor
Columbus, OH 43215
Tel: (614) 466-8980
mathura.sridharan@OhioAGO.gov

*Counsel for the State of Ohio*

Alan Wilson
Attorney General of South Carolina
Thomas T. Hydrick
Assistant Deputy Solicitor General
Post Office Box 11549
Columbia, SC 29211
Tel: (803) 734-4127
thomashydrick@scag.gov

*Counsel for the State of South Carolina*

Sean D. Reyes
Utah Attorney General
Stanford E. Purser
Utah Solicitor General
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
Tel: (801) 538-9600
spurser@agutah.gov

*Counsel for the State of Utah*

| | |
|---|---|
| Patrick Morrisey<br>Attorney General of West Virginia<br>Lindsay See<br>Solicitor General<br>Michael R. Williams<br>Principal Deputy Solicitor General<br>Office of the West Virginia<br>Attorney General<br>State Capitol, Bldg 1, Room E-26<br>Charleston, WV 25305<br>Tel: (681) 313-4550<br>Lindsay.S.See@wvago.gov<br>Michael.R.Williams@wvago.gov<br><br>*Counsel for the State of West Virginia* | Bridget Hill<br>Wyoming Attorney General<br>Ryan Schelhaas<br>Chief Deputy Attorney General<br>Wyoming Attorney General's Office<br>109 State Capitol<br>Cheyenne, WY 82002<br>Tel: (307) 777-5786<br>ryan.schelhaas@wyo.gov<br><br>*Counsel for the State of Wyoming* |

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with Rule 16.c. of Judge Tipton's Court Procedures because it contains 1,997 words, excluding the parts of the document exempt from that Rule, according to Microsoft Word.

*/s/Ryan D. Walters*
RYAN D. WALTERS

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on May 2, 2024, which automatically serves all counsel of record who are registered to receive notices in this case.

*/s/Ryan D. Walters*
RYAN D. WALTERS