United States District Court
Southern District of Texas
**ENTERED**
May 29, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| The STATE OF TEXAS; the STATE OF ALABAMA; the STATE OF ALASKA; the STATE OF ARKANSAS; the STATE OF FLORIDA; the STATE OF IDAHO; the STATE OF IOWA; the STATE OF KANSAS; the COMMONWEALTH OF KENTUCKY; the STATE OF LOUISIANA; the STATE OF MISSISSIPPI; the STATE OF MISSOURI; the STATE OF MONTANA; the STATE OF NEBRASKA; the STATE OF OHIO; the STATE OF OKLAHOMA; the STATE OF SOUTH CAROLINA; the STATE OF TENNESSEE; the STATE OF UTAH; the STATE OF WEST VIRGINIA; and the STATE OF WYOMING,<br><br>　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security, in his official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR JADDOU, Director of U.S. Citizenship and Immigration Services, in her official capacity; U.S. CUSTOMS & BORDER PROTECTION; TROY MILLER, Acting Commissioner of U.S. Customs & Border Protection, in his official capacity; U.S. IMMIGRATION & CUSTOMS ENFORCEMENT; and TAE JOHNSON, Acting Director of U.S. Immigration & Customs Enforcement, in his official capacity,<br><br>　　　Defendants. | Civil Action No. 6:23-CV-00007 |

## MEMORANDUM OPINION AND ORDER

On March 8, 2024, this Court entered final judgment, finding that Plaintiffs failed to establish that they have standing and dismissing their claims without prejudice. (Dkt. No. 306). Three days later, Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit. (Dkt. No. 307). On April 4, 2024, Plaintiffs filed Plaintiff States' Opposed Rule 59(e) Motion to Reconsider Judgment. (Dkt. No. 310). Plaintiffs argue that the Court "applied the wrong standard to determine whether the Plaintiffs had demonstrated that Texas had standing to challenge the CHNV Program," and that "[e]ven under the Opinion's articulated standard, the facts demonstrated that the Program led to increased CHNV nationals entering the United States." (*Id.* at 5).

The Federal Defendants and Intervenor Defendants both oppose the Motion. (*See* Dkt. Nos. 312, 313). In addition to disagreeing that the Court should reconsider its order, Intervenor Defendants also raise two additional contentions: (1) that Plaintiffs have not met the requirements for reconsideration under Rule 59(e), and (2) that because the notice of appeal pre-dated Plaintiffs' motion to reconsider, the Court has been divested of jurisdiction to entertain the Motion at all. (Dkt. No. 312 at 2–5). The Court first considers whether it has jurisdiction to take up the Motion.

### I. JURISDICTION

Intervenor Defendants argue that once Plaintiffs appealed this Court's final judgment to the Fifth Circuit, this Court lost jurisdiction to grant a subsequently filed Rule 59(e) motion. (*Id.* at 3–5). As a general rule, a timely appeal divests the district court of jurisdiction over those aspects of the case on appeal. *See, e.g., Alice L. v. Dusek*, 492 F.3d

2

563, 564 (5th Cir. 2007) (per curiam). However, "the efficacy of a notice of appeal can be delayed under Federal Rule of Appellate Procedure 4[.]" *Redding-Guidry v. Harmony Pub. Sch.*, No. 4:22-CV-02299, 2024 WL 460244, at *2 (S.D. Tex. Feb. 6, 2024). Rule 4 provides, in relevant part:

> If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

Fed. R. App. P. 4(a)(4)(B)(i). As the Fifth Circuit has explained, the effect of this rule is that "the timely filing of a motion listed in Rule 4(a)(4)(A) suspends or renders dormant a notice of appeal until all such motions are disposed of by the trial court." *Ross v. Marshall*, 426 F.3d 745, 751 (5th Cir. 2005). And most importantly, "[t]his holds true *regardless of whether the motion was filed before or after the notice of appeal*." *Id.* at 751–52 (emphasis added). Thus, when a party files a Rule 4(a)(4)(A) motion after previously filing a notice of appeal—as is the case here—the district court is "not entirely finished with [the] case." *Simmons v. Reliance Standard Life Ins. Co. of Tex.*, 310 F.3d 865, 868 (5th Cir. 2002). That is why a pre-existing appeal is therefore "suspend[ed] or render[ed] dormant" until the motion's resolution. *Ross*, 426 F.3d at 751.

