

United States Courts
Southern District of Texas
FILED

*August 01, 2025*

Nathan Ochsner, Clerk of Court

# United States Court of Appeals for the Fifth Circuit

Certified as a true copy and issued
as the mandate on Aug 01, 2025

Attest: *Lyle W. Cayce*

Clerk, U.S. Court of Appeals, Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2025

Lyle W. Cayce
Clerk

———————————

No. 24-40160

———————————

STATE OF TEXAS; STATE OF ALABAMA; STATE OF ALASKA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE OF IDAHO; STATE OF IOWA; STATE OF KANSAS; COMMONWEALTH OF KENTUCKY; STATE OF LOUISIANA; STATE OF MISSISSIPPI; STATE OF MISSOURI; STATE OF MONTANA; STATE OF NEBRASKA; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF TENNESSEE; STATE OF UTAH; STATE OF WEST VIRGINIA; STATE OF WYOMING; STATE OF OKLAHOMA,

*Plaintiffs—Appellants,*

*versus*

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; KIKA SCOTT, *Acting Director of U.S. Citizenship and Immigration Services*; U.S. CUSTOMS & BORDER PROTECTION; TROY MILLER, *Senior Official Performing the Duties of the Commissioner, U.S. Customs and Border Protection*; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; TAE D. JOHNSON, *Acting Director, U.S. Immigration and Customs Enforcement*,

*Defendants—Appellees,*

VALERIE LAVEUS; FRANCIS ARAUZ; PAUL ZITO; ERIC SYPE; KATE SUGARMAN; NAN LANGOWITZ; GERMAN CADENAS,

*Appellees.*

No. 24-40160

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:23-CV-7

———————————————————————

<u>UNPUBLISHED ORDER</u>

Before HIGGINBOTHAM, WILLETT, and HO, *Circuit Judges*.

PER CURIAM:

In December 2022, the Department of Homeland Security announced a new initiative offering "a lawful and streamlined way for qualifying nationals" from Cuba, Haiti, Nicaragua, and Venezuela to enter the United States.[1] The following month, nearly two dozen States challenged the CHNV Program in federal court.

Following a bench trial, the district court dismissed the suit without prejudice in March 2024, concluding that the States lacked standing, and entered final judgment. The States moved for reconsideration, which the district court denied. They then timely appealed.

On January 20, 2025, President Trump issued an Executive Order directing Secretary Noem to terminate the CHNV Program. *See* Exec. Order No. 14,165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025). On February 6, this court stayed proceedings for 90 days to assess mootness. DHS formally rescinded the Program on March 25. *See* Termination of

———————————————

[1] *DHS Implements New Processes for Cubans, Haitians, and Nicaraguans and Eliminates Cap for Venezuelans*, U.S. Citizenship and Immigration Services ( Jan. 6, 2023), https://perma.cc/YR3F-JQBK.

No. 24-40160

Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13,611 (Mar. 25, 2025).

The States now move to dismiss the appeal as moot and request that we remand the case to the district court with instructions to dismiss. They also seek vacatur of the district court's orders and judgment.[2] Intervenor–Appellees oppose both requests.

A case "can become moot if the defendant ceases the allegedly unlawful conduct—including when a challenged statute, executive order, local ordinance, or regulation expires or is repealed." *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022). Intervenor–Appellees argue the States "[have] not even attempted to make the necessary showing that this case is moot." But beyond that single assertion, they offer no substantive argument contesting mootness.

Accordingly, the motion to dismiss this appeal as moot is GRANTED.

The States also seek vacatur of the district court's opinion and final judgment. As the Supreme Court explained in *Munsingwear*, "[t]he established practice" in federal court when a civil case becomes moot on appeal "is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). But because that practice is grounded in equity, the Court has made clear that "whether to vacate turns on 'the conditions and circumstances of the particular case.'" *Azar v. Garza*, 584 U.S. 726, 729 (2018) (quoting

---

[2] The federal government agrees that the appeal is moot but takes no position on the relief requested by the States.

*United States v. Hamburg–Amerikanische Packetfahrt–Actien Gesellschaft,* 239 U.S. 466, 478 (1916)).

The Supreme Court has squarely held that "when mootness occurs through . . . the 'unilateral action of the party who prevailed in the lower court,'" vacatur is the proper remedy. *Id.* (quoting *Arizonans for Official English v. Arizona,* 520 U.S. 43, 71–72 (1997)). Indeed, "'[i]t would certainly be a strange doctrine that would permit a plaintiff to obtain a favorable judgment, take voluntary action that moots the dispute, and then retain the benefit of the judgment.'" *Id.* (quoting *Arizonans for Official English*, 520 U.S. at 75).

Had the United States been the sole Defendant–Appellee, vacatur would follow as a matter of course. Intervenor–Appellees, however, argue that because they did not cause the case to become moot, the "established practice" described in *Munsingwear* should not apply. Accordingly, we must evaluate "the nature and character of the conditions which have caused the case to become moot" and weigh the equities. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 24 (1994) (internal quotation marks and citation omitted).