Rule 59(e) falls within the motions contemplated by Rule 4. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Accordingly, the Court has jurisdiction to decide the present Motion.

## II.   MOTION TO RECONSIDER UNDER RULE 59(E)

A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Such a motion serves "the narrow

3

purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotation marks omitted). It can also be appropriate "when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Put differently, "Rule 59(e) is not designed to permit a party to continue to re-litigate the same claims with the same arguments, or even new arguments, once there has been a ruling on the merits of a claim." *Finney v. Thaler*, No. 7:10-CV-00131, 2020 WL 13663878, *2 (W.D. Tex. Jan. 17, 2020) (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008)). Accordingly, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

Here, Plaintiffs have neither asserted that there has been an intervening change in controlling law, nor that there is newly discovered evidence. Instead, they move under Rule 59(e) solely on the basis that the Court's standing analysis "contains manifest errors of law and fact." (Dkt. No. 314 at 4); (*see* Dkt. No. 310). But the substance of Plaintiffs' motion seeks to do precisely what Rule 59(e) forbids: re-litigate the same legal theories and present the same arguments upon which the Court has already ruled. Those arguments are no more availing now on reconsideration. The Court does not find "manifest error" in its prior judgment.

4

While the Court will not rehash its standing analysis, it appears that Plaintiffs have misunderstood certain aspects of the Court's prior ruling. Thus, the Court will briefly comment on those points.

### A. OFFSETTING BENEFITS

Plaintiffs first argue that the Court "engaged in an impermissible accounting exercise" by considering whether Texas's injury was outweighed by offsetting benefits. (Dkt. No. 310 at 6–11). But as the Court explained, "it need not consider Defendants' other arguments," including "with respect to [] offsetting benefits," because Texas "has not suffered an injury" at all. *Texas v. U.S. Dep't of Homeland Sec.*, ___ F.Supp.3d ___, ___ n.17, No. 6:23-CV-00007, 2024 WL 1021068, at *17 n.17 (S.D. Tex. Mar. 8, 2024) ("*CHNV*"). The Court noted that Texas could have proved its alleged injury—dollar damages[1]—in one of two ways: proving by a preponderance either (1) "that terminating the Program would reduce migration flow from the four countries," or (2) "that migration flow increased" after implementation of the Program. *Id.* at *17 n.18. But, as Plaintiffs conceded, the evidence presented at trial demonstrated that the numbers actually decreased.[2] *Id.* at *9–12, *14–16. The Court therefore did not impermissibly "weigh a given program's costs versus other benefits in assessing standing." (Dkt. No. 310 at 7).

---

[1] *See CHNV*, 2024 WL 1021068 at *12 n.13 (citing Dkt. No. 278 at 246).

[2] At trial, Plaintiffs primarily relied on the second theory: that the Court should conceptualize the migration flow as having increased. But on reconsideration, they also say that "even if overall immigration flows decreased for such a discrete period of time, they would have decreased *even more* if the unlawful CHNV Program were enjoined." (Dkt. No. 310 at 7) (emphasis in original). Plaintiff failed to prove that fact at trial and would have the Court assume as much. At no point, including on reconsideration, have Plaintiffs identified evidence to support this assertion.

### B. FACTS POST-DATING COMPLAINT

Plaintiffs' second point of contention is that the Court "impermissibly evaluated facts occurring after the complaint to find a lack of standing." (*Id.* at 11). On this point, the Court directs Plaintiffs to Finding of Fact 80, as well as footnote 14 of the *CHNV* opinion. *CHNV*, 2024 WL 1021068 at *11, *14 n.14. In the former, the Court found as a factual matter that "[t]he decline in CHNV nationals entering the United States after the rollout of the Program *was occurring at the time that Plaintiffs filed their Amended Complaint on February 14, 2023." Id*.at *11 (emphasis added). And as explained in footnote 14, while the Parties did not offer only data taken before February 14, 2023, any data post-dating that date was used for purposes of determining standing as of February 14, 2023. *Id.* at *14 n.14.