As an equitable remedy, vacatur "generally requires 'the party seeking relief from the status quo' of the judgment to demonstrate 'equitable entitlement to th[at] extraordinary remedy.'" *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 836 (5th Cir. 2023) (quoting *U.S. Bancorp Mortgage*, 513 U.S. at 26). Two equitable considerations, in particular, guide the vacatur analysis. "First, a court must consider 'whether the party seeking relief from the judgment below caused the mootness by voluntary action.' And second, '[a]s always when federal courts contemplate equitable relief, [the] holding must also take account of the public interest.'" *Id.* (quoting

*U.S. Bancorp Mortgage*, 513 U.S. at 24, 26). "[T]here is no 'hard and fast rule . . . in fashioning a remedy for mootness.'" *Id.* (internal citation omitted).[3]

Here, it was the federal government—not the Intervenor–Appellees—that mooted the case by terminating the CHNV Program. Intervenor–Appellees maintain that "[i]f one party must be forced to bear the consequences of Federal Defendants' about-face to moot this lawsuit, it should be Texas, the party that lost below, not Intervenor Defendants, who prevailed." They rely primarily on *Karcher v. May*, 484 U.S. 72 (1987), to support their position.

But their reliance on *Karcher* is both misplaced and overbroad. In *Karcher*, two presiding officers of the New Jersey Legislature intervened to defend a statute on the Legislature's behalf. After losing in the court of appeals, the two men "lost their posts as presiding legislative officers." *Id.* at 76. They then appealed the judgment and urged vacatur, arguing that the Legislature's abandonment of the appeal—and their own "loss of official status"—left no one to defend the statute, thus "render[ing] the judgment unreviewable." *Id.* at 82. The Supreme Court disagreed, holding that *Munsingwear* vacatur was unwarranted because "the losing party—the New Jersey Legislature— declined to pursue its appeal." *Id.* at 83. Whether the intervenor-officers had clean hands was immaterial to the Court's analysis. The Court focused instead on a single, dispositive fact: the losing party—the Legislature—chose not to press its appeal.

*Karcher* cannot plausibly be read to suggest that an intervenor's interests categorically outweigh those of a party whose claim was nullified by

---

[3] Factors to consider include (1) the value of judicial precedent to the legal community, (2) federalism concerns, (3) the temporary nature of the action mooting the dispute, and (4) the subjection of the party seeking vacatur to money judgment or injunctive relief. *Id.*

the prevailing party's unilateral act. Instead, *Karcher* stands for a straightforward proposition: a losing party's decision not to press an appeal does not entitle it to vacatur. The Court made no findings with respect to the role of defendant–intervenors in mooting the case, nor did it weigh their interest in vacating the lower-court's opinion.[4] Adopting Intervenor–Appellees' reading of *Karcher* would graft a new holding onto Court precedent—one that arises from wholly different set of facts. Their attempt to stretch *Karcher* that far is unconvincing.

On balance, we conclude the States have the stronger equitable claim. Like the Intervenor-Appellees, the States come to this dispute with clean hands. And precedent makes clear that where "[n]o live dispute remains between the parties" due to intervening government and legislative action, vacatur is warranted. *United States v. Microsoft Corp.*, 584 U.S. 236, 1187–88 (2018); *see also Shoemate v. Mississippi Dep't of Corr.*, 668 F. App'x 124, 125 (5th Cir. 2016) (holding that vacatur was appropriate where an intervening change in state law mooted the case); *AT&T Commc'ns of Sw., Inc. v. City of Austin*, 235 F.3d 241, 244 (5th Cir. 2000) ("Because this case is moot and its mootness was not caused by [the challenging party's] voluntary action, we vacate the district court's judgments."). Here, the federal government prevailed below, then unilaterally mooted the case through executive action. Allowing it to retain the benefit of a judgment it chose to insulate from review would contravene both equity and precedent. *See, e.g.*, *Garza*, 584 U.S. at 729. Vacatur is therefore warranted.

---

[4] *Id.* at 83 ("This controversy did not become moot due to circumstances unattributable to any of the parties. The controversy ended when the losing party—the New Jersey Legislature—declined to pursue its appeal. Accordingly, the *Munsingwear* procedure is inapplicable to this case."). With respect to the intervenors, the Court merely held that "[b]ecause Karcher and Orechio are not parties to this case in the capacities under which they seek to appeal, their appeal must be dismissed for want of jurisdiction." *Id.*

No. 24-40160

IT IS ORDERED that Appellants' Opposed Motion to vacate the district court's opinions and final judgment is GRANTED.

IT IS FURTHER ORDERED that Appellants' Opposed Motion to remand case to the district court with instructions to dismiss it as moot is GRANTED.