### C. DATA FROM POST-TRIAL BRIEFING

Finally, Plaintiffs argue that the Court erred by "disregard[ing] data" presented in their post-trial briefing which "show[s] that border crossings from aliens from CHNV countries have continued to increase and are higher than ever."[3] (Dkt. No. 310 at 13–14). Federal and Intervenor Defendants both dispute this assertion. (*See* Dkt. No. 313 at 12) (arguing that Plaintiffs' post-trial data "does not establish" an increase of CHNV nationals entering the country); (Dkt. No. 312 at 7) (stating that "it remains true now" that there has been a dramatic decrease of CHNV nationals entering the country, and Plaintiffs have "mischaracterize[ed]" the data).

---

[3] Essentially, Plaintiffs ask the Court to both (1) ignore post-Complaint, pre-trial data, yet (2) consider post-trial data. (*See* Dkt. No. 310).

Regardless of how the Court interprets Plaintiffs' post-trial data, it remains the rule that prospective injuries, "like all injuries supporting Article III standing, [require] an injury in fact." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). Because an injury must be "actual or imminent," under Article III, "[t]he threat of future injury must be 'certainly impending'; mere allegations of possible future injury will not suffice." *James v. Hegar*, 86 F.4th 1076 (5th Cir. 2023) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 1147, 185 L.Ed.2d 264 (2013)), *cert. denied*, No. 23-1011, 2024 WL 1839132 (U.S. Apr. 29, 2024)); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (explaining that a threat of future injury must be "certainly impending," or there must be a "substantial risk" that the harm will occur). In articulating this standard, the Fifth Circuit has stated that a plaintiff satisfies the imminence requirement by showing "that future injury is 'fairly likely.'" *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 228 (5th Cir. 2023). As Plaintiffs remark, the likelihood of its alleged future injury is determined at the time of the operative complaint. (Dkt. No. 310 at 12).

In this case, all the evidence presented at trial indicated that when suit was filed, the rate of entry was plummeting. And Plaintiffs offered nothing to suggest that as of February 24, 2023, a rebound in that rate of entry was on the horizon, i.e., "fairly likely." Plaintiffs' post-trial evidence is of no moment on this point. Even assuming the data indicated that the entry rate of CHNV nationals has since rebounded to exceed pre-Program rates, a plaintiff "cannot . . . establish standing retroactively." *In re Technicool Sys., Inc.*, 896 F.3d 382, 386 (5th Cir. 2018). In other words, knowledge of an entry-rate

7

uptick in late-2023 in hindsight is not evidence that Plaintiffs proved this uptick was "imminent" as of February 24, 2023, when standing is determined.[4]

### III.   CONCLUSION

While the Court does have jurisdiction to consider Plaintiffs' Opposed Rule 59(e) Motion to Reconsider Judgment, (Dkt. No. 310), the substance of the Motion reveals that it is a re-hashing of the Parties' previous legal arguments and falls short of Rule 59(e)'s application.  Accordingly, the Motion is **DENIED**.

It is SO ORDERED.

Signed on May 28, 2024.

*[signature: Drew B. Tipton]*

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

[4] While Plaintiffs heavily rely on Judge Ho's concurrence in *Crawford v. Hinds Cnty. Bd. of Supervisors*, the alleged future injury in that case was sufficient because the evidence indicated that at the time of suit, that injury was expected to occur again, and "on a regular basis." 1 F.4th 371, 377 (5th Cir. 2021).  It is precisely this point which distinguishes *Crawford* from this case, as Plaintiffs here have not shown that their alleged future injury was "fairly likely," much less "certainly impending," as of February 24, 2023.